1  SCOTT TALKOV, State Bar No. 264676
   TALKOV LAW CORP.
2  2900 Adams St Ste C225
   Riverside, California 92504
3  Telephone: (951) 888-3300
   Email: scott@talkovlaw.com
4

5  Attorney for Defendant/Debtor Rosa A. Fridman

6            **UNITED STATES BANKRUPTCY COURT**

7       **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

8  In re                              | Case. No. 8:21-bk-10513-ES

9  Rosa Fridman,                      | Adversary Case No. 8:21-ap-01023-ES

10 Debtor.                            | Chapter 7

11 ─────────────────────              | Assigned To: Hon. Erithe A. Smith

12 Karl Avetoom,                      | **REPLY TO OPPOSITION TO
                                       | DEFENDANT'S MOTION FOR
13              Plaintiff,            | TERMINATING SANCTIONS DUE TO
                                       | PLAINTIFF KARL AVETOOM'S
14 v.                                 | SUBMISSION AND AUTHENTICATION
                                       | OF FABRICATED DOCUMENTS;
15 Rosa Fridman,                      | SUPPORTING DECLARATION OF SCOTT
                                       | TALKOV**
16              Defendant.           |
17                                    | Hearing Set by Court on Defendant's Motion for
                                       | Terminating Sanctions:
18                                    | Date:      December 16, 2021
                                       | Time:      2:00 P.M.
19                                    |            Courtroom 5A (via remote appearance)
                                       |            411 W. Fourth St.
20                                    |            Santa Ana CA 92701
21
22
23
24
25
26
27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

# **TABLE OF CONTENTS**

I.   THIS COURT SHOULD JOIN EVERY FEDERAL COURT ADDRESSING A DOCUMENT FABRICATOR BY GRANTING TERMINATING SANCTIONS ............. 1

II.  THE OPPOSITION PRESENTS NO AUTHORITY TO CONTRADICT THAT THE RES JUDICATA EFFECT OF A DISMISSAL WITH PREJUDICE UNDER FRCP 41(b) WILL INDEED FOREVER END THIS DECADE PLUS SAGA ................. 2

    a.   The Opposition Mistakenly Contends That Rule "41(b)…is Limited to Failure to Prosecute, Failure to Follow the Rules of Civil Procedure or Court Orders" ..................................................................................... 3

    b.   The Opposition Presents No Argument That Dismissal with Prejudice Under FRCP 41(b) Does Not Operate as an "Adjudication on the Merits" Such that the 2011 Judgment Will be Discharged ..................................... 4

    c.   The Non-Prevailing Plaintiffs in Prior Cases Denying 523(a)(10) Actions Were Subject to the Discharge, Meaning They Cannot Refile Their 523(a)(10) Cases nor Pursue Their Discharged Debts, Just as Mr. Avetoom Will Similarly be Barred Upon Dismissal With Prejudice Via Terminating Sanctions ............................................................................... 5

    d.   The Opposition Abandons the Plaintiff's Prior Reliance on Moncur ..................... 6

III. IF THIS COURT CONSIDERS THE "PURELY OPTIONAL" FACTOR OF PREJUDICE, THE STANDARD HAS EASILY BEEN ESTABLISHED AS PLAINTIFF'S THREE BOGUS DOCUMENTS IN THIS ADVERSARY ALONE "THREATENED TO INTERFERENCE WITH THE RIGHTFUL DECISION IN THE CASE" ................................................................................................ 7

    a.   Prejudice Factor is "Purely Optional" in the Ninth Circuit ..................................... 8

    b.   Courts Routinely Refuse to Consider Prejudice When Document Fabricators Are Faced with Terminating Sanctions ................................................... 9

    c.   Mr. Avetoom's Forgeries Created Procedural Prejudice Since It Required Defendants to Litigate a Lawsuit Based on False Evidence, Exert Enormous Additional Effort and Expense to Ferret Out the Plaintiff's Lies, and to Double Check Every Piece of Information and Evidence Moving Forward ........... 9

    d.   Even if this Court Indulges the Plaintiff, Prejudice Did Result Since Mr. Avetoom Attempted to Influence the Outcome of the Case .................................. 11

        i.    The Bogus "Contract" With the Forged Signature of Rosa Fridman Now Exposed as the Third Manufactured Document Submitted in the Reply to the Summary Judgment Threatened to Interfere with the Waiver Defense ..................................................................... 11

        ii.   The Bogus Webpage Purporting to Show the Defendant's Family Prejudicially Referring to the Judicial Officer of this Court as a "N*******" Had Only One Purpose: To Prejudice this Court Against

the Defendant ............................................................. 14

iii.    The Bogus Website Showing a Comment from "Victor Balakin"
Was Intended To Cover-Up the Other Fraudulent Documents,
Dissuade Defendant's Counsel from Continuing to Expose the
Fraud, and Avoid a Deposition as to the Fraud ......................... 15

IV.    THE UNREBUTTED EVIDENCE MEETS THE BURDEN OF PROOF TO
SHOW THAT MR. AVETOOM SUBMITTED AND FALSELY
AUTHENTICATED THE FABRICATED DOCUMENTS ........................... 16

a.    Crucially, Mr. Avetoom's Declaration Did Not Deny the Allegations of
Document Fabrication, But Instead Authenticated 17 Exhibits Irrelevant to
this Factual Determination .......................................... 17

b.    The Opposition's Declarations Attesting to Irrelevant Matters Do Not
Change the Fact That Mr. Avetoom's Declaration Does Not Deny That He
Submitted Forged Documents ......................................... 18

c.    Mr. Avetoom Modus Operandi and Lack of Mistake is Revealed by his
Concurrent Fabrication of Documents, Supplying of False Testimony, and
Concocting Fake Witnesses in His Own Post-Judgment State Court Motion
as Confirmed by the Orange County District Attorney ..................... 20

d.    Prior Rulings Are Infected With this New Proof that Mr. Avetoom is Indeed
the Forger that the Fridmans Have Long Alleged that He Is ................. 21

V.    MR. AVETOOM'S CLAIM THAT THERE STILL EXISTS A PARTIAL
ASSIGNMENT OF THE JUDGMENT TO THE HOA IS CONTRADICTED BY
HIS OWN PROOF OF CLAIM HEREIN ASSERTING THE FULL AMOUNT IS
OWED TO HIM ........................................................ 22

VI.    THE INTEGRITY OF THE JUSTICE SYSTEM DEMANDS THAT THIS
COURT DISMISS THIS ACTION WITH PREJUDICE AS THE PLAINTIFF IS A
REPEAT DOCUMENT FABRICATOR WHO STILL HASN'T LEARNED HIS
LESSON .............................................................. 24

VII.    DECLARATION OF SCOTT TALKOV ....................................... 26

VIII.    PROOF OF SERVICE OF DOCUMENT ...................................... 30

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

## I.  THIS COURT SHOULD JOIN EVERY FEDERAL COURT ADDRESSING A DOCUMENT FABRICATOR BY GRANTING TERMINATING SANCTIONS

Mr. Avetoom's opposition urges this Court to become what would appear to be the first federal court in American history to deny a motion for terminating sanctions against a document fabricator. As explained below, this Court should follow established federal precedent that document forgers are promptly shown the door to the courthouse, regardless of the area of law.

First, procedurally, terminating sanctions resulting in dismissal with prejudice will indeed end this emotionally driven case once and for all. Specifically, Federal Rules of Civil Procedure, Rule 41(b) relating to involuntary dismissals provides that "a dismissal under this subdivision (b) [of Rule 41] and **any dismissal not under this rule**…operates as an adjudication on the merits." As the Ninth Circuit has explained Rule 41(b), "'final judgment on the merits' is synonymous with 'dismissal with prejudice.'" *Hells Canyon Preservation Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005). *Wright and Miller* explain the simplicity of this answer: "Penalty dismissals provide a category in which there is <u>little need to venture beyond Civil Rule 41(b) in search of preclusion answers</u>." "On the Merits"—Penalty Dismissals, 18A Fed. Prac. & Proc. Juris. (3d ed.) § 4440 (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1121–1122 (1st Cir. 1989) as follows: "Dismissal of the first-filed action for fraud on the court in filing a <u>knowingly forged document</u> effectively barred the plaintiff from asserting the same rights in a second parallel action filed after the fraud was discovered").

In fact, two bankruptcy court opinions discussed below dismissed a plaintiff's 523(a)(10) action on the merits, i.e., with prejudice. As one court explained a the effect of the dismissal of a 523(a)(10) action: **"Therefore, said debt is discharged**." *In re Gilliam*, 467 B.R. 825, 829 (Bankr. W.D. Pa. 2012). The same will be true upon dismissal with prejudice via terminating sanctions, under FRCP 41(b). Indeed, Mr. Avetoom has failed to meet his insurmountable burden to show that dismissal with prejudice would <u>not</u> end this action once and for all.

Second, the sole, disputed terminating sanction factor of prejudice has been deemed "purely optional" in the Ninth Circuit, while courts have found this factor to easily be met with

document fabricators. In this case, the three bogus documents (including the bogus "Contract" submitted by Avetoom that this is now provable as yet another forgery) easily meet the low standard of prejudice by "*threaten[ing] to interfere* with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). Mr. Avetoom's no harm, no foul argument to fabricated documents has been roundly rejected as an attack on the integrity of the judicial system.

Third, there is no merit to the questions raised in the opposition as to whether the documents are bogus. Indeed, Mr. Avetoom's declaration provides <u>no denial</u> that he indeed submitted and fabricated the manufactured documents, meaning there is no evidence for this Court to rely upon to find otherwise. Furthermore, the Orange County District Attorney has now used Mr. Avetoom's own documents submitted in this bankruptcy case to show that Mr. Avetoom is concurrently forging documents in his state court proceedings.

Finally, in a last-ditch effort to avoid the inevitable, Mr. Avetoom claims without evidence that there exists a partial assignment of his 2011 judgment that will still remain after terminating sanctions. As it turns out, his own proof of claim in this bankruptcy case asserts under penalty of perjury that he is the holder the of the entirety of the 2011 judgment.

This Court correctly summarized the state of the law when it informed Mr. Avetoom that "<u>you may have shot yourself in the foot by including the information that the debtor now claims is fabricated</u>." (Adv. Doc. 59, Ex. 9, p. 24, lns. 18-22.) Indeed, this Court should follow every federal court that has addressed document fabricators by granting Defendant's motion for terminating sanctions.

## II.  THE OPPOSITION PRESENTS <u>NO</u> AUTHORITY TO CONTRADICT THAT THE *RES JUDICATA* EFFECT OF A DISMISSAL <u>WITH PREJUDICE</u> UNDER FRCP 41(b) WILL INDEED FOREVER END THIS DECADE PLUS SAGA

The motion for terminating sanctions briefed at length that "dismissal with prejudice will indeed result in a final judgment 'on the merits' that the debt is forever discharged" based on FRCP Rule 41(b). (Adv. Doc. 59, pp. 32-39.) As explained below, the opposition incorrectly contends that a dismissal with prejudice under Rule 41(b) is "limited" to certain statutorily defined

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

grounds, and ignores that dismissal with prejudice will indeed end this case, just as dismissal with prejudice ended multiple Section 523(a)(10) cases that were heard and rejected on the merits.

**a.    The Opposition Mistakenly Contends That Rule "41(b)…is Limited to Failure to Prosecute, Failure to Follow the Rules of Civil Procedure or Court Orders"**

The opposition provides a half-page analysis of Rule 41(b) in claiming that: "Defendant fatally relies on F.R.Civ.P. 41(b) in her Motion, offering a false presumption that FRCP 41(b) somehow applies. As a matter of law, it doesn't. *A simple reading of 41(b) shows it is limited to failure to prosecute, failure to follow the Rules of Civil Procedure or Court Orders. None of these apply in this case.* Defendant's Motion is void of any allegation of a violation of FRCP or any court order. Therefore FRCP 41(b) does not apply." (Adv. Doc. 64, p. 8, lns. 2-7.)

As it turns out, a reading of FRCP, Rule 41(b) does <u>not</u> support the contention that "it is limited to failure to prosecute, failure to follow the Rules of Civil Procedure or Court Orders." Rather, Rule 41(b) provides as follows:

> *Involuntary Dismissal; Effect.* If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and **<u>any dismissal not under this rule</u>**—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—**<u>operates as an adjudication on the merits</u>**.

As *Rutter* explains: "Unless the order of dismissal expressly provides otherwise, an involuntary dismissal on non-jurisdictional grounds is an 'adjudication upon the merits.' [FRCP 41(b)—applies to dismissals for failure to prosecute '*and any dismissal not provided for in this rule*' (emphasis added)…]." Involuntary Dismissal, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 16-H, ¶ 16:49. In addition to the text of Rule 41(b), *Rutter* also cites to *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002), which found that, "under Rule 41(b) we interpret the *Stewart I* dismissal as an adjudication on the merits, unless one of the listed exceptions applies."

Citing *Stewart*, a court in the Central District of California reviewed a case where "claims were dismissed with prejudice through a Rule 12(b)(6) motion and through a dismissal with prejudice as a terminating sanction for failure to comply with discovery orders. Both constitute a

1   judgment on the merits." *Basile v. Los Angeles Film Sch*., LLC, No. 2:18-08604 CJC (ADS), 2019

2   WL 5377126, at *10 (C.D. Cal. Sept. 30, 2019), *aff'd*, 827 F. App'x 649 (9th Cir. 2020).

3       *Basile* cited to a Ninth Circuit case finding that: "The sanction dismissal in *Alonso I* is a

4   judgment on the merits within the meaning of Fed.R.Civ.P. 41(b), and operates as res judicata to

5   bar a second suit." *United States v. $149,345 U.S. Currency*, 747 F.2d 1278, 1280 (9th Cir. 1984).

6       *Basile* also found that an "<u>action dismissed in its entirety with prejudice as a terminating

7   sanction is a final judgment on the merits.</u>" *Basile* also discussed *Sui v. Wells Fargo Bank, N.A*.,

8   2017 WL 5624297, at *7 (C.D. Cal. Oct. 5, 2017) as follows: "*Sui II* also was terminated by a

9   final judgment on the merits because that action was dismissed in its entirety with prejudice as a

10  terminating sanction."[1]

11      **b.   The Opposition Presents <u>No</u> Argument That Dismissal with Prejudice Under**

12      **FRCP 41(b) Does <u>Not</u> Operate as an "Adjudication on the Merits" Such that**

13      **the 2011 Judgment Will be Discharged**

14      While the opposition claims that there will be a "boomerang" effect such that dismissal

15  with prejudice will not resolve this case, the phrases "res judicata", "claim preclusion", or

16  otherwise are nowhere to be found in the opposition. Indeed, there is no suggestion that the motion

17  did not accurately set forth the rule from the Ninth Circuit that "dismissal with prejudice has res

18  judicata effect. <u>There can be little doubt that a dismissal with prejudice bars any further action

19  between the parties on the issues subtended by the case</u>", meaning that "the plaintiff is precluded

20  from bringing another action for the same cause when the dismissal of his action with prejudice

21  stands. Those dismissals have res judicata effect because, it is said, they are on the merits, and

---

[1] Some courts couch terminating sanction dismissals as being based on failure to comply with the rules without belaboring why fabricating documents and evidence is wrong. See *C.B.H. Res., Inc. v. Mars Forging Co.*, 98 F.R.D. 564, 569 (W.D. Pa. 1983). Indeed, various rules indeed exist prohibiting document fabrication. See, e.g., 18 U.S.C. § 157 (fine, imprisonment, or both, where a party fraudulently "(1) files a document in a proceeding under title 11;… or (3) makes a false or fraudulent representation…concerning or in relation to a proceeding under title 11"); 18 U.S.C. § 152 (fine, imprisonment, or both, for: "A person who— (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; [or] (3) knowingly and fraudulently makes a false declaration… in or in relation to any case under title 11").

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1   under res judicata, a final judgment on the merits bars further claims by parties or their privies

2   based on the same cause of action." *In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999).

3       This Court directed the parties to focus on this procedural issue of whether terminating

4   sanctions will truly resolve this case, but the opposition has nothing relevant to the contrary.

5       **c.   The Non-Prevailing Plaintiffs in Prior Cases Denying 523(a)(10) Actions Were**

6            **Subject to the Discharge, Meaning They Cannot Refile Their 523(a)(10) Cases**

7            **nor Pursue Their Discharged Debts, Just as Mr. Avetoom Will Similarly be**

8            **Barred Upon Dismissal With Prejudice Via Terminating Sanctions**

9       The motion sets forth that "a dismissal of this adversary with prejudice bars Mr. Avetoom

10  from ever pursuing any claim of nondischargeability as to the 2011 judgment arising from the

11  2010 IIED case, even if the Section 727 denial of discharge order remains, including if it binds

12  other creditors." (Adv. Doc. 59, p. 33, lns. 1-4.)

13      Sidestepping this issue of the effect of terminating sanctions, the opposition contends that

14  "there has been a Section 727 judgment…that rendered all claims in Defendant's 2012

15  bankruptcy, which includes Plaintiff's 2011 State Court Judgment, forever non-dischargeable."

16      However, the opposition ignores the cases cited in the motion in which purported creditors

17  held up their 727 judgment, but their 523(a)(10) actions were denied on the merits. In one case, a

18  bankruptcy court found that "the debt to Plaintiff did not arise until after the previous bankruptcy

19  case closed. Therefore, § 523(a)(10) is not applicable to these facts." In turn, the court, stated

20  clearly that: **"Therefore, said debt is discharged**." *In re Gilliam*, 467 B.R. 825, 829 (Bankr.

21  W.D. Pa. 2012). (Decl. Talkov, Ex. 1.)

22      In another example, *In re Washington*, No. 08-11885, 2009 WL 1939049, at *6 (Bankr. D.

23  Kan. July 6, 2009) found that "The judgment in the 2005 adversary was entered long after the

24  2004 bankruptcy was filed. Thus, the judgment was not a debt that was or could have been listed

25  or scheduled by the debtor in the 2004 case and can not be excepted from discharge in this case

26  under § 523(a)(10)." Thereafter, the bankruptcy court set forth that: "JUDGMENT is entered in

27  favor of defendant Lulu Washington on the Trustee's complaint, with each party to bear their own

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
5

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    costs." (Decl. Talkov, Ex. 2.) Other 523(a)(10) plaintiffs have lost their cases on the merits. *In re*

2    *Moretti*, 278 B.R. 300 (Bankr. D.R.I. 2002); *In re Tyler*, 139 B.R. 733 (D. Colo. 1992).

3        The answer as to the effect of dismissal of a 523(a)(10) action as to the non-prevailing

4    plaintiffs in *Gilliam, Washington*, and Mr. Avetoom if it grants terminating sanctions is as follows:

5        1)  The plaintiffs cannot refile their adversary case under 523(a)(10) because the

6            dismissal is on the merits under FRCP, Rule 41(b). "'Final judgment on the merits'

7            is synonymous with 'dismissal with prejudice.'" *Hells Canyon Preservation*

8            *Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005).[2]

9        2)  The 727 judgment from the prior bankruptcy is still valid, meaning that any

10           creditor not discharged in the present bankruptcy will be able to proceed in any

11           other court as though no discharge had been (or will be) entered in that case.

12       3)  Any plaintiff whose 523(a)(10) action was dismissed on the merits (i.e., with

13           prejudice) with be subject to the discharge injunction under Section 524(a)(2).

14       Contrary to Mr. Avetoom's belief, there will be no "boomerang" effect of a dismissal with

15   prejudice. Rather, the adversary will be over, and the debt will be discharged just like virtually

16   every creditor in bankruptcy.

17       **d.  The Opposition Abandons the Plaintiff's Prior Reliance on *Moncur***

18       Mr. Avetoom's prior motion to strike cited *In re Moncur*, 328 B.R. 183, 191-192 (B.A.P.

19   9th Cir. 2005) <u>fourteen times</u>, claiming that "*In re Moncur*…answers the main issue in this case:

20   'whether the terms of the discharge order in the second bankruptcy alters the otherwise applicable

21

22

23   [2] In fact, by analogy, several debtors have filed permissive actions that could have been filed at any time under FRBP
     4007 seeking to discharge their student loans based on hardship under 11 U.S.C. § 523(a)(8). The Eleventh Circuit
24   found that "the bankruptcy court did not abuse its discretion by dismissing Wieckiewicz's complaint <u>with prejudice</u>
     after he persistently refused to comply with the [bankruptcy court's] order." *Wieckiewicz v. Educ. Credit Mgmt. Corp.*,
25   443 F. App'x 449, 452 (11th Cir. 2011); see *In re Cooper*, No. 10-19727-B-7F, 2012 WL 8135655, at *1 (Bankr. E.D.
     Cal. Jan. 27, 2012) ("the Court dismissed <u>with prejudice</u> the claim under § 523(a)(8)" on the merits. The effect of
26   these dismissals with prejudice is that they answer the question once and for all that this student loan debt is now
     nondischargeable in any future case.

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1   effect of the prior judgment.'" (Adv. Doc. 57, p. 10, lns. 1-4.) In fact, at the hearing on September

2   9, 2021, Mr. Avetoom cited *Moncur* eight times on the record, stating, for example, that "[t]he

3   Ninth Circuit" in "the *Moncur* case" held: "Once it's nondischargeable, as a matter of law, it's

4   always nondischargeable. There's no way to get around it.… That case affirms that the debtor's

5   prior scheduled debt, just like listed in 523(a)(10), is forever nondischargeable." (Adv. Doc. 214,

6   lns. 6-15.) However, after Defendant explained that the Plaintiff was misreading *Moncur (*Adv.

7   Doc. 62), the Plaintiff filed his opposition to this Motion for terminating sanctions providing zero

8   citations to *Moncur*. (Adv. Doc. 64.)

9         Instead, the opposition now claims as dispositive the 727 case of *In re Filice*, 580 B.R. 259

10  (Bankr. E.D. Cal. 2018), which involved *dicta* as the case did not relate to Section 523(a)(10).

11  Rather, *Filice* involved a self-represented, disbarred lawyer who received "two Chapter 7

12  discharges within two years," then filed a third bankruptcy along with a "adversary proceeding in

13  third case challenging secured status of Internal Revenue Service's (IRS) claim." *Id*. The court

14  disregarded the arguments of the debtor as to his allegations of dischargeability.

15        Mr. Avetoom now cites *In re Hang*, 589 B.R. 234, 249–50 (Bankr. D.R.I. 2018) for its

16  citations and reliance upon *Felice*, ignoring that *Hang* was simply an "adversary proceeding

17  seeking the denial of debtor Marsha Hang's discharge under Bankruptcy Code § 727(a)(3) and

18  (4)…." *In re Hang*, 589 B.R. 234, 240 (Bankr. D.R.I. 2018).

19        The 727 decisions in *Hang* and *Felice* represent language that Mr. Avetoom could have

20  relied upon had he not submitted and falsely authenticated manufactured documents in this

21  adversary. As this court stated during the September 9, 2021 hearing, "we have to deal with reality

22  the way it is. And I can't ignore it now that the bell's been rung and someone else heard it."

23      **III. IF THIS COURT CONSIDERS THE "PURELY OPTIONAL" FACTOR OF**

24          **PREJUDICE, THE STANDARD HAS EASILY BEEN ESTABLISHED AS**

25        **PLAINTIFF'S THREE BOGUS DOCUMENTS IN THIS ADVERSARY ALONE**

26        **"THREATENED TO INTERFERENCE WITH THE RIGHTFUL DECISION IN**

27                      **THE CASE"**

1    While the motion outlined the five "*Anheuser-Busch* factors" for terminating sanctions, the

2    opposition questions only "the risk of prejudice to the party seeking sanctions." *Leon v. IDX Sys.*

3    *Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Even if this Court considers the "purely optional" factor

4    of prejudice, the opposition is simply mistaken that the legal standard is "actual prejudice." (Adv.

5    Doc. 64, p. 6, lns. 9-11.) "Whether or not the documents would have changed the outcome of the

6    trial is **not** the issue in determining prejudice." *Anheuser-Busch, Inc. v. Nat. Beverage*

7    *Distributors*, 69 F.3d 337, 354 (9th Cir. 1995). Rather: "The prejudice inquiry looks to whether

8    the [responding party's] actions…***threatened to interfere*** with the rightful decision of the case."

9    *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). As explained below, the Plaintiff's

10   bogus documents threatened to interfere, meaning Mr. Avetoom's "no harm, no foul" argument to

11   document forgery if the Plaintiff arguably may have prevailed is of no importance.

### a.   Prejudice Factor is "Purely Optional" in the Ninth Circuit

13   While the opposition asks this Court to deny the motion based on the prejudice factor, the

14   Ninth Circuit has explained that: "A final consideration is the existence and degree of prejudice to

15   the wronged party. This factor is <u>purely optional</u>." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 382

16   (9th Cir. 1988). A District Court explained that "the Ninth Circuit has required a showing of

17   prejudice only when courts are acting under Federal Rule of Civil Procedure 37, which applies

18   when a party disobeys a court order regarding discovery. When acting under its inherent authority,

19   however, a district court need not consider prejudice to the party moving for sanctions" since

20   "prejudice is an optional factor when courts are acting under their inherent authority." *Nursing*

21   *Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564–65 (N.D. Cal. 2008); see *U.S. E.E.O.C.*

22   *v. Wedco, Inc.*, No. 3:12-CV-00523-RCJ, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014)

23   (citing *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) and

24   *Halaco* as authority that "that under the court's inherent authority to impose sanctions, 'prejudice

25   is an 'optional' consideration' as compared to sanctions under Rule 27 of the Federal Rules of

26   Civil Procedure where prejudice is essential"). A recent decision confirms that: "As an optional

27   factor, a court may consider the prejudice caused by a party's misconduct." *Englebrick v.*

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

---

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**

8

1  *Worthington Indus., Inc*., 944 F. Supp. 2d 899, 912 (C.D. Cal. 2013), *aff'd*, 620 F. App'x 564 (9th

2  Cir. 2015). Given the egregious misconduct, the Court should elect not to engage this factor.

**b.  Courts Routinely Refuse to Consider Prejudice When Document Fabricators**

**Are Faced with Terminating Sanctions**

5  The opposition sets forth that the bogus documents submitted by the Plaintiff didn't

6  prejudice the Defendant. However, no court has ever accepted this excuse from a document

7  fabricator, instead finding that such conduct necessarily creates prejudice towards the other party.

8  For example, in 2017, a case affirmed by the Ninth Circuit ordered the case "dismissed

9  with prejudice, pursuant to the Court's inherent power, because the plaintiffs have 'engaged

10  deliberately in deceptive practices that undermine the integrity of judicial proceedings' and

11  'willfully deceived the court and engaged in conduct utterly inconsistent with the orderly

12  administration of justice.' *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006)…. Dismissal

13  is warranted in a case—such as this one—where a party has knowingly submitted false and

14  misleading documents." *Indiezone, Inc. v. Rooke*, 2014 WL 4354122, at *4 (N.D. Cal. Sept. 2,

15  2014), *aff'd*, 720 F. App'x 333 (9th Cir. 2017). The ruling set forth that: "Given the Court's finding

16  of bad faith and issuance of sanctions under its inherent authority, a showing of prejudice to the

17  defendants is not needed (although the defendants have certainly labored under the misconduct of

18  the sanctioned parties)." *Id.* (citing *Nursing Home Pension Fund*, *supra*). The Eleventh Circuit

19  similarly affirmed terminating sanctions upon finding that: "The misconduct harmed the judicial

20  system and it also harmed the defendants." *Zocaras v. Castro* 465 F.3d 479, 484 (11th Cir. 2006).

**c.  Mr. Avetoom's Forgeries Created Procedural Prejudice Since It Required**

**Defendants to Litigate a Lawsuit Based on False Evidence, Exert Enormous**

**Additional Effort and Expense to Ferret Out the Plaintiff's Lies, and to Double**

**Check Every Piece of Information and Evidence Moving Forward**

25  Even when courts are unable to precisely point to the substantive prejudice, they

26  nonetheless dismiss a document forger's claims because of the procedural effect that document

27  forgery has on the litigation process.

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    A court in the Central District of California rejected the defendant-wrongdoer's argument

2    that "their conduct has 'not caused any prejudice to plaintiffs' because the fraudulent declarations

3    were not actually relied on by the courts and are therefore inconsequential. . . [and] plaintiffs will

4    not be prejudiced going forward because defendants 'have no intention of using these declarations

5    and will not be relying on them in any way as this case approaches to trial.'" *Am. Rena Int'l Corp.*

6    *v. Sis-Joyce Int'l Co.*, 2015 WL 12732433, at *28(C.D. Cal. Dec. 14, 2015). The court found "that

7    plaintiffs have been severely prejudiced by defendants' misconduct and that they would be further

8    prejudiced by the significant costs that would be required to litigate against parties who exhibit

9    little, if any, regard for the integrity of the judicial process." *Id.*

10    Responding to the defendant, the court noted: "**[the]'no harm, no foul' argument is**

11    **disingenuous and not well-taken. Clearly, in filing the fraudulent evidence with this court**

12    **and the Ninth Circuit, defendants intended the courts to rely on such evidence in**

13    **adjudicating the issues before them.** The defendants' argument essentially posits that their

14    fabrication and filing of material evidence cannot be found to have interfered with the rightful

15    decision of the case or otherwise prejudiced plaintiffs, because their filings were in violation of

16    procedural and evidentiary rules that prevented the courts from relying on the evidence." *Id.* at

17    *28–29. "[T]o continue this action would not deter repetition of such conduct or comparable

18    conduct. Such a course would simply place [the offending party] back in the same position he was

19    in, without the false declaration." *Id.* at *30.

20    Also, particularly illustrative of the procedural prejudice inherent in evidence forgery is

21    *Garcia* arising from the Tenth Circuit, which held that:

22    The actual prejudice to the defendants is overwhelming. They have been required to defend
      a lawsuit based on <u>false evidence</u>. Nothing can be relied on as authentic—from the

23    plaintiff's expert reports; to evidence offered in support of her interrogatory answers; to the
      evidence offered to the court. The defendants have been put to enormous additional effort

24    and expense to ferret out the plaintiff's lies and to double check every piece of information
      and evidence. I have absolutely no confidence that the plaintiff would not attempt to offer

25    additional false evidence at a trial. The risk that this court might issue judgment against the
      defendants based on the plaintiff's fabrications and lies is simply too great to allow the case

26    to proceed…. Permitting this lawsuit to proceed would be an open invitation to abuse the
      judicial process. Litigants would infer they have everything to gain, and nothing to lose, if

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
10

manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Garcia v. Berkshire Life Ins. Co. of Am.*, 2007 WL 6757307, at \*9 (D. Colo. Nov. 29, 2007), *aff'd in part and remanded*, 569 F.3d 1174 (10th Cir. 2009) (emphasis added).

On appeal, the Tenth Circuit explained that: "The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that ... documents submitted by the opposing party are inaccurate." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009).

### d.   Even if this Court Indulges the Plaintiff, Prejudice Did Result Since Mr. Avetoom Attempted to Influence the Outcome of the Case

Even if this court indulged Mr. Avetoom in the prejudice factor, the requirement is merely that the bogus documents "***threatened to interfere*** *with the rightful decision of the case*." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). For example, one court found that: "There is no question here that Lee's conduct threatened to distort the rightful resolution of the case by forcing Defendants to rebut manufactured evidence. The false evidence very well may have obscured the truth and affected the resulting judgment, had it not been for Defendants' retention of Brillhart, who discovered the fabricated text messages. Lee's fabricated evidence forced Defendants, at least initially, to proceed in the case on the premise the evidence was authentic when it in fact was false, a result even more egregious than Leon contemplated." *Lee v. Trees, Inc.*, 2017 WL 5147146, at \*6 (D. Or. Nov. 6, 2017)

Each of the three bogus documents submitted and falsely authenticated by Mr. Avetoom created prejudice by threatening to interfere with the rightful decision of the case.

### i.   The Bogus "Contract" With the Forged Signature of Rosa Fridman Now Exposed as the <u>Third</u> Manufactured Document Submitted in the

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**Reply to the Summary Judgment Threatened to Interfere with the**

**Waiver Defense**

Most prejudicial among the three bogus documents in this adversary is the manufactured "Contract" bearing a forged signature of the Debtor. Specifically, the Defendant's August 19, 2021, opposition to summary judgment centered on the affirmative defense of waiver, arguing that "Avetoom's failed efforts to re-characterize the 2020 judgment as a consensual lien in two different courts demonstrates the 2020 judgment constitutes a waiver as found on the face of the document." (Adv. Doc. 21, p. 10, lns. 3-5.) The attached declaration of the Defendant set forth that: "At the time of the entry into the 2020 Judgment, I was under the impression that Plaintiff Karl Avetoom's right to any recovery not found in the 2020 Judgment was waived because of the explicit language of a waiver in the 2020 Judgment, the discussion of this waiver on the record, and because I agreed to allow to hold The Fridman Family Trust Established on April 14, 2000 liable for the judgment debt." (Decl. Talkov, Ex. 3 (Adv. Doc. 21), p. 17, ¶¶ 3-4.) Indeed, this Court confirmed that, theoretically, a settlement agreement involving a waiver of rights could constitute an affirmative defense to a 523(a)(10) action. (Decl. Talkov, Ex. 4 (transcript of hearing on Nov. 9, 2021), p. 13, 6-7.)

Just two court days later on August 23, 2021, Mr. Avetoom filed for the first time as Claim 7-1 his bogus "Contract" supposedly signed by the Debtor." (Decl. Talkov, Ex. 5.) Then, on August 27, 2021, Mr. Avetoom attached this same bogus "Contract" to his reply to summary judgment, which addressed waiver at length, declaring under penalty of perjury that: "Attached to my declaration as Exhibit '2' is a true and correct copy of a Contract executed by Defendant and myself on October 3, 2019 that affirms Defendant's knowledge that the 2011 Judgment remains enforceable by consenting to a lien against her property to satisfy the unpaid balance on the 2011 State Court judgment…." (Decl. Talkov, Ex. 6 (Adv. Doc. 25), p. 20, ¶ 4).)

Mr. Avetoom's reply to summary judgment cited this bogus "Contract" to argue that, "on October 3, 2019 after Defendant now desperately and fraudulently claims she didn't believe the 2011 judgment was enforceable, Defendant signed a contract with Plaintiff affirming the

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    continued enforceability of the 2011 judgment, exchanging a consensual lien[3] for Plaintiff's

2    promise not to initiate foreclosure proceedings against Defendant." (Decl. Talkov, Ex. 6 (Adv.

3    Doc. 25), p. 8, lns. 17-20; see *id.*, p. 6, lns. 24-26 (also citing the bogus "Contract" as "affirming

4    her position that the 2011 judgment remains independently enforceable'")).

5        While the 90-year-old Defendant knew this document to be bogus and that her signature

6    was an obvious forgery, there was no way to prove it at the time of summary judgment nor was

7    doing so a wise use of legal resources. However, since the "Contract" included the signature of

8    supposed "Witness" "Herbert Conrad" dated "10-3-2021" (Decl. Talkov, Ex. 6 (Adv. Doc. 25), p.

9    45), Defendant's counsel tried to disprove this document by calling Mr. Conrad, who put on a

10   good show that he was indeed present at court on October 3, 2019, where he claimed to observe

11   the Debtor sign the "Contract." (Decl. Talkov, Ex. 7 (BK Doc. 93), p. 148.)

12       However, on October 13, 2021, Mr. Avetoom filed a declaration in his state court motion

13   to vacate a judgment, declaring under penalty of perjury that he was first put in contact with Mr.

14   Conrad after July 2020 when he supposed exculpatory documents signed by Mr. Conrad proving

15   Mr. Avetoom's innocence. (Decl. Talkov, Ex. 8, Declaration of Karl Avetoom, ¶ 7.) Mr. Avetoom

16   declared that in 2020-21, he "was having difficulty contacting Mr. Conrad. Exhausting my other

17   avenues, I asked Mr. Brooks if he could assist me in contacting Mr. Conrad. In or around March

18   or April 2021. Mr. Brooks informed me that he was able contact Herbert Conrad." (Decl. Talkov,

19   Ex. 8, Declaration of Karl Avetoom, ¶ 9.) As the Orange County District Attorney describes this:

20   "Conrad does not mention anywhere in his declaration that he is also a witness for defendant in an

21   unrelated case [this bankruptcy], knew defendant prior to April, 2021, or that he is former partners

22   with [the other alleged exculpatory witness] Brooks. These coincidences are either of the most

23   extraordinary variety, or they are not coincidences at all," implying that the supposedly

24

25

---

26   [3] Mr. Avetoom is also citing this same bogus "Contract" in his pending motion in the bankruptcy case arguing that the
     Debtor's homestead should be denied because "Rosa Fridman entered into a Contract that created a consensual lien in
27   October 2019…." (Decl. Talkov, Ex. 7 (BK Doc. 93), p. 10, lns. 26-28.)

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
13

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  exculpatory documents signed by Mr. Avetoom's long-time associates are mere forgeries. (Decl.

2  Talkov, Ex. 8.)

3      Mr. Avetoom threatened to interfere with the rightful decision of this Court on the issue of

4  waiver by submitting the bogus "Contract" bearing the forged signature of the Debtor to bolster

5  his contention that no waiver of the debt had occurred. Regardless of whether this changed the

6  outcome, the legal definition of prejudice has been met.

7      **ii.  The Bogus Webpage Purporting to Show the Defendant's Family**

8          **Prejudicially Referring to the Judicial Officer of this Court as a**

9          **"N******" Had Only One Purpose: To Prejudice this Court Against**

10         **the Defendant**

11     When a wrongdoer fabricates evidence and submits it to the court, they clearly intend for it

12  to have an effect on the proceedings. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir.

13  1989) ("[w]hen Aoude concocted the agreement, and thereafter when he and his counsel annexed

14  it to the complaint, they plainly thought it material."); *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,

15  2015 WL 12732433, at *28 (C.D. Cal. Dec. 14, 2015) ("in filing the fraudulent evidence with this

16  court and the Ninth Circuit, defendants intended the courts to rely on such evidence in

17  adjudicating the issues before them"). By analogy to "fraud on the court," prejudice naturally

18  arises where a party "set[s] in motion some unconscionable scheme calculated to interfere with the

19  judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or

20  unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil

21  Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

22     The court in *Garcia* noted that the "fabrications were… calculating, carefully constructed,

23  and self-serving. … It took considerable time, effort, and skill…to falsify the document in such a

24  way that it still made sense…. The plaintiff not only fabricated its contents, but she did it in a way

25  to make it appear to be on Mr. Schoenborn's letterhead. The Lupia e-mail was fabricated in a

26  sinister effort to besmirch opposing counsel in the eyes of the court. <u>I find that the fabrications

27  were prepared by the plaintiff willfully, knowingly, intentionally, after careful contemplation, for</u>

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1   self-serving purposes, and with a full understanding of the impropriety involved." Garcia v.

2   Berkshire Life Ins. Co. of Am., 2007 WL 6757307, at *8 (D. Colo. Nov. 29, 2007), aff'd in part

3   and remanded, 569 F.3d 1174 (10th Cir. 2009).

4   Here, Mr. Avetoom made a calculated, careful, and self-serving effort with great skill to

5   falsify the CondoDefense.com website to make it appear to effectively be on the Fridman family

6   letterhead, i.e., their website. (Adv. Doc. 26, p. 17.) He did so in a sinister effort to besmirch the

7   opposing party in the eyes of the Court, stating in no uncertain terms that: "**It is now time for this**

8   **Court to see what these racist Debtors said about Judge Robinson and this Court who they**

9   **seek equity from**," asking this Court to disallow discovery which he claimed was "in an attempt

10  to unwind…the 2011 Judgment entered by Judge Karen Robinson based on the Debtor's racist and

11  outrageous conduct." (Adv. Doc. 26, p. 5, lns. 21-26.)

12  In fact, rather than prepare for this hearing on summary judgment, counsel for the

13  Defendant was busy attempting to disprove the outrageous allegation that the client had made

14  reprehensible comments about the Judicial Officer of this Court. (Decl. Talkov, ¶ 9.) Even further,

15  this effort to disprove these documents was at the expense of the client's litigation budget.

16  Whether or not the false evidence would have objectively affected the elements of his

17  claim is not determinative of prejudice. Rather, Mr. Avetoom's falsification of racist comments

18  from the Debtor's family was clearly intended to create bias and subjectively influence the Court's

19  ability to impartially adjudicate a claim, along with distracting from the Defendant's properly

20  raised defense. Accordingly, Mr. Avetoom's ploy constitutes prejudice as it "threatened" to impact

21  the ultimate disposition of the case, even if it did not end up having the desired effect.

22  **iii.   The Bogus Website Showing a Comment from "Victor Balakin" Was**

23  **Intended To Cover-Up the Other Fraudulent Documents, Dissuade**

24  **Defendant's Counsel from Continuing to Expose the Fraud, and Avoid**

25  **a Deposition as to the Fraud**

26  The opposition contends that Mr. Avetoom's submission of fake declarations on behalf of

27  the nonexistent "Victor Balakin," and manufacturing of a bogus website bearing a fictional

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
15

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    comment by "Victor Balakin" are "red-herrings" because they have "no impact on the

2    fundamental issue of whether the debt remains nondischargeable." In other words, he thinks he

3    can do this in any forum and get away with it. He is wrong.

4         Mr. Avetoom's filing of false declarations on behalf of the non-existent "Victor Balakin"

5    was the basis of the Defendant's notice of deposition, for which Mr. Avetoom sought a protective

6    order. It's no wonder that the bogus webpage was attached to Mr. Avetoom's reply on his

7    protective order. (Adv. Doc. 26, p. 18.) In fact, after Defendant set another deposition relating only

8    to "Victor Balakin," Mr. Avetoom filed an "emergency" motion for a protective order. (Adv. Doc.

9    53.) Ultimately, Mr. Avetoom was forced to sit for a deposition where he continued his

10   nonsensical coverup of Victor Balakin.

11        Mr. Avetoom's use of a fictional creditor reflected on his credibility that he did not intend

12   to waive all prior claims by way of the 2020 judgment. However, the bogus webpage threatened to

13   interfere with the rightful decision on Mr. Avetoom's intention as to the waiver language.

14        This Court need not indulge Mr. Avetoom for his excuses for document fabrication.

15   **IV. THE UNREBUTTED EVIDENCE MEETS THE BURDEN OF PROOF TO SHOW**

16   **THAT MR. AVETOOM SUBMITTED AND FALSELY AUTHENTICATED THE**

17   **FABRICATED DOCUMENTS**

18        The Ninth Circuit has made clear that: "Courts have inherent equitable power to impose

19   terminating sanctions (dismissal or default) for failure to prosecute, contempt of court, or **abusive**

20   **litigation practices**." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F2d 915, 916 (9th Cir. 1987).

21        The opposition claims that: "The motion does not prove Plaintiff engaged in any

22   wrongdoing" along with claiming that "Plaintiff vehemently denies all of Talkov's spurious and

23   diversionary allegations in Defendant's Motion." (Adv. Doc. 64, p. 6, ln. 9, and p. 5, ln. 9.)

24   However, absent from Mr. Avetoom's declaration under penalty of perjury is any denial of the

25   misconduct Mr. Avetoom is accused of. Indeed, Mr. Avetoom, a law school graduate, knows the

26   difference between argument and evidence. A close reading of the briefing shows that this is no

27   mystery surrounding the patently forged documents falsely authenticated by Mr. Avetoom.

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

### a.  Crucially, Mr. Avetoom's Declaration Did <u>Not</u> Deny the Allegations of Document Fabrication, But Instead Authenticated 17 Exhibits Irrelevant to this Factual Determination

The fundamental factual issue with Mr. Avetoom's opposition is that he provides no admissible and reliable evidence to rebut what he is accused of. Rather, the declaration submitted with the Opposition merely authenticates 17 exhibits with no other information.

In other words, while the opposition claims that "Defendant failed to establish the webpages were not authentic or altered," this Court has no evidence to explain:

1) Why has Mr. Avetoom submitted two different versions of the same CondoDefense.com home page, one which makes racist comments towards this Court produced only during this action and another of which boasted of fraudulent transfers produced during the prior fraudulent transfer action?

2) Why did Mr. Avetoom submit two version of the same home page in this adversary, one of which had a grey box covering the privacy shield while the other appeared to have hand "scratched" coloring to remove the privacy shield?

3) If the document was provided to and scanned in by Mr. Avetoom in paper format, as he claims, why does it have a digitally added grey box over the privacy shield?

4) When the grey box is removed from the PDF submitted by Mr. Avetoom, why does a privacy shield added by Apple in 2020 appear on a website that went offline in 2014?

5) Why are the bogus comments on the questions and answers page in reverse chronological order, when the archive.org versions show that comments were in chronological order?

6) Why did the recent comments widget not update for the bogus comments that supposedly appeared on the questions and answers page?

7) On one of the bogus webpages, why is there a desktop shown behind the bogus page with a "Pretrial Order" on the desktop?

8) Why does the URL show in the bottom left with an added number as would be found on archive.org?

Mr. Avetoom's illogical response these questions is to argue that: "The evidence from the November 9, 2021, deposition of Plaintiff establishes it is Talkov who is able to alter a filing browser and ECF stamp." (Adv. Doc. 64, p. 16, lns. 24-26.) Is Mr. Avetoom suggesting that Defendant's counsel hacked PACER to change add the bogus webpages to his declaration? This is complete nonsense.

Strangely, the opposition quotes "*Asia Pacific Agr. and Forestry Co. v. Sester Farms* (D. Or., Sept. 3, 2013, No. 3:12-CV-00936-PK) 2013 WL 4742934, at *11 'where the question of fabrication is <u>disputed</u>, it may be appropriate to resolve the dispute on the basis of factual findings following an evidentiary hearing.'" Unfortunately for Mr. Avetoom, an evidentiary hearing is <u>not</u> required as Mr. Avetoom has <u>not</u> provided any evidence disputing the allegations. All that remains is the remedy of terminating sanctions.

**b. The Opposition's Declarations Attesting to Irrelevant Matters Do Not Change the Fact That Mr. Avetoom's Declaration Does Not Deny That He Submitted Forged Documents**

Rather than have Mr. Avetoom deny the allegations, the opposition perplexingly seeks to raise questions about the evidence through irrelevant declarations.

Notably, Mr. Avetoom submits the declaration of his expert in everything tech guy, Bryan Swezea, who reaches the nonsense conclusion that "It is my professional opinion that the text of the shown condodefense.com webpage in the Motion, built on a WordPress template, has not been altered." (Adv. Doc. 64, p. 158.) However, he reaches this tongue-in-cheek conclusion without any denial by Mr. Avetoom under penalty of perjury and without any basis to do so.

Notably, Paragraph 5 of the declaration states that: "<u>It appears that the person using this program [Adobe Acrobat] is able to alter the Safari toolbar but not the text of the actual webpage contained within the Safari browser window</u>." This is followed by Paragraph 6 claiming that "Relative to the images and files in the Defendant's Motion containing the condodefense.com

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  website, a person could not use Photoshop to alter the actual text of this webpage." (Adv. Doc. 64,

2  p. 158.)

3      What Mr. Swezea is really saying is that the forgery was <u>not</u> committed using Adobe

4  Acrobat nor Photoshop, the root for the genericized word "Photoshopping." Reading between the

5  lines, Mr. Swezea may be suggesting that he was a percipient witness to the forgery, and that

6  Defendant's counsel hasn't detected the exact program that was used. This is hardly required.

7      Submitted herewith are articles showing how the Safari browser- as shown in the bogus

8  website captures -can be used to create a seemingly legitimate website that says anything through

9  the "Inspect Element" feature. (Decl. Talkov, Ex. 14.) In fact, shown below is example of using

10  the equivalent "Inspect" feature in Google Chrome where counsel for the Defendant was able to

11  create a bogus version of CondoDefense.com using the version shown on archive.org.



23  Indeed, law journals have included articles teaching attorneys to be on the lookout for fraudulent

24  documents. (Decl. Talkov, Ex. 10.)

25      Mr. Swezea's declaration was wholly excluded by this Court in a prior motion by Karl

26  Avetoom based on objections that the conclusion reached by Mr. Swezea was not that of an expert

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
19

1  witness, but rather was misreading the allegations of the Defendant. (Decl. Talkov, Exs. 11 & 12.)

2  The current declaration is simply more of the same.

3      The truth is that Mr. Swezea (and Mr. Murray) have nothing to offer. The star witness is

4  Karl Avetoom, who has gone radio silent. It's not hard to figure out why.

5      **c.  Mr. Avetoom *Modus Operandi* and Lack of Mistake is Revealed by his**

6      **Concurrent Fabrication of Documents, Supplying of False Testimony, and**

7      **Concocting Fake Witnesses in His Own Post-Judgment State Court Motion as**

8      **Confirmed by the Orange County District Attorney**

9      Under Feder Rules of Evidence, Rule 404(b)(2): "Evidence of any other crime, wrong, or

10  act…may be admissible" for "proving motive, opportunity, intent, preparation, plan, knowledge,

11  identity, absence of mistake, or lack of accident."

12      Here, the allegations that Mr. Avetoom is intentionally deceiving this Court in a brazen

13  disregard for the system of justice bears a striking resemblance to the evidence that Mr. Avetoom

14  has been concurrently filing patently fabricated documents supported by false declarations in his

15  state court post-conviction motion to set aside his conviction. Notably, Mr. Avetoom claims in his

16  state court motion that in July 2020, he received documents signed by retired LAPD Officers "B.

17  Brooks" and "H. Conrad." (Decl. Talkov, Ex. 8, Declaration of Karl Avetoom, ¶ 7.)

18      However, the Orange County District Attorney has found incredibly probative documents

19  submitted in this bankruptcy and the various cases against Rosa Fridman to show that Mr.

20  Avetoom is attempting to commit a fraud on the state court because "B. Brooks" and "H. Conrad"

21  are merely long-time associates of his since at least 2019 and happen to know each other. A

22  portion of the District Attorney's opposition is shown below suggesting that Mr. Avetoom's

23  documents are fabricated through false witnesses. (Decl. Talkov, Ex. 13.)

24

25

26

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

> **18**  In Conrad's declaration, he does not mention that he is friends with and formerly partners
>
> **19**  with Brooks. (*Def. Motion* - Exhibit 4.) He states, "I was contact [sic] by a former Los Angeles
>
> **20**  Police Department Officer named Barry Brooks regarding a verification of a vehicle I completed
>
> **21**  in August 1996...[.]" (*Id.* at paragraph 4.) Conrad does not mention anywhere in his declaration that
>
> **22**  he is *also* a witness for defendant in an unrelated case, knew defendant prior to April, 2021, or that
>
> **23**  he is former partners with Brooks. These coincidences are either of the most extraordinary variety,
>
> **24**  or they are not coincidences at all.

Mr. Avetoom's willingness to fabricate entire stories, witnesses, documents, and otherwise with no shame for his wrongdoing is an extraordinary fact that cannot be ignored.

### d.  Prior Rulings Are Infected With this New Proof that Mr. Avetoom is Indeed the Forger that the Fridmans Have Long Alleged that He Is

The essence of the underlying 727 case rested on the credibility of a questionable document submitted by Mr. Avetoom. In his opposition, he strangely attaches a transcript (Adv. Doc. 64, p. 138) showing the state court refused to accept the legitimate contention of the Fridmans that Mr. Avetoom had gone to extraordinary lengths to fabricate the document as follows:

Case 8:21-ap-01023-ES    Doc 64    Filed 11/30/21    Entered 11/30/21 16:40:52    Desc
Main Document    Page 138 of 163

113

1  CONTEMNER, MOISEY FRIDMAN, TESTIFIED THAT HE DID NOT

2  PREPARE THIS NOR DID HIS WIFE PREPARE IT.  AND THAT IT

3  WAS -- IT'S A FALSE DOCUMENT.

4          THAT TESTIMONY IS NOT CREDIBLE TO THE COURT AT

5  ALL.  FOR THE COURT TO BELIEVE THAT, THE COURT WOULD HAVE

6  TO BELIEVE THAT SOMEHOW SOMEONE ELSE GOT A HOLD OF THIS

7  1993 FAX DOCUMENT FROM MR. FRIDMAN TO ANOTHER PERSON, TAKEN

8  THAT BACK TO THEIR OWN HOME, CREATED THIS DOCUMENT, AND

9  THEN POSTED THIS DOCUMENT.  THAT IS A FAR STRETCH AND IS

10  ABSOLUTELY NOT BELIEVABLE TO THIS COURT.

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1      As it turns out, Mr. Avetoom is willing to locate corrupt former police officers to

2   corroborate his fake documents to pull a fraud on the state court while also manufacturing various

3   documents in this adversary to fool this Court. Given these extraordinary facts of Mr. Avetoom's

4   willingness to forge documents, the Court cannot take any chances that Mr. Avetoom will concoct

5   more evidence (including reliance on the bogus 2019 "Contract" purporting to give Mr. Avetoom

6   a voluntary lien) to take away the Debtor's modest homestead, which has long been his goal.

7      Despite Mr. Avetoom's attempts at distraction, this is an open and shut case of submission

8   and false authentication of manufactured documents.

9    **V.  MR. AVETOOM'S CLAIM THAT THERE STILL EXISTS A PARTIAL**

10    **ASSIGNMENT OF THE JUDGMENT TO THE HOA IS CONTRADICTED BY HIS**

11    **OWN PROOF OF CLAIM HEREIN ASSERTING THE FULL AMOUNT IS OWED**

12    **TO HIM**

13      In a last-ditch effort to keep this case alive, the Opposition contends that: "<u>Defendant</u>

14  <u>admits</u> that Beach Crest Villas is a partial assignee of Plaintiff's 2011 Judgment." No citation is

15   provided for this alleged admission, nor is any evidence submitted by Mr. Avetoom showing that

16   Beach Crest Villas is <u>still</u> a partial assignee of Plaintiff's 2011 judgment.

17      Rather, this Court can look no further than Mr. Avetoom's own Claim 1 submitted herein

18   under penalty of perjury that he is the holder of the entirety of the 2011 judgment. Notably, Mr.

19   Avetoom's Claim 1-2 in this 2021 bankruptcy set forth that he is owed "$1,199,740.83" – the

20   identical amount found on the renewal of the entire judgment and declaration of Mr. Avetoom

21   attached thereto. (Decl. Talkov, Ex. 15 (Claim 1-2).) No claim has been filed herein by Beach

22   Crest Villas. By contrast, back in the 2012 bankruptcy, Mr. Avetoom claimed only part of the

23   judgment, with Beach Crest Villas filing their own claim for the remainder. (Decl. Talkov, Exs.

24   16-17.) It's no wonder that the amended adversary complaint herein makes no mention of Beach

25

26

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  Crest Villas, instead alleging that "Plaintiff, Karl Avetoom, is creditor of the Debtor/Defendant's

2  bankruptcy estate in the initial amount of approximately $1,199,740." (Adv. Doc. 6, p. 2, ¶ 3.)[4]

3      In fact, "California law precludes the assignment of a portion of a judgment." *In re Zavala*,

4  505 B.R. 268, 275 (C.D. Cal. 2014) (citing *Buckeye Refining Co. v. Kelly*, 163 Cal. 8 (Cal. 1912)).

5  "It is the rule that an assignment of a portion of a judgment has no effect against the judgment

6  debtor unless the assignment was made with the consent of the debtor or, if made, without

7  consent, the debtor subsequently ratifies it." *Ellis v. Superior Ct. in & for Riverside Cty.*, 138 Cal.

8  App. 552, 556 (Cal. Ct. App. 1934). "A creditor may not divide an entire demand into separate

9  parts and maintain a separate action on each part." *Stein v. Cobb*, 38 Cal. App. 2d 8, 10 (Cal App.

10  1940); see 7 Cal. Jur. 3d Assignments § 46 ("Generally, a right of action cannot be split and the

11  obligor subjected to a multiplicity of suits; partial assignments without the obligor's consent are

12  therefore void"). "Stated as a basic principle, an assignee merely steps into the shoes of his

13  assignor, meaning that 'By an assignment the assignee acquires a right against the obligor only to

14  the extent that the obligor is under a duty to the assignor….'" *In re Boyajian*, 367 B.R. 138, 145

15  (B.A.P. 9th Cir. 2007), *aff'd*, 564 F.3d 1088 (9th Cir. 2009). Accordingly, any agreement that Mr.

16  Avetoom still has, if any, is between himself and Beach Crest Villas.

17      Both factually and legally, this Court need not delve into Mr. Avetoom's argument set

18  forth for the first time herein that there still exists is a partial assignment of the 2011 judgment.

19  Rather, terminating sanctions will indeed end this case once and for all.

20

21  _____

22

23  [4] In fact, the reason that Beach Crest Villas was (formerly) a partial assignee is hardly a secret. As the California Court
Appeal noted in 2018: "Beach Crest claimed the partial assignment of Avetoom's judgment against the Fridmans

24  would offset the Fridmans' judgment for attorney fees against Beach Crest." *Fridman v. Beach Crest Villas
Homeowners Ass'n*, No. G052868, 2018 WL 1373398, at *3 (Cal. Ct. App. Mar. 19, 2018). The Court of Appeal

25  entirely rejected the theories of Beach Crest Villas, finding that an offset between the judgments was not appropriate.
Thereafter, the Fridman judgment against Beach Crest Villas was assigned to Karl Avetoom, who bought the

26  judgment from the Fridman's former attorneys. (Decl. Talkov, Ex. 18.) Mr. Avetoom then renewed the judgment, later
satisfying the judgment in full, i.e., after Beach Crest Villas paid him. (Decl. Talkov, Ex. 19.) After the Court of

27  Appeal opinion ruled against Beach Crest Villas, Mr. Avetoom went from being the President of Beach Crest Villas to
being its former President. (Decl. Talkov, Exs. 20-21.)

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**

## VI. THE <u>INTEGRITY OF THE JUSTICE SYSTEM DEMANDS THAT THIS COURT DISMISS THIS ACTION WITH PREJUDICE</u> AS THE PLAINTIFF IS A REPEAT DOCUMENT FABRICATOR WHO STILL HASN'T LEARNED HIS LESSON

"Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (quoting *Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246 (1944)).

During the September 9, 2021, hearing, Mr. Avetoom attempted to justify his wrongful deed by claiming that the fabricated evidence "doesn't make any difference one way or the other." and this Court responded with "[w]ell, then it shouldn't have been in the reply at all, right?" (Adv. Doc. 59, p. 228.) Given the need to preserve the integrity of the judicial process, this Court concluded: "But it was, so we have to deal with reality the way it is. And I can't ignore it now that the bell's been rung and someone else heard it." (*Id.*)

"It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

As explained above, no court has ever concluded that any area of law is exempt such that terminating sanctions do not have the intended effect. Rather, the simplicity of FRCP Rule 41(b) is the fact that "'final judgment on the merits' is synonymous with 'dismissal with prejudice.'" *Hells Canyon Preservation Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005).

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    Accordingly, the motion for terminating sanctions should be granted to bring an end to this case

2    once and for all.

3    Date: December 7, 2021                          TALKOV LAW CORP

4                                                    *Scott Talkov*
                                                    _____
5                                                    Scott Talkov
                                                    Attorney for Defendant Rosa Fridman
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

# VII.    DECLARATION OF SCOTT TALKOV

I, Scott Talkov, declare:

1.    I am an attorney duly licensed to practice in all courts of the State of California and am the president and lead attorney at Talkov Law, Corp., attorneys of record for Defendant in this matter. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

2.    Attached as Exhibit 1 is a true and correct copy of the judgment in *In re Gilliam*, 467 B.R. 825, 829 (Bankr. W.D. Pa. 2012) as downloaded from PACER setting forth in denying a 523(a)(10) action that "Therefore, said debt is discharged."

3.    Attached as Exhibit 2 is a true and correct copy of the judgment in *In re Washington*, No. 08-11885, 2009 WL 1939049, at *6 (Bankr. D. Kan. July 6, 2009) as downloaded from PACER denying a 523(a)(10) action.

4.    Attached as Exhibit 3 is a true and correct copy of the relevant portions of the Defendant's opposition to summary judgment filed as Adv. Doc. 21 in this matter.

5.    Attached as Exhibit 4 is a true and correct copy of the relevant portions of the transcript from the November 9, 2021, hearing omitted in Mr. Avetoom's opposition where this Court set forth that waiver in a settlement agreement, for example, could constitute an affirmative defense in a 523(a)(10) action.

6.    Attached as Exhibit 5 is a true and correct copy of the Karl Avetoom's Claim 7-1 filed in this bankruptcy case attaching a purported "Contract" dated October 3, 2019, that the Defendant disputes as legitimate, i.e., that her signature is forged.

7.    Attached as Exhibit 6 is a true and correct copy of the relevant portions of Plaintiff's reply in his summary judgment filed in this adversary as Adversary Doc. 25 attaching a purported "Contract" dated October 3, 2019, that the Defendant disputes as legitimate, i.e., that her signature is forged.

8.    Attached as Exhibit 7 is a true and correct copy of the relevant portions of Plaintiff's objection to Rosa Fridman's homestead filed in this bankruptcy as BK Doc. 93 attaching a purported "Contract" dated October 3, 2019, that the Defendant disputes as legitimate,

i.e., that her signature is forged, as well as a declaration from Herbert Conrad who purports to

have witnessed the signature in 2019, despite Mr. Avetoom insinuating in his state court motion to

vacate a judgment that he met Mr. Conrad for the first time in 2020 or 2021.

9.    Attached as Exhibit 8 is a true and correct copy of the relevant portions of Karl

Avetoom's motion to vacate a judgment, which includes his declaration under penalty of perjury

insinuating that he met Herbert Conrad for the first time in 2020 or 2021. My office first obtained

this motion on November 23, 2021, for which we promptly filed this motion as a request for

judicial notice as Adv. Doc. 66 to inform this Court of the concurrent allegations of fabrication of

documents in that case.

10.    Attached as Exhibit 9 are true and correct copies of two articles describing how to

use the "Inspect" feature in Safari and "Inspect Element" feature in Chrome. The first article

indicates that "you could use it to change anything you want on the page."

11.    Attached as Exhibit 10 is a true and correct copy of an article entitled "Fake or fact:

Digital docs manipulation and how to spot it" from a journal intended to be read by attorneys.

12.    Attached as Exhibit 11 is a true and correct copy of the tentative ruling of this

Court in the bankruptcy case on September 21, 2021, sustaining the Debtor's objections to the

declarations of Bryan Swezea.

13.    Attached as Exhibit 12 is a true and correct copy of the evidentiary objections to

the declaration of Bryan Swezea submitted in opposition to Karl Avetoom's motion filed herein as

Bankruptcy Doc. 100.

14.    Attached as Exhibit 13 is a true and correct copy of the relevant portions of the

People's opposition to Karl Avetoom's motion to vacate a judgment attaching and relying on

numerous documents filed in this bankruptcy and in state court actions relating to the debt against

Rosa Fridman as evidence that Karl Avetoom is filing apparently false declarations supporting

seemingly fabricated documents in that action.

15.    Attached as Exhibit 14 is a true and correct copy of edits I was able to make to the

archive.org version of CondoDefense.com using the Inspect Element feature in Chrome to show

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1   what appears to be the tool that was used to fabricate the bogus website submitted by Mr.

2   Avetoom.

3   16.   Attached as Exhibit 15 is a true and correct copy of Karl Avetoom's Claim 1-2 in

4   this bankruptcy setting forth that he owed the exact amount that appears as the total for the

5   renewal of judgment filed weeks before this bankruptcy was filed with no indication that Beach

6   Crest Villas HOA is owed any sum of money.

7   17.   Attached as Exhibit 16 is a true and correct copy of Beach Crest Villas HOA's

8   Claim 4-2 in Rosa Fridman's 2012 bankruptcy showing what that creditor and Mr. Avetoom

9   contended back then was a partial assignment.

10   18.   Attached as Exhibit 17 is a true and correct copy of Mr. Avetoom's Claim 2-3 in

11   Rosa Fridman's 2012 bankruptcy showing what that Beach Crest Villas HOA and Mr. Avetoom

12   contended back then was a partial assignment.

13   19.   Attached as Exhibit 18 is a true and correct copy of Mr. Avetoom's motion to

14   vacate a trial in the 2015 action he filed against Robert Risbrough's law firm and Rosa Fridman

15   attaching to that motion a settlement reached with the Risbrough law firm to purchase the

16   judgment against Beach Crest Villas HOA.

17   20.   Attached as Exhibit 19 is a true and correct copy of the assignment of judgment,

18   renewal of judgment and acknowledgement of satisfaction of judgment in the 2007 action

19   originally filed by Moisey Fridman and Rosa Fridman against Beach Crest Villas HOA where the

20   Fridmans prevailed.

21   21.   Attached as Exhibit 20 is a true and correct copy of the statement of information

22   showing Karl Avetoom as the President of Beach Crest Villas HOA from 2017 before the Court of

23   Appeal ruled against Beach Crest Villas HOA in *Fridman v. Beach Crest Villas Homeowners

24   Ass'n*, No. G052868, 2018 WL 1373398, at *3 (Cal. Ct. App. Mar. 19, 2018) as found on the

25   California Secretary of State website.

26   22.   Attached as Exhibit 21 is a true and correct copy of the statement of information

27   showing someone other than Karl Avetoom as the President of Beach Crest Villas HOA from

28   2020 after the Court of Appeal ruled against Beach Crest Villas HOA in *Fridman v. Beach Crest*

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO
PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED
DOCUMENTS**
28

1   *Villas Homeowners Ass'n*, No. G052868, 2018 WL 1373398, at *3 (Cal. Ct. App. Mar. 19, 2018)

2   as found on the on the California Secretary of State website.

3       23.    Rather than focusing solely on preparing for the hearing on summary judgment in

4   this case, I spent considerable time disproving the authenticity of the documents purporting to

5   show the Debtor making reprehensible comments about the Judicial Officer of this Court. This

6   work resulted in the detailed analysis showing those documents are fabrications filed herein as

7   Adv. Doc. 27.

8       I declare under penalty of perjury under the laws of the State of California that the

9   foregoing is true and correct.

10      Executed on December 7, 2021, at Riverside, California.

11                                                  *Scott Talkov*

12                                                  Scott Talkov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

# **Exhibit 1**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| IN RE: | ) |
| | ) |
| LAMONT L. GILLIAM, SR., | ) |
| | ) |
| Debtor. | ) |
|  | ) |
| | ) |
| PAUL T. BAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAMONT L. GILLIAM, SR., | ) |
| | ) |
| Defendant. | ) |
|  | ) |

**Bankruptcy No. 10-27336-CMB**

**Chapter 7**

**Adv. No. 11-02221-CMB**

**Adv. Doc. No. 3**

### ORDER


**AND NOW,** this 2nd day of April, 2012, for the reasons expressed in the Memorandum

Opinion issued simultaneously, it is hereby **ORDERED, ADJUDGED, AND DECREED** that

Paul T. Bair's Amended Complaint is **DENIED**. Paul T. Bair's claim is dischargeable pursuant

to 11 U.S.C. §523. Therefore, said debt is discharged.



        __/s/ Carlota M. Böhm_____
        Carlota M. Böhm
        United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
    Office of the United States Trustee
    Rosemary C. Crawford, Esq., Chapter 7 Trustee
    Paul T. Bair, Plaintiff
    Brian J. Bleasdale, Counsel to Debtor
    Lamont L. Gilliam, Debtor

1

**<u>Exhibit 2</u>**

**SO ORDERED.**

**SIGNED this 06 day of July, 2009.**

_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LULA WASHINGTON, | ) | |
| | ) | No. 08-11885 |
| Debtor | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 08-5239 |
| | ) | |
| LULA WASHINGTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**JUDGMENT ON DECISION**

The Trustee seeks to except from debtor's discharge a judgment he obtained in her previous

bankruptcy case requiring her to turnover certain tax funds and revoking her discharge; the Trustee

-1-

proceeds under 11 U.S.C. § 523(a)(4), (a)(6) and (a)(10).  Following a trial of this matter and supplemental briefing, the Court concluded that: (1) debtor did not occupy the requisite fiduciary relationship necessary to impose liability under § 523(a)(4) for fiduciary defalcation; (2) the Trustee failed to prove fraudulent conduct on the part of debtor necessary to establish a fiduciary defalcation or embezzlement; (3) the Trustee failed to prove that debtor acted with the requisite intent to harm the estate necessary to impose liability under § 523(a)(6); and (4) § 523(a)(10) was inapplicable under the factual circumstances of this case.

JUDGMENT is entered in favor of defendant Lulu Washington on the Trustee's complaint, with each party to bear their own costs.

# # #

**Exhibit 3**

1  SCOTT TALKOV, State Bar No. 264676
   TALKOV LAW CORP.
2  2900 Adams St Ste C225
   Riverside, California 92504
3  Telephone: (951) 888-3300
   Email: scott@talkovlaw.com
4

5  Attorneys for Debtor Rosa A. Fridman

6              **UNITED STATES BANKRUPTCY COURT**

7       **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

8  In re                                    Case. No. 8:21-bk-10513-ES

9  Rosa Fridman,                            Adversary Case No. 8:21-ap-01023-ES

10 Debtor.                                  Chapter 7

11 _____
                                            **DEFENDANT'S OPPOSITION TO**
12 Karl Avetoom,                            **PLAINTIFF'S MOTION FOR SUMMARY**
                                            **JUDGMENT; DECLARATIONS OF ROSA**
13            Plaintiff,                    **FRIDMAN AND SCOTT TALKOV**

14 v.                                       **(Filed Concurrently With Defendant's**
                                            **Separate Statement of Genuine Issues of**
15 Rosa Fridman,                            **Material Fact, Proposed Supplemental**
                                            **Statements of Fact and Proposed Conclusions**
16            Defendant.                    **of Law in Support of Opposition to Plaintiff's**
                                            **Motion for Summary Judgment)**
17

18                                          Hearing on Motion for Summary Judgment:
                                            Date:        September 9, 2021
19                                          Time:        2:00 p.m.
                                            Courtroom:   Courtroom 5A
20                                                       411 W. Fourth Street
                                                         Santa Ana, CA 92701
21

22 **I.    THIS FLAWED SUMMARY JUDGMENT MOTION IS THE LATEST**

23 **DEMONSTRATION OF CONVICTED FELON AND LAW SCHOOL GRADUATE KARL**

24 **AVETOOM'S USE OF LITIGATION AS A HOBBY AGAINST DEBTOR ROSA**

25 **FRIDMAN, A 90-YEAR-OLD, FINANCIALLY DESPONDENT WIDOW**

26      Before addressing the merits of the summary judgment motion, it is important to

27 understanding the plaintiff's 12-year thirst for litigation as providing a highly unusual context.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DECLARATIONS OF ROSA FRIDMAN AND SCOTT TALKOV**
1

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    Specifically, the question in this adversary proceeding is whether convicted felon Karl

2    Avetoom will be able to continue to harass Defendant Rosa Fridman, a 90-year-old widow who

3    lives on social security income and in a fractional interest in a homesteaded condominium, until

4    the day she dies. As demonstrated below, there is no merit to this adversary or this summary

5    judgment motion. Instead, the highly detailed pleadings filed by the plaintiff reflect not on the

6    merits of his case, but rather on his addiction to litigation following his completion of a Juris

7    Doctor degree followed by his inability to obtain a license from the California State Bar due to his

8    past as a convicted felon. (Decl. Fridman, Ex. 4.) Given that Avetoom is unable to practice law, he

9    has chosen to use his J.D. as a means to practice law as a sport with only one client, himself, and

10   only one case, his endless enjoyment from litigating in numerous forums against Defendant Rosa

11   Fridman because of her late husband's alleged wrongdoing.

12   While most people enjoy a story with a beginning, a middle, and an end, the Plaintiff in

13   this case can't imagine an end to this saga. Spanning from the beginning of the Obama

14   administration and resulting in a trial court docket that prints at over 58 pages, a prior bankruptcy

15   docket with over 500 entries, multiple appeals to the Ninth Circuit, the California Court of Appeal,

16   and multiple related cases, including the creditor's lawsuit against the former attorneys

17   representing the Debtor in this case, this case is well deserving of an end. Based on the facts set

18   forth herein, this bankruptcy should be that end.

19   Specifically, the Plaintiff in this case is the longstanding President of a 12-unit Beach Crest

20   Villas Homeowners Association. In a case between his board and the debtor's now-deceased

21   husband, who was formerly one of the 12 homeowners therein, the Court of Appeal went out of its

22   way to include dicta that the parties should end this sad chapter in all of their lives as follows:

### Concluding Thoughts

24   We have no reason to believe that this opinion is the end of the disputes between
     these parties. Two different courts have already cautioned the parties and their counsel
25   regarding the unprofessional behavior exhibited throughout the pendency of the many legal
     proceedings between them. The Ninth Circuit's Bankruptcy Appellate Panel explained:
26   "We make this determination [that there was no clear error in the bankruptcy court's
     findings that Avetoom purchased the appeal rights in his own case from the bankruptcy

trustee in order to dismiss the appeal] with some unease. <u>The amount of energy which the parties have devoted to this litigation, and the extraordinary degree of venom they have poured on each other, make it clear that this case is more of a personal vendetta than a rational attempt by the parties to protect their legitimate interests</u>. To say that either of these parties is acting in 'good faith' stretches the common meaning of that phrase to the breaking point. But the case law ascribes a special meaning to the phrase in the context of § 363(m). Given that definition, we cannot say that the bankruptcy court erred." (*In re Fridman*, *supra*, 2016 Bankr. Lexis 2608 at p. *12, 2016 WL 3961303.)

…

**We strongly urge all sides to quickly and civilly resolve the litigation between them before even more attorney fees are expended.**

*Moisey Fridman v. Beach Crest Villas Homeowners Association* (Cal. Ct. App., Mar. 19, 2018) No. G052868, 2018 WL 1373398, at *8 (unpublished).

Unfortunately, this is not the first endless pursuit of a last-ditch legal outcome by Mr. Avetoom after his apparent refusal to take the Court's word as final. Indeed: "In March 1997, a jury convicted Karl Ivan Avetoom of one count of selling stolen property, one count of grand theft by false pretenses, and two counts of operating a motorcycle chop shop as charged in a 32-count information." *People v. Avetoom* (Cal. Ct. App., Mar. 19, 2013) 2013 WL 1583229, No. G044659 (unpublished). In ruling on Avetoom's appeal, the Court noted: "Over 13 years after his convictions, Avetoom cobbles together various documents to assert there is only one conclusion that can be drawn, i.e., that the government committed egregious misconduct to convict him. We disagree. Avetoom's syllogism is faulty as his exhibits do not establish the vast conspiracy he seeks to prove." *Id.* Similarly in this case, the motion for summary judgment may be viewed as the same, emotionally driven pursuit of justice by Avetoom (a creditor by way of an <u>emotional distress judgment</u>), not a reasoned view of the Bankruptcy Code or the Federal Rules of Civil Procedure.

Earlier in this bankruptcy, this Court granted a 522(f) motion to avoid all liens on the Debtor's homestead, despite Avetoom's opposition and meritless appeal. (BK Doc. 45.) Concurrently, this Court denied Avetoom's meritless motion to dismiss this bankruptcy claiming he was the sole creditor herein (there are now three claims on the claims register). Avetoom also asked for relief from stay to return to state court to ask if the 2020 Judgment constitutes a

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

consensual lien, to which this Court granted the motion suggesting that it could not imagine the

state court coming to such a conclusion. Unsurprisingly, the state court also informed Avetoom

that the 2020 judgment was, in fact, a judgment, not create a consensual lien. (BK Doc. 86.)

However, if there's one thing that is clear, it is that the facts never stop Avetoom from continuing

with his hobby of litigation against the Debtor.

Specifically, as to the merits of the motion for summary judgment, Plaintiff and convicted

felon Karl Avetoom again "cobbles together" various arguments in an attempt to avoid his 2011

Judgment from being avoided as against Ms. Fridman's homestead. Avetoom's frenzied attempt to

harass a 90-year-old despondent widow does not come close to meeting the immense burden

required to be upheld to warrant a grant of a motion for summary judgment. Indeed, there are

multiple triable issues of material fact regarding the Plaintiff's ability to collect from Ms. Fridman

on the 2011 Judgment which would allow this Court to resolutely deny Plaintiff's motion for

summary judgment.

The sole issue in this case is whether any debt still exists that qualifies for

nondischargeability under § 523(a)(10) "that **was or could have been listed or scheduled by the**

**debtor in a prior case** concerning the debtor under this title or under the Bankruptcy Act in which

the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6),

or (7) of this title…" While there is no question that the 2011 judgment "was or could have been

listed" in the 2012 bankruptcy, the remaining questing whether the 2011 judgment still exists

(independent of the 2020 judgment that did <u>not</u> exist in 2012), and whether Avetoom waived the

protections of § 523(a)(10) by and through the order denying the discharge under § 727.

First, the Plaintiff's claim that his 2011 Judgment is non-dischargeable is barred by the

doctrine of waiver. Specifically, as discussed in detail below, Plaintiff's right to recover under his

2011 Judgment were explicitly waived in a later judgment entered on August 13, 2020 by the Hon.

Theodore Howard in the Orange County Superior Court of California in Case No. 30-2015-

00820760 (the "2020 Judgment"). (Decl. Fridman, Ex. 2.) Specifically, the 2020 Judgment

contains a statement that: "<u>The Parties agree to waive any and all claims, known or unknown,</u>

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    between them and waive the protection of Civil Code § 1542." As such, Avetoom explicitly

2    waived his right to either enforce the 2011 Judgment other than through the 2020 Judgment, which

3    did not exist in 2012, or waived his rights to the benefits of the 727 denial of discharge by which

4    he seeks the related application under § 523(a)(10).

5    　　　　Second, the Plaintiff's claim that his 2011 Judgment is non-dischargeable is barred by the

6    doctrine of novation or modification. Notably: "Novation is the substitute of a new obligation for

7    an existing one. Novation may be accomplished … by the substitution of a new obligation

8    between the same parties, with the intent to extinguish the old obligation." Fanucchi & Limi

9    Farms v. United Agri Products, 414 F.3d 1075, 1081 (9th Cir. 2005). Here, the 2020 Judgment

10    was a novation of the 2011 Judgment as it created a new obligation on behalf of Defendant Rosa

11    Fridman to re-pay her creditor, Plaintiff Karl Avetoom, with the intent to extinguish the old

12    obligation created by the 2011 Judgment. Indeed, by stipulating to the 2020 Judgment, Defendant

13    Rosa Fridman intended that the 2011 Judgment be extinguished creating a new obligation to re-

14    pay her creditor, Plaintiff Karl Avetoom. (Decl. Fridman). As such, a novation renders the 2011

15    Judgment a mere historical document having no independent existence, other than to import the

16    original principal balance on the judgment.

17    　　　　On the related theory of modification, Ms. Rosa Fridman's liability under the 2011

18    Judgment is non-existent because her liability to re-pay Plaintiff Karl Avetoom now arises solely

19    under the 2020 Judgment. Indeed, the 2011 Judgment which Plaintiff Avetoom seeks this Court to

20    rule as non-discharged no longer exists as it was modified by the 2020 Judgment. Specifically, the

21    2011 Judgment sought to be enforced by Plaintiff only held Defendant Rosa Fridman liable in her

22    personal capacity. (Doc. 9, pg. 14, lns. 19-21.) The 2020 Judgment, on the other hand, granted

23    Karl Avetoom a valuable right whereby it stipulates that Ms. Rosa Fridman is liable to re-pay the

24    debt which originally arose under the 2011 Judgment both individually and in her capacity as

25    "Trustee for The Fridman Family Trust Established On April 14, 2000." (Decl. Fridman, Ex. 1.)

26    Since that trust was the owner of Ms. Fridman's only property of any value (the fractional interest

27    in her homestead), the 2020 Judgment is appropriately seen as a modification of the 2011

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    Judgment rendering Defendant's liability to Plaintiff under the 2011 Judgment non-existent.

2        Third, Plaintiff Karl Avetoom has resolutely refused to be deposed in this matter about any

3    questions, including those relates to these defenses. (Adv. Doc. 18.) Thus, the fact-finding

4    capabilities of Defendant Rosa Fridman have been severely hampered which has limited her

5    ability to defend herself in this adversary proceeding. As a result, Plaintiff's motion for summary

6    judgment should be denied solely on this basis.

7        Resultantly, Debtor respectfully requests this Court deny Plaintiff's motion for summary

8    judgment as a triable issue of material fact exists as to whether Defendant Rosa Fridman should be

9    held liable under the since-extinguished 2011 Judgment.

10    **II.    PLAINTIFF BEARS A SUBSTANTIAL BURDEN TO OBTAIN SUMMARY**

11    **JUDGMENT**

12        Avetoom's statement that "in the present case, there is no triable issue of material fact" is

13    not supported by the law delineating the standard for summary judgment or the facts at issue in

14    this case.

15        Indeed, Rule 56, subdivision (a) of the Federal Rules of Civil Procedure states: "The court

16    shall grant summary judgment if the movant shows there is <u>no</u> genuine dispute as to <u>any</u> material

17    fact and the movant is entitled to judgment as a matter of law." Further, the law in reviewing

18    motions for summary judgment was stated eloquently by this very Court: "The court is required to

19    <u>view the evidence in the light most favorable to the non-moving party and draw all justifiable</u>

20    <u>inferences in the non-moving party's favor.</u>" <u>In re Lake</u>, 628 B.R. 664, 669 (Bankr. C.D. Cal.

21    2021.) Further, that same case also held: "The moving party … has the burden of establishing the

22    absence of a genuine issue of material fact." <u>Id</u>.

23        Thus, the procedural rules and case law governing this Court's discretion in ruling on

24    Plaintiff's motion for summary judgment institute a monumental burden for Plaintiff Karl

25    Avetoom; a burden which, as discussed below, he cannot meet due to the presence of a multitude

26    of genuine issues of material fact rendering summary judgment inappropriate in this case.

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**III.     THE 2020 JUDGMENT (OMITTED IN AVETOOM'S VOLUMINOUS**

**DOCUMENTATION) REQUIRES THE DENIAL OF PLAINTIFF'S MOTION FOR**

**SUMMARY JUDGMENT**

The sole issue in this case is whether any debt still exists that qualifies for

nondischargeability under § 523(a)(10) "that **was or could have been listed or scheduled by the**

**debtor in a prior case** concerning the debtor under this title or under the Bankruptcy Act in which

the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6),

or (7) of this title…" Explaining this limitation, one court found this exception to dischargeability

to apply only "on the **same debt** in a subsequent case." *In re Webb*, 157 B.R. 614, 616 (Bankr.

N.D. Ohio 1993).

The Ninth Circuit has "held that exceptions to dischargeability should be strictly construed

in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *In re Cox*, 41 F.3d

1294, 1297 (9th Cir. 1994).

A review of the affirmative defenses clearly set forth in the answer filed by the Defendant

makes clear that the 2020 Judgment between these parties is central to this adversary. (Adv. Doc.

9, pp. 342.) However, a copy of that 2020 Judgment is curiously absent from Avetoom's

voluminous documentation supporting his motion for summary judgment. (Adv. Doc. 9.) The

reason this crucial document that he repeatedly sought to enforce in the underlying bankruptcy is

missing is because it undermines his theory. (BK Doc. 22, pp. 5-8 & 56, p. 45.)

Instead, Avetoom's motion for summary judgment contains a conclusory statement that

"Defendant's novation, waiver, accord and satisfaction and discharge defenses are legally and

factually insufficient to oppose summary judgment…" (Doc. 8, pg. 13). As explained below,

despite convicted felon Karl Avetoom's continued efforts to paint the 90-year-old widow

defendant as unworthy of asserting her rights under the Bankruptcy Code, there are numerous

grounds on which this Court may deny the Plaintiff's motion for summary judgment.

**A.     Explicit Waiver in the 2020 Judgment Requires the Denial of Plaintiff's**

**Motion for Summary Judgment Relating to the 2011 Judgment**

---

Defendant is able to defeat the motion for summary judgment as there is a genuine issue of

material fact to be decided by this Court due to her defense that the 2020 Judgment includes a

waiver of Avetoom's right to collect on the 2011 Judgment and a waiver of his right to bring this

adversary complaint in the first place. Indeed, the 2020 Judgment explicitly contains language

indicating a waiver of Avetoom's right to collect on the 2011 Judgment after the entry of the 2020

Judgment. Further, Plaintiff Avetoom's own conduct evidencing desperation to ensure the

enforceability of the 2020 Judgment by petitioning two different courts to view the 2020 Judgment

enforceable also demonstrates that the 2020 Judgment was a waiver of Avetoom's right to enforce

the waived 2011 Judgment.

### 1.    The 2020 Judgment Contains Explicit Language of a Waiver

Avetoom states in his motion for summary judgment that "by Defendant's own stipulation

under oath, no waiver of the right to collect on Plaintiff's 2011 Judgment exists."

Neither the law, nor the facts, in this case supports Avetoom's conclusory statement. In

California, the law is that: "The parties to a release may be bound by a waiver of the section's

protection if they understand and consciously agree to the waiver." Kaufman & Broad-S. Bay v.

Unisys Corp., 822 F. Supp. 1468, 1474 (N.D. Cal. 1993). Continued, California law confirms that:

"the existence of cases that stand for the truism that the existence of waiver is ordinarily a question

of fact." Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc. (2006) 144 Cal. App. 4th

1175, 1191. Finally, the law in California is that: "the scope of a waiver of unknown claims is a

question of fact is by no means unprecedented." Butler v. Vons Companies, Inc. (2006) 140

Cal.App.4th 943, 950.

Here, the 2020 Judgment states: "The Parties agree to waive any and all claims, known or

unknown, between them and waive the protection of Civil Code § 1542." (Decl. Fridman, Ex. 1, ¶

7.)

In fact, the transcript from the hearing giving rise to the 2020 Judgment explained in front

of Avetoom and his counsel the meaning of this provision as follows:

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  THE COURT: COUNSEL, PART OF THE AGREEMENT WAS THERE WOULD BE A

2  1542 WAIVER <u>AND THAT TAKES CARE OF ANY CLAIMS BETWEEN THESE</u>

3  <u>FOLKS FOR ALL HISTORY</u>.

4  (Adv. Doc. 9, p. 237, lns. 11-13.) Among this history was Avetoom's then existing (and now

5  waived) right to claim nondischargeability under §523(a)(10) based on the prior 727 finding in a

6  future bankruptcy.

7  Even further, the sentence that follows the waiver further evidences that no further

8  litigation was intended to arise, including this adversary, setting forth that: "The Parties agree to

9  not file any action against each other, or family of each other." (Decl. Fridman, Ex. 1, ¶ 8.)

10  Mr. Avetoom's conclusory argument that there was not a waiver neglects the fact that

11  Debtor/Defendant Rosa Fridman was under the impression that the 2020 Judgment contained a

12  waiver of any rights, including rights arising from the 2011 Judgment, other than her duties as set

13  forth in the 2020 Judgment. (Decl. Fridman, ¶ 3.) Indeed, in exchange for holding The Fridman

14  Family Trust liable for the 2020 Judgment, Debtor Rosa Fridman was under the impression that all

15  prior claims of Mr. Avetoom had been waived in line with the explicit language denoting the

16  waiver in the 2020 Judgment. (Decl. Fridman, ¶ 3.) Continued, Ms. Fridman was under the

17  impression that Mr. Avetoom came to this same understanding with respect to the waiver of his

18  right to enforce the 2011 Judgment. (Decl. Fridman, ¶ 4.) Ms. Fridman's counsel, however, has so

19  far been unable to question Mr. Avetoom's as to his understanding of the waiver provisions due to

20  Mr. Avetoom's unwillingness to submit to a deposition. (Decl. Fridman, ¶ 5.)

21  Mr. Avetoom, holding the same educational credentials as a licensed attorney, was free to

22  limit the waiver as it related to an elderly widow with limited command of the English language.

23  He did not do so. He must now suffer the consequences of this broad waiver provision.

24  Thus, upon the entry of the 2020 Judgment, Plaintiff Karl Avetoom agreed to "waive any

25  and all claims" he had against Ms. Rosa Fridman at that time. As such, Plaintiff's claims against

26  Defendant Rosa Fridman from the 2011 Judgment, including any rights he may have had under 11

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

U.S.C. § 523(a)(10), were explicitly waived by the 2020 Judgment, leaving the Debtor solely

liable for obligations found under the 2020 Judgment.

**2.    Avetoom's Failed Efforts to Re-Characterize the 2020 Judgment as a Consensual Lien in Two Different Courts Demonstrates the 2020 Judgment Constitutes a Waiver as Found on the Face of the Document**

Avetoom's position that the 2020 Judgment does not contain a waiver of his right to

enforce the 2011 Judgment is an interesting position to take given that Plaintiff Karl Avetoom has

expended much energy and instituted much litigation to enforce the 2020 Judgment. Indeed, two

separate courts have held that Avetoom's interpretation of the 2020 Judgment is unsupported by

facts or law so that it may be avoided as against Ms. Fridman's homestead.

Specifically, Avetoom has urged this Court to enforce the 2020 Judgment as a fully

enforceable lien amending the terms of the 2011 Judgment in opposition to the Debtor/Defendant

Rosa Fridman's 522(f) motion previously heard and upheld by this Court. (BK Doc. 22, pp. 5-8.)

In his declaration to support his opposition to Rosa Fridman's 522(f) motion, Avetoom states:

> On August 13, 2020, and after the initial months of the pandemic passed, the Superior Court entered a judgment in the 2015 Fraudulent Transfer Action memorializing the terms of the Settlement, which Avetoom then recorded against the Property on November 19, 2020 pursuant to the parties' stipulation (the "Recorded Stipulated Judgment"). A copy of the Recorded Stipulated Judgment is attached to the Avetoom Declaration as Exhibit 8.

(BK Doc. 15-1, p. 14.) This Court later held that the 2020 Judgment was in fact a judgment lien,

and not a consensual lien as repeatedly argued by Plaintiff in opposition to Ms. Fridman's 522(f)

motion. (BK Doc. 45.)

Unfazed by this Court's interpretation of the 2020 Judgment, Avetoom then went back to

the Orange County Superior Court of California to interpret and alter the 2020 Judgment as a

consensual lien so it may not be avoided pursuant to Debtor/Defendant Rosa Fridman's 522(f)

motion. (BK Doc. 56.) Seemingly reinforcing this Court's interpretation of the 2020 Judgment, the

Orange County Superior Court of California denied Plaintiff's Motion to Enforce Settlement

noting that the 2020 Judgment was just that, a judgment, despite Avetoom's repeated efforts to

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  misconstrue that Court's holding in order to maintain his judgment liens as against the Debtor's

2  homestead. (Decl. Fridman, Ex. 2.)

3      Simply put, the law, facts, and Plaintiff's own conduct with respect to the 2020 Judgment

4  create a genuine issue of material fact surrounding whether Plaintiff Karl Avetoom's claims

5  against Defendant Rosa Fridman from the 2011 Judgment, including any rights he may have had

6  under 11 U.S.C. § 523(a)(10), were explicitly waived by the 2020 Judgment, leaving the Debtor

7  solely liable for obligations found under the 2020 Judgment.

8      **B.**    **The Doctrines of Novation and Modification of the 2011 Judgment Through**

9          **the 2020 Judgment Warrants Denial of the Plaintiff's Motion for Summary Judgment**

10      Plaintiff is unable to meet his immense burden required to grant his motion for summary

11  judgment as there is a genuine issue of material fact to be decided by this Court due to Defendant

12  Rosa Fridman's defense that the 2020 Judgment constitutes a novation and/or an amendment of

13  Avetoom's right to collect on the 2011 Judgment.

14      Indeed, one court found "that the phrase 'was or could have been listed or scheduled' in

15  section 523(a)(10) does not refer to anything other than debts which arose prior to the filing of this

16  debtor's prior case." *In re Estes*, 415 B.R. 568, 575 (Bankr. N.D. Ala. 2009). As explained below,

17  the 2020 Judgment for which liability is now found did not exist in the 2012 bankruptcy. Since

18  that 2020 Judgment is a novation or amendment to the 2011 Judgment, <u>there is nothing left to find</u>

19  <u>nondischargeable</u> that could have been scheduled in 2012.

20      **1.**    **The 2020 Judgment is a Novation of the 2011 Judgment**

21      Avetoom's motion for summary judgment contains conclusory statements that:

22  "Defendant's counsel cannot establish the third factor [of intent required to show a novation]" and

23  "Defendant's 'novation' defense also fails as a matter of law." (Adv. Doc. 8, p. 21.) This

24  conclusory statement and the meager factual analysis intended to back up these statements do not

25  come close to proving that there is no genuine issue of material fact as to Defendant Rosa

26  Fridman's defense of novation.

27

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

---

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
**DECLARATIONS OF ROSA FRIDMAN AND SCOTT TALKOV**

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    The law is that: "Novation is the substitute of a new obligation for an existing one.

2    Novation may be accomplished … by the substitution of a new obligation between the same

3    parties, with the intent to extinguish the old obligation." <u>Fanucchi & Limi Farms v. United Agri

4    Products</u>, 414 F.3d 1075, 1081 (9th Cir. 2005). Further: "In deciding whether an agreement was

5    meant to extinguish the old obligation and substitute a new one, California courts seeks to

6    determine the parties' intent. … **Determining the parties' intent is a highly fact-specific**

7    **inquiry … [which is] not generally suitable for disposition on summary judgment**." *Id.* at

8    1082. Continued, when determining whether or not a novation has taken place, "Courts may also

9    take into consideration the conduct of the parties…." *Id.*

10    Here, it was Ms. Fridman's intent that the 2020 Judgment be a novation (substitution of a

11    new obligation for an existing one) of the 2011 Judgment. (Decl. Fridman, ¶ 6.) The facts and

12    circumstances surrounding the 2020 Judgment also tend to show that it was intended by the parties

13    to be a novation of the 2011 Judgment.

14    First, the 2020 Judgment is meant to include a new party other than Defendant Rosa

15    Fridman in her individual capacity which would be liable for the debt originally evidenced by the

16    2011 Judgment, i.e., The Fridman Family Trust as the owner of the only asset of any importance,

17    Rosa Fridman's partial interest in her homestead. Relevant to this fact is that Plaintiff submitted an

18    Application and Order for Appearance and Examination of Judgment Debtor in the case which

19    gave rise to the 2020 Judgment. (Decl. Fridman, Ex. 3.) As to Defendant Rosa Fridman's capacity

20    as Trustee of The Fridman Family Trust Established on April 14, 2000, the 2020 Judgment did not

21    exist in the prior bankruptcy case. Thus, Avetoom's conduct shows that there are not two

22    judgments existing upon which he is able to collect his judgment, but rather one judgment: the

23    2020 Judgment, which is a novation of the 2011 Judgment.

24    Second, the 2020 Judgment contains a bevy of terms intended to show that the Parties were

25    meant to start anew in their long, arduous, and litigious relationship. For example, the 2020

26    Judgment states: "The Parties agree to not file any action against each other, or family of each

27

1  other." (Decl. Fridman, Ex. 1.) It also states: "The parties hereby stipulate that ALEX

2  FRIDMAN'S interest in the Property is not affected by this Judgment." (Decl. Fridman, Ex. 1.)

3       Continued, Plaintiff and Defendant are well-aware of Defendant Rosa Fridman's status as

4  a 90-year-old, financially despondent widow with no assets to collect from other than her

5  homestead. The 2020 Judgment's protection of Defendant's son's interest in Defendant's

6  homesteaded property as well as the inclusion of a new judgment debtor which was not present on

7  the 2011 Judgment tends to show that the 2020 Judgment was a novation of the 2011 Judgment in

8  connection with a settlement of Avetoom's 2015 fraudulent transfer claim arguing that Alex

9  Fridman did not have an interest in the property. Thus, it tends to show that the 2020 Judgment

10  was meant to be an end-all to Plaintiff's hobby of endlessly litigating against Defendant Rosa

11  Fridman.

12       Third, as discussed above, Plaintiff Karl Avetoom has gone to extensive lengths in

13  multiple courts to argue that the 2020 Judgment should not be avoided as to Defendant's

14  homestead pursuant to her previously granted 522(f) motion. Indeed, as discussed above, Plaintiff

15  Karl Avetoom has petitioned two courts to reconsider this Court's ruling that the 2020 Judgment

16  was indeed a judgment instead of a consensual lien. (Decl. Fridman, Ex. 2; BK Doc. 22 & 56.)

17  Only after both of those petitions to enforce the 2020 Judgment were denied did he resort to this

18  adversary proceeding giving rise to this motion for a summary judgment. (Decl. Fridman, Ex. 2;

19  Adv. Doc. 9.) As such, it is clear from the conduct of Plaintiff Karl Avetoom that the 2020

20  Judgment was intended to be a novation.

21       Fourth, as extensively discussed above, the 2020 Judgment contains an explicit waiver of

22  "any and all claims, known or unknown, between [the Parties to the 2020 Judgment]…." (Decl.

23  Fridman, Ex. 1.) Thus, the intent to extinguish the 2011 Judgment appears on the face of the 2020

24  Judgment.

25       For all of the foregoing reasons, there is a genuine issue of material fact of whether the

26  2020 Judgment was intended to be a novation of the 2011 Judgment. Further, given that

27  "Determining the parties' intent [to enter into a novation] is a highly fact-specific inquiry …

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  [which is] not generally suitable for disposition on summary judgment," Defendant Rosa Fridman

2  respectfully requests this Court deny Plaintiff Karl Avetoom's motion for summary judgment.

3  **2.  The 2020 Judgment Effectively Modified the 2011 Judgment So That**

4  **Defendant's Liability on Any Debt Owed to Plaintiff Arises Solely From the**

5  **2020 Judgment That Did Not Exist on the 2012 Bankruptcy Petition Date**

6  Not addressed in Plaintiff's motion for summary judgment is the fact that the 2011

7  Judgment was modified and amended by the 2020 Judgment.

8  California Civil Code section 1698, subdivision (a) states: "A contract in writing may be

9  modified by a contract in writing." The case law interpreting this code section confirms: "Under

10  California law, the parties to a contract have the power to add, change or cancel provisions so long

11  as the purpose and effect of the original contract are left undisturbed." Han v. Mobil Oil Corp., 73

12  F.3d 872, 876-877 (9th Cir. 1995). That same case confirms that: "Such a modification …

13  supersedes those terms to which it relates." *Id*.

14  Here, the 2020 Judgment serves as a modification to the 2011 Judgment subject to

15  Plaintiff's motion for summary judgment. Notably, the 2020 Judgment modifies the parties liable

16  to pay the original 2011 Judgment while leaving the purpose and effect of the 2011 Judgment

17  undisturbed. Further, the 2020 Judgment modifies the Defendant Rosa Fridman's liability on the

18  2011 Judgment by ensuring that there was a waiver of "any and all claims, known or unknown"

19  between Plaintiff and Defendant. Given all of the foregoing, even if the 2011 Judgment was

20  denied a discharge in to 2012 bankruptcy, that debt does not exist anymore as Defendant's liability

21  to pay any judgment debt to Plaintiff arises solely from the 2020 Judgment as a result of the 2020

22  Judgment's function in modifying the terms of the 2011 Judgment.

23  Given that the 2020 Judgment functions as a modification of the 2011 Judgment, the debt

24  arising from the 2011 Judgment no longer exists. Any obligation of Defendant to pay Plaintiff on

25  any debt arises solely from the 2020 Judgment. As such, Defendant respectfully requests that this

26  Court deny Plaintiff's motion for summary judgment be denied as a result of the existence of a

27  genuine issue of material fact.

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**C.      Plaintiff's Refusal to be Deposed in this Matter Renders this Motion for Summary Judgment Premature and Therefore Subject to Denial**

As discussed in Plaintiff's motion for summary judgment, Rule 56 of the Federal Rules of Civil Procedure govern his motion. Notably, Plaintiff omits a critical portion of that rule which renders this motion for summary judgment premature and therefore unable to be granted.

Rule 56, subdivision (d) of the Federal Rules of Civil Procedure states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Here, Defendant has already, as shown above, presented facts essential to justify its opposition. However, the Plaintiff in this matter has resolutely refused to be deposed so that Defendant's counsel may question him under oath regarding the intentions of the parties when entering into the 2020 Judgment which serves as a waiver of Plaintiff's rights, a novation of the 2011 Judgment, and a modification of Defendant's liability so that the 2011 Judgment is extinguished. (Talkov Decl., Exs. 5 & 6.) Mr. Avetoom even refused to file a request to continue the hearing on this motion for summary judgment so that Defendant may take his deposition in this matter. (Decl. Talkov, Ex. 7.) Indeed, Mr. Avetoom has gone so far as to file a motion for a protective order so he may avoid being deposed in this case. (Doc. 18.) A close review of that motion making, inter alia, trivial objections to three different forms of service shows the real purpose: to avoid being deposed to provide information that would assist this Court.

Given that Plaintiff has refused to be deposed in this matter, Defendant has been robbed of her opportunity to present even more facts which tend to show that this motion for summary judgment should be denied. Thus, the Defendant respectfully requests that this Court exercise its authority under Rule 56, subdivision (d) of the Federal Rules of Civil Procedure to "deny [the motion]."

## IV.    THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Based on the foregoing points and authorities showing that there is a genuine issue of material fact in this adversary proceeding due to the multiple viable defenses available to Defendant Rosa Fridman in defense of the claims asserted in the complaint, in addition to the moving party refusing to be deposed, Defendant respectfully requests that Plaintiff's motion for summary judgment be denied.

Date: August 19, 2021                                          TALKOV LAW CORP

*Scott Talkov*

_____
Scott Talkov
Attorneys for Defendant Rosa Fridman

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

# V.  DECLARATION OF ROSA FRIDMAN

I, Rosa Fridman, declare:

1.      I am the Defendant in the above-described case. The facts set forth herein are of my own personal knowledge and, if sworn, I could and would competently testify thereto.

2.      On July 9, 2019, I stipulated to the entry of the 2020 Judgment. A true and correct copy of the 2020 Judgment is attached as Exhibit 1.

3.      At the time of the entry into the 2020 Judgment, I was under the impression that Plaintiff Karl Avetoom's right to any recovery not found in the 2020 Judgment was waived because of the explicit language of a waiver in the 2020 Judgment, the discussion of this waiver on the record, and because I agreed to allow to hold The Fridman Family Trust Established on April 14, 2000 liable for the judgment debt. Accordingly, I was under the impression that any future liability would exist solely as a product of the 2020 Judgment, for which the rights being asserted in this adversary are not found.

4.      I was under the impression that Plaintiff Karl Avetoom was in agreement that the 2020 Judgment was a waiver of any right to any recovery not found in the 2020 Judgment. Among the reasons that I reached this conclusion is because the 2020 Judgment allowed him to hold The Fridman Family Trust Established on April 14, 2000, liable for the debt originally evidenced by the 2011 Judgment as a result of the 2020 Judgment in exchange for his waiver of a right to enforce the 2011 Judgment. Further, Karl Avetoom never mentioned to me any intention to hold me liable for nondischargeability. Rather, the state court stated on the record that all of "history" in this case was being waived.

5.      I have been informed that Plaintiff Karl Avetoom has repeatedly refused to be deposed regarding the subject matter of his adversary complaint so that I am unable to confirm my belief laid out immediately above in Paragraph 4 of this declaration.

6.      It was my intent when entering into the 2020 Judgment that it be a new agreement meant to replace the rights of Karl Avetoom under the 2011 Judgment because of the explicit

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  waiver of all rights previously available to Plaintiff Karl Avetoom, among other facts surrounding

2  the 2020 Judgment.

3      7.    Attached as Exhibit 2 is a true and correct copy of the minute order denying

4  Plaintiff Karl Avetoom's Motion to Enforce Settlement in the Orange County Superior Court of

5  California.

6      8.    Attached as Exhibit 3 is a true and correct copy of Plaintiff Karl Avetoom's

7  Application and Order for Appearance and Examination of Judgment Debtor in the case which

8  gave rise to the 2020 Judgment shortly after he obtained the 2020 Judgment.

9      9.    Attached as Exhibit 4 is a true and correct copy of pages taken from Plaintiff Karl

10  Avetoom's deposition in a previous lawsuit where Karl Avetoom admits under oath that he has

11  received a Juris Doctorate degree. I have been informed that Mr. Avetoom was deemed unable to

12  practice law due to his numerous felony convictions.

13      I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.

15      Executed on August 19, 2021 at Huntington Beach, California.

16

17

18  Rosa Fridman

19

20

21

22

23

24

25

26

27

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DECLARATIONS OF ROSA FRIDMAN AND SCOTT TALKOV**
18

# VI.    DECLARATION OF SCOTT TALKOV

I, Scott Talkov, declare:

1.       I am an attorney duly licensed to practice in all courts of the State of California and am an Attorney with Talkov Law Corp., attorneys of record for Debtor, Rosa Fridman. The facts set forth herein are of my own personal knowledge and if sworn I could and would competently testify thereto.

2.       Attached as Exhibit 5 is a true and correct copy of an email chain started by my associate, Nick Moss, providing notice of a deposition to Plaintiff Karl Avetoom in this matter. As is noted in the attached Exhibit 5, Plaintiff Karl Avetoom refused to have his deposition taken in this matter for, among other reasons stated by the Plaintiff, defective service despite the email providing courtesy notice of the deposition along with the fact that the notice was mailed to Plaintiff at his address of record in this proceeding.

3.       Attached as Exhibit 6 is a true and correct copy of an email chain started by my associate, Nick Moss, providing yet another courtesy copy of the notice of deposition via email after it was mailed to Plaintiff as well as posted on a conspicuous place at his residence as it is shown on the CM/ECF system in this proceeding. As is noted in the attached Exhibit 6, Plaintiff Karl Avetoom refused to have his deposition taken in this matter for, among other reasons, defective service despite the email providing courtesy notice of the deposition along with the properly mailed notice and the properly posted notice in a conspicuous place at Plaintiff's address of record in this proceeding.

4.       Attached as Exhibit 7 is a true and correct copy of an email chain started by my associate, Nick Moss, indicating that Plaintiff Karl Avetoom would refuse to file a request to continue the hearing on this motion for summary judgment so that Defendant would be able to take his deposition.

5.       When filing Defendant's petition in the bankruptcy proceeding giving rise to this adversary action, I drafted Defendant/Debtor's schedules to the best of my ability as a twelfth-year attorney given the extremely complex history of this case. For example, I listed the judgments

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    being owed as $1,000,000 because I did not calculate the interest which may have accrued

2    thereon, nor did I deduct payments made on the judgment that I understand occurred in the 2012

3    bankruptcy. In drafting the schedules of the Defendant/Debtor, I merely used the face of the

4    documents, not any interpretation thereof, to draft the schedules for the Defendant/Debtor.

5        6.    Now that I know enough about this case, I believe it would take a competent

6    attorney approximately 60 hours to understand the complexities of this case, thereby generating a

7    five-figure filing fee simply to prepare schedules for this Debtor. I do not believe this is reasonable

8    amount of time that a debtor should be required to pay for the preparation of schedules in a no-

9    asset Chapter 7 bankruptcy. Rather, I believe that a debtor's counsel's primary duty is to ensure

10   that the creditors are properly listed and that the existence of complex debts are found on the

11   schedules to allow creditors and the trustee to conduct their own investigation into the nature,

12   amount owed, and any disputes related thereto.

13       7.    By listing all of the judgments on Defendant/Debtor's original schedules, I

14   successfully provided notice to the creditors of the bankruptcy by listing the face value found on

15   any document which could potentially be construed as a debt owed by Defendant/Debtor.

16       8.    After my extensive review of the files herein, I have come to the conclusion that the

17   2011 Judgment has a value of $0 due to its novation by the 2020 Judgment and the waiver of all

18   claims existing at the time the 2020 Judgment was entered into. Even further, I have concluded

19   that the amount owed on the 2020 Judgment previously listed with no amount is the $650,000

20   original sum owed under the 2011 Judgment plus interest less any payments to the creditor

21   resulting from the distribution of assets of the estate in the 2012 bankruptcy.

22       9.    Due to the conclusion laid out in Paragraph 8 immediately above, I have filed with

23   this Court the Debtor's Amended Schedule D to indicate that the 2011 Judgment is disputed, and

24   listed that value as $0 thereon, along with updating the 2020 Judgment previously listed with no

25   amount is the $650,000 original sum owed under the 2011 Judgment plus interest less any

26   payments to the creditor resulting from the distribution of assets of the estate in the 2012

27   bankruptcy. A true and correct copy of the amended schedules are attached as Exhibit 8.

10.     As of the filing of the Debtor's bankruptcy petition on February 26, 2021, at 4:33 p.m., Creditor Karl Avetoom had not filed a proof of service with the state court relating to his application to renew the 2011 Judgment.

11.     Within minutes of filing the bankruptcy February 26, 2021, at 4:33 p.m., I emailed Creditor Karl Avetoom with courtesy copies of the bankruptcy petition and notice of bankruptcy case. Attached as Exhibit 9 is a true and correct copy of the email containing courtesy copies of the bankruptcy petition and notice of the bankruptcy case.

12.     Attached as Exhibit 10 is a true and correct copy of the proof of service of application for renewal of judgment filed by Plaintiff Karl Avetoom time stamped to show that it was filed more than seven hours post-petition.

13.     Attached as Exhibit 11 is a true and correct copy of the email request to cure the violation of the automatic stay by Plaintiff Karl Avetoom after he filed a proof of service of his alleged application of renewal of judgment in the state court post-petition in this bankruptcy.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 19, 2021 at Riverside, California.

*Scott Talkov*

Scott Talkov

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2900 Adams Street, Suite C225, Riverside, CA 92504

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DECLARATIONS OF ROSA FRIDMAN AND SCOTT TALKOV** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

> Karl T. Anderson (TR)    2edansie@gmail.com, kanderson@ecf.axosfs.com
> Scott Talkov     scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
> United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

2. SERVED BY UNITED STATES MAIL:
On (*date*) August 19, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

> Hon. Erithe Smith, 411 West Fourth Street, Suite 5040, Santa Ana, CA 92701
> Karl Avetoom, 1100 Rutland Road #9, Newport Beach, CA 92660

☐    Service information continued on attached page

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 19, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 19, 2021 | Leilani Caspillo | /s/Leilani Caspillo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**Exhibit 4**

**<u>AMENDED TRANSCRIPT</u>**

1              UNITED STATES BANKRUPTCY COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                        --oOo--

4  In Re:                    ) Case No. 8:21-bk-10513-ES
                             )
5  ROSA A. FRIDMAN,          ) Chapter 7
                             )
6         Debtors.           ) Santa Ana, California
   _____ ) Tuesday, November 9, 2021
7                            ) 10:30 a.m.
   KARL AVETOOM,             )
8                            ) Adv. No. 8:21-ap-01023-ES
          Plaintiff,         )
9                            )
       vs.                   )
10                           )
   ROSA A. FRIDMAN,          )
11                           )
          Defendant.         )
12 _____ )

13                           HEARING RE: DEFENDANT ROSA
                             FRIDMAN'S MOTION FOR LEAVE TO
14                           FILE AMENDMENT TO ANSWER TO
                             PLAINTIFFS FIRST AMENDED
15                           COMPLAINT

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE ERITHE SMITH
17             UNITED STATES BANKRUPTCY JUDGE

18 APPEARANCES:

19 For the Plaintiff:        KARL AVETOOM, IN PRO PER
                             1100 Rutland Road, No. 9
20                           Newport Beach, California
                               92660
21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

```
 1  APPEARANCES:  (Cont'd.)

 2  For Defendant:              SCOTT H. TALKOV, ESQ.
                                Talkov Law Corp.
 3                              2900 Adams Street, Suite C225
                                Riverside, California 92504
 4                              (951) 888-3300

 5  Court Recorder:            Tamika Law
                                United States Bankruptcy Court
 6                              411 West Fourth Street
                                Suite 2030
 7                              Santa Ana, California 92701

 8  Transcriber:               Dee Gregory
                                Echo Reporting, Inc.
 9                              9711 Cactus Street, Suite B
                                Lakeside, California 92040
10                              (858) 453-7590

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Echo Reporting, Inc.*

1

<u>SANTA ANA, CALIFORNIA  TUESDAY, NOVEMBER 9, 2021  10:30 AM</u>

1    --oOo--

3    THE COURT:  All right.  Moving to matter number

4    12.  Hold on just a minute.

5    All right.  With respect to number 12 in the

6    matter of Karl Avetoom versus Rosa Fridman.  Can I get the

7    appearance of the moving party?

8    MR. TALKOV (via Zoom):  Yes.  This is Scott Talkov

9    for the debtor defendant.

10   THE COURT:  All right.  And for the plaintiff?

11   MR. AVETOOM (via Zoom):  Karl Avetoom, plaintiff,

12   your Honor.  Good morning.

13   THE COURT:  Mr. Talkov, go ahead.

14   MR. TALKOV:  Yes, your Honor.  Your tentative

15   ruling had a few questions or comments.

16   First is whether the affirmative defense of

17   unclean hands will change the result in this case.

18   I did brief this matter in a very related motion

19   that was the motion to strike the motion to amend -- that's

20   doc 50 -- and I didn't file a reply brief.  I thought it

21   would be a duplication of effort.

22   But on doc 50, page four, I had a quote from the

23   Ninth Circuit in <u>North Bay Wellness Group</u> from 2015 saying

24   that because bankruptcy courts are courts of equity, a

25   plaintiff deemed to have unclean hands cannot obtain a

2

1  judgment of non-dischargeability.  I also --

2          THE COURT:  What were the facts in that case?  A

3  523 action?  What was that?  Tell me what the facts are.

4          MR. TALKOV:  Give me just a second.  I believe

5  it's a 523 action.  I think your Honor's comment was just

6  that it's not possible to have an affirmative defense in a

7  523(a)(10) action based on --

8          THE COURT:  Was this a 523(a)(10) action that the

9  Ninth Circuit was opining on?

10         MR. TALKOV:  No.  There is almost no case law on

11 523(a)(10).  There's about 40 cases.

12         THE COURT:  That's the issue here, because I had

13 indicated previously to you that whatever you filed in the

14 future, you were ultimately going to have to deal with the

15 legal issue presented by 523(a)(10).  And that is where

16 either a debtor has waived discharge or the court has denied

17 discharge, there's a legal issue that arises regarding

18 whether or not that denial is effective in future cases.

19 It's my understanding that it would be.

20         I think that was part of the basis for my

21 provisional ruling with respect to the motion for summary

22 judgment.  And I was very clear at that hearing, that that

23 was going to be something you were going to have to deal

24 with.

25         That was not addressed, at least not adequately in

3

1  my view, in your motion.  And you're still stuck with that

2  very important legal issue.

3         MR. TALKOV:  Yes, your Honor.  Doc 29 does ask me

4  to brief that issue.  My interpretation was that it

5  wanted -- the Court wanted that to be briefed in a

6  terminating sanctions issue.

7         But I did go ahead -- went ahead and briefed that

8  issue in doc 54.  It was filed last night in response to Mr.

9  Avetoom's --

10        THE COURT:  Do you want me to respond to something

11 you filed last night?

12        MR. TALKOV:  Mr. Avetoom filed a, quote,

13 "emergency motion" yesterday at 4:00 o'clock p.m.

14        THE COURT:  Which was denied.

15        MR. TALKOV:  Oh.

16        THE COURT:  I did not set it for hearing for

17 today.

18        MR. TALKOV:  I apologize.  Just to very briefly

19 inform your Court of the opinion as to that issue, it is

20 very simple.  The answer to that question is that a

21 dismissal with prejudice and adjudication on the merits,

22 which has res judicata effect, which --

23        THE COURT:  Okay.  Wait.  What are you arguing?  I

24 don't even -- I feel like you started in the middle of the

25 book here.  So I'm trying to make sure I understand.

4

1        I was asking about -- my tentative ruling is based

2  on the fact that there is a legal issue -- a very legal

3  issue, which I think quite frankly is going to be

4  insurmountable regarding the application of the prior denial

5  of discharge.

6        So if you're not going to address that, I'm not

7  sure this is going to move the needle.

8        MR. TALKOV:  I'm addressing that right now, your

9  Honor.

10        THE COURT:  All right.

11        MR. TALKOV:  I'm addressing it right now.  The

12  answer to this Court's question of what the effect of a

13  terminating sanction or even unclean hands defense is that a

14  dismissal of the action with prejudice is a ruling on the

15  merits and does in fact --

16        THE COURT:  A dismissal of which action here?  I

17  need to be very clear, because -- can I see this argument in

18  your opposition, in your reply or your motion?

19        MR. TALKOV:  It's doc 54 --

20        THE COURT:  Wait a minute, wait a minute.  Okay.

21  Hold on.  Doc 54, is that the request for judicial notice?

22        MR. TALKOV:  I'm in the adversary, your Honor.

23        THE COURT:  Okay.  Hold on.  Let me get to the

24  right -- hold on.  I'm in the wrong case.  Hold on.

25        Okay.  I'm sorry.  Hold on just a minute.

5

1      (Pause.)

2           MR. TALKOV:  Thank you, your Honor.

3           THE COURT:  Wait.  You want me to review a

4  document that I would not have reviewed in connection with

5  this matter?  I haven't reviewed this.  Why would I?

6           MR. TALKOV:  Your Honor asked me a question and

7  I'm trying to respond to it.

8           THE COURT:  Okay.  But, again, you're -- I thought

9  you were referring me to something in your motion, but okay.

10  I've not read this before.

11      MR. TALKOV:  My interpretation of your docket 29

12  in this case asked me brief this issue, whether that should

13  be briefed in the termination sanctions motion -- but I'm

14  glad to discuss it now if your Honor would like.

15           The answer to the question of what will happen in

16  a terminating sanction motion is answered by F.R.C.P. 41(b),

17  which is that involuntary dismissal operates as an

18  adjudication on the merits.  And the Ninth Circuit has made

19  clear in the Marino case --

20           THE COURT:  Okay.  I'm at a disadvantage here

21  because I have not read this.

22           MR. TALKOV:  Okay.

23           THE COURT:  I mean the terminating sanctions

24  motion is not before me.  I have not read it.  It's not my

25  custom to do things off the hip -- you know, from the hip or

*Echo Reporting, Inc.*

6

1 without a proper review.  I don't even -- and at this point

2 I'm at a disadvantage because I don't even know what

3 questions to ask you at this point since the document that

4 was filed yesterday at 8:55 p.m. is not a document that I

5 have even reviewed.

6         MR. TALKOV:  Yes, your Honor.  Your Honor's

7 tentative did state that the Court asked the defendant to

8 include a brief on the legal effect of terminating

9 sanctions.

10         THE COURT:  Yes, but you didn't do that in

11 connection with this motion to amend answer.  I don't think

12 at the time we even anticipated that you were going to be

13 filing a motion to amend the answer.  Okay?

14         MR. TALKOV:  Correct --

15         THE COURT:  So I'm saying to you that -- you could

16 have put it in your motion to amend the answer.  Right?

17         MR. TALKOV:  I could have.  I didn't know --

18         THE COURT:  Because you're referring to docket 29

19 and this motion was your docket 35.  So you were aware of

20 docket 29.

21         MR. TALKOV:  Yes, your Honor.  Can I just direct

22 your Honor to something that is before the Court, was before

23 the Court prior to the briefing in this matter, which is doc

24 50, page three, which --

25         THE COURT:  Okay.  Wait, wait.  Stop.  Again,

7

1   you're referring to things -- when I look at things, I'm

2   looking at pleadings that are before me.  Okay?  So now

3   you're asking me again to go to a doc -- to a matter that --

4   hold on.

5          Docket number 50.  Okay.  Is this having to do --

6   well, what is this having to do with?

7          MR. TALKOV:  Karl Avetoom filed a motion to strike

8   my motion to amend, and in opposing that motion I set forth

9   an answer to some of your Honor's questions.

10          In says on page three that Black's Law Dictionary

11   defines an "affirmative defense" as a defendant's assertion

12   of facts and arguments that, if true, will defeat the

13   plaintiff's or prosecution's claims --

14          THE COURT:  See, that's the problem, because what

15   you have done -- and I keep emphasizing this.  I'm not --

16   you know, unless you're going to cite me to some case that

17   says I totally ignore the legal issue, okay -- because

18   there's a certain operation of law that happens that you're

19   asking me to ignore.

20          And I need some authority.  If I'm going to ignore

21   a legal issue, I need to have some authority for that.  And

22   simply citing a case without telling me anything about the

23   facts in that case, whether or not the ruling is even

24   relevant to the current situation based on a similar fact

25   pattern in that case, is not helpful to me.

*Echo Reporting, Inc.*

8

1          Now, you've cited me to document number 50, which

2  is this opposition to motion to strike, which -- that's not

3  even set for calendar, right?

4          MR. TALKOV:  So that was his opposition to strike

5  the very motion that we're talking about, and in opposing

6  that, I addressed I think this exact issue.

7          So even if the allegations in the complaint are

8  true, an affirmative defense --

9          THE COURT:  Okay.  Again, I want to make sure

10  where we are procedurally on this, because you know, I'm

11  looking at your motion to file an amended answer.

12          MR. TALKOV:  Yes, your Honor.

13          THE COURT:  Okay.  And the plaintiff's motion to

14  strike, okay, is that on calendar?  Was it previously on

15  calendar?

16          MR. TALKOV:  He withdrew that motion for no

17  explained reason in doc 51.

18          THE COURT:  So now you want me to go back and

19  consider something I would not have considered because it

20  was withdrawn?

21          MR. TALKOV:  Well, how about this.  Can I just

22  give you the argument rather than point to the document?

23  It's the same argument, whether it's in a document or not,

24  that your Honor asked whether an affirmative defense would

25  prevail even in a 523(a) action.  And the answer is that an

9

1    affirmative defense is always germane.  If an affirmative

2    defense is met --

3            THE COURT:  No, you're not answering my question,

4    because not all subsections of 523 are the same.  You're

5    answering as if they are.  Okay?

6            So, for example, 523(a)(2)(A) has to do with fraud

7    and fraudulent conduct.  And you know, there may be a case

8    where a debtor has allegedly engaged in fraudulent conduct,

9    and so a 523(a)(2)(A) complaint is filed.  And the defendant

10   says, well, the court should not -- ignore, we can assert

11   unclean hands as a defense because the plaintiff also

12   engaged in fraudulent conduct.  Okay?

13           And I can understand and I could see where an

14   appellate court or any court might rule, well, now I've got

15   to balance the unclean hands and, you know, which party

16   should prevail where both parties have engaged in fraudulent

17   conduct.  Okay?

18           Now, the same might be true in a 523(a)(6),

19   willful and malicious injury.  If there were actions that

20   were taken by the plaintiff that prompted willful -- the

21   alleged conduct.

22           But all subsections are not created equal.  And

23   523(a)(10) is inherently different from 523(a)(2),

24   523(a)(4), 523(a)(6), okay, because the difference there is

25   in each level of 523 -- especially 523(a)(2)(A), 523(a)(6),

10

1  there are generally factual issues there regarding, for

2  example, intent to deceive.  Then you have particular

3  conduct by the plaintiff, presumably, that comes up in the

4  defense.

5         But here, under 523(a)(10) -- and I've tried to

6  stress this numerous times, but I don't seem to be able to

7  effectively communicate this.  523(a)(10) is, in my view,

8  very much a legal issue, because it basically says that you

9  don't get to get a discharge in the current case if you

10  previously waived the discharge or if you were denied a

11  discharge in a prior case.  And so, you know, I don't

12  understand the argument regarding unclean hands, how that

13  possibly wipes away 523(a)(10).

14         MR. TALKOV:  Your Honor, can I go back to that

15  analogy you were drawing.  Let's suppose a debtor is sued

16  for 523(a)(2)(A) and they said, you know what, I --

17         THE COURT:  You mean a creditor.

18         MR. TALKOV:  No, a debtor is sued.  A creditor

19  sued a debtor.

20         THE COURT:  "Is sued."  Okay.  I thought you said

21  "debtor sued."  Sorry.  Go ahead.

22         MR. TALKOV:  Yes.  Debtor is sued under

23  523(a)(2)(A) and the debtor says, "You know what, I did

24  commit a fraud."  So the prima facie case has been met.  And

25  they say, "I want to have a trial solely on the affirmative

1  defense of unclean hands."

2        In your Honor's hypothetical, I don't think

3  there's anything improper.  It may say "There's something

4  awful on this creditor's side that I'm not going to grant

5  this judgment."

6        The same is true here.  He's met his prima facie

7  case.  The Court has ruled that he met the elements of

8  523(a)(10) but that there's no law, there's no rule -- the

9  Moncur case that he cites over and over doesn't mention the

10 word "defenses" or "affirmative defenses" or anything.

11       There's no case that says --

12       THE COURT:  I think it's pretty obvious why there

13 are no cases, okay, because it is strictly a legal question.

14 It is not apples and apples that you are arguing right now.

15 It's completely apples and oranges.

16       MR. TALKOV:  If I understand what --

17       THE COURT:  Basically what you're saying, just so

18 we're clear about this, is that if we have a situation --

19 and this will come under 523(a)(10) -- where a debtor

20 voluntarily waives discharge in the case, that somehow

21 despite 523(a)(10), the debtor gets to reassert a discharge

22 in a subsequent case.

23       I am not aware of any case law that deals with

24 that, and I think it's obvious why there's no case law on

25 that.

12

1        MR. TALKOV:  Can I throw an extra fact in there?

2   What if something in the interim has happened?  So, for

3   example, we don't call this an affirmative defense, but what

4   if the party had waived it?  What if there was a settlement

5   agreement and they had agreed the debt has been satisfied in

6   full?

7        He wouldn't be saying "My God, why are they saying

8   they want a defense under 523(a)(10)?  I should say" --

9        THE COURT:  You're not alleging that at all.

10  There is no agreement between the parties.  No, it's not the

11  same.

12       MR. TALKOV:  But isn't that an affirmative

13  defense?

14       THE COURT:  Absolutely not.

15       MR. TALKOV:  But that's an affirmative defense,

16  your Honor.  That's an affirmative defense of waiver.  Isn't

17  it?

18       THE COURT:  Their waiver of what?

19       MR. TALKOV:  Suppose the parties had settled the

20  case between the last date and this one.  They said, "Here's

21  my settlement agreement.  It says that he's waived all

22  rights.  I paid him some money and we all went our separate

23  ways."  And they said, "I raised the affirmative defense of

24  waiver.  He waived this right when I paid him some money."

25  That would be an affirmative defense and that would prevent

1 the 523(a)(10) action from being granted.

2          Of course, this doesn't happen because everybody

3 knows they've already settled and they wouldn't file an

4 action.  But that's an affirmative defense.  There's nothing

5 wrong --

6          THE COURT:  And it's a highly unlikely one, but

7 okay.

8          MR. TALKOV:  Highly unlikely one, but it's also

9 highly likely that a creditor would take extraordinary steps

10 to shoot themselves in the foot --

11          THE COURT:  This is not -- we're going in circles

12 here.

13          MR. TALKOV:  Your Honor, I --

14          THE COURT:  I have seen nothing in your motion,

15 absolutely nothing in the motion that would support or

16 justify me allowing an amendment to the answer for that

17 purpose.

18          MR. TALKOV:  Your Honor, if I may, I think a lot

19 of these questions are going to be answered in the

20 terminating sanctions motion.

21          THE COURT:  Well, you know, it's funny because

22 originally I had provisionally -- "provisionally" being the

23 operative word -- approved the summary judgment motion to

24 allow you an opportunity to file your terminating motion --

25 your sanctions.  But I said even then -- even then -- should

14

1  you file your terminating motion, you were still going to

2  have to deal with this legal issue.

3         Now, you decided to file an amendment to the

4  answer, okay, on your own instead of just going forward with

5  the terminating sanctions.  So you did that.  And then now

6  there's a motion to strike the answer.  Okay.

7         MR. TALKOV:  But --

8         THE COURT:  Well, and I've looked at the motion

9  and the motion doesn't address the issues that I had raised.

10 And so there's no basis for me to grant the motion.

11        MR. TALKOV:  Understood, your Honor.  We will make

12 sure that everything is fully briefed in the terminating

13 sanctions motion, as I believe your Honor requested in doc

14 29.

15        THE COURT:  Mr. Avetoom?

16        MR. AVETOOM:  And you bring up some interesting

17 points, your Honor, and I think this is an unassailable

18 mountain for him to climb.  He cited no cases that deal with

19 523(a)(10).

20        But I will draw the Court's attention to the case

21 of In re Feliz (phonetic), which is on page two of my

22 opposition.

23        THE COURT:  Hold on.

24        MR. AVETOOM:  That's document 49.

25        THE COURT:  Yes, I have it.

15

1        MR. AVETOOM:  So right around line 14 it talks

2   about Moncur, but on line 16, In re Feliz.  This case

3   basically talked about the ability for other 523 sections to

4   be relitigated downstream, as the Court mentioned.  But it

5   also distinguished that 523(a)(10) was special, it was

6   different, meaning you could potentially relitigate in

7   future bankruptcies dischargeability under (a)(6), (a)(2),

8   (a)(4) but not under 523(a)(10).

9        And that's the sole issue before the Court, is can

10  he obtain relief for what happened in the 2012 bankruptcy.

11  And that's really why your tentative is very on point.

12       He can make all the allegations of what's

13  happening today or in another bankruptcy in the future, but

14  he can't change the past.  A final judgment that was

15  stipulated to, that was covered under 727, and invoke

16  (a)(10).  He can't change that.

17       So even if he puts whatever he wants to put in

18  this motion, whatever facts he can allege in a motion or

19  conduct discovery or whatever, it will not change what

20  happened in the 2012 case and the 2015 stipulated judgment

21  for non-dischargeability.

22       There's no way around that.  There's no case law.

23  He even admitted that on September 9th.  The case law he

24  cited now, I have looked up his case law.  None of them

25  apply to a 523(a)(10) at all.

16

1          MR. TALKOV:  Sir, this matter isn't before the

2    Court.

3          MR. AVETOOM:  I --

4          THE COURT:  Wait, wait.  Stop, Mr. Talkov, because

5    you were citing me to things that weren't before me either.

6    Okay?

7          MR. AVETOOM:  The --

8          THE COURT:  And the <u>Feliz</u> case that he cited is in

9    his opposition to the motion.

10          MR. AVETOOM:  <u>Feliz</u> is pretty much on point, same

11    with (a)(10).  Yes.  Everyone knows that once you have this

12    (a)(10) issue, it's there.  And the Court's right.  It

13    doesn't come up a lot because everybody accepts it.

14          But in this case, I filed the adversary because of

15    this very issue.  And the Court touched on it back on

16    September 9th.  It didn't want this boomerang effect of:

17    Let's talk about this terminating sanctions, but I don't

18    want a boomerang coming back where I've still got to deal

19    with whether or not 523(a)(10) has now dissipated.

20          And the answer to that is no.  And I keep putting

21    this in all the briefs.  No matter what happens in today's

22    bankruptcy, no matter what happens next week, next month or

23    next year, it cannot change what happened in 2012 and the

24    2015 stipulated judgment.

25          So now matter how many facts he digs up or

17

1   allegations, this is an exercise in futility, and I don't

2   know which other way to put it.

3           THE COURT:  Okay.  I understand the argument.

4           Mr. Talkov, you get the final argument.

5           MR. TALKOV:  I think I understand your Honor's

6   concern.  I think we'll brief it all in a terminating

7   sanctions motion.  And we'll have a deposition today at noon

8   and ask him whether he submitted forged documents to this

9   Court, under penalty of perjury.

10          THE COURT:  All right.  I'm --

11          MR. AVETOOM:  I would like to be heard briefly on

12  that, your Honor.

13          THE COURT:  No, no, no.  No, that's beyond the

14  scope of this motion today to amend the answer so I'm not

15  going to keep going back and forth on this.

16          I think it's a legal matter.  Mr. Talkov, you're

17  going to have deal with that.  You're going to have to deal

18  with that Feliz case.  And my tentative ruling will stand.

19  The motion for leave to amend the answer is denied.

20          MR. AVETOOM:  Thank you, your Honor.

21          Your Honor, just a clerical issue.  I think in

22  your tentative you have the parties mixed up in a couple

23  places.

24          THE COURT:  That's possible.  Hold on.  I'll look

25  at it.  Just a minute.

18

1        Okay.  Where does it come up?

2        MR. AVETOOM:  I believe it's in the second

3   paragraph, "Here, Plaintiff's request is denied," which I

4   believe it should be --

5        THE COURT:  Oh, yes.  Yes.  Okay.  I'm changing

6   that right now.  Hold on.

7        MR. AVETOOM:  Okay.

8     (Pause.)

9        THE COURT:  Go ahead.

10        MR. AVETOOM:  And then I believe on the fourth

11   line, "Subsequently this Court originally granted summary

12   judgment on September 9th because Defendant was entitled to

13   judgment as a matter of law."  I believe that should be

14   "Plaintiff."

15        THE COURT:  That is correct.  All right.

16        MR. AVETOOM:  And I believe that was it.

17        Given the judge's tentative, I would ask the Court

18   to just enter the summary judgment and send us back to

19   mediation.

20        THE COURT:  Well, first of all, I'm only going to

21   deal with what's in front of me today, which is the motion

22   to amend the answer.

23        Sorry that you all didn't get to the settlement

24   agreement -- to the settlement conference with Judge

25   Zurzolo.  If the parties are open to me reaching out to

19

1 Judge Zurzolo again to see if he's got some time before the

2 end of the year to do that, I'm happy to do it.

3          As I've indicated to you both before, you know, I

4 don't know how long and how many more years you guys want to

5 litigate this matter, but it seems to me that at some point

6 it would be helpful for both parties to be in a position to

7 put this behind them, because I guarantee you there are

8 better and richer and more positive things going on in life

9 than this litigation.

10          So I'm happy to reach out to Judge Zurzolo and see

11 whether or not he has some time and have my law clerk

12 contact you both, if that's possible, if you guys are

13 agreeable to doing that.

14          MR. TALKOV:  Sure.  He already agreed to have us

15 contact him if we want to schedule one.

16          THE COURT:  Okay.  So you can contact him

17 directly?

18          MR. TALKOV:  It's been six days since I've heard

19 from Mr. Avetoom with regard to the settlement agreement, so

20 I don't think there's a desire to settle, but I could be

21 wrong.

22          MR. AVETOOM:  Well, that's not true.  But the

23 email clearly from Judge Zurzolo's clerk said that we needed

24 to return to Judge Smith, raise the issue with her, and then

25 if we were going to back to Judge Zurzolo, we would have to

20

1  see if that was an option through the Court -- meaning Judge

2  Smith -- and whether Judge Zurzolo's had calendar time.

3          THE COURT:  Okay.  Well, just to short-circuit

4  things, I will communicate with Judge Zurzolo, find out if

5  he has time to do this and then have my law clerk Melissa --

6  but she will contact you all and let you know how to

7  proceed.

8          MR. TALKOV:  Thank you.

9          MR. AVETOOM:  Thanks, your Honor.

10          THE COURT:  All right.  So please keep -- don't

11  take that off the table because sometimes the first effort,

12  the second effort, the fourth effort of settlement doesn't

13  take and maybe the eighth one will.

14          So I do encourage you all to continue to try to do

15  that, because I think it's -- I just think it's a win-win.

16  In any settlement obviously nobody gets 100 percent of what

17  they want, but you do get 100 percent of peace, hopefully.

18          So with that, I will -- my law clerk will be

19  contacting you all to let you know where things stand with

20  Judge Zurzolo.

21          MR. TALKOV:  I'm glad to discuss settlement today

22  at today's deposition as well.

23          Thank you very much, your Honor.

24          THE COURT:  All right.  Good luck to you.

25          MR. AVETOOM:  Thank you, your Honor.

21

1          THE COURT:  Thank you.

2       (Proceedings concluded.)

3

4

5

6

7

8          I certify that the foregoing is a correct

9   transcript from the electronic sound recording of the

10   proceedings in the above-entitled matter.

11

12   /s/Dee Gregory_____         11/21/21_____
    Transcriber                         Date
13

14   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

15

16   /s/L.L. Francisco_____
    L.L. Francisco, President
17   Echo Reporting, Inc.

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

**<u>Exhibit 5</u>**

**Fill in this information to identify the case:**

Debtor 1   Rosa Fridman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:   **21–10513**

FILED

**U.S. Bankruptcy Court
Central District of California**

8/23/2021

**Kathleen J. Campbell, Clerk**

Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Karl Avetoom<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Karl Avetoom | Karl Avetoom |
| Name | Name |
| 1100 Rutland Road<br>Newport Beach, CA 92660 | 1100 Rutland Road #9<br><br>Newport Beach, CA 92660 |
| Contact phone        949–929–4787 | Contact phone        949–929–4787 |
| Contact email        kia002@att.net | Contact email        kia002@att.net |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

Case 8:21-bk-05102-ES   Claim 7-1   Filed 08/23/21   Desc Main Document   Page 2 of 3
Case 8:21-bk-05102-ES   Doc 71   Filed 03/23/22   Entered 12/07/21 14:52   Page 2 of 3
Main Document   Page 87 of 358

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6.** **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7.** **How much is the claim?** | $ 270000.00      **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8.** **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Contract |

| | |
|---|---|
| **9.** **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:** _____<br><br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**   $ _____<br><br>    **Amount of the claim that is secured:**   $ _____<br><br>    **Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>    **Annual Interest Rate** (when case was filed)   _____ %<br><br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| **10.** **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11.** **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410          Proof of Claim          page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  8/23/2021
MM / DD / YYYY

/s/ Karl Avetoom

Signature

Print the name of the person who is completing and signing this claim:

Name  Karl Avetoom

First name    Middle name    Last name

Title

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address  1100 Rutland Road #9

Number   Street
Newport Beach, CA 92660

City  State  ZIP Code

Contact phone  949–929–4787    Email  kia002@att.net

This agreement ("Contract") is entered into on Oct 3, 2019 between Karl Avetoom ("creditor") and Rosa Fridman (Debtor") in her personal capacity and, also in her capacity as Trustee to the Fridman family Trust Estate Established April 14, 2000. Creditor hereby promises not to initiate any foreclosure proceedings on Debtor's property Known as 16542-Black Beard Lane, #304, Huntington Beach, CA 92647 (APN 931-71-030) ("the Property") to satisfy the remaining balance owed to Creditor in Orange county Superior Court case number 30-2010-00345490 (Avetoom v. Avce, Fridman) as long as the Debtor resides in the Property, or until such time that Debtor vacates the property for any reason including assisted living, or in event Debtor files for bankruptcy protection. In consideration, Debtor agrees not to encumber the property. transfer, assign or otherwise dispose of her interest in the Property, pay all property taxes, pay all HOA dues and assessments on said Property and consents to give Creditor a lien against Debtor's undivided interest of 62.3% in the Property as security to satisfy the outstanding balance owed on the Judgment obtained by creditor against Debtor entered November 18, 2011 in 30-2010-00345490.

Creditor

Debtor

Anne Stanton
Oct 3, 2019
Witness

714-853-0761
witness
HERBERT CONRAD
10·3·2019

- END -

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 10/03/2019                    TIME: 09:00:00 AM            DEPT: C66

JUDICIAL OFFICER PRESIDING: Sherri Honer
CLERK: A. Arreola
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: Davon Velasquez, J McMillion

CASE NO: **30-2010-00345490-CU-PO-CJC**  CASE INIT.DATE: 02/18/2010
CASE TITLE: **Avetoom vs. Arce**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: PI/PD/WD - Other

---

EVENT ID/DOCUMENT ID: 73119833

**EVENT TYPE:** Appearance and Examination of Judgment Debtor
MOVING PARTY: Karl Avetoom
CAUSAL DOCUMENT/DATE FILED: Application and Order for Appearance and Examination of
Judgment Debtor, 07/16/2019

---

**APPEARANCES**
Karl Avetoom, Plaintiff is present.
Rosa Fridman, Interested Party is present.
Rosa Fridman, self represented Witness, present.

Certified interpreter Boshyan, Liliya / Armenian (Eastern), Badge Number 301041 is present.  The
certification or registration number has been validated and identification has been verified by the badge
issued by the Judicial Council.  The interpreter oath is on file.  The court provided interpreter is present
to interpret for Rosa Fridman.

Discussion held regarding passed issues with previous examinations. The Court orders both parties to
proceed with the Judgment Debtor Examination.

Back in open court, the Court and both parties discuss further issues with the examination and
production of documents. Judgment Creditor also requests Judgment Debtor's son not be present during
the examination because of constant interruptions during the examination.

Judgment Creditor is also requesting a turn over order in the courtroom.

Judgment Creditor was handed $59.00 in cash in open court.

Judgment Creditor requests a continuance to have Judgment Debtor produce page 3 of the trust.

Appearance and Examination of Judgment Debtor Rosa Fridman continued to 10/31/2019 at 09:00 AM
in this department pursuant to party's motion.

Judgment Debtor to produce page 3 of the trust document discussed in open court.

---

DATE: 10/03/2019                        MINUTE ORDER                        Page 1
DEPT: C66                                                            Calendar No.

CASE TITLE: Avetoom vs. Arce

Case 8:21-bk-10513-ES    Doc 7-1 Filed 12/13/21 Entered 12/07/21 21:22 Page Ref 9
Main Document    Page 91 of 358    CASE NO: 30-2010-00345490-CU-PO-CJC

The Court informs Judgment Debtor her son may not be present during the examination.

Rosa Fridman is/are ordered to return.

**Russian Interpreter is/are ordered to return.**

341 MEETING OF CREDITORS

CHAPTER 7 BANKRUPTCY

CENTRAL DISTRICT OF CALIFORNIA (SANTA ANA)

IN RE:                          )
                                )
                                )
ROSA A. FRIDMAN,                )   CASE NO:  8:21-bk-10513-ES
                                )
                    Debtor.     )
_____ )

DATE:           TUESDAY, JUNE 29, 2021

PRESIDING OFFICIAL:  TODD FREALY

APPEARANCES:            SEE PAGE 2

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

<u>APPEARANCES FOR</u>:

Debtor:                      SCOTT TALKOV, ESQ.
                             Talkov Law
                             2900 Adams Street
                             Suite C225
                             Riverside, CA 92504


Karl Avetoom:                KARL AVETOOM, PRO SE
                             1100 Rutland Rd.
                             No. 9
                             Newport Beach, CA 92660


Trustee:                     MELISSA DAVIS LOWE, ESQ.
                             Shulman Bastian Friedman & Bui
                             100 Spectrum Ctr. Drive
                             Suite 600
                             Irvine, CA 92618


Interpreter:                 Andrey, ID #324281

3

```
 1                              INDEX
```

 2   WITNESS EXAMINATION                                    PAGE

 3   ROSA FRIDMAN

 4     BY MR. FREALY                                         5

 5     BY MR. AVETOOM                                        9

 6     BY MS. LOWE                                          36

 7     BY MR. TALKOV                                        41

```
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1          Whereupon the following 341 Meeting of Creditors was held:

2                    Tuesday, June 29, 2021; 8:01 a.m.

3                    MR. FREALY:  Number 45 on the calendar, Rosa

4     Fridman, Case Number 21-10513.

5                    MR. TALKOV:  Good afternoon, Mr. Trustee.  This is

6     Scott Talkov on behalf of the Debtor.

7                    MR. FREALY:  Good afternoon.

8                    MR. TALKOV:  And the Debtor does request a

9     Russian interpreter.

10                   MR. FREALY:  Very well.  And is she on the line?

11                   MR. TALKOV:  I believe she is.

12                   MR. FREALY:  All right.  Well, we'll get --

13                   MR. TALKOV:  Rosa, are you available?¶

14                   THE DEBTOR:  Yes.

15                   MR. FREALY:  Okay.  I'll get the interpreter.  One

16     moment.

17                 (Trustee makes telephone call to interpreter)

18                   THE INTERPRETER:  Good afternoon.  My name is

19     Andrey.  Can I help you?

20                   MR. FREALY:  Hello.  Yes, this is a bankruptcy

21     examination.  I believe the Debtor is on the line.  Can you spell your

22     name, please?

23                   THE INTERPRETER:  A-n-d-r-e-y.

24                   MR. FREALY:  Andrey, okay.  Thank you.  And what

25

```
1          A    I don't remember when.

2          Q    Did you take any bankruptcy preparation or training

3    classes in 2019?

4          A    No.

5          Q    Has anyone in the last two years -- so let's say from

6    January 2019 until the date you filed your bankruptcy petition -- have

7    they filed any court action to foreclose on your Blackbeard Lane

8    property?

9                    MR. TALKOV:  Can you repeat the question?  I didn't

10   understand it.

11         A    I don't know.

12         Q    I'll repeat the question. Since January of 2019 until the

13   date she filed bankruptcy in February of 2021, has anyone filed any

14   legal case to force the sale of her Blackbeard Lane property?

15                   MR. TALKOV:  Oh, (indisc.) the foreclosure.  I

16   appreciate you clarifying.  Thank you.

17         A    No.

18         Q    Well, why did you decide to file bankruptcy in 2021 of this

19   year?

20         A    I don't have money.

21         Q    Has your money stayed the same -- your income stayed

22   the same in the last two years?

23                   THE INTERPRETER:  I didn't hear that.

24         A    I didn't know what to say.
```

44

1       (Proceeding ended)

2

3                            CERTIFICATION

4

5          I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8

9

10  _____        August 9, 2021_

11

12

13

14                    TONI HUDSON, TRANSCRIBER

15

16

17

18

19

20

21

22

**Exhibit 6**

1   Karl Avetoom
2   1100 Rutland Road # 9
    Newport Beach, CA 92660
3   (949) 929-4787
    Email kia002@att.net
4

5

6   Creditor and Plaintiff, In Pro Per

7

8                  UNITED STATES BANKRUPTCY COURT

9         CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

10  In re:                              )   Case No:    8:21-bk-10513-ES
                                        )
11  Rosa Fridman                        )   Adversary Case No:  8:21-ap-01023-ES
                                        )
12                         Debtor       )   Hon:  Erithe A. Smith
                                        )
13  _____    )   Chapter 7
                                        )
14  Karl Avetoom                        )
                                        )   **PLAINTIFF'S REPLY TO DEFENDANT'S**
15                    Plaintiff         )   **OPPOSITION TO MOTION FOR SUMMARY**
                                        )   **JUDGMENT.  SUPPORTING DECLARATIONS**
16            v.                        )   **OF CHARLES L. MURRAY AND KARL**
                                        )   **AVETOOM**
17  Rosa Fridman                        )
                                        )
18                    Defendant         )   **Hearing Info:**
                                        )   September 9, 2021 2:00 p.m.
19                                      )   Crtrm. 5A 411 W. Fourth St. Santa Ana CA 92701
20  _____

**TO THE HONORABLE ERITHE A. SMITH, FEDERAL BANKRUPTCY JUDGE, TO**
21
**DEFENDANT ROSA FRIDMAN AND HER ATTORNEY OF RECORD, AND TO ALL**
22
**OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**  Plaintiff KARL
23
AVETOOM ("Plaintiff") hereby submits his Reply to Defendant's Opposition to Plaintiff's Motion for
24
Summary Judgment pursuant to 11 U.S.C. § 523(a)(10).
25

26

27

28

                                        i

**TABLE OF CONTENTS.**

I.      INTRODUCTION. ................................................................................................ 1

II.     THERE ARE NO TRIABLE ISSUES OF FACT AS DEFENDANT'S AFFIRMATIVE
        DEFENSES FAIL AS A MATTER OF LAW. ............................................................ 3

III.    DEFENDANT'S OPPOSITION CAN BE SUMMED UP AS DEFENDANT IS OLD AND
        ABOVE THE LAW.  DEFENDANT WANTS TO CONTINUE TO USE AD HOMINEM
        ATTACKS THAT BRANDED HER A RACIST AND GAVE WAY TO THE 2011 MILLION
        DOLLAR JUDGMENT. ....................................................................................... 5

IV.     SECTION 523(A)(10) IS NOT NARROWLY CONSTRUED AS DEFENDANT IS AN
        ADMITTED DISHONEST DEBTOR, OUTSIDE THE LAW FROM *COX* AND *GROGAN*... 6

V.      DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR WAIVER. ................................... 7

        A.   *Under California Law And Circuit Law, Taking The Entire Contract As A Whole
             Shows The Waiver Related To "This" Case, Meaning The 2015 Case.  The 2019
             Settlement Is A Contract By Law.* ................................................................ 9

VI.     DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR MODIFICATION. ...................... 11

VII.    DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR NOVATION. ............................ 11

VIII.   DEFENDANT'S SHAM AFFIDAVITS ARE INSUFFICIENT TO CREATE A TRIABLE
        ISSUE GIVEN DEFENDANT'S LONG HISTORY UNDER OATH OF ADMITTING TO
        THE CONTINUED ENFORCEABLITY OF THE 2011 JUDGMENT. .................................. 12

IX.     DEFENDANT HAS NOT JUSTIFIED HER NEED FOR DISCOVERY THAT
        WARRARNTS DENIAL OF PLAINTIFF'S MOTION. RATHER HER NEED
        DEMONSTRATES HER PROPENSITY FOR DISCOVERY ABUSE. ................................. 13

X.      CONCLUSION. ................................................................................................ 15

# TABLE OF AUTHORITIES.

**Cases**

*Applied Professional Training, Inc. v. Mira Costa College* (S.D. Cal., Sept. 28, 2010, No. 10CV1372 DMS POR) 2010 WL 3834010 ............................................................................................... 8

*Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 ....................................................... 10

*Avetoom v. Arce, Fridman* OCSC Case No. 30-2010-00345490 ............................... 2, 3, 8, 14

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................................... 11

*City of Ukiah v. Fones* (1966) 64 Cal.2d 104 ............................................................................. 6

*Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52, 59 (3d Cir.1997), *aff'd* 523 U.S. 213 (1998)............. 6

*Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18 ......................... 10

*Foster v. Arcata Assocs., Inc.,* 772 F.2d 1453 (9th Cir.1985) ................................................. 12

*Grogan v. Garner,* 498 U.S. 279 1991) ...................................................................................... 6

*Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009) ..................... 7, 10

*Howard v. County of Amador* (1990) 220 Cal.App.3d 962 ....................................................... 11

*In re Britton,* 950 F.2d 602 Cir.1991) ......................................................................................... 6

*In re Cox,* 41 F.3d 1294 (9th Cir. 1994) ................................................................................... 5, 6

*In re Faramarz Bijan Khounani* (B.A.P. 9th Cir., Feb. 2, 2017, No. 8:15-AP-01483-TA) 2017 WL 460968 ...................................................................................................................................... 5

*In re Moncur* (B.A.P. 9th Cir. 2005) 328 B.R. 183 ............................................................ 1, 4, 6

*In re Verity Health System of California, Inc.* (Bankr. C.D. Cal. 2018) 598 B.R. 283 ............ 7

*Jefferson v. California Dept. of Youth Authority* (2002) 28 Cal.4th 299 .................................. 7

*Meadows v. Lee* (1985) 175 Cal.App.3d 475 ........................................................................... 10

*People v. Mitchell* (2011) 197 Cal.App.4th 1009 ....................................................................... 6

*Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934 (9th Cir. 2017) .................................................. 7

*Van Asdale v. International Game Technology* (9th Cir. 2009) 577 F.3d 989 ......................... 12

*Wade v. Diamond A Cattle Co.* (1975) 44 Cal.App.3d 453 ...................................................... 10

**Statutes**

11 U.S.C. § 523(a)(10) ......................................................................................................... 4, 5, 6

11 U.S.C. § 727 ........................................................................................................ 4, 5, 6

Cal. Civ.Code § 1542 .............................................................................................. 2, 7, 8, 9

Cal. Civ.Code § 1641 ...................................................................................................... 8

Cal. Civ.Code § 1636 ...................................................................................................... 10

Cal. Civ.Code § 1689 ...................................................................................................... 10

Cal. Civ.Code § 1698 ...................................................................................................... 10

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

## I. **INTRODUCTION.**

Defendant's Opposition is fatally flawed for the same reasons Rosa Fridman lost at trial in 2011. Resorting to the same ad hominem attacks, she relies on a questionable 25 year old conviction to justify her racist, outrageous and admittedly fraudulent conduct that led the jury to issue an award with a finding it was supported by clear and convincing evidence. Judge Karen Robinson ruled in denying Defendant's post-trial motions, that Defendant's repeated attacks using the 1997 conviction to stigmatize Plaintiff sufficiently demonstrated Defendant's outrageous conduct that it warranted an award of punitive damages.

Defendant's new attorney continues to rely on this conviction in a desperate attempt to have this Court ignore 9th circuit law that clearly states, ***once a debt is non-dischargeable, it is forever non-dischargeable***. *In re Moncur* (B.A.P. 9th Cir. 2005) 328 B.R. 183, 186. Defense counsel has resorted to proffering "sham" affidavit and amending schedules the day he filed his Opposition, in a desperate attempt to mislead this Court into believing there are triable issues. See Amended Schedule D filed August 19, 2021 (Case 8:21-bk-10513-ES Doc 90 Filed 08/19/21, pages 8-9) to falsely disputes ## 2.4, 2.6 and 2.7. Defendant's pleadings, under oath, have now changed for fraudulent reasons.

Defendant's counsel, as a desperate diversion, makes much ado about the 2020 judgment, claiming its non-inclusion is the end to his problems. This case is about the 2011 Judgment. All the 2020 Judgment did was confirm the 2011 Judgment remained independently enforceable. Missing is any offering from the Defendant's former attorney who negotiated the Settlement. Defendant under oath on July 9, 2019 stipulated that the 2011 Judgment was enforceable against her individually and in her capacity as Trustee to the Fridman Family Trust. She now claims that the Trust is only liable in her "sham" affidavit. See ECF Case 8:21-ap-01023-ES Doc 21 Filed 08/19/21 page 17 ¶ 4 *"I reached this conclusion is because the 2020 Judgment allowed him to hold The Fridman Family Trust Established on April 14, 2000, liable for the debt originally evidenced by the 2011 Judgment…"* But in 2019 Debtor agreed under oath to the Opposite:

> ROSA FRIDMAN STIPULATE THAT THE JUDGMENT IN CASE
> AVETOOM VERSUS ARCE, A-R-C-E, CASE NUMBER 30-2010-
> 00345490 IS VALID AGAINST HER INDIVIDUALLY **AND AS
> TRUSTEE OF FRIDMAN FAMILY TRUST**.

See ECF Doc 9, page 230 (Reporter's Transcript July 9, 2019).

1

In addition, the State Court ruled on February 13, 2020 that the Trust cannot legally own any assets. ECF 9, page 249 ¶ 1.

> **To the extent that any party is suggesting that a trust can hold title to assets this is not the law. The law is clear, a trust is not a person or legal entity that can hold title to assets, nor can it sue, or be sued.** Therefore, assets of the trust are held in the name of the trustee, as is the case herein. (See Galdjie v. Darwish (2003) 113 Cal.App.4th 1331, 1344; Greenspan v. LADT, LLC (2010) 191 Cal.App.4th 486, 496; Portico Mgmt. Group, LLC v. Harrison (2011) 202 Cal.App.4th 464, 474.)

Again, Defendant's representations that the Trust would be liable is soundly rejected by Defendant's prior representation under oath that she remains liable individually and in her capacity as a Trustee, not the Trust.  Unless Defendant is now admitting that she intended to defraud Plaintiff into entering into a Settlement, a contract under California law, that offered no consideration to escape liability for the fraudulent transfer case.

The Fridmans and their attorneys have still not learned that they cannot change stories from one court to another.  This Court admonished Defendant's counsel in 2015 for doing so.  The Court of Appeal did so in *Fridman v. Beach Crest* where Defendant's attorney claimed the Fridmans retained an interest in the same judgment that *this* Court previously ruled the Fridmans had no legal or equitable interest in.  Now the Debtor lists a claim against these attorneys after threatening them with a lawsuit for breach of fiduciary duty.  See ECF Doc 9, pg. 222.

The 2020 Judgment arose from the July 9, 2019 Settlement where Debtor agreed under oath that the 2011 Judgment was still enforceable and that the Settlement and its terms, including the 1542 waiver, only applied to the 2015 fraudulent transfer case.  Defendant can only rely on her continued "sham" offerings which are contradicted by years of her sworn testimony and pleadings affirming her belief that the 2011 Judgment remains independently enforceable.

Defendant signed a contract on October 3, 2019 affirming her position that the 2011 judgment remains independently enforceable, conveying a consensual lien in exchange for Plaintiff not initiating judicial foreclosure proceedings on her to satisfy part of his unpaid debt.

//

//

2

## II. **THERE ARE NO TRIABLE ISSUES OF FACT AS DEFENDANT'S AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW.**

Defendant's unpersuasive claim that triable issues of fact exist for affirmative defenses is equally flawed. Defendant has used a "sham pleading" to try and create the illusion of disputed facts. On the day Debtor filed her Opposition, Debtor amended her Schedules and changed the status of Plaintiff's 2011 judgments to "disputed." The timing of this wreaks of fraud. So does the declaration of Defendant Rosa Fridman who now claims she thought the 2019 Settlement memorialized in a 2020 Judgment waived all rights for Plaintiff to enforce the 2011 Judgment. The Transcript of Proceedings from the 2019 Settlement establishes the C.C.§ 1542 waiver only applied to the 2015 case. Defendant's counsel takes one sentence out of context knowing that under California and 9th Circuit law, a court must view the entire contract as a whole, which here, includes the scope of the 1542 waiver, which by Defendant's own statements in the Contract, resolved only the 2015 matter.

In 2019, the Trial Court told Debtor that Plaintiff was free to continue enforcement proceedings for the 2011 Judgment (Murray Dec. 9. pg 149 ¶ 4) Defendant represented by counsel and, under oath, agreed to the continued enforcement of the 2011 Judgment by Plaintiff. She received copies of the proposed 2020 Judgment and never disagreed that the 2011 Judgment remained enforceable.

Defendant has appeared, testified under oath, in numerous 2011 Judgment enforcement proceedings. She has submitted filings to this day that establish the 2011 Judgment is still independently enforceable. Defendant must now think the Orange County Court is conducting hearings and issuing 2011 enforcement orders for no apparent reason. But then again, Defendant online campaign insulted both this Court with racial slurs, and Judge Karen L. Robinson's intelligence showing the Fridmans have no respect for the American legal system. Judge Robinson labeled their conduct as "highly offensive to our entire system of justice."

In November 2020 the State Court initiated a *separate* judgment debtor examination for Defendant under the *Avetoom v. Risbrough* 2015 case 30-2015-00820760 for the 2020 judgment. Since 2019, there are two separate judgment enforcement proceedings ordered by the State Court.

In January 2021 Defendant filed a document stating nineteen times she was in compliance with a Court Order for enforcement of the 2011 Judgment in the 2010 *Avetoom v. Arce, Fridman* matter,

case no. 30-2010-00345490.  On August 20, 2021 Defendant and her Bankruptcy attorney Scott
Talkov appeared before the State Court in the 2011 judgment enforcement proceedings and again
never claimed that the 2011 Judgment was not enforceable.

Debtor's conduct, attending numerous Judgment Debtor Exams for the 2011 State Court
judgment since 2019 through 2021, Defendant's January 2021 "Notice of Compliance" filed in the
State Court containing nineteen answers stating she has complied with producing records for the
enforcement of the 2011 Judgment never once stated the judgment was waived, substituted, erased by
a novation, or no longer enforceable.  Defendant, supported by Scott Talkov, filed an Answer to the
Order to Show cause, again failing to raise at any time the 2011 Judgment was no longer enforceable.

On August 20, 2021 Defendant and Scott Talkov appeared for Defendant's arraignment for two
counts of contempt.  Again, no mention that the court was conducting a contempt proceeding
stemming from an unenforceable judgment.

The biggest problems are Defendant's stipulation that the 2011 Judgment against her remains
enforceable against her as demonstrated in her 2019 stipulation under oath before the State Court, and
in the 2020 incarnation of the relating Judgment (Avetoom declaration Exhibit "1", Reporter's
Transcript July 9, 2015 *Avetoom v. Risbrough, et al*).

In addition on October 3, 2019 after Defendant now desperately and fraudulently claims she
didn't believe the 2011 judgment was enforceable, Defendant signed a contract with Plaintiff affirming
the continued enforceability of the 2011 judgment, exchanging a consensual lien for Plaintiff's promise
not to initiate foreclosure proceedings against Defendant (Avetoom declaration Exhibit "2").

In addition, Defendant continues to appear for enforcement proceedings for the 2011 Judgment
(OCSC Case No. 30-2010-00345390).  And Defendant was served with a judgment debtor
examination Order for the 2015 case, relating to the separate 2020 judgment (Exhibit "3").

Defendant Rosa Fridman falsely asserts in her Declaration in Opposition that she opined the
2011 judgment was no longer enforceable (Rosa Fridman Decl. ¶¶ 3, 4).

However, Defendant has acted to the contrary by participating, testifying under oath and by
submitting documents for the enforcement of the 2011 Judgment in *Avetoom v. Arce, Fridman* OCSC
Case No. 30-2010-00345490 for over two years.

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

| | | |
|---|---|---|
| 1 | August 29, 2019 | *Judgment Debtor Exam for 2011 Judgment* (Exh. "3") |
| 2 | October 3, 2019 | *Judgment Debtor Exam for 2011 Judgment* (Exh. "4") |
| 3 | October 31, 2019 | *Judgment Debtor Exam for 2011 Judgment* (Exh. "5") |
| 4 | August 31, 2020 | *Judgment Debtor Exam for 2011 Judgment* (Exh. "6") |
| 5 | September 21, 2020 | *Judgment Debtor Exam for 2011 Judgment* (Exh. "7") |
| 6 | November 16, 2020 | *Judgment Debtor Exam for 2011 Judgment & Motion to Compel* |
| 7 | | *Production of Documents to Enforce 2011 Judgment* (Exh. "8") |
| 8 | November 26, 2020 | *Notice of Compliance, 19 responses not disputing enforcement* |
| 9 | | *2011* (Exh. "9") |
| 10 | November 23, 2020 | *Order Judgment Debtor Exam for **2020 Judgment.** (Exh. "10")* |
| 11 | December 23, 2020 | *Continuance of Judgment Debtor Exam 2011 Judgment* (Exh. |
| 12 | | "11") |
| 13 | June 21, 2021 | *Opposition to OSC Re: Contempt* (Exh. "12") |
| 14 | June 28, 2021 | *OSC: Contempt Orders for enforcement of 2011 Judgment* (Exh. |
| 15 | | "13") |
| 16 | August 20, 2021 | *Arraignment for Contempt charges.* (Exh. "14") |

Defendant's conduct and testimony under oath in the 2011 Judgment enforcement proceedings defeats her sham claim that there has been a waiver by the parties to enforce the 2011 Judgment.

### III. <u>DEFENDANT'S OPPOSITION CAN BE SUMMED UP AS DEFENDANT IS OLD AND ABOVE THE LAW. DEFENDANT WANTS TO CONTINUE TO USE AD HOMINEM ATTACKS THAT BRANDED HER A RACIST AND GAVE WAY TO THE 2011 MILLION DOLLAR JUDGMENT.</u>

The opening pages of the Opposition are simply copy and pastes from Defendant's recent filings in State Court and in this Court. Unable to address the unassailable law against her, Defendant tries to draw attention away from her 2015 admission of multiple counts of fraudulent conduct and lying under oath *before this Court* that resulted in the denial of discharge under Section 727. The

5

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

consequences, as a matter of law, under 11 U.S.C. § 523(a)(10) is that Plaintiff's 2011 Judgment is forever non-dischargeable.  *In re Moncur*, 328 B.R. at 186.

Defendant offers **no** law to support her position that her continued attacks that disgusted Judge Karen L. Robinson can abrogate the 9th circuit law that forever holds Plaintiff's 2011 judgment, in whatever amount, ***once non-dischargeable, forever non-dischargeable***.  Defendant can offer no law for this Court can rely on that, because Defendant is old, she is immune from the consequences of her 2011 outrageous, racist conduct.  The consequences of her 2015 admission before this Court of five violation of § 727 caused all of her debts in her 2012 Chapter 7 case to be forever non-dischargeable.

Neither her blaming all of her bankruptcy attorneys and this Court, nor falsely claiming in the State Court that Defendant was forced into the 2015 non-discharge stipulation, are even remotely persuasive or credible.

## IV.  <u>SECTION 523(A)(10) IS NOT NARROWLY CONSTRUED AS DEFENDANT IS AN ADMITTED DISHONEST DEBTOR, EXCLUDED FROM *COX* AND *GROGAN*.</u>

Defendant's Opposition mistakenly relies on general law that construes discharge narrowly against the debtor.  However the 9th Circuit BAP rejected this argument specifically for 11 U.S.C. § 523(a)(10).

See *In re Faramarz Bijan Khounani* (B.A.P. 9th Cir., Feb. 2, 2017, No. 8:15-AP-01483-TA) 2017 WL 460968, at *4 "While this Panel recognizes that non-dischargeability claims should be construed narrowly in the debtor's favor, <u>nothing in § 523(a)(10) even remotely supports Khounani's reading of the statute</u>."  The BAP confirmed summary judgment as a matter of law.

> **[O]nly two straightforward elements are required**: 1) that the claim at issue was a pre-petition claim in an earlier bankruptcy case, and 2) that the debtor either waived his discharge or was denied his discharge under certain subsections of § 727(a) in that prior case.
>
> Premier Capital established in its summary judgment motion that there is no genuine dispute that the Superior Court Judgment is non-dischargeable under <u>§ 523(a)(10)</u>. Khounani was denied his Chapter 7 discharge in 2003 under <u>§§ 727(a)(2)(A), (a)(3) and (a)(4)(A)</u>. He also listed Premier Capital's Guarantee claim on his 2002 Bankruptcy Schedule F. These two

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

facts render the Superior Court Judgment (in whatever amount it represents) non-dischargeable under § 523(a)(10). Id. *emphasis added*.

Defendant's reliance on *In re Cox*, 41 F.3d 1294, 1297 (9th Cir. 1994) is misplaced and supports established law that dishonest fraudulent debtors, such as Defendant, are precluded from a "fresh start". *Cox* is so factually opposite it actually hurts Defendant who is admittedly dishonest.

In *Cox* the Court held at pg 1297: The Supreme Court has recognized that while the "fresh start" is "a central purpose of the [Bankruptcy] Code," this opportunity is limited to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286–87 (1991); *see In re Bugna,* 33 F.3d at 1059; *In re Britton,* 950 F.2d 602, 606 (9th Cir.1991). The Court found Mrs. Cox had not participated in the malfeasance. Here, by contrast, in January 2015 Debtor Rosa Fridman admitted by stipulation before this very Court to defrauding her creditors, admitting to multiple violations of 11 U.S.C. § 727(a)(2), (4) and (5). Defendant is admittedly a dishonest debtor, outside the protections of *Grogan.*

See *Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52, 59 (3d Cir.1997), *aff'd* 523 U.S. 213 (1998). "Where a debtor has committed fraud under the code, he is not entitled to the benefit of a policy of liberal construction against creditors." In 2015 Defendant admitted to fraud under the bankruptcy code. She is excluded from the protections of *Cox, Grogan* and *In re Cohen.*

As a matter of law, Defendant's stipulation to denial of discharge for fraud in her 2012 bankruptcy case has lasting consequences. All debts that were or could have been listed are forever non-dischargable under Section 523(a)(10) *In re Moncur*, 328 B.R. at 186.

## V.    **DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR WAIVER.**

Waiver is defined "as 'an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, **and the conduct of the accused**.' " 'The valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived. [Citations.]' [Citation.] It ' "is the intelligent relinquishment of a known right after knowledge of the facts." [Citation.]' **The burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the**

7

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

matter to speculation, and doubtful cases will be resolved against a waiver. [Citation.]. *People v. Mitchell* (2011) 197 Cal.App.4th 1009, 1015. The burden, moreover, is on the party claiming a waiver of a right to prove it <u>by clear and convincing evidence</u> that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver. *City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107–108.

"Waiver is the voluntary relinquishment of a known right or conduct such as to warrant an inference to that effect. It implies knowledge of all material facts and of one's rights, **together with a willingness to refrain from enforcing those rights."** *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009). Waiver also occurs when a "party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017). *In re Verity Health System of California, Inc.* (Bankr. C.D. Cal. 2018) 598 B.R. 283, 289. <u>This is not the case by Defendant and Plaintiff's conduct.</u>

Plaintiff and Defendant have attended numerous enforcement proceedings for the 2011 judgment since the 2019 Settlement. Defendant submitted a document with some 19 plus responses responding to questions for enforcement of the 2011 Judgment (Exhibit "9" *Notice of Compliance* January 2021). Defendant filed an Answer to the OSC re: Contempt, again never claiming there was a waiver of enforcement of the 2011 Judgment (Avetoom decl. Exh. "12"). Defendant's conduct since 2019 and Plaintiff's conduct does not establish that the independent enforcement of the 2011 Judgment was waived in any form. That conduct proves that there was no waiver.

The Court in *Jefferson v. California Dept. of Youth Authority* (2002) 28 Cal.4th 299, 308 held that a § 1542 waiver was restricted to claims arising under the case. '[T]he court noted that the order approving the settlement referred only to " **'settling *this* case.' "** in finding that the §1542 waiver was limited to the current matter, not to all claims in existence. Same as this matter where Defendant clearly stated under oath on July 9, 2019 that she understood the Settlement and its included waiver settled only the 2015 fraudulent transfer case. Contract law requires <u>all terms</u> are taken as a whole:

The State Court was clear, the 2011 Judgment was not waived by the 2019 Settlement that was reiterated in the 2020 Judgment. See also Murray decl. ¶ 3. See also Avetoom decl ¶ 20, 21.

See excerpts from Reporter's Transcript July 9, 2019 from Doc 9, Pages 236, 238~239.

8

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

MR. MOKRI: OKAY. WITH THIS SETTLEMENT AGREEMENT,
**THIS WILL BE THE END OF <u>THIS</u> COURT PROCEEDING**; DO YOU
UNDERSTAND THAT?

MR. FRIDMAN: SHE SAID, **"YES."**  (RT 8:1-8)

MR. MURRAY: YOUR HONOR, I WANT TO MAKE SURE THAT
MY CLIENT DOES NOT WAIVE HIS RIGHTS TO ENFORCE THE
UNDERLYING JUDGMENT.

THE COURT: PART OF THIS AGREEMENT WAS THAT **<u>THEY</u>**
**<u>ARE CONFIRMING THE UNDERLYING JUDGMENT AND ITS</u>**

**<u>ENFORCEABILITY</u>** WILL BE OCCASIONED BY THE RECORDING OF THE

ORDER YOU ARE GOING TO ASK ME TO SIGN.

Defendant cannot rely on the Civil Code § 1542 waiver in the 2019 Stipulation and 2020
Judgment to establish by the necessary <u>clear and convincing standard</u> that the parties agreed to waive
enforceability of the 2011 Judgment.  Defendant, under oath in the 2019 Stipulation before a State
Court, affirmed she was entering into a settlement with a waiver limited to only "this" case, meaning
the 2015 Fraudulent Transfer case.  Defendant's counsel improperly takes one sentence from a contract
out of context in a failed attempt to get around California contract interpretation.

**In examining a contract with a § 1542 waiver, courts do not view each term in isolation,
"[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably
practicable, each clause helping to interpret the other."** Cal. Civ.Code § 1641. *Applied Professional
Training, Inc. v. Mira Costa College* (S.D. Cal., Sept. 28, 2010, No. 10CV1372 DMS POR) 2010 WL
3834010, at *4.

a.    *Under California Law And Circuit Law, Taking The Entire Contract As A Whole*
      *Shows The Waiver Related To "This" Case, Meaning The 2015 Case.  The 2019*
      *Settlement Is A Contract By Law.*

MR. MOKRI:  … ROSA FRIDMAN STIPULATE THAT THE JUDGMENT
IN CASE AVETOOM VERSUS ARCE, A-R-C-E, CASE NUMBER 30-2010-
00345490 IS VALID AGAINST HER INDIVIDUALLY AND AS TRUSTEE
OF FRIDMAN FAMILY TRUST.  (Doc 9, pgs. 230-240  RT)

9

1    MR. MOKRI: DO YOU HAVE ANY QUESTIONS FROM ME OR
2    THE COURT ABOUT THE SETTLEMENT AGREEMENT?

3    MR. FRIDMAN: **SHE IS ASKING IF THIS WILL BE THE
      END OF THIS COURT PROCEEDINGS**.

4    MR. MOKRI: OKAY. WITH THIS SETTLEMENT AGREEMENT,
5    **THIS WILL BE THE END OF THIS COURT PROCEEDING**; DO YOU
6    UNDERSTAND THAT?

7    MR. FRIDMAN: SHE SAID, **"YES."**  (RT 8:1-8)

8    MR. FRIDMAN: SHE IS ASKING IS IT GOING TO BE
9    COMPLETELY DONE ONCE YOU FILE --

10   MR. MURRAY: **THIS CASE WILL BE RESOLVED**.  (RT 9:4-6)

11   THE COURT: COUNSEL, PART OF THE AGREEMENT WAS
12   THERE WOULD BE A 1542 WAIVER AND THAT TAKES CARE OF ANY
      CLAIMS BETWEEN THESE FOLKS FOR ALL HISTORY.

13   MR. MOKRI: CORRECT, YOUR HONOR.
14
15   MISS FRIDMAN, DO YOU UNDERSTAND THAT WITH
      SIGNING THIS SETTLEMENT AGREEMENT, **THIS IS GOING TO
16   RESOLVE THIS CASE** BETWEEN YOU AND KARL AVETOOM?  (RT
17   9:11-17)

18   MR. MURRAY: YOUR HONOR, I WANT TO MAKE SURE THAT
19   MY CLIENT DOES NOT WAIVE HIS RIGHTS TO ENFORCE THE
      UNDERLYING JUDGMENT.

20   THE COURT: PART OF THIS AGREEMENT WAS THAT **THEY
21   ARE CONFIRMING THE UNDERLYING JUDGMENT AND ITS
      ENFORCEABILITY** WILL BE OCCASIONED BY THE RECORDING OF
22   THE ORDER YOU ARE GOING TO ASK ME TO SIGN. SO I CAN ONLY
      ASSUME FROM THAT, THAT PART OF THE AGREEMENT IS THERE
23   WILL BE A LIEN ON PROPERTY THAT WILL BE ESTABLISHED BY
24   THIS AND CONFIRMED BY THIS BECAUSE I THINK THERE IS AN
      ABSTRACT OF JUDGMENT ALREADY, IF I'M NOT MISTAKEN FROM
25   READING DOCUMENTS.

26   MR. MOKRI: YES, YOUR HONOR.
27
28   THE COURT: **THOSE ARE PERFECTED RIGHTS. WE ARE
      NOT DOING ANYTHING ABOUT PERFECTED RIGHTS.**

---

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

MR. MOKRI: **YOUR HONOR, THE TERMS OF THE AGREEMENT SAYS ROSA FRIDMAN STIPULATED THAT <u>THE JUDGMENT IS ENFORCED.</u>**

THE COURT: YES. THAT IS WHAT I UNDERSTOOD. THANK YOU.    (RT 10:23~11:16)

Defendant has failed to establish Plaintiff ever waived his right to enforce the 2011 Judgment against her.  Given the irrefutable evidence comprised of her own words under oath and conduct that there was never "**a willingness to refrain from enforcing those rights.**" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009).  See also *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 863 holding all doubts as to the scope of a release must be resolved against the release when ample evidence existed that the release was limited to Worker's Compensation claims, and not all claims.  The same applies here.

## VI.  <u>DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR MODIFICATION.</u>

Defendant desperately claims that the 2020 Judgment was a modification of the 2011 State Court judgment.  **Defendant's Opposition mistakenly argues** California Civil Code section 1698, subdivision (a) states: "A contract in writing may be modified by a contract in writing."  The fatality of this argument is patent in Defendant's own authority.   The 2011 Judgment is not a contract. It is TORT liability that arose from a unanimous jury verdict.   There is no "contract in writing" that can be modified by a subsequent writing.

Defendant's modification argument fails as she does not understand the difference between a contract, and a 2011 judgment based upon a TORT.  As a matter of law, there can be no modification of a tort damage award under a contract defense that requires the existence of an earlier contract, which does not exist here.

## VII.  <u>DEFENDANT HAS NO AFFIRMATIVE DEFENSE FOR NOVATION.</u>

Novation is a **contractual** doctrine. In general the parties to a contract are free to determine for themselves their respective rights and liabilities so long as the purposes and effects of their agreement

11

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

are lawful. (Civ.Code, § 1636.) The parties to an existing contract may, through mutual consent, modify or rescind their agreement. (Civ.Code, § 1689, subd. (a), 1697, 1698.)   Here there was no existing contract.  There was a legally enforceable final tort Judgment in 2011, not a contract.

**Essential to a novation is that it "clearly appear" that both parties intended to extinguish rather than merely modify the original agreement.** (*Meadows v. Lee* (1985) 175 Cal.App.3d 475, 483–484, 221 Cal.Rptr. 22; *Wade v. Diamond A Cattle Co.* (1975) 44 Cal.App.3d 453, 457, 118 Cal.Rptr. 695; *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 24–25, 113 Cal.Rptr. 784.) **The burden of proof is on the party asserting that a novation has been consummated.** …. *Howard v. County of Amador* (1990) 220 Cal.App.3d 962, 977–978.   Nor did Plaintiff ever intend to extinguish the collectability of the underlying debt.  See Doc 9, pg 230:10~13. See also declaration of Charles L. Murray at ¶¶ 3, 4.

Here, Defendant fails again.  Defendant cannot meet the required elements to prove novation.

In her 2019 Settlement under oath, she agreed by stipulation that the 2011 Judgment remains enforceable on its own.  Defendant at best can only claim she modified the 2011 Judgment to be enforceable against her in her capacity as Trustee to her Trust (2020 Judgment ¶ 1).  Again, Defendant further attended numerous judgment debtor exams under oath since the 2019 Settlement, and she filed documents under oath in the State Court 2011 enforcement proceedings, claiming she is in "compliance" with Court ordered enforcement orders for the 2011 Judgment.  (Exh. "9").

Defendant cannot prove there was an "extinguishment" of the right to enforce the underlying 2011 Judgment at any time.  Her conduct belies her current claim.  Her conduct is only consistent with there being no extinguishment, modification, and no novation.  Defendant has performed, stated under oath, and at all times admitted to the continued enforcement of the 2011 Judgment.  Her Opposition is, by definition, a "sham".

## VIII.    <u>DEFENDANT'S SHAM AFFIDAVITS ARE INSUFFICIENT TO CREATE A TRIABLE ISSUE GIVEN DEFENDANT'S LONG HISTORY UNDER OATH OF ADMITTING TO THE CONTINUED ENFORCEABLITY OF THE 2011 JUDGMENT.</u>

12

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

The Supreme Court has explained that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (internal quotation marks omitted). Some form of the sham affidavit rule is necessary to maintain this principle. This is because, as we have explained, **"if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."** *Kennedy,* 952 F.2d at 266 (quoting *Foster v. Arcata Assocs., Inc.,* 772 F.2d 1453, 1462 (9th Cir.1985)). See *Van Asdale v. International Game Technology* (9th Cir. 2009) 577 F.3d 989, 998.

Defendant's Opposition offers Defendant's declaration new illogical claim that she believed the 2011 Judgment was no longer enforceable (Declaration Rosa Fridman ¶¶ 3, 4).

Rosa Fridman's claim of *"I was under the impression. . ."* is a sham, another fraudulent statement that contrdicts her prior sworn testimony in a 2019 Settlement proceeding, her 2019 through 2020 debtor exams under oath, and Defendant's numerous pleadings in the 2011 judgment enforcement proceedings, all of which affirmed she understood the proceedings where she represented she was complying with her obligations in enforcement proceedings relative to the **2011 judgment**.

Defendant's last-minute amendment to her schedules, to now "dispute" the 2011 Judgment, demonstrates that the Defendant and her attorney are willing to offer false evidence in a vain attempt to overcome all of the Defendant's prior testimony under oath in the State Court.

Defendant's "sham" affidavit and sham amendments are insufficient to overcome her prior sworn testimony, her filings under oath, and her October 3, 2019 Contract that affirms Defendant knew the 2011 Judgment remained enforceable.

## IX.   DEFENDANT HAS NOT JUSTIFIED HER NEED FOR DISCOVERY THAT WARRARNTS DENIAL OF PLAINTIFF'S MOTION. RATHER HER NEED DEMONSTRATES HER PROPENSITY FOR DISCOVERY ABUSE.

13

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

1    As stated in Plaintiff's Motion, this is simply a question of law. The facts are undisputed.

2    Defendant, as shown above, has no viable affirmative defenses to show that the 2011 Judgment is still

3    not subject to enforcement.

4    On August 25, 2021 Defendant's counsel filed an Opposition to Plaintiff's Motion for a

5    protective order.  In his filing, Scott Talkov, represents that Rosa Fridman cannot defend the Motion

6    for Summary Judgment because Talkov needs to inquire into a Mr. Victor Balakin to uncover a fraud

7    for this court to see.  Mr. Talkov claims that this person is a "creditor" of the Fridmans.  However, the

8    claim date closed on August 23, 2021 and Mr. Balakin has not filed a claim.  Therefore Mr. Balakin is

9    not a creditor in this case.  Embarrassingly, Scott Talkov, already accused of deceitful conduct by

10   former law firm, embroiled in litigation for theft, now faces the realization that his own client has lied

11   to him.  Notably not only has Talkov spoken to Mr. Balakin, but Mr. Balakin was supporting the

12   Fridmans on their personal website years ago.

13   Talkov admittedly can call Mr. Balakin, and therefore cannot justify the need to question

14   Plaintiff about Mr. Balakin for one simple unavoidable and embarrassing reason.

15   **The Debtor and family know Mr. Balakin.**  Victor Balakin posted on their website over six

16   years ago, supporting the Fridmans "cause."  (Exhibit "15" to Avetoom declaration).  This website was

17   confirmed to belong to the Debtor by Val Fridman according to his sworn testimony in a February 7,

18   2019 deposition (Avetoom decl. Exhibit "16" 2/7/2019 RT45).

19   Q Did you ever build a website called Condodefense.com?

20   A No.

21   Q You never did. Did you ever register the name Condodefense.com?

22   A Yes.

23   Q You registered it. Did you register it for yourself, or did you register it

24   for a family --

25   **A For my dad.**

26   Mr. Talkov was warned at the Rule 26 meeting that his client and her family have a long

27   history of lying to their own attorneys.  Unfortunately Talkov has not learned from the long line of

28   attorneys that stopped representing the Fridmans, some of which are creditors in this case, owed

---

14

substantial monies by Fridmans' refusal to pay.  If he wants to talk to Mr. Balakin, who is not a

creditor in this case, Mr. Talkov can call him or simply ask the Defendant's family.

## X.  <u>CONCLUSION.</u>

There are no triable issues of fact in this matter.  Defendant's feigned affirmative defenses do

not exist as a matter of law and by Defendant's own conduct and admissions.

The overwhelming evidence and admissions that the 2011 Judgment remains independently

enforceable leaves no triable issues. Not even Defendant's "sham" pleadings and affidavit to contradict

her prior testimony and conduct can prevent granting of summary judgment.

As a matter of law, Plaintiff's 2011 State Court judgment in *Avetoom v. Arce,* OCSC Case No.

30-2010-00345490, that was included in Defendant's 2012 Chapter 7 bankruptcy and was denied

discharge, Plaintiff's motion for summary judgment must be granted in its entirety.


*/s/ Karl Avetoom*

Dated August 27, 2021                    By:  _____

Karl Avetoom
Creditor and Plaintiff, In Pro Per

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

## DECLARATION OF KARL AVETOOM

I, Karl Avetoom, hereby declare as follows:

1. I am the Plaintiff in the above entitled adversary proceeding, a creditor to the main bankruptcy case and Defendant's former bankruptcy case. I have personal knowledge of the following facts and if called upon to testify under oath, I could and would do so competently to the following facts.

2. I make this declaration in support of my Reply to Defendant's Opposition to my motion for summary judgment pending before this Court.

3. Attached to my declaration as Exhibit "1" is a true and correct copy of the Repoter's Transcript of proceedings for July 9, 2019 before Hon. Theodore Howard in *Avetoom v. Risbrough*.

4. Attached to my declaration as Exhibit "2" is a true and correct copy of a Contract executed by Defendant and myself on October 3, 2019 that affirms Defendant's knowledge that the 2011 Judgment remains enforceable by consenting to a lien against her property to satisfy the unpaid balance on the 2011 State Court judgment in OCSC case no 30-2010-00345490.

5. Attached to my declaration as Exhibit "3" is a true and correct copy of an August 29, 2019 Minute Order for a *Judgment Debtor Exam for the 2011 Judgment*.

6. Attached to my declaration as Exhibit "4" is a true and correct copy of an October 3, 2019 Minute Order for a *Judgment Debtor Exam for 2011 Judgment.*

7. Attached to my declaration as Exhibit "5" is a true and correct copy of an October 31, 2019 Minute Order for a *Judgment Debtor Exam for 2011 Judgment.*

8. Attached to my declaration as Exhibit "6" is a true and correct copy of an August 31, 2020 Minute Order for a *Judgment Debtor Exam for the 2011 Judgment.*

9. Attached to my declaration as Exhibit "7" is a true and correct copy of a September 21, 2020 Minute Order for a *Judgment Debtor Exam for 2011 Judgment.*

10. Attached to my declaration as Exhibit "8" is a true and correct copy of a November 16, 2020 Minute Order for a Judgment Debtor Exam for the 2011 Judgment & Motion to Compel Production of Documents to Enforce the 2011 Judgment.

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

11.   Attached to my declaration as Exhibit "9" is a true and correct copy of a November 26, 2020 *Notice of Compliance* filed by Defendant containing approximately 19 responses not disputing enforcement 2011 Judgment in the 2010 case of *Avetoom v. Arce* 30-2010-00345490.

12.   Attached to my declaration as Exhibit "10" is a true and correct copy of a November 23, 2020 *Order for a Judgment Debtor Exam for the **2020 Judgment from Avetoom v. Risbrough, et al.***

13.   Attached to my declaration as Exhibit "11" is a true and correct copy of a December 23, 2020 Order for *Continuance of Judgment Debtor Exam 2011 Judgment* that was served upon Defendant to attend a future judgment debtor exam in the 2010 *Avetoom v. Arce* matter to enforce the 2011 Judgment.

14.   Attached to my declaration as Exhibit "12" is a true and correct copy of a June 21, 2021 *Opposition to OSC Re: Contempt* filed by Defendant in the 2010 action that gave rise to the 2011 Judgment.  Defendant does not dispute the enforceability of the 2011 Judgment in the *Avetoom v. Arce* matter, OCSC 30-2010-00345490.

15.   Attached to my declaration as Exhibit "13" is a true and correct copy of a June 28, 2021 Minute Order *OSC: Contempt Orders for enforcement of 2011 Judgment* in case 30-2010-00345490.

16.   Attached to my declaration as Exhibit "14" is a true and correct copy of an Order relating to an August 20, 2021 *Arraignment for Contempt charges.*

17.   Attached to my declaration as Exhibit "15" is a true and correct copy of a web page from condodefense.com that was owned by Debtor Moisey Fridman according to Val Fridman's deposition testimony.  The web page contains the name Victor Balakin and is from 2014.

18.   Attached to my declaration as Exhibit "16" is a true and correct copies of the relevant pages to the deposition of Val Fridman affirming that the website condodefense.com was registered by Val Fridman for his father, Debtor Moisey Fridman.

19.   Attached as Exhibit "17" are the Debtor's amended schedules filed August 19, 2021 by her attorney, the same day Debtor filed her Opposition.  Defendant has changed the classification of the debt for the 2011 Judgment in case 30-2010-00345490 from undisputed to "disputed".

20.   As part of the Settlement in 2019 Mr. Mokri communicated to my attorney, Charles Murray and I that the 2011 Judgment remained enforceable.  Mr. Mokri was requesting my assistance

to help him get out of the case because of problems with the Defendant's sons.  At a later hearing in 2021 Mr. Mokri was informed that I was still able to independently pursue collection of my 2011 Judgment as the 2019 Settlement only resolved the 2015 case, and did not stop the enforcement of the 2011 judgment separately.

21.  Since the 2019 Settlement which gave rise to the 2020 Judgment, Defendant has attended numerous judgment enforcement proceedings, testified under oath on numerous occasions and represented to the Court that she is complying with enforcement of the 2011 judgment.  Defendant has even filed a Notice of Compliance *after* the 2020 judgment was entered, stating that she is complying with the State Court proceedings for enforcement of the 2011 judgment.  At no time has Defendant/Debtor or her attorney claimed the 2011 Judgment was no longer enforceable.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed August 27, 2021 in Newport Beach, CA

By:    */s/  Karl Avetoom*

Karl Avetoom

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25                         *EXHIBIT "2"*
26
27
28

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

Contract

This agreement ("Contract") is entered into on Oct 3, 2019 between Karl Avetoom ("creditor") and Rosa Fridman (Debtor") in her personal capacity and, also in her capacity as Trustee to the Fridman family Estate, Established April 14, 2000. Creditor hereby promises not to initiate any foreclosure proceedings on Debtor's property known as 16542 Black Beard Lane, #304, Huntington Beach, CA 92647 (APN 931-71-030) ("the Property") to satisfy the remaining balance owed to Creditor in Orange County Superior Court case number 30-2010-00345490 (Avetoom v. Avce, Fridman) as long as the Debtor resides in the Property, or until such time if that Debtor vacates the property for any reason Debtor files including assisted living, or in event Debtor files for bankruptcy protection. In consideration, Debtor agrees not to encumber the property. transfer, assign or otherwise dispose of her interest in the Property, pay all property taxes pay all HOA dues and assessments on said Property and consents to give Creditor a lien against Debtor's undivided interest of 68.3% in the Property as security to satisfy the outstanding balance owed on the Judgment obtained by Creditor against Debtor entered November 18, 2011 in 30-2010-00345490.

Creditor

Debtor

Anne Stanton
Oct 3, 2019
Witness

714-853-0761

witness
HERBERT CONRAD
10.3.2019

- END -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

OPR 7451 Warner Ave #E191 Huntington Beach, CA 92647 Reg'd Process Server # 3050

A true and correct copy of the foregoing document entitled **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.  SUPPORTING DECLARATIONS OF CHARLES L. MURRAY AND KARL AVETOOM**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 26, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Karl T Anderson (TR)** 2edansie@gmail.com, kanderson@ecf.axosfs.com
**Scott Talkov** scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
**United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 27, 2021 | Sal W. Hanna | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# **Exhibit 7**

Karl Avetoom
1100 Rutland Road # 9
Newport Beach, CA 92660
(949) 929-4787
Email kia002@att.net


Creditor and Plaintiff, In Pro Per


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Rosa Fridman | ) Case No:    8:21-bk-10513-ES<br>)<br>) Hon:  Erithe A. Smith<br>)<br>) Chapter 7<br>)<br>) **CREDITOR KARL AVETOOM'S NOTICE**<br>) **OF AND OBJECTION AND AFFIRMATIVE**<br>) **DEFENSES TO ROSA FRIDMAN'S**<br>) **CLAIMED HOMESTEAD EXEMPTION.**<br>)<br>) Hearing Info:<br>) Date:      January 20, 2022<br>) Time:      2:00 P.M.<br>) Location:   Virtual Hearing via Zoom.gov |

**TO THE HONORABLE ERITHE A. SMITH, FEDERAL BANKRUPTCY JUDGE, TO ROSA**

**FRIDMAN AND HER ATTORNEY OF RECORD, AND TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on January 20, 2022, at 2:00 p.m., in Courtroom 5A in the

above-entitled Court located at 411 W. Fourth Street, Santa Ana, California, the Court will conduct a

hearing on the Objection to Debtor's Claimed Homestead Exemptions ("Objection") filed by Karl

Avetoom, in his capacity as a Creditor ("Creditor") of the bankruptcy estate of Rosa Fridman

("Debtor"). *Hearing to be conducted remotely via Zoom.gov Supplemental Notice attached.*

This Objection is based upon the Notice of Objection and Objection to the Debtor's Claimed

Homestead Exemptions; Memorandum of Points and Authorities; the Declaration of Karl Avetoom,

Declaration of Mr. Jay Bhatt of 001 Debtorcc, Inc. and Mr. Bryan Swezea; the pleadings and documents filed in this case, and upon such further oral and documentary evidence as may be presented prior to or at the time of the hearing.

PLEASE TAKE FURTHER NOTICE that any opposition or other responsive pleadings must be in the form as required by Local Bankruptcy Rules 9013-1 and filed with the Clerk of the above-entitled Court no later than fourteen days (14) prior to the hearing with a copy served on Karl Avetoom at the address indicated above. A copy must also be served on the Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, California 92701. Failure to timely respond may be deemed as acceptance of the relief requested. *See* Local Bankruptcy Rule 9013-1(f).

Dated September 30, 2021                    By:    */s/ Karl Avetoom.*

Karl Avetoom, Creditor and Movant

ii

**MEMORANDUM**

## I. <u>BACKGROUND FACTS.</u>

On November 18, 2011 Judge Karen L. Robinson entered judgment in favor of Creditor Karl Avetoom ("Creditor") and against Debtors Moisey Fridman and Rosa Fridman ("Debtor") in the amount of $1,000,000 (Avetoom decl. Exh. "1").  On or around January 4, 2012 by stipulation of Creditor, the punitive damage award of $400,000 was reduced.  The total judgment was reduced to $650,000.  Orange County Superior Court case *Avetoom v. Arce, et al* 30-2010-00345490.

Between November 2011 and February 2012 Debtors made numerous withdrawals from their bank accounts in excess of $150,000.

On or around February 12, 2012 Debtor filed for bankruptcy in the Central District of California bankruptcy court.  Case No. 8:12-11721-ES.

On or around 2013 the Chapter 7 Trustee charged Debtor filed an adversary complaint under 11 U.S.C. § 727 against Debtor alleging five counts of unlawful conduct intended to hinder, delay and defraud creditors under 11 U.S.C. § 727(a)(2), (4) and (5). (the "727 Complaint")(Avetoom decl. Exhibit "2")

On or around January 2015 Debtor stipulated to all five counts in the § 727 Complaint. (Avetoon decl. Exh. "3")

On February 15, 2015 the bankruptcy court entered judgment against Debtor denying discharge under 11 U.S.C. § 727. (Avetoon decl. Exh. "4")

In 2015, with relief from the bankruptcy court, Creditor filed a fraudulent transfer action against Debtor and her former attorneys.  Orange County Superior Court case *Avetoom v. Risbrough, et al.* Case No. 30-2015-00820760.

On or around July 9, 2019 Debtor entered into a Settlement Agreement on the record and under oath before Judge Theodore Howard.  Part of the Settlement Terms required the preparation of a written judgment incorporating the terms of the settlement, to be executed by the court. (Avetoom decl. Exh. 5. Reporter's Transcript July 9, 2019)

On or around August 13, 2020 the Court signed the Judgment in case 30-2015-00820760. (Avetoom decl. Exhibit "6").

On October 3, 2019 Creditor and Debtor Rosa Fridman, in her personal capacity and in her capacity as Trustee for The Fridman Family Trust Established April 14, 2000 entered into a contract whereby Creditor agreed not to initiate any judicial foreclosure proceedings against Debtor, in return, Debtor consented to give Creditor a lien against her undivided 68.3 percent interest in her Blackbeard Lane real property. (Avetoom decl. Exhibit "7")

On February 9, 2021 a certificate of counseling for the first educational course required under 11 U.S.C. § 109(h) was obtained from 001 Debtorcc. Inc. ("Debtorcc"). (Bhatt decl. Exhibit "5")

On February 26, 2021, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. Debtor filed her schedules listing her property located at 16542 Blackbeard Lane #304, Huntington Beach, CA 92649 (the "Property") as exempt property [ECF Doc. 1]. Rosa Fridman also filed the Certificate of Counseling. [ECF Doc. 2.] In her Petition, Rosa Fridman listed her Rea Property as exempt in Schedule C of her petition (Case 8:21-bk-10513-ES, Doc 1, Page. 15). (Avetoom decl. Exhibit "8").

On March 9, 2021 as Dk. No. 13, Fridman filed her motion to avoid liens ("LAM") under 11 U.S.C. 522(f) based upon a declared homestead petition, Ca. Civil Code § 704.930. (8:21-bk-10513-ES Doc 13, p. 67)(Avetoom decl. Exh. "9")

On March 24, 2021, as Dk. No. 19, Rosa Fridman filed a Notice of Errata to her LAM motion against listing her declaration of homestead under § 704.930. (Avetoom decl. Exh. "10").

On or around April 15, 2021 the bankruptcy court granted Rosa Fridman's Lien Avoidance Motion ("LAM"). At the hearing, Creditor argued that the lien avoidance was part of a scheme to transfer property from the Rosa Fridman to her son to avoid payment to Creditor.

On April 19, 2021 Rosa Fridman's attorney published a blog article confirming how using 11 U.S.C. § 522(f) could be used to avoid fraudulent transfer liability. https://www.talkovlaw.com/exempt-property-fraudulent-transfer/   (Avetoom decl. Exh. "11").

On June 29, 2021 Rosa Fridman testified in her Section 341 exam that no one had filed any action to foreclose on her real property ("Blackbeard Lane")(Avetoom decl. Exh. "12" RT25).

Since filing bankruptcy, Rosa Fridman has changed her position, claiming that the Settlement Agreement entered into between her and Creditor in the Fraudulent Transfer action never included a

1    lien would be created.

2         On September 14, 2021 the bankruptcy court rejected Rosa Fridman's claim that the 2020

3    Judgment in the fraudulent transfer action replaced the 2011 State Court Judgment.  The Bankruptcy

4    Court explained that the 2020 Judgment gave no consideration to Creditor.

5         On September 27, 2021 Rosa Fridman represented to the 9th Circuit Bankruptcy Appellate

6    Panel that she had elected to use her "declared homestead." (Avetoom decl. Exh. "5" relevant pages)

7    At no time in the history of this bankruptcy case has Rosa Fridman ever claimed her Property was

8    exempt under Article IV's "automatic" homestead exemption.  Rather, Rosa Fridman has, at all times,

9    asserted her rights to a "declared homestead" pursuant to Code of Civil Procedure § 704.930.

10   (Avetoom decl. Exh. "13" relevant pages of Rosa Fridman's Appellee's brief).

11        On August 31, 2021 Rosa Fridman testified under oath, assisted by her attorney and a Russian

12   translator, that she personally took the pre-bankruptcy educational course required under 11 U.S.C.

13   § 109(h) at her home in Huntington Beach.  (Avetoom decl. **Exhibit "14"** RT 31:24~32:15).  Rosa

14   Fridman took the Course on her LG tablet.  (Id. at RT 32:25~33:16)   Rosa Fridman used her internet

15   at home (Huntington Beach, Ca) to take the Course. (Id. at RT 32:16~24).   Rosa Fridman personally

16   answered the Course questions (Id. at RT 34:8~9).   Rosa Fridman testified it took four hours to

17   complete the Course (Id. at RT 34:10-14).

18        On September 27, 2021 Creditor Karl Avetoom obtained the business records from Debtorcc,

19   and the declaration of Debtorcc's custodian of records and President, Mr. Jay Bhatt.  Debtorcc's

20   business records contain electronic records that traced the location that the educational class was taken

21   to Redmond, Oregon (Declaration of Jay Bhatt, ¶ 10a, Exhibit "3").  That the Course took nine minutes

22   to complete in English (Bhatt declaration ¶ 11, Exhibit "4").  That the device that was used to take the

23   Course was an Apple Intel based Macintosh computer (Bhatt declaration ¶ 10(b), Exh. "3").  The

24   Apple computer was using an Apple operating system of 10.15 ("Catalina") (Bhatt declaration ¶ 10(b),

25   Exh. "3").  The web browser was Firefox version 68 (Bhat decl. ¶ 10(b), Exh. "3").  The IP address

26   used to take the Course was 67.204.133.249.  (Bhatt Decl. ¶ 10, Exhibit "3").  This IP address belongs

27   to TDS telecom. (Declaration Bryan Swezea ¶ 9, Exhibit "1").

28

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

On September 30, 2021 Creditor filed a Motion to Dismiss pursuant to 11 U.S.C. §707(a) requesting a dismissal of the bankruptcy case, a bar to refiling and vacating of the Lien Avoidance Order.

## II.  **THE BURDEN OF PROOF**

Debtors are required to file a list of their exempt property. Rule 4003(a) of the Federal Rules of Bankruptcy Procedure ("FRBP").  FRBP 4003(b) states in part that ". . . a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." The § 341(a) Meeting of Creditors in this case was concluded on August 31, 2021. The deadline to object pursuant to FRBP 4003(b) is thus September 30, 2021.

The burden of proof regarding a disputed claim of exemption based on the provisions of Title 11 rests upon the objecting party. See, FRBP 4003(c). If the exemption is based on state law, however, the burden of proof is governed by state law. *In re Pashenee*, 531 B.R. 834, 837, Case No. 14-30386-B-7, 2015 WL 3577377, at *1 (Bankr. E.D. Cal. June 8, 2015).

Resolution of this objection turns on *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000), in which the U.S. Supreme Court held that the burden of proof is a substantive element of a claim and, thus, in bankruptcy it remains the same as under the applicable substantive non-bankruptcy law. As explained below, the substantive non-bankruptcy law applicable in this case is California exemption law which allocates the burden of proof to the debtor as the exemption claimant.

In this case, the Rosa Fridman has asserted a declared homestead exemption pursuant to California Code of Civil Procedure § 704.930 (Avetoom decl. Exhibits "1", "2" and "3"). California law places the burden of proof on the party asserting the exemption. See CCP § 703.580(b). As such, Debtor bears the burden of proof with regard to the validity and amount of the claimed exemption.

## III.  **OBJECTION TO EXEMPTIONS**

Creditor objects to the Homestead Exemption on several basis.  First, Rosa Fridman did not personally take the mandatory pre-bankruptcy educational course required under 11 U.S.C. § 109(h) to be eligible to be a "debtor" filing for bankruptcy.  Only a debtor can seek an exemption in bankruptcy. As Rosa Fridman is not a debtor by law, she cannot use the bankruptcy court and statutes to claim an

1    exemption.

2         California has opted out of the exemptions provided to Debtors under 11 U.S.C. § 522(b)(2).

3    See CCP § 703.130. Rosa Fridman has repeatedly claimed the declared homestead exemption under

4    California Code of Civil Procedure § 704.930.

5         As a matter of law, asserting a declared homestead exemption in bankruptcy, does not entitle

6    Rosa Fridman to the protections of an automatic homestead exemption.  In re Kelley (B.A.P. 9th Cir.

7    2003) 300 B.R. 11, 19. "The Ninth Circuit Court of Appeals has determined that a debtor is not

8    automatically entitled to the protections provided in the Article 4 automatic homestead exemption

9    upon showing a valid declaration of homestead under Article 5. Understanding this distinction is

10   imperative, as the Article 4 exemption protections are applicable in a forced sale context (as here,

11   where Debtor has filed his bankruptcy petition)—whereas the Article 5 protections only apply in

12   voluntary sales."

13        Under 9th Circuit law, the declared homestead grants Rosa Fridman no benefit in a bankruptcy.

14   The BAP in In re Kelley (B.A.P. 9th Cir. 2003) 300 B.R. 11 affirmed a trustee's objection to a

15   declared homestead exemption.

16

17            "This declaration of homestead, however, provides no residential
             exemption in the bankruptcy context as Debtor is not entitled to the
18            forced sale protections provided in Article 4. Debtor is not entitled to
             exemption protection in the context of a bankruptcy filing. The Trustee's
19            objection to exemption was properly sustained." Id. at 21.

20

21        See also In re Showalter (B.A.P. 9th Cir., Apr. 11, 2013, No. BAP EC-12-1419-DJUMK) 2013

22   WL 1491003, at *5–6, aff'd (9th Cir. 2015) 617 Fed.Appx. 709 the BAP reiterated "In the context of

23   bankruptcy ... Debtor's declaration of homestead helps him not at all, as the additional benefits

24   conferred in Article 5 would benefit him only in the situation of a voluntary sale." Kelley at 19, 21

25   (citing Redwood Empire Prod. Credit Ass'n v. Anderson (In re Anderson), 824 F.2d 754, 757–59 (9th

26   Cir.1987))."

27        The 9th Circuit Court of Appeals in Showalter affirmed the BAP's upholding of a trustee's

28   objection to a declared homestead: "Showalter sought an Article 5 'declared homestead' exemption …

---

5

But an Article 5 exemption applies only to 'voluntary sales,' and not to 'forced sales' such as the filing

of a bankruptcy petition at issue here. *See, e.g., Kelley v. Locke (In re Kelley),* 300 B.R. 11, 20–21

(B.A.P. 9th Cir.2003); *Katz v. Pike (In re Pike),* 243 B.R. 66, 70 (B.A.P. 9th Cir.1999)." In re

Showalter (9th Cir. 2015) 617 Fed.Appx. 709, 710.

As a matter of 9th Circuit law and 9th Circuit BAP law, Rosa Fridman's election of a "declared"

homestead does not afford her an exemption in the bankruptcy arena.

Rosa Fridman will mistakenly rely on factually opposite case law of In re Zall, No. BAP.EC-

05-1476-MOSB, 2006 WL 6811022, at *4 (B.A.P. 9th Cir., Sept. 5, 2006) applied to an automatic

homestead, not a declared homestead. ["Unlike the present case, neither In re Morgan nor Bernhanu

pertained to the automatic homestead exemption statute."].  In re Mayer, 167 B.R. 186 (B.A.P. 9th Cir.

1994) again is an automatic homestead case. ["Mayer claimed a homestead exemption of $100,000 in

the property under Calif.Civ.Proc.Code §§ 704.710 and 704.730(a)(3)(C)."] Id. at 187.

As a matter of law Rosa Fridman can obtain any declared homestead exemption that give her

any benefit in the bankruptcy context of a "forced sale."

## IV.  A DEBTOR CANNOT EXEMPT REAL PROPERTY SHE HAS FULLLY IMPAIRED VOLUNTARILY.

On October 3, 2019 Movant/Creditor and Rosa Fridman, in her personal capacity and in her

capacity as Trustee for The Fridman Family Trust Established April 14, 2000, entered into a written

contract.  The terms of the Contract were such that Creditor Karl Avetoom agreed not to initiate any

foreclosure proceeding against Debtor's real property, in exchange, Debtor agreed to give Creditor a

lien against her undivided 68.3% real property.  The Contract was executed and witnessed.  On August

24, 2021 Debtor's attorney, Scott Talkov, contacted one of the witnesses who verified he had

witnessed the signing of the October 3.  Scott Talkov then attempted to get the witness to change his

testimony (Declaration of Herbert Conrad ¶¶ 2-4).  See also declaration of Karl Avetoom at ¶ 9 who

was in the courtroom when Rosa Fridman accepted his offer to enter into a contract to assuage her

complaints that Creditor Karl Avetoom would force Debtor out of her home.

Under California Civil Code § 2881 a lien is created by contract.  See also Hill v. Fricke (1936)

5 Cal.2d 320, 323 where the Court held a lien existed against real property by contract.  "Section 2872

1   of the Civil Code defines a lien as 'a charge imposed in some mode other than by a transfer in trust

2   upon specific property by which it is made security for the performance of an act.' A lien here existed

3   within the statutory definition."   See also Raboff v. Albertson (1954) 122 Cal.App.2d 555, 556–557 "It

4   was the intent of Lee at the time he made the writing to encumber said property with a lien in favor of

5   plaintiff to secure said loan. The said writing was sufficient to create such a lien."

6         Of course the Debtor's attorney and sons want to unwind this Contract.  Val Fridman initially

7   wanted to "hold" the Contract for "two weeks" for some unexplained reason.  Avetoom decl. ¶ 9.  Now

8   the sons have talked their mother into claiming she did not sign the Contract. However. the witnesses

9   affirm that Rosa Fridman signed the Contract before them.   And Rosa Fridman admits in her sworn

10  testimony in her "341" exam that no one, which includes Creditor, had pursued any foreclosure

11  proceedings.

12        **a.    _Rosa Fridman Fully Impaired Her Homestead Interest By Contractual Lien._**

13        The Court in In re Keenan (Bankr. D. Colo. 1989) 106 B.R. 239, 243 held "A debtor is not

14  allowed to exempt real property which he has voluntarily impaired." Citing, In re Grosso, 51 B.R. 266

15  (Bankr.D.N.M.1984) (debtor was not entitled to the homestead exemption that he had fully impaired

16  through a consensual lien)".   The Court in In re Grosso, 51 B.R. at 271, explained "If the amount of

17  the consensual lien is equal to or exceeds the allowed exemption, the debtor will be found to have fully

18  impaired his exemption and will not be allowed to avoid judgment liens in order to reclaim it."  Accord

19  In re Murray (Bankr. C.D. Cal. 1989) 105 B.R. 576, 582.

20        Here Debtor agreed to impair her real property claimed as exempt with a voluntary lien for the

21  unpaid balance of the judgment in _Avetoom v. Arce, et al_ OCSD 30-2010-00345490.  The unpaid

22  balance stands at $1.19 million (Avetoom decl. Exhibit "7").  Far in excess of the claimed exemption.

23  Debtor has fully impaired her exemption for her real property used as security towards the unpaid

24  balance owed to Creditor.

25        As such, Debtor is not entitled to exempt her real property in Schedule C of her petition (8:21-

26  bk-10513 Doc 1, Page. 15).

27  **V.   AFFRIRMATIVE DEFENSES UNDER STATE LAW.**

28        Law v. Siegel 571 U.S. 415 (2014) makes clear that section 105(a) is not the only basis for

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

1    denial of a homestead exemption. Where, as here, a debtor claims a state-created exemption, the scope

2    of the exemption – and any basis for denial of the exemption – must be found in state law. "It is of

3    course true that when a debtor claims a state-created exemption, the exemption's scope is determined

4    by state law, which may provide that certain types of debtor misconduct warrant denial of the

5    exemption." Law, 134 S. Ct. at 1196–97.

6         The Ninth Circuit Bankruptcy Appellate Panel has also held that after Law v. Siegel,

7    bankruptcy courts must look to state law and not section 105(a) in determining whether there is a basis

8    to disallow an exemption. In re Gray, 523 B.R. 170, 175 (9th Cir. BAP 2014). The Gray case is

9    instructive.  See also In re Gilman (9th Cir. 2018) 887 F.3d 956, 966 (allowing a bankruptcy court to

10   apply state based equitable defenses against a state based exemption).

11        As the Supreme Court, the Ninth Circuit and Ninth Circuit Bankruptcy Appellate Panel have

12   instructed, this court can apply California state law to determine whether the Debtor's homestead

13   exemption may be disallowed based on the equitable doctrines asserted by the Creditor.

14   The exemption should be disallowed if, in an action in California state court to seize property claimed

15   as exempt, there would be a basis in California law to disallow the claimed exemption on equitable

16   grounds.

17       **FIRST AFFIRMATIVE DEFENSE OF UNCLEAN HANDS.**

18        Rosa Fridman should be denied her state based exemption under the doctrine of unclean hands,

19   using the exemption as part of a fraudulent transfer scheme to transfer property to insiders that would

20   have been subject to claw back under state law, Civil Code § 3439.

21

22       **SECOND AFFIRMATIVE DEFENSE OF EQUITABLE ESTOPPEL.**

23        Rosa Fridman should be denied her state based exemption under the doctrine of equitable

24   estoppel, as she entered into a Settlement Agreement wherein she agreed to the recordation of a

25   judgment against her.  Then represented to this Court that this formed a "lien" which this Court then

26   avoided, denying Creditor the benefit of the Settlement Agreement.  In addition, Rosa Fridman entered

27   into a Contract that created a consensual lien in October 2019, in consideration for Creditor not

28   initiating a foreclosure action.  Rosa Fridman now wants to avoid performance under the Contractual

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

1   lien while admitting that no foreclosure action was initiated against her. California courts have long

2   recognized that equitable estoppel applies to homestead exemptions. See, e.g., Jefferson v. Tom, 52

3   Cal. App. 2d 432, 438 (Cal Dist. Ct. App. 1942); see also James v. P. C. S. Ginning Co., 276 Cal. App.

4   2d 19, 24 (Cal. Ct. App. 1969) (recognizing the application of equitable estoppel to exemptions but

5   declining to apply equitable estoppel to the debtor's homestead under the circumstances); Viotti v.

6   Giomi, 230 Cal. App. 2d 730, 738 (Cal. Ct. App. 1964) ("No equities or duties had arisen between [the

7   parties].").

8        The concept of estoppel is now codified in California Evidence Code section 623. "Whenever a

9   party has, by his own statement or conduct, intentionally and deliberately led another to believe a

10  particular thing true and to act upon such belief, he is not, in any litigation arising out of such

11  statement or conduct, permitted to contradict it." Cal. Evid. Code  623. Code recognizes the concept

12  of estoppel—"[n]othing in this chapter abrogates or otherwise affects the principles of waiver and

13  estoppel." Cal. Civ. Proc. Code  583.140.

14       To invoke equitable estoppel under California law, a party must show: "(a) a representation or

15  concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party

16  ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the

17  ignorant party act on it; and (e) that party was induced to act on it." Simmons v. Ghaderi, 44 Cal. 4th

18  570, 584 (Cal. 2008) (referencing 13 Witkin, Summary of Cal. Law, Equity, 191, pp. 527–528 (10th

19  ed. 2005).  Here Rosa Fridman planned on filing bankruptcy as far back as July 2019 concealing this

20  fact while entering into a Settlement Agreement on July 9, 2019 and a contract to form a consensual

21  lien on October 3, 2019.  Rosa Fridman signed up for a bankruptcy class in July 2019 establishing her

22  intent to use bankruptcy to avoid the Settlement Agreement and consensual lien.  Rosa Fridman did not

23  disclose her intent to induce the reliance of Creditor, to enter into a Settlement Agreement now worth

24  nothing and a contractual lien she now claims she never agreed to.  Movant acted upon Rosa Fridman's

25  statements for the Settlement Agreement that expressly agreed to the recordation of a judgment which

26  Rosa Fridman and this Court holds was a lien against her real property of Blackbeard Lane.  Movant

27  agreed to dismiss the fraudulent transfer claims against Rosa Fridman in exchange for this empty

28  Settlement Agreement, a contract under California law.  In addition, Creditor did not initiate any

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

1  foreclosure proceedings against Rosa Fridman, allowing her to reside in her property as part of the

2  October 3, 2019 Contract.  Had Creditor known of Rosa Fridman and her insiders true intention,

3  Creditor would never have entered into the 2019 Settlement Agreement and would have initiated

4  foreclosure proceedings to collect on his 2011 state court judgment.

5  ### THIRD AFFIRMATIVE DEFENSE OF FRAUD

6  "Promissory fraud" is a subspecies of the action for fraud and deceit. A promise to do

7  something necessarily implies the intention to perform; hence, where a promise is made without such

8  intention, there is an implied misrepresentation of fact that may be actionable fraud.  In such cases, the

9  plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a

10  contract. "If it is enforceable, the [plaintiff] ... has a cause of action in tort as an alternative at least, and

11  perhaps in some instances in addition to his cause of action on the contract." (Rest.2d Torts, § 530,

12  subd. (1), com. c, p. 65, cited with approval in Tenzer v. Superscope (1985) 39 Cal.3d 18, 29, 216

13  Cal.Rptr. 130, 702 P.2d 212.).  See Lazar v. Superior Court (1996) 12 Cal.4th 631, 638.  Here Rosa

14  Fridman promised to perform under the terms of the Settlement Agreement which included creation of

15  a judgment to be recorded in the County Recorder's Office, in exchange for a dismissal in the 2015

16  fraudulent transfer case against her.  After the judgment was recorded, Rosa Fridman engaged her plan

17  to use bankruptcy to void the effects of the Settlement.  In essence, Rosa Fridman promised to perform,

18  with no intent on performing as she had already anticipated filing bankruptcy.  As this Court explained

19  in September 2021 rejecting Rosa Fridman's claim of waiver, novation and substitution, the 2020

20  judgment gives Creditor no consideration.

21  Rosa Fridman as part of the July 2019 Settlement Agreement, a contract under California law

22  agreed under oath to the recording of a judgment against her property.  At that time, Rosa Fridman had

23  signed up for bankruptcy class, not disclosing that she would later use bankruptcy to claim the agreed

24  upon creation of a judgment and its recordation as part of the Settlement would be claimed as an

25  involuntary lien and avoided in a bankruptcy case.  Less than three months after the agreed upon

26  recordation of the Judgment, Rosa Fridman, assisted by her two sons, immediately filed for bankruptcy

27  and unwound the benefit of the Settlement Agreement.  Rosa Fridman made false representations

28  agreeing to the recording of a judgment and then used her concealed intent to use bankruptcy to void

the Settlement Agreement. As this bankruptcy court agreed in September 2021, the 2020 Judgment gives nothing to Creditor. Put another way, Rosa Fridman concealed her intent to file for bankruptcy during the Settlement, she had already signed up for a bankruptcy educational class establishing knowledge of her intent to use bankruptcy to void the Settlement. Rosa Fridman concealed her intent to induce Creditor to dismiss the fraudulent transfer case against her. Creditor justifiably relied on the Settlement Agreement entered on the record by Rosa Fridman, under oath. The Settlement Agreement resulted in an anticipated judgment in exchange for a dismissal of liability against Rosa Fridman. Creditor was harmed by Rosa Fridman's conduct in dismissing a fraudulent transfer liability case which is non-dischargeable under bankruptcy law.

As iterated by Judge Howard in 2021, Rosa Fridman's conduct will lead to additional litigation as a result of the now disputed Settlement.

## VI.  **CONCLUSION.**

Based upon the foregoing objection and state based affirmative defenses, this Court on equity should:

1. Sustain this Objection; and

2. Disallow the Real Property Schedule "C" Exemption in its entirety; or

3. Set an evidentiary hearing on Creditor's affirmative defenses, and

4. For such other and further relief as the Court deems just and proper.

Dated: September 30, 2021          By:     */s/ Karl Avetoom*

Karl Avetoom, Creditor and Moving party.

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

**DECLARATION OF KARL AVETOOM**

I, Karl Avetoom, hereby declare as follows:

1.      I am a creditor in the above entitled bankruptcy case of Rosa Fridman and Plaintiff and Judgment creditor in the State cases.  I have personal knowledge of the following facts and if called upon to testify under oath, I could and would do so competently.

2.      I make this declaration in support of my motion to dismiss Rosa Fridman's bankruptcy case currently pending before this Court.

3.      Attached to my declaration as Exhibit "1" is a true and correct copy of the November 18, 2011 State Court judgment in *Avetoom v. Arce, et al* 30-2010-00345490.

4.      Attached to my declaration as Exhibit "2" is a true and correct copy of the Chapter 7 Trustee's Section 727 Complaint against Rosa Fridman.

5.      Attached to my declaration as Exhibit "3" is a true and correct copy of Rosa Fridman's stipulation to denial of discharge on all counts in the Chapter 7 Trustee's Section 727 Complaint.

6.      Attached to my declaration as Exhibit "4" is a true and correct copy of this Court's Judgment deny Rosa Fridman discharge under Section 727.

7.      Attached to my declaration as Exhibit "5" is a true and correct copy of the Reporter's Transcript from July 9, 2019 in the *Avetoom v. Risbrough, et al* state fraudulent transfer action.

8.      Attached to my declaration as Exhibit "6" is a true and correct copy of the August 15, 2020 Judgment in the *Avetoom v. Risbrough* fraudulent transfer action, the caption changed by the Court to *Avetoom v. Fridman* after the Risbrough defendants were dismissed after settling the case before trial.

9.      Attached to my declaration as Exhibit "7" is a true and correct copy of the Contract entered into between myself and Rosa Fridman on or around October 3, 2019 after Rosa Fridman complained to Judge Sherri Honer that I was going to foreclose on her property and kick her out.  I entered into this Contract that created a consensual lien promising not to initiate foreclosure proceedings in exchange for Rosa Fridman maintaining the property, not transferring the property and agreeing to give me a voluntary consensual lien against the Blackbeard Lane property as security towards the unpaid balance on the 2011 State Court judgment, *Avetoom v. Arce, et al* 30-2010-

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

00345490.  On that day, Rosa Fridman's son, who had been banned from attending the Debtor

Examinations due to his interference, demanded he take the "Contract" for two weeks, without

explaining why.  I refused to give the Contract to him due to his ongoing interference with my rights to

collect on my outstanding 2011 judgment.

10.    Attached to my declaration as Exhibit "8" is a true and correct copy of Rosa Fridman's

Schedule "C" declaring her real property at Blackbeard Lane as exempt.

11.    Attached to my declaration as Exhibit "9" is a true and correct copy of the Declared

Homestead declaration filed in Rosa Fridman's Lien Avoidance Motion.

12.    Attached to my declaration as Exhibit "10" is a true and correct copy of Rosa Fridman's

Notice of Errata, substituting in a recorded copy of Rosa Fridman's Declaration of Homestead.

13.    Attached to my declaration as Exhibit "11" is a true and correct copy of Scott Talkov's

blog, published a few days after the Court granted the Lien Avoidance Motion explaining how using

Section 522(f) could avoid liability under state court fraudulent transfer law.  Rosa Fridman had

repeatedly stated in the State Court proceedings that she wanted the Property to go to Alex Fridman,

aka Alex Theory, because he is broke.  Alex Theory/Fridman is listed on the initial title report used in

Rosa Fridman's LAM.  And blind copied on emails from Scott Talkov relating to the lien avoidance.

14.    On June 29, 2021 Rosa Fridman testified in her Section 341 exam that no one had filed

any action to foreclose on her real property (Avetoom decl. Exh. "12" RT 25).  Attached to my

declaration as Exhibit "12" are true and correct copies of the relevant Reporter's Transcript of that day.

15.    Attached to my declaration as Exhibit "13" is a true and correct copy of Rosa Fridman's

Appellee's brief relevant pages establishing she asserted a declared homestead.

16.    Attached to my declaration as Exhibit "14" is the Reporter's Transcript pages from

Rosa Fridman's "341" examination relating to how she claimed to have taken the pre-bankruptcy

educational class herself and gave her attorney a $50,000 deed of trust that she remains liable to repay.

17.    I contacted several debtor education businesses, one reported that in early July 2019

Rosa Fridman enrolled for a pre-bankruptcy course.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and

correct to the best of my knowledge.

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

Executed September 30, 2021 in Newport Beach, Ca.

By:     */s/ Karl Avetoom*

_____

Karl Avetoom

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

EXHIBIT "7"

NOTICE OF OBJECTION TO ROSA FRIDMAN'S HOMESTEAD EXEMPTION

This agreement ("Contract") is entered into on Oct 3, 2019
between Karl Avetoom ("creditor") and Rosa
Fridman (Debtor) in her personal capacity and, also
in her capacity as Trustee to the Fridman
family Estate Established April 14, 2000. Creditor
hereby promises not to initiate any foreclosure
proceedings on Debtor's property Known as 16542-
Blackbeard Lane #304, Huntington Beach, CA 92647
(APN 931-71-030)("the Property") To satisfy the
remaining balance owed to Creditor in Orange
county Superior court case number 30-2010-00345490
(Avetoom v. Avce, Fridman) as long as the Debtor
resides in the Property, or until such time that
Debtor vacates the property for any reason
including assisted living, or in event Debtor files
for bankruptcy protection. In consideration,
Debtor agrees not to encumber the property.
transfer, assign or otherwise dispose of her
interest in the Property, pay all property taxes
pay all HOA dues and assessments on said property
and consents to give creditor a lien against Debtor's
undivided interest of 62.3% in the Property as security
to satisfy the outstanding balance owed on the
Judgment obtained by creditor against Debtor
entered November 18, 2011 in 30-2010-00345490

Creditor

Debtor

Ann Stanton
Oct 3, 2019
Witness

714-853-0761

witness
HERBERT CONRAD
10.3.2019

- END -

#

## DECLARATION OF HERBERT CONRAD

I, Herbert Conrad, hereby declare as follows:

1.    I am over the age of eighteen and have personal knowledge of the following facts. If called upon to testify under oath, I could and would do so competently.

2.    On August 24, 2021 I received a phone call from an attorney by the name of Scott Talkov. This attorney asked me if I had witnessed the signing of a document at the Orange County Superior Court on or around October 3, 2019. The attorney was trying to put words in my mouth, attempting to have be state that I did not know the people and did not witness the document being signed. The attorney was trying to feed answers to me to get me to take a position on a document from 2019. I eventually asked him to send me by email a copy of the document, which he did. But his email was already filled out falsely representing my statements.

3.    I reviewed the document and recalled that I had been asked by two people at the Orange County Superior Court to be a witness to the signing of a document, the same documents titled "Contract" that the attorney had sent to me via email. I recalled being asked to be a witness and agreed to be a witness to the signing of this document. I explained to attorney Scott Taklov that I had witnessed an older woman sign the document, then followed by two other parties. I signed the document last. The attorney did not seem too happy to hear this and shortly ended the phone call.

4.    I felt uncomfortable by the attorney trying to influence me into answering how he wanted, basically putting words in my mouth and falsely representing my prior statements. I emailed the attorney back and told him that his email representations were not accurate of what I had said.

I declare under penalty of perjury under the laws of the United States that the above it true and correct.

Executed September 30, 2021 in Fullerton, California

By: _____

Herbert Conrad

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

OPR 7451 Warner Ave #E191 Huntington Beach, CA 92647 Reg'd Process Server # 3050

A true and correct copy of the foregoing document entitled *CREDITOR KARL AVETOOM'S NOTICE OF AND OBJECTION AND AFFIRMATIVE DEFENSES TO ROSA FRIDMAN'S CLAIMED HOMESTEAD EXEMPTION* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:


**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 22, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Karl T Anderson (TR) 2edansie@gmail.com, kanderson@ecf.axosfs.com
Michael J Hauser michael.hauser@usdoj.gov
Melissa Davis Lowe mlowe@shulmanbastian.com, avernon@shulmanbastian.com
Charles L Murray cmurray@cm3law.com, cm3esquire@gmail.com
Scott Talkov scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 9/30/2021 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| September 30, 2021 | Sal W.  Hanna | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

# Exhibit 8

1  Sandra Nassar, SBN 199305
2  Law Offices of Sandra Nassar, A Professional Corporation
   19200 Von Karman Ave, Suite 400
3  Irvine, CA 92612
   Office: 949-622-5442
4  sandra@snassarlaw.com
5
   *Attorney for Petitioner/Defendant Karl Ivan Avetoom*
6

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**OCT 13 2021**

DAVID H. YAMASAKI, Clerk of the Court

BY: R. SANCHEZ-VEGA , DEPUTY

7         **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8      **IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

9
10  PEOPLE OF THE STATE OF CALIFORNIA,
11              Plaintiff,
12  vs.
13  KARL IVAN AVETOOM,
14              Defendant

Case No.: 96HF 0016

MOTION TO VACATE A JUDGEMENT
PURSUANT TO PENAL CODE SECTION
1473.6; POINTS AND AUTHORITIES IN
SUPPORT THEREOF

15
16
17      **PLEASE TAKE NOTICE THAT** on November 12, 2021, at 9:00 a.m., or as soon

18  thereafter as the matter may be heard in Department C5, or the assigned department, of the

19  above-entitled court, Defendant KARL IVAN AVETOOM, by and through attorneys, will move

20  the Court for an order to vacate his 1997 convictions in this case pursuant to Penal Code Section

21  1473.6, based upon newly discovered evidence.  The newly discovered evidence demonstrates

22  fraud by a member of the prosecution team that completely undermines the prosecution's case,

23  that is conclusive, and points unerringly to his innocence. The newly discovered evidence proves

24  that a member of the prosecution team testified falsely at trial, resulting in the conviction, and

25  that the testimony of the government official was substantially probative on the issue of guilt or

26  punishment. The newly discovered evidence establishes that misconduct by a member of the

27
28

MOTION TO VACATE JUDGMENT - 1

prosecution team was committed in the underlying case that resulted in fabrication of evidence

substantially material and probative on the issue of guilt or punishment.

The Motion will be based upon this Notice of Motion and Motion for relief under Penal

Code Section 1473.6, Declaration of Karl Avetoom, Declaration of Barry Brooks, Declaration of

Luke Loy, Declaration of Herbert Conrad, other exhibits, the Memorandum of Points and

Authorities, all pleadings and records on file herein, and any other documentary or testimonial

evidence submitted at the hearing of this Motion.  It is respectfully requested that this Court take

judicial notice of the transcripts, files, briefs, motions, appellate decisions, and records in this

case. (Evid. Code sections 452, subdivision (d)(1), 453, and 459.)

Dated this 12th day of October, 2021

*Sandra Nassar*

Sandra Nassar

Charles L. Murray III

H. G. Robert Fong

Patricia Gitre, Pro Hac Vice

Attorneys for Karl Ivan Avetoom

MOTION TO VACATE JUDGMENT - 2

## PETITION

**By this verified Petition, Petitioner Karl Avetoom alleges:**

1. Petitioner is a male adult residing in the County of Orange, California. Each and every fact set forth in the Memorandum of Points and Authorities and the Declaration of Karl Avetoom (both of which follow this Petition) are true and correct and incorporated herein by this reference as if fully set forth here.

2. This court has jurisdiction to make all orders necessary to remedy the wrongs outlined in this Petition.

**WHEREFORE,** Petitioner respectfully prays:

1. That this Court vacate the convictions or issue an order to show cause directing the People to show cause why the convictions should not be vacated.

2. That the Court grant Petitioner such other and further relief as it deems appropriate, just and equitable.

Dated this 12th day of October, 2021                    Respectfully submitted,

                                                        Sandra Nassar

                                                        Attorney for Karl Ivan Avetoom

**MOTION TO VACATE JUDGMENT - 3**

**VERIFICATION**

I, Karl Ivan Avetoom, declare:

     I am the petitioner in this action. The allegations of this petition are based on the record in this case, and the additional declarations and exhibits accompanying this petition.

     I have read the foregoing motion and verify that the facts alleged are true of my own personal knowledge except as to the matters that are stated on my information and belief, and as to those matters, I believe them to be true, or are supported by citations to the record in 96HF00016 or by citations to the accompanying exhibits and declarations.

     I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  October 11, 2021              _Karl Avetoom_ (signature)

                                     Karl Avetoom

MOTION TO VACATE JUDGMENT - 4

## DECLARATION OF KARL AVETOOM

I, Karl Avetoom, hereby declare as follows:

1.      I have personal knowledge of the following facts and if called upon to testify under oath, I could and would do so to the following facts. I was the defendant in the matter of People v. Karl Avetoom, Orange County Superior Court case number 96HF0016. I make this declaration in support of my Penal Code § 1473.6 Motion.

2.      In or around August 2019, I was contacted from an employee of the office of my former attorney, William Kopeny, who was deceased at the time. I was informed that Mr. Kopeny received a letter indicating that a law enforcement agency had a file related to my case. I was not given any further details. I was told that another attorney was handling Mr. Kopeny's cases. Arrangements were made for me to meet with that attorney. I do not recall his name at this time. A few weeks later I met the attorney at Harbor Justice Center in Newport Beach, CA. I was given a letter that was from the Los Angeles Police Department and written to William Kopeny. The letter indicated there was a joint investigation file related to me. The letter stated that the contents of the file were going to be destroyed and if the contents of the file were wanted then I request would need to be made within a certain timeframe.

3.      I wrote to the Los Angeles Police Department and informed them that Mr. Kopeny had passed away, but any documents they had could be sent to my home address. I also called the Los Angeles Police Department Discovery Unit to inquire about the documents. I recall speaking on the telephone with a gentleman who worked for the discovery unit. He informed me that the documents appeared to be related to motorcycles.

4.      In or around the last week of October 2019, I received a brown thick envelope addressed to me from Los Angeles Police Department. I had been assisting attorneys Charles L. Murray and former Los Angeles District Attorney Steve Cooley on an insurance appeal board case for a member of law enforcement and upon meeting for lunch with Mr. Cooley and the client, I showed Mr. Cooley the envelope. I asked him to be a witness to opening the envelope and inspecting the contents. On or about November 18, 2019, after lunch, Mr. Cooley unsealed the envelope and we inspected the contents which included a complete executed search warrant signed by Detective Eric Wiseman, and Hon. Suzanne Shaw (Ret.) complete with a copy of a return to the search warrant. I

1

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

1   recognized part of this search warrant as it was an issue of contention during the 1473.6 PC motion

2   that I filed in 2010. As part of my motion in 2010, I included the search warrant of Detective Wiseman

3   as an exhibit, in order to establish that he stated in the search warrant that none of the VINs were

4   altered and yet later at trial he said the VINs were altered. The Court of Appeal, Fourth District,

5   Division 3 wrote in their opinion that the search warrant I entered into evidence as an exhibit was not

6   authenticated and could not impeach Detective Wiseman because the search warrant had not been

7   signed under penalty of perjury by him. They commented that several pages of the search warrant

8   were missing. However, at the time, we put into evidence the entirety of the document we possessed

9   and were given as part of discovery. I was present during the oral arguments of the case, and I recall,

10  during the oral argument, Mr. Kopeny was asked by the panel about the search warrant not being

11  signed and how a search warrant is obtained. Mr. Kopeny was unable to answer, informing the panel

12  he did not practice criminal law and was not familiar with the procedure. Also, inside the envelope

13  were several documents relating to motorcycles I was acquitted of at trial. In addition, there was a

14  letter from Department of Transportation/NHTSA signed by a George Entwistle to a sergeant with

15  OCATT. The contents of the letter confirmed that based on information provided to NHTSA/DOT

16  that a Suzuki with a vehicle identification number ("VIN") had been approved for importation by an

17  Alphonso Gayton. When I saw the letter with the name Alfonso Gayton, I recalled that name as being

18  on a letter that was first obtained in 2010 during the 1473.6 PC motion. I remembered the prior letter

19  that mentioned his name was a letter written from OCATT to Mr. Gayton regarding the 1990

20  Suzuki motorcycle with the VIN of JS1GV73A8L2100380. The letter from OCATT to Mr. Gayton

21  was dated in or around September 1995 and stated that that OCATT had recovered the motorcycle in a

22  search conducted in or around March 1995 and was offering it to Mr. Gayton if he could prove he was

23  the owner.

24      5.      Because the Court of Appeal decision criticized the search warrant for lack of

25  authentication and therefore did not consider it as evidence in its analysis, I knew that I needed to have

26  authenticated documents in order for them to support a motion to vacate and be considered by the

27  court. I attempted to authenticate the NHTSA letter by trying to find the NHTSA official, Mr. George

28  Entwistle, who had signed the letter. I spent several weeks attempting to get in touch with Mr.

2

DECLARATION OF KARL AVETOOM

### DECLARATION OF KARL AVETOOM

1   Entwistle only to learn that he no longer worked for NHTSA. I had a private investigator try and

2   locate Mr. Entwistle. Of the several phone numbers I received only one was related to Mr. Entwistle.

3   It was the phone number of his son. I spoke with him. He told me that he would pass on my

4   information to his father and if his father wanted anything to do with NHTSA, he would contact me. I

5   never heard back from Mr. George Entwistle. I was finally able to locate another person that worked

6   at DOT/NHTSA at that time the letter was written and still worked for them. Mr. Luke Loy, who at

7   the time was working for another department of NHTSA, told me that he worked with George

8   Entwisle in the department that oversaw vehicle importation. I explained to Mr. Loy that I was trying

9   to authenticate the letter I possessed from DOT/NHTSA. Mr. Loy said he could do that as he worked

10  in the department that approved importation of vehicles. He stated that he actually wrote the letters

11  approving importation of vehicles and then he would have Mr. Entwistle sign them. I emailed the

12  letter to Mr. Loy who read the contents and verified his office would have written the letter and that it

13  was Mr. Entwistle's authentic signature on the letter.

14      6.      Based on the information we discussed, I sent a declaration to Mr. Loy in or around

15  December 2019, for him to sign. The declaration was to authenticate the NHTSA letter for the

16  importation of the 1990 Suzuki motorcycle with VIN JS1GV78A8L2100880. I received the

17  declaration back from Mr. Loy. It was signed but contained no place of execution. So, I had to wait

18  for Mr. Loy to return from his vacation to have the location of execution added to the declaration.

19      7.      In or around May 2020 and July 2020 I received additional correspondence from Los

20  Angeles Police Department Discovery Unit. Within the July 2020 envelope was a copy of a VIN

21  verification performed by an LAPD Officer named B. Brooks. The envelope also contained a VIN

22  verification performed by an H. Conrad. I learned both LAPD Officers B. Brooks and H Conrad,

23  were retired and no longer working for LAPD.

24      8.      I contacted Mr. Barry Brooks through a private investigator who gave me his home

25  address. I had been unable to contact Mr. Brooks for several weeks and learned that he had some

26  health conditions. Mr. Brooks was not able to meet with me because he was hospitalized due to a

27  medical condition and then because of the COVID-19 pandemic risk. I had to wait for his health to

28  improve before he could review the VIN verification of a 1990 Suzuki motocycle that was completed

3

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

in December 1994 confirming an unaltered VIN of JS1GV78A8L2100880 in Los Angeles, California. Mr. Brooks contacted me and stated the document contained his signature and handwriting on the VIN verification. In addition, Mr. Brooks stated that he kept records of his work and had looked through them and found a business card from Eric Wiseman. Mr. Brooks informed me he recalled being asked about the VIN verification by a law enforcement member in or around early 1997 and collected the business card as part of his habit and custom. I obtained Mr. Brooks declaration authenticating the document on or around October 3, 2020.

9.     I was having difficulty contacting Mr. Conrad. Exhausting my other avenues, I asked Mr. Brooks if he could assist me in contacting Mr. Conrad. In or around March or April 2021, Mr. Brooks informed me that he was able to contact Herbert Conrad. Shortly thereafter, he arranged for me to meet with Mr. Conrad at The Yard House for lunch. During the meeting, Mr. Conrad was able to authenticate the VIN verification document that was performed on August 15, 1996. Mr. Conrad also had health issues and had been unavailable due to a medical condition and had been recovering from surgery. During this time, I was waiting to get a declaration supporting the authenticating of the document; however, he was not available to meet with me due to COVID-19 issues.

10.     In 2020, the Orange County Superior Courts were closed to the public because of the world-wide pandemic due to COVID-19. On or about August 2020 through October 2020, I tried several times to get in contact with the Orange County Superior Court criminal operations to inquire about how to file a motion pursuant to Penal Code §§ 1473.6 and/or 1473.7. I eventually was able to speak to a clerk in department C-5 who informed me that they were not taking any filings of those motions at that time. The clerk said I needed to fill out a Covid Felony Request form and send it in and they would contact me when they could accept them. I did so on or about September 16, 2020 and sent it to the email address COVIDFelRequestCJC@occourts.org. (See Attachment 1 to my Declaration.)

11.     Several months later on December 23, 2020, I received a message on my cell phone from a Criminal Operations Supervisor who asked me to call her back. I did so and was informed that the court was now hearing these motions, which had been delayed due to COVID, in department C-37 and I would have to contact that department to set up a date and time with the department. I forwarded

4

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

1    the voicemail from Orange County Superior Court's criminal operations division to Attorney Charles

2    L. Murray and we began preparing a Penal Code section 1473.7 motion to file as soon as possible.

3    Because there is no actual firm statutory deadline to file such a motion and in order to avoid a claim of

4    untimeliness, we filed a brief on December 30, 2020 and calendared it for January 29, 2021.

5        12.    On or around March 4, 2021 my attorneys received additional documentation from the

6    People which they forwarded to me. Included in this emailed production was a "VIN assist" document

7    that contained several pages relating to the JS1GV73A8L2100380 Suzuki motorcycle. The VIN Assist

8    also listed this Suzuki being shipped with an engine number of V710106071. This engine number

9    matches the exact engine number on the VIN verification performed by Officer Conrad in or around

10    August 1996. The People had previously claimed that the engine number contained on Mr. Cruz's title

11    and registration was not a legitimate number. March 4, 2021 is the first time the People disclosed the

12    true ending number of V710106071.

13        13.    On or around March 16, 2021, the People sent a copy of their Opposition to my motion

14    which contained an admission that an OCATT detective had destroyed the VIN on the 1990 Suzuki

15    motorcycle before it was given to State Farm Insurance in January 1996. At no prior time had the

16    People ever disclosed that law enforcement investigating the case had obliterated and destroyed the

17    VIN on the motorcycle I was charged with possessing and selling with an altered VIN. In the motion,

18    the People also included photographs of the VIN they obliterated in or around the end of 1995 or

19    January 1996. This was done prior to the refiling of the complaint in case number 96HF0016, but after

20    the People had disclosed in an August 14, 1995 preliminary hearing conducted during the first filing in

21    case 95HF0561, when they mentioned and knew of this Suzuki motorcycle. This was also prior to that

22    Suzuki motorcycle being charged, as it was not included in the first prosecution. My attorney at that

23    time, Mr. Todd Langren, had made repeated requests to inspect the VINs and engine numbers on the

24    motorcycles in the case. The People always had an excuse why they could not show them to us.

25    Eventually Judge Turner instructed Deputy District Attorney Tomas Crofoot to allow us to inspect the

26    motorcycles. The People showed Mr. Landgren and I two motorcycles; however, they were unrelated

27    to my case. The People, then represented by Mr. Tomas Crofoot, said that they would produce all of

28    the motorcycles at trial. Mr. Crofoot further represented that the People would not release any

5

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

1  motorcycles until after the case was concluded and any motorcycles belonging to me would be

2  destroyed after the trial. Mr. Crofoot did not disclose that his task force that he was a part of had

3  already destroyed the 1990 Suzuki motorcycle VIN and disposed of it *before* I was even charged with

4  any crimes involving it. The People only recently disclosed the information that it was an OCATT

5  detective, who was part of the prosecution team, who destroyed the VIN prior to my indictment.

6      14.    When we appeared for trial the defense attorneys requested to see the motorcycles. Mr.

7  Crofoot and Eric Wiseman represented that the motorcycles were too bulky to bring to the court. At

8  no time did the People disclose that they had destroyed the VIN on the 1990 Suzuki motorcycle they

9  were claiming had an altered VIN of JS1GV73A8L2100380 and given it to State Farm Insurance so it

10  was not even in their possession. The People never represented or disclosed to the defense or the court

11  that they had disposed of this motorcycle prior to the People refiling charges against me, which for the

12  first time, included new charges relating to this 1990 Suzuki motorcycle.

13      15.    At no time did the People disclose that Eric Wiseman had spoken to Mr. Brooks about

14  the VIN verification of the 1990 Suzuki motorcycle with a VIN of JS1GV78A8L2100880. At no time,

15  prior to March 2021, did the People disclose that an OCATT detective destroyed the motorcycle VIN

16  before I was even charged with the crime related to that evidence.

17      16.    My attorney at trial had subpoenaed Officer Felencki from Laguna Beach Police

18  Department who had verified the VIN on the Suzuki I purchased, VIN JS1GV78A8L2100880.

19  Standing outside the courtroom after the lunch break, Mr. Crofoot and Eric Wiseman asked why

20  Officer Felencki was there. I was present when the People were informed that Officer Felencki was

21  called as a witness to authenticate a VIN verification he performed on VIN JS1GV78A8L2100880 on

22  or around the time I purchased the motorcycle. Eric Wiseman appeared visibly angry in my opinion.

23  Mr. Crofoot informed the Court that my next witness was unnecessary and to save time, the People

24  would not contest the VIN verification performed by Officer Felencki. The Court released Officer

25  Felencki to "save time."

26      17.    Immediately after Officer Felencki left, the People's lead investigator at trial, Eric

27  Wiseman was testifying and changed his testimony. Focusing on the four motorcycles that I sold, he

28  claimed that the motorcycles I had sold had no federal labels that matched the VIN stamped into the

6

## DECLARATION OF KARL AVETOOM

1   frames. Mr. Landgren argued to the Court that this was a new theory and was not rebuttal.  I provided

2   Mr. Landgren with the exhibits of all of the VIN verifications I had performed for the motorcycles I

3   sold, which showed they all had a federal labels that matched the VIN.  Detective Eric Wiseman was

4   forced to admit that each VIN verification, that was authenticated, proved the existence of a matching

5   label.  When it came to the 1990 Suzuki motorcycle that the People had destroyed and later represented

6   at trial had been altered, Detective Wiseman blurted out that Officer Felencki had told him that he had

7   lied for me.   That turned into a huge argument before the Court, with complaints that the People had

8   represented they were not disputing the validity of the Felencki VIN verification.  After the Court

9   released Officer Felencki as a witness, Detective Wiseman testified that the Felencki's VIN

10  verification was somehow based on a lie.  The Trial Court made the attorneys argue over a mistrial for

11  what I recall being some 10-15 minutes before the jury.  The Trial Court stated it would not grant a

12  mistrial because it had wasted too much time on the case.  I recall the jury appearing very concerned

13  over this whole issue of a mistrial and allegations of a police officer lying for me.  At the end of the

14  day, I was not allowed to call Officer Felencki and the Court told the jury not to consider what

15  Detective Wiseman had blurted out.

16      18.    I was acquitted of all counts, with the exception of those related to the falsely reported

17  VIN of JS1GV73A8L2100380.

18      19.    In or around August 2010 through September 2010, my attorneys communicated with

19  the Deputy District Attorney Elizabeth Molfetta, who admitted she could not explain how a clean

20  unaltered "380" VIN existed.  Molfetta also stated that the People had not done anything improper in

21  my case, and that the People no longer had any duty to investigate or follow up on information relating

22  to my claim of innocence.  On or around September 15, 2010, Ms. Molfetta wrote in an email to my

23  attorney, that I observed, that the People had complied with all of its Brady obligations and that she

24  had reviewed the case file and investigation file and did not found any reference to Mr. Gayton.

25      20.    In or around February or March of 2021, Deputy District Attorney Matthew Plunkett

26  disclosed to my attorneys that a copy of the search warrant that was at issue during the 2010 hearing

27  and that was claimed to be unauthenticated by the appellate court because it lacked the signature of

28  Eric Wiseman under penalty of perjury had been in their possession.  The People disclosed they knew

7

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

1   that Detective Wiseman signed the search warrant. They further admitted that they had a complete

2   copy in their possession since at least the Court of Appeal made its 2013 ruling. Had the People

3   alterered the appellate court to this fact, it would have alleviated the appellate court's concern about

4   authentication of the statements attributed to Detective Wiseman and provided the evidence that his

5   testimony was different than his search warrant statements proving he lied on the stand at trial in 1997,

6   warranting relief. (See People v. Avetoom, Mar. 8, 2013 decision in case No. G044659, Opinion at pg.

7   9).

8       21.    In or around February 2021, the People disclosed their knowledge that they had

9   evidence that Detective Wiseman had signed the search warrant under oath.  To my knowledge the

10  People have never informed the Court of Appeal that there was evidence of Detective Wiseman

11  signing the search warrant affidavit under oath and that the search warrant admitted into evidence was

12  authentic.

13      22.    There appear to be numerous irregularities in the disclosure of evidence by the

14  prosecution in this case that demonstrates they withheld evidence only disclosing it years later. I do

15  not believe I received a fair trial because of this. While in 2010 the People claimed they did not know

16  who Alfonso Gayton was, the prosecution team had received a letter from NHTSA in 1998 iterating

17  that Mr. Gayton was the person who imported the Suzuki with the "880" VIN.  Even though the

18  defense was not provided a complete copy, the People for the first time in February 2021, admitted to

19  possessing the full search warrant with Detective Wiseman's signature under oath, which confirms that

20  the part of the search warrant the defense did possess was authentic.  This information was not

21  disclosed to the Court of Appeal when they asked about it.  The People, for the first time in March

22  2021, disclosed that they destroyed the VIN *before* I was even charged in 1996 with crimes related to

23  the "380" VIN being altered.  Also recently disclosed in 2021, by the People, are investigator notes

24  that contain information that the OCATT detectives were attempting to get rid of the 1990 Suzuki

25  motorcycle from their possession almost immediately after Wiseman impounded it.  And they did get

26  rid of it within a few months of taking possession of it.  During the 2010 hearing, the People claimed

27  that the Suzuki motorcycle frame could not be trusted as evidence because it was no longer in their

28  possession.  And yet the People prosecuted me, now knowing that the prosecution team destroyed the

8

DECLARATION OF KARL AVETOOM

## DECLARATION OF KARL AVETOOM

1  VIN and disposed of the Suzuki motorcycle before my indictment, depriving me and any fact finder of

2  ever viewing the claimed evidence against me

3       23.    I attended law school with a young lady who interned at the Orange County District

4  Attorney's office.  I was informed by this OCDA intern that around the time of my last Penal Code

5  1473.6 motion, Detective Wiseman would routinely meet with Deputy District Attorney Molfetta and

6  he would argue against her providing any form of relief for me.  She relayed to me that she heard

7  Detective Wiseman tell Deputy District Attorney Molfetta that if the OCDA's office were to give me

8  relief, the fallout would affect other cases he testified for in for the OCDA's office, including the "Han"

9  case.

10

11       I declare under penalty of perjury under the laws of the State of California that the foregoing is

12  true and correct.

13       Executed  October 11, 2021 in Newport Beach, California

14

15

16

17                                    By:    _Karl Avetoom_
                                            Karl Avetoom

18

19

20

21

22

23

24

25

26

27

28

9

DECLARATION OF KARL AVETOOM

## DECLARATION OF HERBERT CONRAD

I, Herbert Conrad, hereby declare as follows:

1. I have personal knowledge of the following facts and if called upon to testify under oath, I could and would do so to the following facts.

2. I was a sworn peace officer with the Los Angeles Police Department from 1995 to 2006. From about 1995 to 1997, I was assigned to the Northeast Station as a patrol officer. Part of my duties included doing verifications of vehicles.

3. During my time as a peace officer, I received training in how to do a verification of a vehicle and how to complete the DMV paperwork related to that verification. Over the years, I would estimate I conducted over a hundred verifications of vehicles, including motorcycles.

4. Around April 2021, I was contact by a former Los Angeles Police Department officer named Barry Brooks regarding a verification of a vehicle I completed in August 1996 while I was a peace officer with Los Angeles Police Department.

5. I was shown a document that was a DMV form titled "Verification of Vehicle" that was a verification of a 1990 Suzuki GSX 1100 with a VIN of JS1GV73A8L2100380 that was dated August 15, 1996 and had my name H. Conrad and my badge number on it. I recognized the writing as my own. I recognized the signature as mine, as well. In addition, the information on the document, such as my badge number and work address, were correct. This was the type of form that I completed routinely many times while I was a peace officer.

DECLARATION OF HERBERT CONRAD - 1

6. On August 15, 1996, I believe I conducted a VIN (Vehicle identification number) verification of a vehicle on 1990 Suzuki GSX 1100 with a VIN of JS1GV73A8L2100380 that appeared unaltered. Attached to my declaration as "Exhibit 1" is a true and correct copy of the Verification of Vehicle form I performed.

7. I would have created that document only if I actually observed the motorcycle with that VIN and I would have documented my observations at the time as a true and accurate reflection of my observations.

8. On the document, it is marked that the VIN and engine "appears okay." I would have only marked this if, after personally observing the VIN and engine, they appeared to be intact and unaltered. I would have made a notation and marked a different box if I made observations that the VIN or engine was altered, damaged, illegible, missing, or anything other than okay.

9. In addition to physically observing the vehicle, it was my practice to also run a DMV computer history search of the vehicle in conjunction with filling out the Verification of Vehicle form. Had this vehicle come back as stolen, I would not have performed a VIN verification.

10. I also observed on the second page of the DMV form under "Remarks" is my writing that says "OCATT – Det. Wiseman 714-634-1385". My practice would have been to note in the Remarks of the Verification of Vehicle if there was paperwork with Detective Wiseman's information on it or if I spoke to him personally about the vehicle. It was my practice to write any significant information about a vehicle or an interaction on the form to assist me in recalling the information at a later time. However, given the twenty-five

DECLARATION OF HERBERT CONRAD - 2

1    year delay in time, I do not recall specifically if I spoke with Detective Wiseman or if

2    *there was paperwork with his information on it, but I do know that I documented it*

3    because it was significant to me at the time and wanted to memorialized it and Mr.

4    Wiseman's association with the vehicle relative to my VIN verification.

5

6

7    I declare under penalty of perjury under the law of the State of California that the foregoing is

8    true and correct.

9

10

11    *Executed on October 4, 2021 in Fullerton, California.*

12

13

14             By:

15                         Herbert Conrad

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF HERBERT CONRAD - 3

# EXHIBIT 4

# ATTACHMENT TO EXHIBIT 4 - EXHIBIT 1

**DMV**
*A Public Service Agency*

## VERIFICATION OF VEHICLE

THIS FORM *MUST* BE COMPLETED IN *FULL* — Only by authorized DMV representatives, California licensed vehicle verifiers, or peace officers.

**WARNING:** Alterations or erasures will void this form.

LICENSE PLATES ON VEHICLE:
☒ None    ☐ Dealer    ☐ Temporary Permit

| LICENSE NO. | STATE | EXP. DATE |
|---|---|---|
| N/A | | |

| MODEL YEAR | MAKE | MODEL OR SERIES |
|---|---|---|
| 1990 | SUZKI | RSX 1100 |

| BODY TYPE | AXLES | MOTIVE POWER (FUEL) | NET WEIGHT (TRAILERS) |
|---|---|---|---|
| N/A | 2 | 4A-1 | |

VEHICLE IDENTIFICATION NO. (VIN)
JS1GV73AXL2100510

ENGINE NO. (MOTORCYCLE):
V-10-106077

☐ None-new engine or case

**VIN General Location:**
☐ Visible through windshield
☐ Body-Left (driver side)
☐ Body-Right
☐ Engine compartment
☐ Trunk
☒ Frame
☐ Other: ___

**Attached by:**
☐ Not visible
☐ Rosette rivets
☐ Round rivets
☐ Screws
☐ Adhesive
☐ Not applicable
☐ Other: ___

**Type:**
☐ Metal plate
☐ Stamped on body

☒ Stamped on Frame
☐ Label
☐ Other ___

VIN/ENGINE NO. (MOTORCYCLE MARK BOTH VIN AND ENG BOXES)
VIN ENG
☒ Appears okay
☐ Altered/Tampered
☐ Illegible/Damaged
☐ Missing

VIN ENG
☐ Cannot locate
☐ None-Newly built
☐ Assigned by F/O
☐ See REMARKS

FEDERAL CERTIFICATION LABEL (1970 AND SUBSEQUENT YEAR MODELS):
☒ Agrees with VIN    ☐ Illegible/Damaged    ☐ Non-NA
☐ Disagrees with VIN    ☐ Missing    ☐ See REMARKS

| ODOMETER READING | | | 6 | 6 | 2 | 4 | ½ | (10) | ☒ miles | ☐ kilometers |

SUPPORTING DOCUMENTS:
☒ Agrees with VIN    ☐ See REVERSE    ☐ See REMARKS
☐ Disagrees with VIN    ☐ None    ☐ No VIN on documents

EMISSION LABEL INDICATES:
☒ Vehicle meets US EPA standards
☒ Vehicle meets US EPA standards and California standards
☐ Vehicle meets California standards only
☐ See REMARKS on reverse

*I certify under penalty of perjury under the laws of the State of California that I examined the vehicle described above and I find the description of the vehicle to be as indicated.*

| VERIFIER (PRINT NAME) | TITLE/BADGE/ID NO. |
|---|---|
| M. CONRAD | #37155-NE |

ADDRESS
☐ Above address
☒ Other (specify):

| | CITY | STATE |
|---|---|---|

VERIFIED AT
3353 N. San Fernando B, LA    CA

| DATE | SIGNATURE |
|---|---|
| 8-15-1996 | M. Conrad |

EMPLOYER
☐ DMV    ☐ Vehicle Verifier    ☐ Auto Club    ☒ Other (specify): LAPD

REG. 31 (REV. 10/90)



**STATEMENT OF FACTS
CONCERNING IDENTIFICATION NUMBER
OR ENGINE NUMBER ERROR**

## TO BE USED WITH NONRESIDENT APPLICATION ONLY

The undersigned hereby certifies to be owner(s) of Make _____
now registered in the State of _____ under
19 ___. _____ License Plate No. _____ .

That the _____ show Identification/or
REGISTRATION CERTIFICATE TITLE AND/OR BILL OF SALE

Engine No. _____ but on verifying
the described vehicle, the Identification/or Engine Number proves to be
_____

- **CHECK ONE:**

☐ That the undersigned had no knowledge of the difference in the Engine
Number and that no change whatsoever has been made in the Engine
Number as stamped on the frame or as shown on the Engine Block, as
long as the vehicle has been in my possession.

☐ That the undersigned had no knowledge of the difference in the
Identification Number and that no change whatsoever has been made in
the Identification Number as stamped on the frame or as shown on the
Identification Number Plate, as long as the vehicle has been in
possession.

*I certify under penalty of perjury under the laws of the State of
California that the information entered by me on this document is true
and correct.*

DATE _____ | SIGNATURE OF OWNER
                      | X _____

ADDRESS _____

REMARKS *OCATT - JET WICKMAN*
*714 - 634 - 1385*

90 58196                          REG 31 (REV. 10/90)

## **PROOF OF ELECTRONIC SERVICE**

STATE OF CALIFORNIA

COUNTY OF ORANGE

RE:      People of the State of California v. Karl Ivan Avetoom

        Case No. 96HF0016

  1.  I am over 18 years old and not a party to this action.

  2.  My business address is 19200 Von Karman Ave, Suite 400, Irvine, CA 92612.

  3.  My electronic service address is sandra@snassarlaw.com.

  4.  I electronically served the following documents:

MOTION TO VACATE A JUDGEMENT PURSUANT TO PENAL CODE SECTION 1473.6;

POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND THE ATTACHED EXHBITS

  5.  I electronically served the documents listed in 4 as follows:

      a.  Name of Person/Attorney served:

                Orange County District Attorney's Office

                700 Civic Center Drive West

                Santa Ana, CA 92701

      b.  Electronic Service Address of Person / Attorney served:

            i.  CJC-Motions@da.ocgov.com

            ii.  appellate@da.ocgov.com

            iii.  Matthew.Plunkett@da.ocgov.com

PROOF OF SERVICE - 1

6. On October 13, 2021, the documents listed in 4 were served electronically on the person and in the manner described.

Date: October 13, 2021

I declare under penalty of perjury the laws of the State of California that the foregoing is true and correct.

SANDRA NASSAR

PROOF OF SERVICE - 2

# **Exhibit 9**

Inspect Element: How to Temporarily Edit Any Webpage

Home  >  Productivity  >  App tips

App tips   15 min read

# Inspect Element: How to Temporarily Edit Any Webpage

By Auri Pope · January 25, 2018



There's a powerful tool hiding in your browser: *Inspect Element*.

Right-click on any webpage, click *Inspect*, and you'll see the innards
of that site: its source code, the images and CSS that form its



text.

Or, you could use it to change anything you want on the page.

Inspect Element is a perfect way to learn what makes the web tick,
figure out what's broken on your sites, mock up what a color and
font change would look like, and keep yourself from having to
Photoshop out private details in screenshots. It's a super-power
you never knew your browser possessed.

Let's learn how to use Google Chrome Inspect Element to help you with your work, whether you're a developer or a marketer who's never

to switch over to your laptop, open Google Chrome, and get ready to tweak some code.

> Most web browsers—including Mozilla Firefox and Apple's Safari—include an Inspect Element tool, while Microsoft's Internet Explorer and Edge browser include a similar set of Developer Tools. This tutorial focuses on Google Chrome's Inspect Element tools, but most of the features work the same in other browsers.

## Wait, Why Should I Use Inspect Element?



Google Chrome Inspect Element lets you view a website

If you've never peeked at a website's code out of curiosity, you might wonder why you should learn how to use Inspect Element.

- **Designer**: Want to preview how a site design would look on mobile? Or want to see how a different shade of green would look on a signup button? You can do both in seconds with Inspect Element.
- **Marketer**: Curious what keywords competitors use in their site headers, or want to see if your site's loading too slow for Google's PageSpeed test? Inspect Element can show both.
- **Writer**: Tired of blurring out your name and email in screenshots? With Inspect Element, you can change any text on a webpage in a second.

- **Support Agent**: Need a better way to tell developers what needs fixed on a site? Inspect Element lets you make a quick example.

Inspect Element: How to Temporarily Edit Any Webpage

For these and dozens of other use cases, Inspect Element is a handy tool to keep around. It's part of the Developer Tools in your browser, which includes a number of extra features: a console to run code, a *View Source* page to see just the raw code behind a site, a Sources page with a list of every file loaded in a website, and more. You can explore all those on your own, but for now, let's see how to use the main *Elements* tab to tweak a webpage on our own.



Never miss a Zapier blog post

[Subscribe]

## How to Get Started with Inspect Element

There are a few ways to access Google Chrome Inspect Element. Just open a website you want to try editing (to follow along with this tutorial, open [Zapier.com](#)), then open the Inspect Element tools in one of these three ways:

- Right-click anywhere on the webpage, and at the very bottom of the menu that pops up, you will see "*Inspect.*" Click that.
- Click the hamburger menu (the icon with 3 stacked dots) on the far right of your Google Chrome toolbar, click *More Tools*, then select *Developer Tools*. Alternately, in the file menu, click View —> Developer —> Developer Tools.
- Prefer keyboard shortcuts? Press `CMD+Option+I` on a Mac, or `F12` on a PC to open Inspect Elements without clicking anything.

By default, the Developer Tools open in a pane at the very bottom of your browser and will show the *Elements* tab—that's the famed Inspect Element tool we've been looking for.

You won't have much space to work with Inspect Element at the bottom of your screen, so click the three vertical dots on the top right-hand side of the inspect element pane near the "X" (which you'd click to close the pane). Now, you'll see an option to move the

pane to the right-hand side of your browser (right-dock view) or to
open the pane in a completely separate window (undock view).

Inspect Element: How to Temporarily Edit Any Webpage



For this tutorial, let's dock the pane on the right side of your
browser window to give us more space to work. You can make the
Developer Tools panel wider or more narrow by hovering over the
left-side border. Once the ↔ cursor appears, drag the pane left to
widen it or right narrow it.

Now that we're in Inspect Element, there an array of useful tools at
our fingertips that we can use to make any site look exactly how we
want. For this tutorial, we will focus on the Elements, Emulation,
and Search tabs.

## Search

The "Search" tab allows you to search a web page for specific
content or an HTML element. It's a bit hidden: you'll need to click
the 3 dots then click *Search All Files* to uncover it. Then you'll be
able to search through every file in a webpage for anything you
want.

## Elements

"Inspect Element" is the tool we will explore most in this tutorial,
and it's what opens first when you launch the Developer Tools in
most browsers. Or, click the "Elements" tab in the Developer Tools
to get back to it if you've been exploring elsewhere.

12/6/21, 10:4... Case 8:21-ap-01023-ES    Doc 71    Filed 12/07/21    Entered 12/07/21 21:22:16    Desc
Main Document    Page 172 of 358

Inspect Element: How to Temporarily Edit Any Webpage

In the Explore tab, you can see all of the HTML, JavaScript, and CSS that built a website. It's almost the same as just viewing the source code, and see the changes in real time on the site you have open. You can change anything from the copy to the typeface, then screenshot the new design or save your changes (just go to *View > Developer > View Source* and save the page as an HTML file, or copy the code changes to your text editor). Once you re-load the page, though, all of your changes will be gone forever.

### Emulation

Ever wanted to preview a webpage on a phone without pulling your phone out of your pocket? The "Emulation" tab lets you view a web page as it would look on any device, with presets for popular devices or an option to set screen resolution and aspect ratio. You can even set an emulated internet speed, to see how quickly a site would load over dial-up.

It's also a bit hidden: you'll need to open Inspect Element and click the phone icon button to start it. Then, you'll have a perfect tool to understand how others experience a webpage.

It's time to get to work. We'll first use Search to find things on a webpage, then use Elements to edit text and more on a site, and finally will use Emulation to see how our site would look on a phone from a specific location.

# Find Anything on a Site With Inspect Element Search

Wondering what goes into your favorite sites? Search is your best tool for that, aside from reading a site's entire source code. You could just open the default Elements view, press CTRL+F or CMD+F and search through the source code, but the full Search tool will let you search through every file on a page, helping you find text inside CSS and JavaScript files or locate an icon image you need for an article.

To get started, open Zapier.com in Chrome if you haven't already,
then open Inspect Element, click the 3 vertical dots in the top-right

select "Search All Files." The Search tab will appear on the bottom
half of the Developer Tools pane.



> Remember how to open Inspect Element? Just right-click and click *Inspect*
> Inspect Element, or press Command+Option+i on your Mac or F12 on your
> PC.

In the search field, you can type anything—*ANYTHING*—that you
want to find on this web page, and it will appear in this pane. Let's
see how we can use this.

Type `meta name` into the search field, press your *Enter* key, and
you'll immediately see every occurrence of "meta name" in the code
on this page. Now, you can see this page's metadata, the SEO
keywords its targeting, and whether or not it's configured to let
Google index it for search. That's an easy way to see what your
competitors are targeting—and to make sure you didn't mess
anything up on your site.



Let's try another query. Delete `meta` name, type h2 into the search
field instead, and press "enter." You'll see every occurrence of "h2"

bottom, you can see every "h2" header on this page.

Search is an effective tool for designers as well since you can search
by color, too. Type `#ff4a00` into the search field and press "enter"
(and make sure to check the box beside "Ignore case" to see all of
the results). You should now see every time the color #ff4a00,
Zapier's shade of orange, in this site's CSS and HTML files. Then,
just click the line that reads "color: #ff4a00;" to jump to that line in
the site's HTML and tweak it on your own (something we'll look at in
the next section).



This is a handy way for designers to make sure that a site is
following their brand's style guide. With the "Search" tool, designers
can easily check the CSS of a web page to see if a color is applied to
the wrong element, if an incorrect font-family is used on a web
page, or if you're still using your old color somewhere on your site.

The "Search" tool is also the perfect way to communicate with
developers better since you can show them exactly where you've
found a mistake or exactly what needs changing. Just tell them the
line number where the problem exists, and you'll get your fix that
much quicker.

Or, you can change the web page yourself with the *Elements*, the
core part of Chrome's Developer Tools.

## Change Anything with Elements

12/6/21, 10:40 AM    Case 8:21-ap-01023-ES    Doc 71    Filed 12/07/21    Entered 12/07/21 21:22:16    Desc
Inspect Element: How to Temporarily Edit Any Webpage
Main Document    Page 175 of 358

Inspect Element: How to Temporarily Edit Any Webpage

Front-end developers use the Inspect Element tool every day to modify the appearance of a web page and experiment with new appearance and content of a web page by adding temporary edits to the site's CSS and HTML files.

Once you close or reload the page, your changes will be gone; you'll only see the changes on your computer and aren't actually editing the real website itself. That way, you can feel free to experiment and change anything—and then copy and save the very best changes to use again later.

Let's see what we can do with it.

Click the "Elements" tab in the Developer Tools pane—and if you want more room, tap your "Esc" key to close the search box you had open before. You should see the HTML for this page—now you know how the sausage gets made.



In the top-left corner of the developer pane, you will see an icon of a mouse on top of a square. Click it, then you can select any element on the page that you would like to change. So let's change some things!

## Change the Text on a Webpage

Ever wanted to change text on a site—perhaps to see how a new tagline would look on your homepage, or to take your email address off of a Gmail screenshot? Now you can.

Click the "mouse on top of a square" icon, then click any text on the page—perhaps the tagline on the Zapier homepage. In your

Developer Tools pane, you will see a line of text with a blue
highlight that looks something like this:



Double-click the "Connect Your Apps" text that's highlighted blue in
the Developer Tools pane, and it will turn into an editable text field.

Type anything you like in this text field ("Auri is a genius" should
work just fine), and press enter. *Voila!* You've just changed the text
on the web page.

Refresh the page, and everything will go back to normal.

Fun? Let's change some more things on this page.

Your Developer Tools pane re-loads with the page, but let's close it.
Press the "X" in the top-right corner of the page.

Cool. Now we're going open it back up—right at the text we want to
edit. All you have to do is right-click on the part of the page you
want to change, then click the *Inspect* or *Inspect Element* link that
appears on the bottom of the right-click menu.



When your Developer Tools pane opens, it should automatically
highlight that sentence. Pretty neat, huh? It's the little things that

Now that we've selected the tagline on the Zapier site let's change
how it looks.

### Change the Color and Font of Elements

To the right of this sentence in the Developer Tools pane, you will
see a sub-pane with 3 additional tabs: Styles, Computed, and Event
Listeners. Each allows you to change how this sentence looks on
the page. Let's get started on "Styles" tab.



You may notice that some things are crossed out in the "Styles" tab.
This means that these styles are not active for the element we've
selected them, so changing these values will have no effect. We can
ignore these for our purposes.

Let's try changing something. Click the arrow icon in the top of
Inspect Element again, and select the text right under the "Sign Up"
button on the page. Find "text-align" in the "Styles" tab (you may
have to scroll a bit to find this).



Inspect Element: How to Temporarily Edit Any Webpage

Right now, it is set to "center," but double-click "center" and type
`left`. This makes the text left-aligned on the page.

Now let's play around with the color. Use the mouse icon in Inspect
Element to select the button this time, then in the Styles tab find
this line:

```
.button.button--important {          app-bundle.css:2
  text-align: left;
  background: ▶ ■ #ff4a00;
  color: □ #fff;
  border-color: ▶ ▢ transparent;
}
```

And double-click "#ff4a00". Type `#4199ad` (do not forget the #) and
press "enter."

We just changed the color of our button from orange to blue! Now
let's try something really cool.

**Change Element States**

Want to see how a button or link will look once someone hovers
over or clicks it? Chrome Inspect Element can show that too with its
force element state tools. You can see how the element will look
once a visitor hovers over the element (hover state), selects the
element (focus state), and/or has clicked that link (visited state).

Let's try this out. Make sure you've selected the signup button on
the Zapier home page. Then, right-click on that code in the
Elements tab, and select `:active:` in that menu.



Inspect Element: How to Temporarily Edit Any Webpage

That will change the button to grey, which Zapier's site shows as
you click the button.

Now change the background-color value to `#FF4A00`, and you
should instantly see the button color change.

Try experimenting—change the `:hover:` color, then un-check
`:hover:` in the right-click menu and drag your mouse over the
button to see the new button color.

## Change Images

You can easily change images on a web page with Inspect Element,
too. Let's swap the Superhero background on the Zapier site with
this dramatic photo of a solar flare from NASA.



First, copy and paste this link to the image:

```
https://c1.staticflickr.com/9/8314/7931831962_7652860bae_b
```

Now, open Inspect Element on the background of the Zapier
homepage, and make sure you've selected the `signup-hero` line in
the code. Double-click the background URL link in the "Styles" pane,
and paste the link you copied above.





Inspect Element: How to Temporarily Edit Any Webpage

Press "enter" and see the difference immediately.

> **Note:** You can also change a photo to a GIF or a video—all you need is a
> link to the file, and you can add it in.

Editing text is handy, swapping out images is fun, and changing
colors and styles just might help you quickly mockup the changes
you want made to your site. But how will that new tagline and
button design look on mobile?

That's where Emulation comes in—it's where everything we've
reviewed so far can be applied even further. Let's see how.

## Test a Site on Any Device With Emulation

Everything has to be responsive today. Websites are no longer only
viewed on computers—they're more likely than ever to be viewed
on a phone, tablet, TV, or just about any other type of screen. That
should always be kept in mind when creating new content and
designs.

Emulation is a great tool to approximate how websites will look to
users across various devices, browsers, and even locations. Though
this does not replace actually testing on a variety of devices and
browsers, it's a great start.

In the Developer Tools pane, you'll notice a little phone icon in the
top-left corner. Click it. This should change the page into a tiny,
phone-styled page with a menu at the top to change the size.





Inspect Element: How to Temporarily Edit Any Webpage

Resize the small browser to see how things look if you were browsing on a tablet, phone, or even smaller screen. Or, click the menu at the top to select default device sizes like `iPad Pro` or `iPhone 8 Plus`—go ahead and select the latter.

The web page screen should shrink down to an iPhone 8 Plus' size, and you can zoom in a bit by clicking the + icon next to the number at the top right of the grid—that's how the site would look if someone zoomed in on mobile.

Go ahead enlarge the view by dragging the right edge of the web page emulation right. See what happens? We're no longer in the iPhone 8 Plus view. Dragging the screen along the grid allows you to see how the web page will change as the screen size changes, but your view will no longer reflect the device model that you chose previously.

Let's go back to the iPhone 8 Plus view by selecting this in the model drop-down list again. Next to the drop-down list is the word "Portrait." As you may have guessed, this allows you to toggle between the landscape and horizontal view.

Now, we can see how this post would look if you were reading it on an iPhone 8 Plus. Feel free to play around with the other devices to see how this web page and the screen resolution changes. All of the other developer tools that we have gone over so far will also react to the device view. For example, select the text of Zapier's tagline again.

In the iPhone 8 Plus view, we can see that this text is 2em, while in the default view on a computer, it's 3em.





Inspect Element: How to Temporarily Edit Any Webpage

The "em" is a font-size unit that allows you to automatically change the size of text relative to the surrounding text. For example, let's say we have a user with large custom font settings on their browser. If you set your paragraph font-size to 14px, your font will always be 14px to that user no matter what. However, if you set your paragraph font-size to 1em, your user's browser will use this unit to scale your text to your user's large settings. Phones and tablets do this to zoom text nicely.

Now let's switch to the Apple iPad view and select the "testing across devices" header above. This time, the font-size is 3em. The font-size changed based on the device view, back to the default size it'd use on a computer, thanks to the tablet's larger screen.

---

## Emulate Mobile Device Sensors

You may have noticed that your mouse now appears as a little circle on the web page. This allows you to interact with the page as if you are on your mobile device. If you click while dragging the page down, this does not highlight text like it normally would in your browser—it drags the screen down like you are on a touchscreen device. Using this view, you can see how large touch zones are on a web page. This means that you can see which buttons, icons, links, or other elements are easily touchable with the finger.

You can even make your browser act like a phone. Press your "Esc" key to open the search pane in Inspect Element again, and this time click the 3-dot menu on the left side for a menu of options. Select *Sensors* to get three new tools: Geolocation, Orientation, and Touch.

Touch lets you turn on or off the default circle selector that acts more like a finger than a normal mouse cursor. Orientation lets you interact with motion-sensitive websites such as online games that let you move things by moving your phone. And Geolocation lets you pretend you're in a different location.

Let's try viewing this site from Google's Headquarters in Mountain View, CA.

Check the box next to "Emulate geolocation coordinates," and enter the value 37 into the *Lat =* text field and 122 into the *Lon=* text field. Press enter on your keyboard.

Nothing changes, right?

This is because there isn't content on this page that changes based on your location. If you change the coordinates on a site like Groupon.com that uses your location to show localized content, though, you would get different results. Go to Google.com in a different location, and you'll perhaps see a new Google logo for a holiday in another country, or at least will get the results in a different language.

Emulation is a great way to put yourself in your user's shoes and consider what the user may be seeing on your web page—and it's a fun way to explore the international web.

**Emulate Mobile Networks**

You can also see what it's like to browse a site on different networks, perhaps to see if your site will load even if your users are on a slower 3G network.

To give it a try, click the three circle button in the left of Inspect Element's search tab again, and select "Network Conditions". There, you can choose from fast or slow 3G, or offline to see how the page

works without internet. Or, click *Add...* to include your own testing
(perhaps add 56Kbps to test dialup internet). Now, reload the page
connection—and how the site looks while it's loading. That'll show
why you should improve your site to load faster on slow
connections.



You can also change your user agent—uncheck "Select
automatically" beside "User Agent" and select "Internet Explorer 7"
perhaps to see if the site changes its rendering for older browsers.
That's also a handy hack to make webpages load even if they claim
they only work in a different browser like Internet Explorer.

## Challenges

Let's end with a few challenges. Go show us what you've learned!

1. Change headlines on CNN.com and tweet us a screenshot of your
   trending article headline.
2. Duplicate your favorite web site using "View Source," and mess
   around with the HTML to make it your own.
3. See how *your* website renders on a mobile device, and show your
   developer what could be done better by fixing it yourself!

The Marketing team at Zapier team relies on Inspect Element to
tweak private information out of screenshots in our app reviews,
while our design team uses it to mockup changes and see how
things would look on various screens.

*How do you use Inspect Element? We'd love to hear your stories in
the comments below!*

Enjoying your new hacking skills? Take them further in our guide on How to

Inspect Element: How to Temporarily Edit Any Webpage

This tutorial was originally published on January 5, 2015, then was updated and republished on June 6, 2017 and January 25, 2018 with screenshots and steps from the latest version of Google Chrome.

## Get productivity tips delivered straight to your inbox

[ Email address ]   **Subscribe**

We'll email you 1/wk, and never share your information.



**Auri Pope**
Auri Pope contributed this article as a freelancer for Zapier.

**TAGS**   Marketing   Design   Tech tips   Software & web development



UP NEXT

App tips

### How to convert images to text with Google Drive

Google Drive can grab the text from any image or PDF using a built-in optical character recognition (OCR). Here's how to use it.

## Related articles



Automation inspiration

**Tips to make powerful Zapier workflows that grow with your business**



App tips

**How to convert images to text with Google Drive**

Inspect Element: How to Temporarily Edit Any Webpage



How to use brand partnerships as a growth strategy



Data reports

How better tech is helping non-profits do the work that matters



Productivity tips

You can't pull yourself up by your bootstraps



# Improve your productivity automatically. Use Zapier to get your apps working together.

**Sign up**    **See how it works**

Step 1
New Lead

Step 2
Notify team

Pricing    Help    Developer Platform    Press    Jobs    Zapier for Companies

Follow us



makes you happier :)    © 2021 Zapier Inc.    Do Not Sell My Personal Information    |    Legal    |    Privacy



Inspect Element: How to Change Any Webpage on Any Browser - Tutorial




DEVMOUNTAIN
Part of Strayer University

Login

Search for:



# Inspect Element: How to Change Any Webpage on Any Browser - Tutorial

## How to Change Any Webpage on Any Browser

When you view a webpage, there's a bunch of code that you're not seeing, unless you know where to look. Everything is made up of code, from the background image to the typography; from the videos to the buttons. It all operates thanks to complex instructions. But, how do you view the back-end?

How do you peel back the outer layer to see the code?

The Inspect Element tool!

Let's talk about how to use the *Inspect Element* tool.

# What Is Inspect Element?

Inspect element is one of the developer tools incorporated into the Google Chrome, Firefox, Safari, and Internet Explorer web browsers. By accessing this tool, you can actually view — and even *edit* — the HTML and CSS source code behind the web content. Then, as you make changes to the code, these changes are displayed in real-time in your browser window. And don't worry about breaking the page while you dig around in the code; your edits will only take effect for the duration of your session, and are only viewable on your screen. In other words, Inspect Element can give you a sort of 'what if' experience without affecting any other users.

To the average site visitor, Inspect Element is little more than a curiosity, maybe worth a few minutes of diversion. But to site developers, coders, and those who are interested in learning programming, this developer tool offers a number of advantages.

# Benefits of Inspect Element

If you want to really understand something, it's nice to be able to experiment with it. Inspect Element gives you the advantage of being able to tinker around with the code that powers a site and learn how it works.

Let's say that you're just getting started with coding. You visit a web page, and you see that there's an element on the site that really captures your attention. Maybe it's something that you've been interested in incorporating into a page you've been working on; maybe it's something cutting edge that you've never considered before. Either way, you're curious about the code. So you use Inspect Element to see exactly what's going on.

Or, let's say that you're in the process of coding your own page. Inspect Element allows you to preview changes without actually implementing them. It makes it possible to easily identify and repair broken code. Because inspect element gives you the power to change any text on the page, you can remove personal details from shared screenshots without having to power up the old photo editor.

And, if you're interested in optimizing your page for better search engine rankings (a key factor in digital marketing), using Inspect Element on competitor pages can give you an idea of what keywords they are focusing on. You can also use the tool to test your site's loading speed.

These are only a few examples of what you can use Inspect Element for. But before you can do any of these things, you first need to know how to access it.

## Accessing Inspect Element in Different Web Browsers

Inspect Element is useful enough that it is included as a developer tool in all major desktop web browsers. Here's how to access Inspect Element in Google Chrome, Firefox, Safari, and Internet Explorer.

## Google Chrome

To use Inspect Element in Google Chrome, you have a few different options:

- Right-click any area of the web page (including blank areas) and then select *Inspect* from the menu.
- Access the Google Chrome settings menu (the three vertical dots in the upper right-hand corner of the browser window control panel). In the drop-down menu, select *More Tools*, then *Developer Tools*.

## Firefox

Similarly to Google Chrome, Firefox also provides multiple Inspect-Element access options:

- Right-click any area of the web page (including blank areas) and then select *inspect* from the menu.

• Access the Firefox settings menu. Choose *Tools*, then select *Web Developer*, and finally select *Inspector*.

## Safari

Safari follows suit, but before you can use Inspect Element, you'll need to access the *Safari* settings menu. In the upper left of your screen, select *Preferences*, and then check the box that says *Show develop menu in menu bar*. Once you've done that, then use the following options:

• Right-click any area of the web page (including blank areas) and then select *Inspect* from the menu.
• Access the menu bar and click *Develop*, then select *Show Web Inspector* from the dropdown menu.

## Internet Explorer

Internet Explorer also offers developer tools which allow for Inspect-Element functionality:

• Right-click on the page, and choose *Inspect Element* from the popup menu.
• Access the control panel by clicking the gear icon in the upper right of the browser window, or by pressing Alt+X. Select *F12 Developer Tools* in the dropdown menu.

## Keyboard Shortcuts

You can also skip the different menus and instead access Inspect Element directly by using keyboard shortcuts. While on any web page, enter the following keyboard commands:

• Mac: ⌘ + **Shift** + C
• Windows/Linux: **F12** or **Ctrl** + **Shift** + C

## Tutorial: How to Change Text on a Website

You know what Inspect Element is, what advantages it offers, and how to access it on each of the major browsers. So what's left?

How about an easy experiment you can perform right now? Using this very web page, let's use Inspect Element to play around with the text you can see on your screen. For this example, we'll be using Google Chrome.

## Start by highlighting some of the text. For the sake of this tutorial, let's use the following sentence:

Coding is a blast!

## Right-click the highlighted area. Select *Inspect* from the drop-down menu.



## You're going to see a new window pop up within the browser, overlayed on the

webpage. This window shows you the code
being used in the page.



In this new window, you will see a line of code
highlighted in blue. This is the code that
powers the sentence and tells your browser
what the sentence should say. In fact, you
should see the sentence "Coding is a blast!"
within the highlighted area. Double click on
the sentence.



Type in something new. You can type in whatever you want, but we're going to keep it simple:

Coding is an absolute blast!



Press enter.



The changes should update on the page.

Congratulations, you just used inspect element to change the text.

# Dig Deeper

Changing sentences and paragraphs with inspect element is only the beginning; with a deeper understanding of programming languages, you can turn any web page into pretty much anything you want. After all, every page runs on code, and when you control that code, you control the page.

When you access a web page via your web browser, what you're looking at is the culmination of a lot of code, but that's no reason to be intimidated. By using Inspect Element developer tools, you can put every line of that code under a microscope, improving your understanding in the process. Inspect Element is a vital tool for developers and students, and it can be a lot of fun to play around with, too.

# Recommended Reading

How Long Does It Take to Learn Coding?

How to Become a Software Engineer: Seven Steps

A List of Programming Languages Every Programmer Should Know (Or at Least Know About)

🏷 Career Support

# Read On





Becoming a Freelance Web Developer: Where to Start?



Web Development Is an Amazing Skill to Learn, Here's Why



12/6/21, 10:42 AM                                          Open Element Inspect to Change Any Webpage On Any Browser · Tutorial



## How to Become a Freelance Web Developer

### COMPANY

Home

About

Contact

Work for Us

Policies

Press

### STUDENTS

Approach Login

Apply

Blog

Beginners Guide

FAQ

Our Students

### COMMUNITY

DM Hub

Strayer

Instructors

Events

Shop

### FOLLOW US



# **Exhibit 10**

# COUNSEL

Published on *Counsel* (https://www.counselmagazine.co.uk)

Home > Practice Toolset > Fake or fact? (1) Digital docs manipulation and how to spot it

## Fake or fact? (1) Digital docs manipulation and how to spot it

Date: 15 January 2021



He who asserts, must prove. In the field of family law, for example, we deal with problems that arise in people's private lives and where allegations or assertions are made, tangible evidence to support those allegations or assertions is generally sought and relied upon to satisfy the standard of proof. Commonly, we look to documents, most often contemporaneously created, to prove allegations and assertions. In short, documents comprise evidence, and are generally assumed to amount to evidence upon which the parties and the court can rely. For every point that is made, one hopes there is a document to support that point.

Until the common use of the internet and email in the late 1990s, the solicitor/barrister would deal with hard copy documents. Thanks to legal aid provision being more available, litigants were frequently represented and they would provide their original documents to their legal representatives, who would then make copies and file and serve them. The original documents were available to be scrutinised. Any attempt to make alterations would be obvious, or the client would have to be skilled at forgery to be able to replicate an official bank document or a payslip from a large

company. If there were any issues raised about the veracity of a document, a further hard copy might be obtained by the solicitor (at the client's expense) from the relevant institution.

Nowadays, legal representatives often rely upon their clients to provide the relevant documents. Bank statements come as downloads from bank accounts after insertion of customer numbers, passwords, and telephone-sent passcodes. Likewise, pension information can arrive in the same manner. Large companies often provide digital payslips through online portals. Mortgage capacity evidence might arrive as an attachment to an email. Medical evidence and housing officer evidence likewise. All of these documents are printed out by the client and brought into their solicitor, or otherwise may be collated and scanned to the solicitor. In both of those circumstances, the originals have not been provided to the solicitor and the solicitor is relying upon their client being honest. Are they likely to try to alter a document? Who would know?

Litigants in person have no one to account to for their honesty other than the other party and the court. If they think they can get away with altering a document, are they likely to try it?

## Common forms of manipulation

### Adobe Acrobat Reader

The limited remit of Adobe Acrobat Reader, so common to so many of us, has allowed us all to feel secure in the belief that PDF documents cannot be altered. The Acrobat Reader allows us to open PDFs, read them, and include text on certain forms, but not necessarily be able to save the forms with the completed text included on them. However, PDFs can be manipulated with ease and there are several ways to do so.

### Word

Where a document has been prepared in Word and then saved as a PDF, quite often it can be manipulated by the recipient of the document using Word. Upon receipt of a PDF document, it should be saved to the computer. The recipient should then open Word, locate the PDF that is to be altered, open the PDF file and Word will inform the computer operator that the document is converting to a Word file. Once open in Word it will be able to be manipulated and changes made. Once they have been made, the file should be saved using the 'Save As...' function and from the drop down menu 'Save as type:' 'PDF' should be selected.

Administrators preparing documents for onward transmission may restrict the ability of the person receiving that document to amend it in Word, eg I was unable to open a Natwest PDF statement in Word.

### Google Drive

To alter a document using Google Drive, go into it, under 'My Drive' select 'File Upload', find your PDF for amending, click on it, and it will upload. Once uploaded, select the PDF to open it. At the top of the page is a drop-down menu. Select 'Open with Google Docs'. You can then edit the text. In order to save the amended document, go to the File menu and select 'Download As'. Select 'PDF'. Your amended document is then converted back into a PDF and saved on your computer.

The same Natwest statement I was able to open in Google Docs, but its appearance changed completely and I was unable to save it in the same style.

## Acrobat DC

Acrobat DC permits the user to edit PDFs freely. The file is found, selected and opened, and on the right hand side of the screen there is a toolbar with the third icon down being 'Edit PDF'. Text and objects in the PDF can be altered.

Where a document uses a proprietary font or has specific characteristics, opening and editing the file from the copy downloaded from the original document creator may mean that Acrobat DC does not have access to that font and cannot replicate the document exactly. It will automatically select a font it thinks is the most similar. If, however, that same document is first printed out, scanned, and then re-opened, optical character recognition ('OCR') will attempt to match the document as well as it can. The document can then be saved again as a PDF and, indeed, in the original type of PDF as that which was sent. The program informs the user directly if the document was not intended to be edited, but allows them to do so, and enables the user then to save the amended document in a form which indicates to the next recipient that it is not intended to be available for editing.

This tool, and other available programs such as Photoshop enable easy and accurate amendments, including replicating blemishes in the document, for those who wish to create credible-looking documents.

## How can I tell if a PDF has been altered?

Your client has sent you a bundle of bank statements as a PDF. Have they arrived as a direct download and have simply been emailed on? If so, open the document and right click on 'File'> 'Properties'. Under the 'Description' tab there will be the date and time the document is created and the date and time it was last modified. This information should be the same if the PDF has not been modified after creation.

If the file is a scanned document which has been emailed to you, look for discrepancies in the fonts. Banks often use fonts that are difficult for OCR to replicate. Question why a document has come to you in an unusual format and ask for the original, eg if a microfiche-style version of a statement is provided, or otherwise an Excel download of bank transactions. These cannot be relied upon at all and courts generally will not accept them.

Be careful to scrutinise the documents sent to you properly. Do the figures at the end of page 88 of a run of statements match the figures at the start of page 89? Are the balances correct and continuous throughout? Does a pension CETV correspond to a likely contribution history?

Is that, then, enough? Not necessarily. More evidence will be required in order to be able to allege a fraud. At that point, a forensic IT specialist might be necessary to interpret the data.

Under 'Document Properties' > 'Description' of the PDF document, there is a button entitled 'Additional Metadata'. This is where the history of the document is contained. Those who are able to read the information contained therein are able to make clear to the layperson (and legal professional) when and how any amendments took place. There is, of course, a cost to this, but it may be necessary to spend it in order to prevent a larger injustice. Questions of proportionality will always come into play in that instance.

# Anecdotal examples of manipulated documents

1. In TOLATA proceedings C was seeking a 50% share of D's investment properties and which formed part of D's business. C, in his particulars of claim, relied upon an email which he said evidenced the parties' express common intention that he had that share. A copy of the email was exhibited to the particulars of claim. D was convinced that the email was fake. The advocate instructed to draft the defence advised that a forensic IT specialist review the back-up tapes of the business, which they did, and found the original email, which original contained different text to that relied upon by C. The defence was drafted specifically pleading fraud and exhibiting a copy of the original email. When that was served, it went to the claimant together with a without prejudice offer inviting him to discontinue proceedings and pay the defendant's costs on an indemnity basis. This he did. He was later convicted of fraud (and arson) for an unrelated matter of burning down his pub to claim on the insurance.

2. Creditors applied for a final charging order over a property to be enforced by an order for sale. The defendant disclosed an 'agreement' purporting to show that he had agreed with his mother some years before that she could continue to occupy the property for the remainder of her life. The agreement claimed it was drawn up by a firm of solicitors. The creditors' counsel noted that the wording was unusual and found nothing online about any such firm of solicitors. Typing the first words of the agreement into Google came up with a website that sold template legal agreements. Counsel advised that the solicitors contact the web company to find out when the document was created and placed on the internet. The response was that the company was formed in year XXXX and the agreement placed online sometime after. Year XXXX was one year after the agreement was said to have been entered into by the defendant and his mother. The creditors ran the case to trial and the defendant, when confronted with the evidence from the company that this was their document and that it was created a year after the supposed agreement, meant that the defendant lied in his oral evidence about it at trial. He ended up with a £40k indemnity costs order and very strong words in the judgment which would have allowed for a prosecution had anyone referred the matter to the Police/Director of Public Prosecutions (DPP).

3. At a final hearing in a variation claim for maintenance the respondent was claiming that he could not pay maintenance as his income had plummeted and the 800 pages of bank statements disclosed supported this, but his lifestyle did not. During preparation, counsel noted the date of 31 September on one of the bank statements (provided in PDF form but genuine statement) and raised it in cross-examination. The answers given were unsatisfactory. The district judge ('DJ') ordered that the disclosing party provide a run of bank statements from this off-shore bank account that night. He managed to do so, together with a letter stating that the 'dodgy date' was an administrative error. This was received by counsel on the train to court. He checked the meta data of the document which showed it had been created by the discloser. This was one of those cases where eventually the discloser admitted that the documents had been created by him. The DJ found that the discloser had committed fraud, backdated the maintenance payable in full and ordered indemnity costs, both of which were paid that day. A referral was also made to the DPP, although it is not known if anything has come of it.

Further information:

- '**Fake or fact? Digital docs manipulation and how to deal with it (2)**' is available <u>here</u>.
- <u>**Digital fraud in family law webinar:**</u> Byron James, Partner and Barrister at Expatriate Law, discusses with Ben Fearnley of 29 Bedford Row and Helen Brander of Pump Court Chambers how to deal with digital fraud in family law here.

## Issue:
<u>January 2021</u> [1]

**Author (s):**
Helen Brander [2]


**In the era of deepfakes, it is far easier than you might think to alter digital documents such as PDFs. How do we spot fraudulent manipulation? What can we do about it?**

*By Helen Brander*


**Related articles:**
Fake or fact? (2) Digital docs manipulation and how to deal with it [3]

**Category:**
Practice Toolset [4] , Profession [5]


*/

---

**SourceURL:** https://www.counselmagazine.co.uk/articles/fake-or-fact-digital-docs-manipulation-how-to-spot-it-%281%29

**Links:**
[1]https://www.counselmagazine.co.uk/category/practice-toolset
[2]https://www.counselmagazine.co.uk/articles/fake-or-fact-(2)-digital-docs-manipulation-how-to-deal-with-it
[3]http://bit.ly/2JXrebs
[4]https://www.counselmagazine.co.uk/issue/january-2021
[5]https://www.counselmagazine.co.uk/biography/helen-brander
[6]https://www.counselmagazine.co.uk/articles/fake-or-fact-(2)-digital-docs-manipulation-how-to-deal-with-it
[7]https://www.counselmagazine.co.uk/category/profession



Published on *Counsel* (https://www.counselmagazine.co.uk)

Home > Practice Toolset > Fake or fact? (2) Digital docs manipulation and how to deal with it

# Fake or fact? (2) Digital docs manipulation and how to deal with it

Date: 22 December 2020

It is likely that document fraud as described in 'Fake or Fact? (1)' has been going on for years. Clients will raise suspicions about the other party's truthfulness of their assertions, and they, together with the legal representatives may spend considerable time and expense addressing it. Where suspicion is raised, it may be that, with the assistance of this talk and the guidance of others, we will all be on the look-out for basic indicators of fraud. But that will involve considerable time for both solicitor and client and expense for the client, particularly if a forensic expert has to be engaged to prove it.

What about the position where both parties are litigants-in-person? What judge is going to be able to take the time to scrutinise disclosed documents? Should judges be on the alert for fraud? Is that their role? Or is it to consider what evidence is put before them and come to a conclusion about it? If they suspect something is awry, should they be the ones scrutinising the document? Do they become investigating magistrates?

## Draft practice guidelines

The issue of fraudulent manipulation of digital documents has been brought to the attention of the President of the Family Division by District Judge Peter Devlin, formerly of Slough, now of Oxford, and Byron James, a Partner at Expatriate Law. They have proposed draft practice guidance which has been discussed by the Family Procedure Rules Committee. Their proposals comprise:

1. That the starting point is **not** to trust the content of any hard copy document which has not been subject to verification from the original third party source and/or the underlying metadata of the document.
2. In the normal course of disclosure the original electronic file of any document should be disclosed to the other parties and to the court, together with the electronic communication with which it was provided from the purported creator of the document. Those document should be sent to a designated secure professional email address that the parties and the court can access.
3. PDF files should be the preferred file for documents (as the metadata can be easily verified). Screenshots and image files are inappropriate and should be rejected.
4. Where a question is raised regarding the veracity of a hard copy document or electronic file, the party producing the file should be required to answer a questionnaire detailing who was responsible for creating the document, their relationship to the person producing it, how the person producing came to be in possession of it, to confirm that they retain the original (hard copy or electronic original), and setting out how the electronic document has been held, saved and changed, if at all, by the person producing it.

5. Where the questionnaire is not answered, the court shall not assume the content of the document is accurate without independent third party verification.
6. Where there are inaccuracies / inconsistencies, then there should be verification by the third-party source, either by way of a third party disclosure order or a joint request from the parties.
7. If questions still exist, then forensic expert evidence should be sought and contempt / fraud warnings should be given.
8. If only hard copy documents are produced, without the original file or original document being available for scrutiny, then the court should consider making a specific finding about whether the producing party is able to rely upon that document in evidence.

In late February 2020, the President responded, stating is that there is always a residual risk of fraud and this was considered by HMCTS and the former President when the online divorce process was being designed. The current consensus within the judiciary and the Rules Committee(s) is that robust action by the courts on discovery of fraud is the right course of action and operates as a suitable deterrent. Nonetheless, this issue is going to be reconsidered by the Judicial Digital Steering Committee.

## Enhanced measures

It does seem to me that, if one is to tackle fraud in disclosure, we have to put in measures which will minimise the possibility of it in the first place. To the proposals put forward by Byron James and District Judge Devlin I add the following:

1. Where both parties instruct solicitors, we should revert to the old days where the individual solicitors wrote to the third party banks, pension providers, etc, requesting that copies of disclosure be provided to each party via their respective solicitors directly by the third party.
2. Upon the issue of a financial remedy claim, the parties' legal representatives should be obliged to collaborate to obtain instructions from their clients on their financial arrangements and then together, prior to the first appointment, serve Form A on all the institutions on their joint list (banks, pension providers, mortgage companies, company accountants, surveyors) and jointly seek disclosure.
3. If not that, then there could be a standard pre-First Appointment direction that the parties and / or their legal teams meet with an independent third party with a computer on a particular day and collaborate with that independent third party to download and disclose all the relevant documents from the various institutions, with all disclosure overseen so that there can be no manipulation. Where both parties are in person, this can be done together with the 'disclosure officer' at a neutral venue.
4. Specific disclosure sought of private documents belonging to one party, or relevant and belonging to a third party related to one of the litigating parties should occur in accordance with the proposals set out by District Judge Devlin and Byron James above.

## False information presented to court

Finally, it is a frequently unacknowledged truth that people exaggerate, minimise or lie in documents they present to the court. Forms E have on their front page the following warning:

*'If you are found to have been deliberately untruthful, criminal proceedings may be brought against you for fraud under the Fraud Act 2006.*

*The information given in this form must be confirmed by a statement of truth. Proceedings for contempt of court may be brought against a person who makes or causes to be made, a false*

*statement in a document verified by a statement of truth.*

It is extremely rare that family courts do anything about people who present false information to the court. It is not accepted that the courts act with adequate robustness. That may be due to wanting to permit parties to finalise their litigation and get on with their private lives. If someone is subject to prosecution, who is it that might be affected? If there are minor children being provided for by the perpetrator, what is the effect on them of pursuing and prosecuting the fraudster? Justice may be considered to be done via the mischief and deceit being recognised by a hefty rebalancing of the assets in the innocent party's favour.

Moreover, having to take matters further involves using precious police, Crown Prosecution Service and court resources. If a matter is sent to the Director of Public Prosecutions to consider whether a prosecution should take place, is it likely that the Crown Prosecution Service will say that it is not in the public interest to prosecute fraud by manipulation of documents in the context of internal division of family wealth? But is that a just approach? Is it not in the public interest to pursue all matters of fraud? Does the deceitful party then get away with it? Is there, in fact, any deterrent to those intent on manipulating documents to prove their point?

## Conclusion

Until we accept that document manipulation of this sort probably happens far more frequently than we would like to think, and adapt our working practices to accommodate the possibility or otherwise probability of an electronic document being manipulated, then it is likely that unfair decisions are being made in court regularly. Where a fraud comes to light later, then proceedings may begin to set aside the original order, but that involves time, expense, heartache and overcoming the legal hurdles required to meet the test for set aside.

It would be best for parties and for courts to truncate the process of disclosure – to save time and money in obtaining and scrutinising documents. In order to enable this, legal representatives, courts, law makers and Rules Committees need to move away from thinking of family litigation as an adversarial process. The Procedure Rules could be altered to provide that parties have to cooperate and liaise in the disclosure process and at the proposed disclosure appointment, with adverse inferences being drawn and / or contempt proceedings being considered and brought in cases where parties refuse to do so.

Further information:

- This article will appear in print *Counsel* February 2021. **Fake or Fact? (1) Digital docs manipulation and how to spot it** was published in *Counsel* January 2021 and available <u>here</u>.
- <u>Digital fraud in family law webinar</u>: Byron James, Partner and Barrister at Expatriate Law, discusses with Ben Fearnley of 29 Bedford Row and Helen Brander of Pump Court Chambers how to deal with digital fraud in family law.

## Author (s):

<u>Helen Brander</u> [1]

**In part 2 of this two-part series, *Helen Brander* looks at the measures we can put in place to tackle fraud in disclosure, and minimise the possibility of it happening in the first place. Is it a judge's role to be on the alert for fraud? Do the proposed draft practice guidelines go far enough?**

**Related articles:**

Fake or fact? (1) Digital docs manipulation and how to spot it [2]

**Category:**

Practice Toolset [3] , Profession [4]

*/

---

**SourceURL:** https://www.counselmagazine.co.uk/articles/fake-or-fact-(2)-digital-docs-manipulation-how-to-deal-with-it

**Links:**
[1]https://www.counselmagazine.co.uk/category/practice-toolset
[2]https://www.counselmagazine.co.uk/articles/fake-or-fact-digital-docs-manipulation-how-to-spot-it-(1)
[3]http://bit.ly/2JXrebs
[4]https://www.counselmagazine.co.uk/biography/helen-brander
[5]https://www.counselmagazine.co.uk/articles/fake-or-fact-digital-docs-manipulation-how-to-spot-it-(1)
[6]https://www.counselmagazine.co.uk/category/profession

# Exhibit 11

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, October 21, 2021**                                    **Hearing Room        5A**

---

<u>10:30 AM</u>
**8:21-10513    Rosa A Fridman**                                              **Chapter 7**

**#14.00**        Hearing RE: Plaintiff Karl Avetoom's Motion for an Order Dismissing Rosa
                Fridman's Bankruptcy Case Pursuant to 11 U.S.C. Section 707, Bar to Refiling
                11 U.S.C. Section 349 and Vacating the Court's Lien, Avoidance Order

                                Docket        91

**Courtroom Deputy:**
                - NONE LISTED -

**Tentative Ruling:**

        **October 21, 2021**

        Deny the Motion.  However, Debtor will be required to take a second credit
        counseling course by or before November 30, 2021.

        <u>Basis for Tentative Ruling</u>:

        The court is not persuaded that Movant has met his burden of proof that this
        case should be dismissed. The court has reviewed Movant's evidence in
        detail and finds it wholly unconvincing.  Furthermore, the may exercise its
        discretion not dismiss this eight-month old case on the basis of an alleged
        failure to attend pre-filing credit counseling.  Indeed, even if Debtor did not
        attend the pre-filing counseling, the failure to do so is not jurisdictional,
        dismissal of the case is not mandatory and the court has discretion to fashion
        a reasonable remedy.  See *In re Manalad*, 360 B.R. 288 (Bankr. C.D.Cal.
        2007). As the court noted in *Manalad* " because the consequences of
        dismissal are so significant, Congress would *308 have mandated dismissal
        as a remedy for non-compliance with the Credit Counseling Requirements as
        it did in other" situations if it intended dismissal to be the only available
        remedy."

        Out of an abundance of caution, the court will order Debtor to complete a
        credit counseling course by or before November 30, 2021.

---

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

**Thursday, October 21, 2021**                                    **Hearing Room        5A**

10:30 AM
**CONT...        Rosa A Fridman**                                                **Chapter 7**

Evidentiary Rulings:  Sustain Debtor's evidentiary objections to the
declarations of Mssrs. Sweza and Brooks.

| Party Information |
|---|

**Debtor(s):**

Rosa A Fridman                          Represented By
                                        Scott  Talkov

**Trustee(s):**

Karl T Anderson (TR)                    Represented By
                                        Melissa Davis Lowe

**Exhibit 12**

1  SCOTT TALKOV, State Bar No. 264676
   TALKOV LAW CORP.
2  2900 Adams St Ste C225
   Riverside, California 92504
3  Telephone: (951) 888-3300
   Email: scott@talkovlaw.com
4

5  Attorneys for Debtor Rosa A. Fridman

6

7              UNITED STATES BANKRUPTCY COURT

8        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

9  In re                              Case. No. 8:21-bk-10513-ES

10 ROSA A. FRIDMAN,                    Chapter 7

11          Debtor.                    **DEBTOR'S EVIDENTIARY OBJECTION
                                       TO THE DECLARATIONS OF BARRY Q.
12                                     BROOKS AND BRYAN SWEZEA
                                       PROVIDED IN REPLY TO OPPOSITION
13                                     TO KARL AVETOOM'S SECOND
                                       MOTION TO DISMISS BANKRUPTCY
14                                     CASE**

15                                     Hearing on Karl Avetoom's Second Motion to
                                       Dismiss to Case:
16                                     Date:       October 21, 2021
                                       Time:       10:30 a.m.
17                                     Courtroom:  Courtroom 5A
                                                   411 W. Fourth Street
18                                                 Santa Ana, CA 92701
                                                   Virtual appearance by Zoom.gov
19

20         TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY

21 JUDGE, CREDITOR KARL AVETOOM, THE U.S. TRUSTEE, AND ALL PARTIES IN

22 INTEREST:

23         Rosa A. Fridman ("Ms. Fridman"), Debtor in the above-captioned matter, submits the

24 following evidentiary objections to the declarations provided in support of the reply (filed as BK

25 Doc. 99) to the opposition to the second motion of Karl Avetoom ("Avetoom") to dismiss the

26 bankruptcy case pursuant to 11 U.S.C. § 109(h)(1) (the "Motion" filed as BK Doc. 91) as follows:

27

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

## EVIDENTIARY OBJECTIONS

As relevant to the pending motion, Mr. Avetoom believes that he has found a weakness in the legal system: false declarations in support of reply briefs for which Mr. Avetoom believes there is no mechanism for the Court to detect the falsity thereof, since no further briefing is normally provided by the non-moving party. Indeed, there is a pending motion for terminating sanctions against Mr. Avetoom following this Court's questions on September 9, 2021 as to why he fabricated (photoshopped) documents that he also falsely authenticated via declarations in two reply briefs in the adversary proceeding, for which Mr. Avetoom failed to deny that he had indeed fabricated and falsely authenticated those documents. (See Adv. Doc. 27 (referencing fabricated documents in reply briefs filed as Adv. Doc. 25 and 26); Adv. Doc. 29 (court docket entry setting hearing on terminating sanctions).) Those false documents related to an attempted coverup of a manufactured declaration of non-existent creditor "Victor Balakin" supposedly corroborating Karl Avetoom's allegations in his first motion to dismiss that the Debtor alleges was filed by Mr. Avetoom, which was met with another evidentiary objection showing the falsity thereof. (See BK Doc 34.)

Mr. Avetoom's reply to the opposition to his <u>second</u> motion to dismiss attaching two declarations supposedly corroborating his belief that the Debtor did not complete the prebankruptcy education course reflects that he still believes that he can exploit this perceived weakness in the legal system.

However, a close review of the objections set forth below show that the declaration of private investigator Barry Brooks was originally described by Karl Avetoom as merely involving Mr. Brooks "serving" Rosa Fridman with unspecified papers, by which he would have jumped out of the bushes at the first opportunity to complete his job, contradicts Mr. Brooks' declaration in the reply that he was surreptitiously conducting time consuming "surveillance" of Rosa Fridman by watching her being transported from her house, to the store, and back home <u>without any contact by Mr. Brooks</u>. As expected, no documents, photos, invoices, proof of payment for his supposed service, emails with his client, Mr. Avetoom, or otherwise are provided supporting this shocking

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1   coincidence that he happened to be watching Rosa Fridman outside of her house at the same time

2   that Debtor Rosa Fridman attests to have been taking the debtor education course by Skype

3   Screenshare with her son at her house. The reason Mr. Brooks is having trouble telling this story is

4   because, apparently, it never occurred.

5       Aware that this story hardly adds up, Mr. Avetoom adds the declaration of self-described

6   technology expert (in everything) Bryan Swezea who misreads the declarations of the Debtor and

7   her son, Alex Theory, to conclude that Alex Theory could not have helped the 89-year-old Debtor

8   take the prebankruptcy counseling course. However, Mr. Swezea simply misinterprets the

9   evidence, wades into legal arguments for which he offers no expertise and makes guesses about

10  technology for which he provides no foundation.

11      This Court should exclude this evidence, both the motion to dismiss, and enter the

12  Debtor's discharge under FRBP 4004(c).

13  ### EVIDENTIARY OBJECTIONS TO DECLARATION OF PRIVATE INVESTIGATOR

14  ### BARRY Q. BROOKS

15      The reply to the opposition to the motion offers the declaration of Barry Q. Brooks, a

16  private investigator who supposedly observed the debtor outside of her house coincidentally at the

17  exact time that the Debtor attests to having completed the debtor education course at her house.

18  This, Mr. Avetoom claims, means that the Debtor never "received" the pre-bankruptcy counseling

19  course as required by 11 U.S.C. Section 109(h). However, the evidence should be wholly excluded

20  as apparently being another erroneous declaration supplied by Mr. Avetoom in support of a reply

21  brief.

22  **The Declaration Should be Excluded as Being Included With the Reply, Despite Being**

23  **Intended to be Filed with the Motion**

24      As a forgoing matter, this declaration should be wholly excluded as being included with a

25  reply when it was intended to be and should have been included with the moving papers. This

26  Court hardly needs to trust the Debtor on this objection as Mr. Avetoom's second motion to

27

---

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**

3

1  dismiss even referenced the "Decl. of Barry Brooks," as shown below from BK Doc. 91, p. 19,

2  lns. 26-28.

26  bankruptcy Course (Swezea decl. ¶ 15).  In addition, an investigator attempting to serve Rosa Fridman

27  with documents observed Rosa Fridman at the same date and time in Huntington Beach while the

28  person was taking the educational class for her in Oregon (Decl. of Barry Brooks ¶ 3).

8

MOTION FOR AN ORDER DISMISSING BANKRUPTCY CASE

8      While Mr. Avetoom filed an errata to include his own omitted declaration (BK Doc. 95),

9  Mr. Avetoom did not include the declaration of Barry Brooks that supposedly supported his

10  motion. Due process requires that the evidence supporting the second motion to dismiss the

11  Debtor's exercise of her right to enter the Constitutionally enshrined bankruptcy process should

12  have been provided with the motion.

13  **Mr. Avetoom's Motion Claiming that Barry Brooks Would Attest to Being Present When**

14  **Rosa Fridman Took the Debtor Education Course "to Serve Rosa Fridman with**

15  **Documents" Contradicts Barry Brooks' Declaration Attached to the Reply that He was**

16  **Merely Conducting "Surveillance" for Hours on End of Rosa Fridman Totally Unrelated to**

17  **Anything Being Served**

18      Mr. Avetoom, who is currently subject to a scheduled motion for terminating sanctions for

19  fabricating documents, declarations and witnesses to this Court, made an important mistake in

20  describing the unattached declaration of Private Investigator Barry Brooks in his moving papers in

21  describing the declaration of Barry Brooks as setting forth that "an investigator **attempting to**

22  **serve Rosa Fridman with documents** observed Rosa Fridman at the same date and time in

23  Huntington Beach while the person was taking the educational class for her in Oregon (Decl. of

24  Barry Brooks ¶ 3)." (BK Doc. 91, p. 19, lns. 26-28.)

25      However, once Mr. Brooks' declaration was attached to the reply, he set forth a different

26  and contradictory story making no mention of attempting to serve Rosa Fridman on behalf of Karl

27  Avetoom with any documents. Presumably this is because Mr. Brooks would have gladly jumped

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**

4

1    out and served Rosa Fridman at the first opportunity, then headed home, thereby undermining his

2    alleged recollection of knowing that Rosa Fridman was not at her house at the time she took the

3    prebankruptcy debtor education course. Instead, Mr. Brooks declares that he was <u>present only for</u>

4    <u>covert "**surveillance**"</u> of Rosa Fridman to determine how she withdrew money from her bank

5    account for which he patiently observed and attempted to avoid being spotted by Rosa Fridman.

6    (BK Doc. 99, pp. 16-17.)

7         Specifically, Mr. Brooks claims he just happened to be conducting "surveillance" on Rosa

8    Fridman at the exact moment that she was taking the pre-bankruptcy debtor education course on

9    February 9, 2021, sometime before 3:33 p.m. PST, in declaring as follows:

10        2. … I was retained to perform **surveillance** by Mr. Avetoom to trace withdrawals from
         bank accounts involving Rosa Fridman and her son Val Fridman. I met Val Fridman
11       several years ago during a prior investigation involving his parents.

12        3. During the weeks of February 1, 2021 through February 14, 2021 my company, 21st
         Century Investigations, had Rosa Fridman **under surveillance** as it was customary for
13       Rosa Fridman and her son Val Fridman to withdraw cash from Rosa Fridman's bank
         account at Wells Fargo which would go unaccounted for.
14

15        4. On or around February 9, 2021 between the hours of 11 AM to 6 PM I was performing
         **static surveillance** on Rosa Fridman's condominium located at 16542 Blackbeard Lane,
16       Unit 304, in Huntington Beach, California. The unit is on the third floor and is serviced by
         an elevator. The **static surveillance turned into mobile surveillance** between the hours of
17       3 PM to 4:20 PM when Rosa Fridman left her condominium and visited a shopping center
         with a Jon's marketplace located on Goldenwest Street in Westminster, CA. Rosa Fridman
18       was driven by a male, approximately mid 50s, dark hair, believed to be her older son, Val
         Fridman.
19

20        5. Our **surveillance ended** upon Rosa Fridman's return to her condominium at
         approximately 4:20 PM. Rosa Fridman entered her residence and remained there until our
21       surveillance session ended at approximately 6 pm.

22       The story told by Karl Avetoom in his second motion to dismiss is simple: That Barry

23   Brooks, while supposedly working for Karl Avetoom, would testify to "**attempting to <u>serve Rosa</u>**

24   **<u>Fridman with documents</u>**…at the same date and time in Huntington Beach while" the debtor

25   education course was being taken by someone in Oregon. (BK Doc. 91, p. 19, lns. 26-28.)

26   However, Karl Avetoom realized after reviewing the opposition that the Debtor simply being in

27

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1  Huntington Beach wouldn't necessarily prove that she didn't take the debtor education course by

2  Skype Screenshare with Alex Theory, who was then located in Oregon. (See BK Doc. 97.)

3     It appears that something about those declarations supporting the opposition caused Mr.

4  Brooks to have a different memory, not one that would involve him serving the Debtor at all.

5  Instead, he now patiently observed the Debtor for hours on end, watching her exit her house, exit

6  her son's car to go into to the market, then enter the son's car again to go back to her house, then

7  exit the car to go into her house. This multi-hour surveillance occurred without any service of

8  process upon the Debtor.

9     Of course, if there was service on the Debtor, there would have been a proof of service,

10 that proof of service would seemingly have been filed with the state court long ago, and there

11 would have been a document that was supposedly served. However, even Karl Avetoom is having

12 trouble recreating history of what he would have been serving the Debtor with on February 9,

13 2021, presumably because he cannot allege that there was any document outstanding to serve, let

14 alone a document that would have required personal service.

15    There are only two conclusions to be reached. Either 1) Mr. Brooks is the world's worst

16 process server by observing Rosa Fridman for hours driving around town with her son, Val

17 Fridman, without even trying to serve her, or 2) Mr. Brooks is the world's worst investigator,

18 having tracked Rosa Fridman for hours driving around town without taking a single photo or

19 providing this Court with any supporting evidence of this multi-day investigation to attach to his

20 declaration. In reality, Mr. Brooks is misremembering what occurred.

21    Indeed, Mr. Brooks is more than just a private investigator for Karl Avetoom. He is also a

22 close associate of Mr. Avetoom, admitting under penalty of perjury that he just happened to be

23 "with Mr. Avetoom as his residence" at the one and only time that counsel for the Debtor has

24 attempted to personally serve anything on Mr. Avetoom. (Adv. Doc. 18, p. 54, Para. 3.) The close

25 association makes it more likely that Mr. Brooks would be glad to assist Mr. Avetoom in

26 misremembering that he happened to be watching Rosa Fridman not being present at her house at

27 the time that she took the debtor education course.

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**

6

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

Debtor respectfully requests that the Court sustain this objection to the entirety of the declaration of Barry Brooks, or, alternatively, give the declaration extremely limited weight as being the by-product of an apparent mistake in Mr. Brooks' memory as coincidentally being present at the exact moment that the Debtor completed the prebankruptcy counseling course.

**OBJECTIONS TO THE PURPORTED EXPERT TESTIMONY OF BRYAN SWEZEA**

Debtor Rosa Fridman hereby objects to the purported expert testimony of Bryan Swezea, a self-described expert in virtually all forms of technology (BK Doc. 99, pgs. 11-13 and BK. Doc. 91, pgs. 61-63.)

Federal Rules of Evidence, Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Here, the testimony of Bryan Swezea is offered that it is his "professional opinion that Rosa Fridman did not take part and/or participate in the February 9, 2021 pre-bankruptcy course."

**Mr. Swezea's Opinion is Based on His Misinterpretation of the Debtor's Exhibits 1 and 2**

Specifically, Mr. Swezea claims (at BK Doc. 99, lns. 8-11) that: "The screenshots, Exhibits "1" and "2" to the Opposition, are for the wrong website that would have been used to take the first educational pre-filing course on February 9, 2021. There is no way for this website, www.debtoredu.com, could have been used to take the first bankruptcy pre-filing course."

However, Mr. Swezea never offers any expert, technical or specialized knowledge, presents no data, nor shows any reliable principles and methods, nor the reliable application of those principles and methods to the facts in this case on how he reached this opinion.

Moreover, Exhibits 1 and 2 are not offered to show how the website looked on February 9, 2021 when the debtor education course was taken. Rather, they are offered to show how

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    screensharing looks using Skype Screenshare from both computers to show that this indeed could

2    have occurred. (BK Doc. 96, p. 10, lns. 7-14.)

3    **Mr. Swezea's Opinion is Based on His Misinterpretation of the Debtor's Exhibits 3**

4        Mr. Swezea then claims (at BK Doc. 99, lns. 12-18) that "Exhibit "3" to the Opposition of

5    Rosa Fridman is a 2018 Skype chat session between what is represented to be Alex Theory and

6    Rosa Fridman. What this proves is that the Skype accounts have records at least three years old,

7    but neither Alex Theory or Rosa Fridman provided any evidence of a chat and/or screen sharing

8    session for February 9, 2021 which would be present if such a screen sharing/chat session had

9    been performed between Rosa Fridman and Alex Theory. The specific absence of any evidence in

10   the Opposition of a Skype interaction on February 9, 2021 leads me to the conclusion that no such

11   record exists as no such Skype communication was made on that date."

12       However, Mr. Swezea is confusing the nature of Exhibit 3, which was described as a

13   "screen capture" as follows: "3. Attached as Exhibit 3 is a true and correct copy of a <u>screen</u>

14   <u>capture</u> showing an example of a Skype chat with my mother, Rosa, that was conducted before the

15   subject February 9, 2021 call." While Mr. Swezea claims that "this proves is that the Skype

16   accounts have records at least three years old," there is no foundation for this belief. Rather, this

17   purports to be a screen capture manually taken by Alex Theory.

18       Mr. Swezea is confusing a manual screen capture with an automatically archived log by

19   Skype, which the declaration of Alex Theory attests does <u>not</u> exist.

20    **Mr. Swezea's Opinion is Based on His Misinterpretation of the Debtor's Notation that**

21          **DebtorEdu.com May (or May Not) Have Been the Site She Used**

22       Mr. Swezea's declaration then goes on to claim (at Doc. 99, p. 12, lns 19-26) "there is no

23   way that Rosa Fridman used "www.debtoredu.com" on February 9, 2021 to take the pre-filing

24   educational course as represented in the declarations of Alex Theory and Rosa Fridman

25   and Exhibits '1' and '2'."

26       However, neither the declarations of Alex Theory and Rosa Fridman nor Exhibits "1" and

27   "2" purport to show that Rosa Fridman used www.debtoredu.com on February 9, 2021. Rather, the

1    declaration of Debtor Rosa Fridman (at BK Doc. 97, p. 13, lns. 16-18) set forth that "Alex shared

2    the screen from <u>one of the websites run by 001 Debtorcc Inc</u>., which I believe was

3    https://www.debtoredu.com/, though the company has other websites that appear to be identical

4    (e.g., https://www.debtorcc.org/)."  In other words, the Debtor declares that she doesn't recall

5    which of the nearly identical looking websites she used after being directed to use the company for

6    the debtor education course.

### Mr. Swezea's Opinion is Based on His Misinterpretation that the Debtor Used the Paid Calling Features in Skype

9        Mr. Swezea then claims that "Based upon the evidence it is impossible for Mr. Theory to

10    have connected to the debtorcc servers to take the course using a broadband IP address, and at the

11    same time, make a <u>paid call</u> with screen sharing function, while still on a broadband IP TDS

12    connection."

13        However, the declaration of Alex Theory implies that he only used the unpaid (free)

14    portion of Skype to conduct the Skype Screenshare, setting forth (at BK Doc. 96, p. 11, lns. 7-10)

15    that: "Unfortunately, I was not able to obtain call logs going back to the date of the particular

16    screenshare on February 9, 2021, as Skype call history only displays calls for the last 6 months,

17    and <u>only keeps records of paid calls in Skype</u> according to the Microsoft website, a true and

18    correct copy of which is attached as Exhibit 5." In setting forth that Skype "only keeps records of

19    paid calls in Skype," Mr. Theory was explaining that the Skype Screenshare was using an unpaid

20    (free) feature for which Skype records would not be available, presumably because Skype keeps

21    call records for billing purposes, i.e., in relation to income generated on Skype, not as a feature for

22    the benefit of users.

### Mr. Swezea's Opinion is Based on His Misinterpretation that the Debtor Used "Telephone Capabilities," Rather than Skype Screenshare

26        Mr. Swezea then claims (at BK Doc. 99, p. 13, lns. 5-6) that "Regardless the LG tablet

27    reportedly used in Exhibit "1" does not have telephone capabilities."

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION TO DISMISS BANKRUPTCY CASE**

1   However, no suggestion is made in the declaration of Alex Theory or Rosa Fridman that

2   Rosa Fridman's LG Tablet was used to make a "telephone" call.  Rather, the declarations attest to

3   a Skype Screenshare.

4   **Mr. Swezea's Opinion is Based on His Conclusion Without Any Foundation that a "Screen**

5   **Sharing Log…Would Still be Present"**

6   Mr. Swezea then claims (at BK Doc. 99, p. 13, lns. 6-8) that "any screen sharing log or any

7   communication log for February 9, 2021 with Mr. Theory would still be present on the LG Tablet

8   showing time, duration and parties connected."

9   However, Mr. Swezea never explains how he reached this conclusion, or how Rosa

10   Fridman could obtain this screensharing log from her LG Tablet. To the extent Mr. Swezea meets

11   the first factor for expert testimony under Evidence Code 703(a), he presents no data, nor shows

12   any reliable principles and methods, nor the reliable application of those principles and methods to

13   the facts in this case on how he reached this opinion that a screensharing log for February 9, 2021

14   could be obtained on the LG Tablet. To the extent Mr. Swezea, who does not purport to be an

15   employee of Microsoft (the owner of Skype) is merely guessing, this testimony should be

16   excluded.

17   **Mr. Swezea's Opinion is Based on His Misinterpretation that the Debtor Used a "Skype**

18   **Phone Number"**

19   Mr. Swezea then claims (at BK Doc. 99, p. 13, lns. 13-15) that "the existence of the TDS

20   Communications IP address in Oregon interfacing with Debtorcc's servers would not have been

21   possible with a private Skype phone number, the two are incompatible. Additionally, the Skype

22   phone number could not have been used to communicate with Debtorcc's webpage and course

23   session."

24   However, the declarations of Rosa Fridman and Alex Theory do not attest to using a

25   private Skype phone number to interface with each other or with Debtorcc's servers. Rather, they

26   attest to connecting online with Debtorcc's servers and using the Skype Screenshare feature to

27   share the website between Alex Theory and Rosa Fridman.

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**
10

**Mr. Swezea's Opinion is Based on Conflating His Ability to Manually "Trap" and "Record" a Skype Screenshare Means that Skype Would Have Automatically Created a Log of the Screenshare that the Debtor Could Access from her LG Tablet**

Mr. Swezea then claims (at BK Doc. 99, p. 13, lns. 18-20) that "I have performed a screen sharing session which trapped and recorded the date and time of the chat and screen sharing session in detail, participants, time, date and duration. None of this has been provided by Rosa Fridman and her son in the Opposition."

However, the issue is not whether a Skype Screenshare could have been "trapped and recorded" (whatever that means) as a debtor is not required to "trap" and "record" their debtor education course under 11 U.S.C. Section 109(h). Rather, the issue is whether the failure to produce evidence of the screenshare makes the fact in consequence more or less likely that Alex Theory indeed used Skype Screensharing to allow Rosa Fridman to "receive" the debtor education course as required by 11 U.S.C. Section 109(h). In turn, Mr. Swezea has failed to show that there would be any data on Rosa Fridman's LG Tablet that would show that this screen share took place on February 9, 2021.

Once again, to the extent Mr. Swezea meets the first factor for expert testimony under Evidence Code 703(a), he presents no data, nor shows any reliable principles and methods, nor the reliable application of those principles and methods to the facts in this case on how he reached this opinion that a screensharing log for February 9, 2021 could be obtained on the LG Tablet.

Even further, Mr. Swezea does not attest nor show any evidence that he used an LG Tablet to "trap" and "record" the screensharing log. Perhaps "trapping and recording" can be conducted on more robust technology like a desktop computer, but not on intentionally simple technology like an LG Tablet, the simplicity of which makes the device easy to use for an 89-year-old debtor like Rosa Fridman.

**Mr. Swezea's Opinion is Based on His Legal Conclusions Wholly Unrelated to His Supposed Expertise in Everything With Technology**

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

1    Mr. Swezea then claims (at BK Doc. 99, p. 13, lns. 26-27) claims that ""Rosa Fridman's

2    Opposition also failed to explain the difference in four hours to take the course, which by

3    Debtorcc's records only took nine minutes."

4    However, Mr. Swezea is not using his technical education, but rather providing argument

5    in support of the position urged by Karl Avetoom, undermining his credibility as a supposed

6    technical declarant. Even further, no evidence has been presented as to why Rosa Fridman

7    contends that it took four hours, as the additional time may relate to communication with her son,

8    Alex Theory, discussion of the debtor education course, preparation for the course by compiling

9    documents related to debts and assets, and otherwise. This is hardly a technical issue for which

10    Mr. Swezea offers any specialized knowledge that is helpful to the trier of fact.

11    **Mr. Swezea's Opinion is Based on His Legal Interpretations of Assets and Apparent Lack of**

12    **Knowledge of Exemptions**

13    Mr. Swezea then goes on to offer legal conclusions in claiming (at BK Doc. 99, pp. 13:27-

14    14:1) "that the chat session completed in Oregon listed assets over $100,000 available to satisfy

15    debts, where Rosa Fridman's testimony claims she has no assets and no money."

16    However, Mr. Swezea is merely showing his desire to reach a conclusion, not that he has

17    any supposed technical knowledge to offer this Court. Indeed, the chat session does not claim that

18    Debtor Rosa Fridman has "over $100,000 available to satisfy debts," but rather that the debtor

19    education court provider set forth that her "total tangible assets" are over $100,000. (BK Doc. 91,

20    p. 56.) No information is provided on how the provider reached this conclusion. In any event, Mr.

21    Swezea appears to be unaware that a debtor is not required to use their assets to satisfy their debts

22    so long as they are exempt, most notably the homestead exemption. The Chapter 7 Trustee, Karl

23    Anderson, already hired counsel and reached the conclusion that the Debtor indeed has no assets

24    available to pay creditors. Mr. Swezea's desire to wade into legal issues of assets and exemptions

25    for which he has no expertise reflects the conclusion-based analysis that he used to reach his other,

26    supposedly technical conclusions.

27

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**

## **Mr. Swezea's Opinion is Based on His Argumentative Interpretation of Facts Unrelated to this Supposed Expertise in Everything Technological**

Mr. Swezea then reaches a conclusion for which no evidence is offered in claiming (at BK Doc. 99, p. 14, lns. 2-4) that "Rosa Fridman in two transcripts of what appear to be "341" examinations performed by the Chapter 7 Trustee, never once mentions Alex Fridman's involvement in taking the pre-filing bankruptcy course. Rosa Fridman repeatedly claimed she took the course, with Val Fridman translating for her in her Huntington Beach apartment."

However, this is simply argumentative for which technical knowledge is not helpful. Moreover, the now-90-year-old Debtor's recollection of whether one or both of her sons assisted her in taking a perfunctory, required course is hardly determinative. Moreover, there is <u>no</u> information suggesting that Val Fridman did <u>not</u> help her, but rather that Alex Theory conducted the screenshare. Even further, a review of the 341(a) transcript reveals that the interpreter was confused after the question "did you have assistance in completing this class? RUSSIAN INTERPRETER 324352: Interpreter couldn't hear. (Interprets again) A (Through Interpreter): My son, Val." (BK Doc. 91, p. 32, lns. 14-25.)

In fact, the transcript also references Mr. Avetoom either intentionally or accidentally providing erroneous questions in the hopes of tripping the elderly debtor in admitting something that was not true, asking:

> Q And do you recall testifying at your last 341 examination that you did not have internet access at your apartment?
>
> <u>MR. TALKOV: I don't recall that.</u>
>
> RUSSIAN INTERPRETER 324352: The interpreter apologize. I couldn't hear the answer. (Interprets again)
>
> <u>A (Through Interpreter): I said that I had the internet.</u>

(BK Doc. 91, p. 31, lns. 16-24.)

Lastly, the transcript shows no attempt to differentiate between the first debtor education course and the second debtor education course. (*Compare* BK Doc. 2 *with* BK Doc. 72.)

---

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION TO DISMISS BANKRUPTCY CASE**

13

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

TALKOV LAW
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

Overall, Mr. Swezea's declaration does not constitute expert testimony that is helpful to the trier of fact. Indeed, while Mr. Swezea holds himself out to this court as though his declaration offers expertise, he holds himself out to the public as a mere technological generalist using the website https://bryanthecomputerguy.com/. He is hardly an expert at everything. Rather, his declaration reflects further argument that causes the reply to exceed the page limit. On any or all of these grounds, the declaration of Bryan Swezea should be stricken in part or in whole.

**Both Declarants Lack Credibility as Being a Part of the Same "Litigation Investigators" Company Whose President's Signature Appears on Each of Karl Avetoom's Proofs of Service**

Undisclosed in the Declarations of Bryan Swezea and Barry Brooks is that both are or were employed with Litigation Investigations, the same outfit whose owner, Sal W. Hanna, allegedly signs and serves each of Karl Avetoom's proofs of service. This is shown by a search of Mr. Swezea's name.



An archived version of the Litigation Investigators website is online at https://web.archive.org/web/20201129110252/http://litigationinvestigators.com/meet-the-team/. The site lists "Dr. Barry Q. Brooks" (apparently based on a juris doctorate) and "Professor Sal Hanna" (apparently based on being an "Adjunct Instructor" back in 2010 to 2013, accordingly to his LinkedIn profile at https://www.linkedin.com/in/salwhanna).

1    Also undisclosed are the financial relationships between the declarants going to the weight

2   of their testimony. To the extent these declarations have any weight, that weight is less than the

3   testimony of the Debtor that she took the course - particularly based on the lack of any legal

4   citation to any case that dismissed a case based upon a finding that the Debtor was assisted in the

5   completion of a certificate of counseling.

6                                          **CONCLUSION**

7    Based on the aforementioned objections, the Debtor respectfully requests that the

8   declarations of Barry Brooks and Bryan Swezea attached to the reply be wholly excluded, that the

9   creditor's second motion to dismiss be denied with prejudice to any further replies or motions to

10   dismiss, and that the discharge of the Debtor be entered under FRB 4004(c).

11   The Debtor reserves her right to cross-examine the declarants if this Court deems their

12   evidence to be germane.

13   Date: October 18, 2021                              TALKOV LAW CORP

14                                                       *Scott Talkov*

15                                                       _____
                                                         Scott Talkov
16                                                       Attorneys for Debtor Rosa A. Fridman

17

18

19

20

21

22

23

24

25

26

27

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

---

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND
BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION
TO DISMISS BANKRUPTCY CASE**

15

# I.    PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2900 Adams Street, Suite C225, Riverside, CA 92504

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION TO DISMISS BANKRUPTCY CASE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 18, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Karl T Anderson (TR)    2edansie@gmail.com, kanderson@ecf.axosfs.com
Michael J Hauser    michael.hauser@usdoj.gov
Melissa Davis Lowe    mlowe@shulmanbastian.com, avernon@shulmanbastian.com
Charles L Murray    cmurray@cm3law.com, cm3esquire@gmail.com
Scott Talkov    scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

2.  SERVED BY UNITED STATES MAIL:
On (*date*) October 18, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Erithe Smith, 411 West Fourth Street, Suite 5040, Santa Ana, CA 92701
☐    Service information continued on attached page

3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 18, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Karl Avetoom, 1100 Rutland Rd #9, Newport Beach, CA 92660-4607
Victor Balakin, 101 N Ocean Dr Ste 132, Hollywood, CA 33019
☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 18, 2021 | Leilani Caspillo | *Leilani Caspillo* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**DEBTOR'S EVIDENTIARY OBJECTION TO THE DECLARATIONS OF BARRY Q. BROOKS AND BRYAN SWEZEA PROVIDED IN REPLY TO OPPOSITION TO KARL AVETOOM'S SECOND MOTION TO DISMISS BANKRUPTCY CASE**

16

**TALKOV LAW**
2900 ADAMS ST STE C225
RIVERSIDE, CA 92504
TELEPHONE (951) 888-3300

# Exhibit 13

TODD SPITZER, DISTRICT ATTORNEY
COUNTY OF ORANGE, STATE OF CALIFORNIA
BY:    MATT PLUNKETT
       DEPUTY DISTRICT ATTORNEY
       State Bar Number 285166
Post Office Box 808
Santa Ana, California 92702
Telephone: (714) 834-3600
Fax: (714) 834-5706

Date:    December 10, 2021
Dept.:   C27
Time:    9:30 AM
Est.:    **FILED** minute

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**DEC 02 2021**

DAVID H. YAMASAKI, Clerk of the Court

BY: R. SANCHEZ-VEGA, DEPUTY

*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KARL IVAN AVETOOM, )<br>)<br>Defendants. )<br>)<br>) | CASE NO. 96HF0016<br><br>PEOPLE'S OPPOSITION TO<br>DEFENDANT'S MOTION TO<br>VACATE CONVICTIONS<br>PURSUANT TO PENAL CODE<br>SECTION 1473.6 |

### I. INTRODUCTION

The defense moves to vacate four felony convictions that were the result of a 14 day jury trial in 1997. The motion appears to be at least the *fifth* ad seriatum collateral attack on his convictions, not including various appeals. The defense motion is brought under ostensibly all of the subdivision of Penal Code section 1473.6(a).[1] The "newly discovered evidence" brought by the defense is neither new nor of any evidentiary value.

As an initial matter, the motion is procedurally barred in its entirety as untimely as it has not been filed within 1 year of the discovery of this additional evidence. On the merits, there are several key flaws in the defense claims. First, the "newly discovered evidence" presented simply does not

[1] All statutory references are to the Penal Code unless otherwise noted.

1   mean what the defense claims. Second, the items are questionable for many reasons. Any ambiguity

2   is cleared up by the incontrovertible evidence showing that the claimed "880" VIN never could have

3   existed.

4        Setting aside both the procedural and evidentiary deficiencies, defendant's motion never

5   addresses the fact that *two* of his convictions are unrelated to the claimed new evidence he is

6   presenting. In other words, even if his motion were not procedurally barred and had merit, it would

7   only subject two of his four convictions to being vacated. Nevertheless, the evidence brought by

8   defendant is entirely lacking even as to those two counts. As such, the motion should be denied.

9

10                  **II. PROCEDURAL HISTORY**

11        Defendant describes some of the procedural history of this case. The procedural history and

12   statement of facts below borrow from the People's opposition to defendant's Penal Code section

13   1437.7 motion with some minor additions. That motion and the opposition are also incorporated be

14   reference. The procedural history is described below:

15        On August 22, 1995, the defendant was arraigned on 27 charges with dates of violation

16   between 1992 and 1995, involving conspiracy, grand theft, receipt of stolen property, operation of

17   a chop shop, and other charges under case #95HF0561.

18        On December 1, 1995, that case was dismissed.

19        On April 30, 1996, an information was filed charging Karl Avetoom and Robert Yule with

20   thirty-two criminal violations under #96HF0016. The information charged one count of conspiracy

21   (Count 1, Pen. Code §182, subd. (1)), fourteen counts of grand theft auto (Counts 2, 5, 8, 11-16,

22   18-19, 22, 24, and 29, Pen. Code § 487h, subd. (a)), eight counts of receiving stolen property

23   (Counts 3, 6, 9, 17, 20, 25, and 27, Pen. Code§ 496 subd. (a)), five counts of grand theft (Counts 4,

24   7, 10, 26, and 28, Pen. Code§ 487, subd. (a)), one count of possession of a motorcycle with a

25   removed serial number (Count 21, Veh. Code § 10751) and three counts related to the operation of

26   a chop shop (Counts 30-32, Veh. Code §§ 10801, 10802, 10803).

27

28

1    In March of 1997, the defendant is brought to trial before the Honorable Cecil Hicks and,

2    after a 14 day jury trial, is found guilty of 4 charges on March 26, 1997 - PC 496(a); PC 487(a); VC

3    10801; and VC 10803(a).  He is found not guilty on the remaining charges.

4    Prior to sentencing, Defendant Avetoom, along with co-Defendant Yule, brought a motion

5    for a new trial.  That motion was denied.  Defendant was sentenced on August 15, 1997.  He was

6    later re-sentenced on November 29, 1999, to 5 years probation and 364 days in the Orange County

7    Jail.

8    On June 28, 1999, the Court of Appeal affirmed the defendant's convictions.  (G022070).

9    (*Avetoom I*).

10    On September 12, 2002, a probation violation petition was filed and a hearing was held on

11    October 9, 2002.  After a contested hearing, the Honorable Ronald Kreber found Defendant in

12    violation of his probation.

13    On October 25, 2002, Judge Kreber sentenced the Defendant to his low-term of 2 years state

14    prison on Count 32 - VC 10803(a).

15    Six years later, in September of 2008, the defendant filed in *pro per* a writ of error coram

16    vobis before the court of appeal under Case # G040996.  The court of appeal requested an informal

17    response from the Orange County District Attorney.  The court of appeal denied the petition in

18    January of 2009.

19    In October of 2009, defendant now with private counsel, filed a writ of error coram nobis

20    to vacate the PV finding from 2002.  In March of 2010, two other attorneys for defendant filed: a

21    (1) "Motion for Relief" and (2) "Motion for Writ of Error Coram Nobis; Brady Violations and

22    Motion for Relief PC 1385."  In April 2010, the defendant filed a motion under Penal Code section

23    1473.6 to vacate his convictions.

24    On November 5, 2010, all of the above motions were heard before the Honorable Thomas

25    Goethals.

26

27

28

1    On November 10, 2010, Judge Goethals issued a written 11 page order denying all of the

2    defendant's motions in their entirety. (See People's 1437.7 Opposition - Exhibit A.)[2]

3    On June 1, 2012, the Court of Appeal affirmed Judge Goethals order. (G044659.) (*Avetoom*

4    *II*). The defendant petitioned for rehearing and rehearing was granted, vacating the June 1, 2012

5    opinion. (See CRC 8.268(d)).

6    On March 8, 2013. Following rehearing, a new three justice panel from the Court of Appeal

7    again affirmed Judge Goethals 2010 order. (G044659.) (*Avetoom III*)

8    On June 26, 2013, the California Supreme Court denied a petition for review. (#S210075.)

9    On December 30, 2020, defendant filed a motion to vacate his convictions under Penal Code

10    section 1473.7(a)(2), claiming newly discovered evidence.

11    On October 13, 2021, defendant filed an additional motion to vacate his convictions under

12    Penal Code section 1473.6(a), claiming newly discovered evidence of fraud/false

13    testimony/fabrication of evidence.

14

15    ### III. STATEMENT OF FACTS

16    **A.    Statement of Facts[3]**

17    1. March 1997 Trial

18    Between August 1991 and April 1995, fifteen motorcycle owners had their high-performance

19    motorcycles stolen in various locations throughout Southern California. (RT:41-218.[4])

20

21

22

23    _____

[2] There are a large number of documents referenced between the various moving
24    papers filed. Rather than re-attach those used in the People's initial opposition, the
People incorporate those previously filed exhibits by reference and will only attach
25    as new exhibits those not previously filed.

26    [3] The People incorporate by reference the seven volume reporter's transcripts of the jury trial
conducted on March 6, 10-13, 17-20, and 24-26, 1997.

27    [4] "RT" refers to the Reporter's Transcript of the jury trial. Although the transcripts
are 7 volumes, they are consecutively numbered. The People will use only the page
28    number.

1    On February 16, 1995, Duane Cruz's 1990 Suzuki GSXR-1100 was stolen from his

2   apartment in Pomona.[5] (RT:84, 91.) Certified Department of Motors Vehicle "DMV" records reflect

3   this motorcycle's VIN JS1GV7**3**A8L210**0380**, and engine number V7101067071. (RT:85-86.) Mr.

4   Cruz testified that the motorcycle had approximately 6,000 to 7,000 miles on it at the time it was

5   stolen. (RT:90.) It was black and gray or silver in color. (RT:84.)

6    My. Cruz testified that he later inspected a recovered motorcycle. (RT:86). Prior to looking

7   at the motorcycle, Detective Wiseman had him write out a description or list of identifiers. (RT: 88.)

8   . He had a picture and then drove down to the scene and examined the bike. (RT: 87.) He identified

9   it as his motorcycle. (RT: 87.) Mr. Cruz testified to certain characteristics about his bike prior to

10   it being stolen. (RT:88-89.) It had a brand new Metzler rear tire with 30 miles on it, it had a steering

11   dampener, and a Kerker sticker on the fairing, which is the brand name for an exhaust system.

12   (RT:87-88.) That list was admitted as People's exhibit 6. (RT:89.) On that list were items such as

13   a "clear plastic shield with a molding missing", "scratch on the bubble on the fairing" (RT:89), "tear

14   on seat" (RT:90), Kerker exhaust system, and brand new Metzler rear tire that were still on the

15   recovered bike. (RT:89, 90.)

16    On February 27, 1995, David Waugh, a buyer for Bert's Motorcycles in Azusa, purchased

17   a 1990 Suzuki GSXR-1100 motorcycle from Avetoom for $2,700. (RT:179-180.)[6] This motorcycle

18   had a 1100 chassis and a 750 motor indicating that the engine had been swapped. (RT:179.) This

19   bike was not immediately paid for, Bert's took possession of it and consummated the deal on a later

20   date after Avetoom provided the proper paperwork and a duplicate pink slip was obtained.

21   (RT:613-614, 615, 617.) Waugh testified it was a piece of junk and he did not want to buy it until

22   someone else looked at it and okayed the deal. He stated he bought it for much less than market for

23   that year, make and model. It was purchased for export only. (RT:616.)

24

25   [5] Mr. Cruz testified the motorcycle was a 1991 Suzuki but the certified DMV paperwork

26   admitted into evidence at trial reflected it was a 1990 Suzuki. (RT:85, People's trial exhibit 5.)

27   [6] Mr. Waugh testified that he had purchased probably 5 or 6 motorcycles from Avetoom and
maybe one or more from Robert Yule (co-defendant). (RT:158-159.) When purchasing

28   motorcycles from Avetoom, Mr. Waugh would either meet at Avetoom's house in Irvine or at a
park.

1    The paperwork Avetoom provided to Bert's Motorcycles reflected that he registered the
2    motorcycle with DMV on February 25, 1995, and certificate of title in Avetoom's name was issued
3    by DMV on March 9, 1995. (RT:178- 179, People's trial exhibit 22-A and 22-D.) Mr. Waugh
4    inspected the VIN on that motorcycle and compared to the VIN listed on the paperwork. (RT:173,
5    RT:604.) The documentation reflects that the listed VIN on that motorcycle was
6    JS1GV78A812100880. (People's exhibit 22-A, 22-D.)

7    The certified DMV paperwork reflected that Avetoom allegedly purchased the motorcycle
8    from Hans Link on February 14, 1995 (two days prior to the actual theft of Mr. Cruz's motorcycle).
9    (RT:990-991.) An odometer statement reflected the motorcycle had 6,889 miles. ( RT:990, People's
10   Exhibit 61.) The Bill of Sale also reflected the same mileage. The odometer disclosure statement
11   listed an address for the alleged seller, Hans Link, but Detective Wiseman was able to determine this
12   was not a valid address by both driving to the address and sending a letter that was returned.
13   (RT:991.) Detective Wiseman inspected this motorcycle at Bert's on August 2, 1995. (RT:987.)
14   Detective Wiseman seized this motorcycle from Bert's and upon examination had determined two
15   of the VIN numbers were overstamped into "8"s. (RT:989-990.) Photographs of the overstamped
16   VIN were admitted as People's 60A and 60B. (RT:988-989.)

17   On February 23, 1995, Scott Sprigel's 1992 Honda CBR-600 F2 was stolen from his
18   apartment's secured carport area in Encino. (RT:64-65, 69.) DMV registration records showed his
19   motorcycle's VIN JH2PD2505NM103481 and engine number PC25E2 1 06604. (RT:66, People's
20   trial exhibit 4.) The motorcycle had a extensive scratch on the plastic piece behind the seat. (RT:67.)

21   Five days later, on February 28, 1995, defendant sold Mr. Waugh a 1992 Honda CBR-600
22   F2 for $3,500. (RT: 170, 172.) When the motorcycle was recovered Mr. Sprigel identified this
23   motorcycle, noting the large scratch on the plastic piece behind the seat. (RT:67.) However, he also
24   noticed the center stand was missing and one of the numbers on the engine had been stamped over.
25   (RT:69, 73, 81, People's exhibit 20-A.)

26   On March 20, 1995, John Hannan's 1991 Honda CBR-600 F2 motorcycle was stolen from
27   his apartment carport. (RT:111-112.) Mr. Hannan provided a list of characteristics regarding his
28   motorcycle and provided that to law enforcement prior to viewing recovered motorcycle parts.

1  (RT:113.) That list was entered into evidence as People's number 10. (RT:113.) These parts were

2  found inside Avetoom's storage unit. (3 RT:907.)

3      On April 9, Mr. Michael Sanders 1994 Honda CBR-600 F2 was stolen from the Long Beach

4  Marriott. (RT:49-51.) Certified DMV records reflected the VIN JH2PC2510RM2300914 and engine

5  number PC25E2309395. (RT: 50.) Two weeks later on April 26, 1995, Avetoom sold Mr. Waugh

6  a 1992 Honda CBR600F2 containing Mr. Sander's stolen engine with an overstamped engine

7  number. (RT:176-177.) He provided temporary registration paperwork, no title, and no key.

8  (RT:177, 2 RT 623.) Mr. Waugh paid $3,500 which was below market value for this motorcycle.

9  (RT:623.) Detective Wiseman reviewed certified DMV records and determine that paperwork

10  submitted by Avetoom reflected a bill of sale for this vehicle from an alleged seller named John Lee

11  at a nonexistent address. (RT:972.)

12      Approximately 3 to 6 months later Mr. Sanders was notified that his motorcycle was

13  recovered. (RT:57.) The motorcycle did not look the same but the engine was his. (RT:52, 55.) One

14  of the identification numbers on the engine however had been changed from a 3 to an 8. (RT:53.)

15  The engine had been placed on a different motorcycle in that all the parts were different or swapped

16  on it. (RT:55.)

17      A search warrant was conducted on space D-140 at the Costa Mesa Public Storage at 1725

18  Pomona Street in Costa Mesa. (RT:903.) This space had been rented to Avetoom but then Yule's

19  name was added later to the rental agreement. (RT:823-829.) The manager of the storage complex

20  regularly observed Avetoom and Yule together at the storage facility and had seen them both work

21  on motorcycles there.

22      OCATT Detective Thrasher conducted a search of the storage unit and found three

23  motorcycle engines. (RT:904.) Two of these engines had their identification numbers altered or

24  overstamped. (RT:903-904) These two engines came from stolen motorcycles, one belonging to

25  Scott Kummer (RT: 905), and the other from Christopher Hussum (RT: 907). Detective Thrasher

26  also located three motorcycle frames without engines. ( RT: 908-909.) One of these frames was not

27  stolen and was still inside a shipping box that had a shipping label addressed to Avetoom at his

28  home residence. (RT:910.) Detective Thrasher explained how it is a common technique for a thief

1    to put a stolen engine with altered identification numbers and stolen parts on a nonstolen frame.

2    (RT:911.) When the VIN on the frame is verified it will not come back as stolen. (RT:911.)

3    Detective Thrasher also observed a Suzuki motorcycle frame without any identification

4    numbers stamped on it. (RT:912.) This frame appeared to have had its VIN completely ground off.

5    (RT:913.) It did not contain an engine. (RT:917.) Detective Thrasher also found two Suzuki

6    motorcycle frames with engines in them. ( RT:913.) One of these motorcycles did not have a VIN,

7    it had also been ground off. ( RT:918.) The second Suzuki motorcycle had a valid VIN and engine

8    number and was registered to Robert Yule. (RT:920.)

9    On May 23, 1995, Detective Wiseman conducted a search warrant on storage unit C-198 and

10    G-508 at 23241 Jeffrey in the city of Irvine. (RT:973, 981.) Yule rented C-198 and Avetoom rented

11    G-508. (RT: 825, 827.) Inside C-198, Detective Wiseman found a motorcycle frame that had been

12    stolen from Roger Burford on March 31, 1995. (RT:974, RT:58-60.) The VIN had been altered.

13    (RT:974, People's Exhibit 55-B.) Detective Wiseman also found a stolen Kawasaki frame that also

14    had an altered VIN (RT:976), a stolen 1992 Suzuki engine with altered identification numbers

15    (RT:977), a stolen 1991 Suzuki 750 frame with altered VIN (RT:979), a stolen Honda CBR F2 intact

16    motorcycle (RT:980), and a stolen 1995 Harley- Davidson Heritage soft-tail motorcycle ( RT:981).

17    The Honda motorcycle had been stolen from a Tony Anschutz on April 1, 1995. (RT:151.) Neither

18    the VIN or engine identification numbers had been altered. (RT:980.) The Harley had been stolen

19    on March 18, 1995. (RT:131.)

20    Co-defendant Yule testified that the stolen items found in C-198 were put there by somebody

21    else and that person had changed the lock. (RT:1679-1687.) Yule testified that he confronted

22    Avetoom about the lock and shortly thereafter received a note bearing the combination. (RT:1701.

23    1747.) Avetoom admitted to writing the note with the combination but denied any knowledge of the

24    stolen items in the unit. (RT:1812-1815.)

25    Inside Avetoom's storage unit G-508, OCATT officers found numerous motorcycle parts

26    including those from Mr. Hannan's stolen motorcycle, which included a front wheel assembly, a

27    swing arm, plastic components, a fuel tank, front fork, tail section, gas pipe, triple clamp and half

28    of the frame section from his stolen motorcycle. (RT:966-985, 986, People's exhibit 59-E.) A

photograph admitted into evidence at trial reflected all the pieces and parts found inside that storage unit. (RT:984; People's exhibit 59-C.) Mr. Hannan was able to identify certain parts of his bike that were recovered through many distinctive characteristics. (RT:114-119, 120.) Detective Wiseman also found were two motorcycle frames that had been cut in half and the identification numbers had been removed. (RT:986, People's exhibit 59-D.)

A DMV employee testified how a person may obtain duplicate title to a vehicle. (RT: 720-734.) Two insurance agents explained how Avetoom purchased defective title bonds to obtain duplicate title for several of these stolen motorcycles that were later sold to Bert's Motorcycles. (RT:745-790.) Fountain Valley Police Officer Hounsley testified that he was a friend of Avetoom's and was asked on numerous occasions to check motorcycles VINs and sign VIN verification forms. (RT:835-855.) His signatures were also forged on other VIN verifications. (RT:853.) One of these was admitted as People's exhibit 31. (3 RT:853.) Officer Hounsley then testified that a second VIN verification admitted as People's exhibit 39 was also fraudulent. (RT:854-855.) OCATT officers explained how Avetoom used false addresses on bills of sale, and they gave expert testimony regarding chop shop techniques involving frame switching and over stamping identification numbers. (RT 902, 911, 946-947, 970-973.) Detective Wiseman also testified that you can use a chemical process to bring back the true VIN once it has been altered. (RT:953.)

Defendant Avetoom also testified. He stated he purchased the bike from Hans Link or Leek. (RT:1526.) He claimed that the date was wrong on the bill of sale and he purchased it on February 18, 1995, not February 14. (RT:1525.) He claimed he checked the VIN and the engine number and did not notice anything suspicious. (RT:1528.) Several days later, he had a VIN verification done by Officer Falanci [sic] in his garage. (RT:1530.) He then registered the bike in his own name. (RT:1530.) He then sold the bike to Dave Waugh of Bert's for $2,200, even though the slip indicated $2,700. (RT:1533.) On cross-examination, Defendant Avetoom testified that, even though the bill of sale stated 2/14/95 as the date in two different locations, that was incorrect. (RT:1570.)

Records from Suzuki of America show that a 380 VIN was manufactured and imported into the US for sale. No records for a 880 VIN exist. (See Exhibit A).

## 2. Timeline of the 380 Suzuki

- November 17, 1989 - Motorcycle is shipped and arrives at Johnny World Cycles in League City, Texas ((See People's 1437.7 Opposition - Exhibit B) with an engine # of V710106071.

- July 5, 1994 - Motorcycle is repossessed from Keith Collins by General Electric Capital Corp. (See People's 1437.7 Opposition - Exhibit C)

- October 31, 1994 - Motorcycle is sold by Mountain Motorsports to Duane Cruz. (See People's 1437.7 Opposition - Exhibit D).

- February 15, 1995 - Chaparral Cycle of San Bernardino installs a "180/55ZR-17 Mezi Racing Rear" Tire on the motorcycle. Mileage is recorded as 6814. (See People's 1437.7 Opposition - Exhibit E).

- February 16, 1995 - Duane Cruz reports the motorcycle stolen. (R.T. 84.) He testified to a VIN ending in 380 and an engine number of V7101067071. (R.T. 86.)

- February 25, 1995 - Karl Avetoom registers the motorcycle with the "880" VIN. (See People's 1437.7 Opposition - Exhibit F - Avetoom 880 registration.)[7]

- February 27, 1995 - Karl Avetoom sells the motorcycle to David Waugh of Bert's Motorcycles for $2700. (R.T. 179-180.)

- April 27, 1995 - Ownership of the Motorcycle is transferred from Duane Cruz to State Farm Insurance (See People's 1437.7 Opposition - Exhibit G)

- August 2, 1995 - Detective Eric Wiseman enters the "880" VIN into CLETS and learns that it is not a conforming VIN. (See People's 1437.7 Opposition - Exhibit H- Registration Doc.)

- August 2, 1995 - The motorcycle is recovered from Bert's in Azuza. (See People's 1437.7 Opposition - Exhibit I - 380 Recovered Status Sheet.)

---

[7] Note: there is no history to the "880" VIN besides Avetoom's registration.

1    - August 3, 1995 - Duane Cruz fills out a list of points of identification of his

2    motorcycle.  He identified the vehicle as his.  (See People's 1437.7 Opposition -

3    Exhibit J - Cruz Notes.)

4    - January 11, 1996 - Universal Underwriters sends a fax to OCATT Detective

5    Wiseman authorizing the release of the vehicle to State Farm.  (See People's 1437.7

6    Opposition - Exhibit K- Underwriters 380 Fax).

7    - January 12, 1996 - State Farm Insurance sends demand letter via fax to Detective

8    Eric Wiseman asking for return of the motorcycle.  (See People's 1437.7 Opposition

9    - Exhibit  L).

10    - January 12, 1996 - Motorcycle is picked up by Absolute Towing from OCATT.

11    (See People's 1437.7 Opposition - Exhibit M - OCATT Vehicle Release.)

12    - January 22, 1996 - IAA inspects motorcycle documenting their review with a repair

13    estimate that states "Frame VIN hard to Read."  (See People's 1437.7 Opposition -

14    Exhibit N.)  Photos are taken at this time showing a damaged/scratched out "880"

15    VIN on the frame.  (See People's 1437.7 Opposition - Exhibit O.)

16    - July 3, 1996 - Underwriters Salvage Company arranges to have the motorcycle

17    towed and picked up by CHP on July 8, 1996.  The notes state "CHP Re-vin." (See

18    People's 1437.7 Opposition - Exhibit P.)

19    - August 30, 1996 - State Farm is issued a Salvage Certificate for VIN with "380."

20    (See People's 1437.7 Opposition - Exhibit Q.)

21    - September 11, 1996 - Motorcycle Frame is sold to Gus's Auto and Motorcycle in

22    Inglewood.   The VIN is recorded as ending in "380."  (See People's 1437.7

23    Opposition - Exhibit R).

24    - November 4, 1996 - Motorcycle Frame is transferred to The Frame Shop in

25    Stanton.  (See People's 1437.7 Opposition - Exhibit F.)

26    - March, 1997 - Trial begins. At trial, photos of the altered "880" VIN that were

27    previously taken by OCATT officers are used and admitted into evidence.  See

28    People's 1437.7 Opposition - Exhibit S.)

# IV. STANDARD OF REVIEW

## A. Penal Code section 1473.6

Penal Code section 1473.6 allows for an individual who is "no longer in criminal custody" to file a motion to vacate a conviction for specific reasons when there is "newly discovered evidence." (Penal Code section 1473.6.)  Those reasons are:

> (1) Newly discovered evidence of fraud by a government official that completely undermines the prosecution's case, is conclusive, and points unerringly to his or her innocence.

> (2) Newly discovered evidence that a government official testified falsely at the trial that resulted in the conviction and that the testimony of the government official was substantially probative on the issue of guilt or punishment.

> (3) Newly discovered evidence of misconduct by a government official committed in the underlying case that resulted in fabrication of evidence that was substantially material and probative on the issue of guilt or punishment. Evidence of misconduct in other cases is not sufficient to warrant relief under this paragraph.

(Penal Code section 1473.6).

"Newly discovered evidence" is evidence that "could not have been discovered with reasonable diligence prior to judgment." (Penal Code section 1473.6(b).)

This motion must be filed within one year of the later of:

> (1) The date the moving party discovered, or could have discovered with the exercise of due diligence, additional evidence of the misconduct or fraud by a government official beyond the moving party's personal knowledge.

> (2) The effective date of this section.

(Penal Code section 1473.6(d).)

This statute was enacted in response to the so-called Rampart scandal in which several Los Angeles police officers were found to have planted evidence, falsified reports and committed perjury. (*People v. Germany* (2005) 133 Cal.App.4th 784, 791.) "Because the misconduct was discovered many years after it occurred, those who were no longer in custody at the time of the discovery of the misconduct [were] not able to set aside their convictions" under existing law. (*Ibid.*) Therefore, the Legislature enacted section 1473.6 as a means "for those no longer in the system to

1  challenge their judgment when they learn that their conviction was obtained in part because of fraud
2  or false evidence by a government official.' [Citation.]" (*Ibid.*)

3  **B. Procedure Under Penal Code section 1473.6**

4  The procedure for the bringing of this motion, the burden of proof, and the burden of
5  production are he same as for a writ of habeas corpus. (Penal Code section 1473.6(c). See Cal.
6  Rules of Court, rule 4.551.) If the moving party makes a prima facie case for relief, the judge must
7  issue an order to show cause. (*Id.*, subd. (c)(1).) In determining whether a prima facie case has been
8  made, the judge must take the moving party's factual allegations as true and make a preliminary
9  assessment whether the moving party would be entitled to relief if his or her factual allegations were
10 proven. (*Ibid.*)

11 If the defendant's allegations clear this minimal threshold, the issuance of an order to show
12 is required. (*People v. Germany, supra*, 133 Cal.App.4th at 790.)Then, once formal briefing is
13 complete, the trial court " 'must either grant or deny the relief [requested] or order an evidentiary
14 hearing. An evidentiary hearing is required if, after considering the [motion to vacate], the return,
15 any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial
16 notice may be taken, the court finds there is a reasonable likelihood that the [moving party] may be
17 entitled to relief and the [moving party's] entitlement to relief depends on the resolution of an issue
18 of fact.'" (*Id.* at 790-791, quoting Cal. Rules of Court, rule 4.551(f).)

19 Courts have observed in other forms of collateral attack: " ' "For purposes of collateral
20 attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence;
21 defendant thus must undertake the burden of overturning them. Society's interest in the finality of
22 criminal proceedings so demands, and due process is not thereby offended." ' " (*In re Lawley*
23 (2008) 42 Cal.4th 1231, 1240, italics omitted, citations omitted) [In the habeas context].

24
25 **V. REQUEST FOR JUDICIAL NOTICE**

26 The People respectfully request that the court take judicial notice under Evidence Code
27 sections 451(a), 452(a), and 452(d) of the following:
28 1. March 1997 Trial Court Transcripts for case #96HF0016

2. November 10, 2010 Judge Goethals Trial Court Order in #96HF0016 (See People's 1437.7 Opposition - Exhibit A)

3. June 28, 1999 unpublished Court of Appeal Decision (*People v. Robert Burns Yule II & Karl Ivan Avetoom* (June 28, 1999, G022070) (*Avetoom I*),) (See People's 1437.7 Opposition - Exhibit T)

4. June 1, 2012 unpublished Court of Appeal Decision (*People v. Avetoom,* (June 1, 2012, G044659)[8] (*Avetoom II*))

5. March 8, 2013 unpublished Court of Appeal Decision (*People v. Avetoom*, (March 8, 2013, G044659) (*Avetoom III*))

6. Other documents referred to in the argument section below from *Avetoom v. Risbrough, et al* (Case # 30-2015-00820760) filed in the Orange County Superior Court and *In re: Rosa Fridman* (Case #: 8:21-bk-10513-ES) filed in the United States Bankruptcy Court - Central District of California - Santa Ana Division.

The above are judicially noticeable pursuant to Evidence Code sections 451(a), 452(a), and 452(d) as decisional law or court records.

## VI. ARGUMENT

**A. The Defense Motion should be Summarily Denied for Failure to Make a Prima Facie Showing that it is Timely and it is thus Procedurally Barred**

Penal Code section 1473.6(d) makes clear that this motion is untimely. A motion filed under 1473.6(a) must be filed **within one year** of:

(1) The date the moving party discovered, or could have discovered with the exercise of due diligence, additional evidence of the misconduct or fraud by a government official beyond the moving party's personal knowledge.

(Penal Code section 1473.6(d)(1) [emphasis added].) The People contend that the evidence offered by the defense could have been discovered, with the exercise of diligence, decades ago.

---

[8] The People note that this opinion was vacated at the time rehearing was granted pursuant to CRC 8.268(d) and the 2013 opinion substitutes the 2012 opinion. While it is part of the court record, the People do not rely on the 2012 opinion for any of its findings or as law of the case, et cetera.

1   Nevertheless, if one assumes for purposes of argument that the defense had been reasonably diligent,

2   the motion still fails as it was not filed within one year of the supposed discovery of this evidence.

3          This motion was filed on October 13, 2021.[9] In the defendant's declaration, attached to his

4   motion as Exhibit 1, defendant states he received a letter alerting him to the additional evidence in

5   August of 2019. (*Def. Motion* - Exhibit 1, paragraph 1.) He later states he received an envelope

6   of the materials from the Los Angeles Police Department in October of 2019. (*Id.* at Exhibit 1,

7   paragraph 4.) This envelope contained the NHTSA/DOT letter. (*Ibid.*) He later opened the

8   envelope in November of 2019 and began to investigate thereafter. (*Ibid.*) Defendant also claims

9   he received the VIN verifications from Barry Brooks and Herbert Conrad in July of 2020. (*Id.* at

10  paragraph 7.) In sum, defendant in his motion has claimed three new items of evidence. Those are:

11         1) The NHTSA/DOT letter (discovered either August 2019 or October 2019)

12         2) The Barry Brooks VIN verification (discovered July of 2020)

13         3) The Herbert Conrad verification (discovered July of 2020)

14         As such, even taking the interpretation of the evidence in the light most favorable to

15  defendant, and assuming reasonable diligence, he failed to file this motion within the one year period

16  proscribed by the statute. For that reason alone, the motion fails to make a prima facie case and is

17  procedurally barred.

18         Defendant claims in his declaration that he was unable to file the motion earlier due to court

19  closures related to COVID-19. (*Id.* at paragraph 10-11.) Assuming these contentions are true, they

20  would not explain why this motion was not filed in December of 2020, or January of 2021, or any

21  other time before October 13, 2021. And, even if he did, Penal Code section 1473.6(d) does not

22  contain any good cause exceptions or tolling provisions, et cetera. Nor has the defense asserted any.

23  The motion fails to make a make a prima facie showing of timeliness and should this be denied.

24         The People also take the position that there has been no showing, even if the motion had

25  been filed within the one year period, that there has been no showing by the defense as to why these

26  documents and investigation could not have been presented decades earlier. The burden is on the

27

28  [9] The People request that the court take judicial notice of its own court minutes for
    case #96HF0016 for this purpose. (Evidence Code section 452(d).)

1 | defense to show why this investigation could not have been done, with due diligence, at any time
2 | prior to the filing of this motion over the last 25 years. That showing has not been made.

3
4 | **B. The Defense Motion should also be Summarily Denied on the Merits for Failure to Make a Prima Facie Showing**

5 | The court need not conduct a lengthy analysis of the facts of this case due to the procedural
6 | bar the People have highlighted above.[10] If the court does choose to, however, it is clear that the
7 | "newly discovered evidence" offered by defendant is of no value and fails to establish any of the
8 | conclusions he so vociferously asserts. Each of those is addressed in turn.

9 | Two of these items, the Herbert Conrad VIN verification ("Conrad verification") and the
10 | Barry Brooks VIN verification ("Brooks verification") are of dubious origin. It appears that both
11 | are associates of defendant, with Brooks actually a private investigator for defendant. It seems like
12 | an astronomically improbable coincidence that defendant came into possession of two VIN
13 | verifications that just so happened to be created by two of his associates decades prior. Still, taking
14 | those VIN verifications at face value is insufficient to create a prima facie case.

15 | 1. The NHTSA/DOT Letter (Defense Exhibit #3)

16 | Assuming this letter is accurate and authentic, it is still unhelpful. The letter does not state
17 | that the 880 motorcycle existed. The letter is in response to a "request for information" on a vehicle.
18 | The response simply states that NHTSA has no objection to being imported "according to the
19 | records provided to our office."

20 | There is no information as to what was included in the initial "request for information." Nor
21 | is there any information as to the contents of the "records" referred to by the letter. This letter
22

23 | [10] As the court in *Avetoom III* observed: "Avetoom's delay in seeking relief and the
24 | voluminous record in this case makes it difficult to parse his contentions. Over 13
years after his convictions, Avetoom cobbles together various documents to assert
25 | there is only one conclusion that can be drawn, i.e., that the government committed
egregious misconduct to convict him. We disagree." *(Avetoom III,* (G044569) page
26 | 34.)

27
28

1  proves nothing. It does not prove this motorcycle ever existed.[11] It does not state NHTSA inspected

2  such a motorcycle or that such a motorcycle ever was actually imported. It does not indicate that

3  NHTSA did anything to independently verify whatever information was used or considered in

4  generating this letter. It does not indicate that it was a legitimate VIN, rather than an altered VIN.

5  It is quite possible that a request was made using inaccurate information, or that the response from

6  NHTSA relied on records that contained unverified information. At the trial on this case, defendant

7  used and prepared a number of irregular documents, most of them clearly in an effort to "title wash."

8  It's conceivable that this letter exists as part of an old attempt to wash the title of the 880 VIN and

9  attempt to establish some sort of legitimate record.[12]

10

11              2.  The Barry Brooks VIN Verification (Defense Exhibit #2)

12          There are several issues with the Brooks VIN verification. First, a VIN verification by itself

13  is not evidence that a certain vehicle existed or had a legitimate VIN. Second, but related, VIN

14  verifications are not reliable. Third, a VIN verification, without an applicable exception, is hearsay

15  and inadmissible evidence without a hearsay exception foundation – which defendant has not

16  proffered. Fourth, this particular VIN verification is inconsistent with all of the evidence and

17  inaccurate on its face. Fifth, and finally, the existence of this VIN verification is suspect as it

18  appears to have been authored by an associate and private investigator for defendant.

19

20  _____

21  [11] It bears repeating, again, that the 880 motorcycle could never legitimately exist.
    VIN numbers are not generated randomly which is why the 880 VIN is a non-
22  conforming VIN. Suzuki has already provided records showing that a 880 VIN
    never existed.
23
    [12] The discovery and existence of this letter is interesting. It is unclear why the Los
24  Angeles Police Department, which was not the investigating agency in this case,
    would be in the possession of a letter from NHTSA to a sergeant at OCATT written
25  *after* the case was closed and the motorcycle long since released to State Farm.
    Defendant does not address this seeming anomaly in his moving papers.
26

27

28

1   As an initial matter, a VIN verification does not prove what defendant claims – that a certain

2   vehicle in question actually existed and the VIN was accurate.  It proves that someone filled out a

3   form.  It does not prove that the individual accurately recorded the VIN or was able to tell if it had

4   been altered.  This is not a question of weight but a question of significance.  It is the equivalent of

5   someone writing something down on a sheet of paper decades prior.  It is not the equivalent of a

6   business record from the manufacturer of a vehicle.

7   The history of this case proves that VIN verifications are unreliable and of little significance.

8   In the trial on this case, VIN verifications were used that were either fraudulent or inaccurate.  Those

9   VIN verifications were from Officers Falencki or Hounsley.  At the trial on this case, Fountain

10  Valley Police Officer testified he was a friend of Avetoom's and was asked on numerous occasions

11  to check motorcycle VINs and sign VIN verification forms.  (RT 835-855.)  His signatures were

12  forged.  (RT 853.)  One of these was admitted at trial as People's Exhibit 31.  (RT 852.)  He also

13  testified to another VIN verification admitted as People's exhibit 39 as being fraudulent.  (RT 854-

14  855.)

15  Officer T.  Falencki from Laguna Beach PD was also interviewed at the time of this case.

16  (See Exhibit B.)  He was not a witness at the trial.  He was, however, a friend of defendant Avetoom.

17  He stated he performed VIN verifications on the Cruz 380 bike at defendant's residence and did not

18  know the VIN had been altered.  (See Exhibit B.)  Whether Officer Falencki knew the VIN was

19  altered or not is unclear.  Nevertheless it is clear that he verified, for defendant, what was an altered

20  VIN.  This was no doubt part of defendant's plan at the time to wash the title of a stolen vehicle so

21  he could more easily sell it.

22  A VIN verification is also hearsay.  It may be admissible with a proper business records

23  foundation under Evidence Code section 1271 – but defendant has not provided that.  There is no

24  custodian of records attesting to the authenticity of this document.  In the habeas corpus context,

25  which gives more definition to new evidence, new evidence is defined as "evidence that has been

26  discovered after trial, that could not have been discovered prior to trial by the exercise of due

27  diligence, and is admissible and not merely cumulative, corroborative, collateral, or impeaching."

28  (Pen. Code, § 1473, subd. (b)(3)(B).)  Admittedly, this definition is applied in the habeas corpus

PEOPLE'S OPPOSITION TO DEFENDANTS 1473.6 MOTION

1    context and it is unclear if it applies in the 1473.6 context. However, it logically follows that if the

2    evidence is inadmissible, it would have inevitably been unavailing at trial.

3         Factually, even taking the Brooks verification at face value, and assuming that it is authentic,

4    admissible, and proves what the defense claims it does – it still is not helpful. The Barry Brooks VIN

5    verification is impossible on its face. Which means, at a minimum, it is inaccurate. There are

6    notations on the verification that the "federal certification agrees with VIN." (*Def. Motion* Exhibit

7    2 - attachment 1.) This is not possible as such a VIN was never manufactured by Suzuki and cannot

8    exist. (See Exhibit A.) As such, there could not be a federal certification agreeing with it. The

9    testimony at trial was that the 880 bike did not have a federal identification sticker on it, nor was it

10    on it when seized by OCATT. (R.T. 613-617; R.T. 1802.) The mileage documented on this VIN

11    verification, in August 1994, is also only 6 miles off, 6887 to 6893, by the time the bike was

12    possessed by state farm in January 1996. (See People's 1437.7 Opposition - Exhibit N.) It is

13    difficult to believe that any motorcycle would only be driven 6 miles over that time period, even

14    though part of that time the motorcycle was either at Bert's or having been seized by OCATT.

15         Lastly, and perhaps most importantly, Barry Brooks is an associate and private investigator

16    working for defendant. Barry Brooks is a witness for defendant Avetoom on an unrelated case filed

17    in the Orange County Superior Court in Case #: 30-2015-00820760. (See Exhibit C.)[13] He was a

18    witness for defendant Avetoom at least as early as 2019, one full year prior to defendant's

19    "discovery" of the Brooks VIN verification. (See Exhibit D.) Brooks has also worked in the

20    capacity of a private investigator for defendant in another unrelated case filed in the United States

21    Bankruptcy Court. (See Exhibit E.). This runs in contradiction to defendant's claim in his

22    declaration, made under penalty of perjury, that he had to contact Barry Brooks via private

23    investigator. (*Def. Motion* - Exhibit 1, paragraph 8.) Brooks is not some retired police officer that

24    defendant had to dig up after coming across some piece of exonerating evidence. The two knew

25    each other before the alleged discovery of the VIN verification.

26

27    [13] For purposes of brevity, the People are only attaching the relevant portions of the
filed documents for Exhibits C through G. The People request judicial notice of

28    these pursuant to Evidence Code section 452(d). The People have the completed
versions of these filings if necessary.

### 3. The Herbert Conrad VIN Verification (Defense Exhibit #4)

This document also has impossibilities on its face. First, the odometer recorded is "6624 and 7/10 miles." (*Def. Motion.* Exhibit 4 - attachment 1.) This does not make any sense even if you assumed the defense theory were true. The date of the VIN verification is August 15, 1996. Chaparral Tire Supply installed a tire on Cruz's 380 bike on February 15, 1995 – the day before it was stolen. The mileage documented on that receipt is "6814." (See People's 1437.7 Opposition - Exhibit E.) So, it is impossible that the bike *lost* mileage over 18 months.

Also as argued above, a VIN verification is hearsay. It may under certain circumstances be admissible with a proper business records foundation under Evidence Code section 1271 – but defendant has not provided that. There is no custodian of records attesting to the authenticity of this document.

Lastly, and again perhaps most importantly, Herbert Conrad is an associate of defendant. Conrad is also a witness for defendant Avetoom in the same bankruptcy case as Barry Brooks. (See Exhibits F, G.) Conrad also appears to have been a friend of Brooks for years, according to a review posted of Brooks' book "Sin Blue Line." In the review, written in 2017 by someone named "Herbert Conrad," Conrad states he was partners with Brooks at the LAPD. (See Exhibit H.) This seems, once again, to be an unlikely coincidence.

In Conrad's declaration, he does not mention that he is friends with and formerly partners with Brooks. (*Def. Motion* - Exhibit 4.) He states, "I was contact [sic] by a former Los Angeles Police Department Officer named Barry Brooks regarding a verification of a vehicle I completed in August 1996...[.]" (*Id.* at paragraph 4.) Conrad does not mention anywhere in his declaration that he is *also* a witness for defendant in an unrelated case, knew defendant prior to April, 2021, or that he is former partners with Brooks. These coincidences are either of the most extraordinary variety, or they are not coincidences at all.

The fact that Brooks and Conrad are both associates of defendant runs counter to the narrative defendant creates in his declaration of having to unearth these two retired officers after receiving these VIN verifications. Brooks and Conrad are friends and both associates of defendant.

1  The People will certainly cross-examine Brooks, Conrad, and defendant on this fact if any hearing

2  on this motion occurs.[14]

3

4  **C. The "Newly Discovered Evidence" from the Defense runs Contrary to Other the**

5  **Indisputable Evidence**

6  There are items of evidence, many of them admitted at trial or are otherwise admissible, that

7  conclusively establish the 880 VIN never legitimately existed and the motorcycle at issue during the

8  trial was the stolen, altered 380 VIN.  The court may consider the record of conviction in

9  determining whether the defendant has made a prima facie showing.  (*People v. Lewis* (2021) 43

10  Cal.4th 952, 972 fn.6.)

11        (1)  First, the records from Suzuki document the history of the 380 VIN.  (See

12        Exhibit A.)  No such records exist for the 880 VIN.  (See Exhibit A.  See also

13        People's 1437.7 Opposition - Exhibit Z.)

14        (2) The photos themselves that were admitted at trial and have been subpoenaed from

15        State Farm are proof of the altered VIN.  (See People's 1437.7 Opposition - Exhibit

16        N, O.)

17        (3) There is also evidence that the 880 VIN is a non-conforming VIN.  (See People's

18        1437.7 Opposition - Exhibit N, W.)

19        (4) Detectives Wiseman and Thrasher *both* testified to expert opinions that the VIN

20        was altered.

21        (5) Lastly, the observations of victim Duane Cruz and the unique characteristics he

22        described with the stolen bike are indisputable.  (See People's 1437.7 Opposition -

23        Exhibit J).

24

25  [14] The People would also note that defendant claims he received this VIN verification and the

26  Brooks verification at the same time in May or July of 2020. He only asserted the Brooks VIN
   verification in the 1473.7 motion. The People responded to that motion and pointed out

27  that the engine number was the same as the engine number of the vehicle for which
   defendant was convicted. Interestingly, defendant then filed this motion with the

28  Conrad verification that included a different engine and frame number – even
   though he already had that document in his possession according to his declaration.

1   All of these items of evidence, most of which are already in the record of conviction,

2   contradict the claims made by defendant.

3   **D. Even Assuming the "Newly Discovered Evidence" was of Any Value, the Defense**

4   **Motion Fails to Explain How it Meets the Criteria under 1473.6**

5   Defendant claims that he is entitled to relief under all of the grounds in 1473.6(a). (*Def.*

6   *Motion*, 26.)

7   1. Defense Claims of Evidence of "Fraud by a Government Official"

8   Defendant's argument as to evidence of fraud is a recap of some of the facts of the case

9   without pointing to specific portions of the record. Defendant does not point to specific testimony

10   There is little case law on 1473.6(a). However, as it uses the procedures for habeas corpus petitions,

11   cases interpreting that mode of collateral attack are useful.

12   A habeas corpus petitioner has the burden of alleging and proving all the facts upon which

13   he or she relies to overturn the judgment. (*In re Lawler* (1979) 23 Cal.3d 190, 195.) The petition

14   must contain adequate averments of specific facts; general conclusions and argumentative assertions

15   are not sufficient. (*People v. Karis* (1988) 46 Cal.3d 612, 656; *In re Swain* (1949) 34 Cal.2d 300;

16   see also *People v. Cooper* (1992) 7 Cal.App.4th 593, 597.) What the defense has presented here

17   falls into the latter category – general conclusions and argumentative assertions without citation to

18   the record.

19   Some of these assertions are flat out inaccurate. "Detective Wiseman explained that the 880

20   VIN was bad because it was non-conforming. This led him to believe it was a stolen motorcycle that

21   had been altered." (*Def. Motion* 29:26-28.) At the trial, Detective Wiseman testified that he

22   inspected the altered "380" bike on August 2, 1995. (R.T. 987.) He testified that there were two

23   altered digits. (R.T. 988.) He testified that there were two overstamped "8"s. (R.T. 989.) He

24   indicated the two overstamped VINs on two exhibits. (R.T. 989.) One can plainly see from the

25   original trial exhibits that, even to the untrained eye looking closely, the VIN appears altered. (See

26   People's Opposition to 1437.7 Motion - Exhibit O). The defense describes "The prosecution's theory

27   of the case, that a true 880 VIN motorcylce never existed but was instead a 380 VIN motorcycle that

28   had been altered to depict 880[.]: (*Def. Motion* 30.) This completely ignores the testimony of

1    Detective Wiseman and Detecitve Thrasher who both testified that they saw the "380" VIN had been

2    overstamped. (R.T. 929; 988.) The overstamp is a method of altering a VIN by using a die stamp

3    or etching tool to alter a digit. (R.T. 912.) This contrasts with a grind and restamp where the

4    complete number has been ground and then restamped using a set of die stamps. (R.T. 912.)

5        The defense motion goes on to state that the Department of Transportation letter and

6    declaration of Luke Loy "explain that the 880 VIN motorcycle existed." (*Def. Motion* 30.) As

7    discussed above, that letter is nowhere close to the proof the defense claims.

8        Penal Code section 1473.6(a)(1) does not provide any more guidance on the definition of

9    "fraud." Nonetheless, defense has made no case for fraud considering there was ample evidence the

10    VIN was, in fact, overstamped. What the defense means by asserting "fraud" and what the evidence

11    of fraud is unclear.

12        2.  Defense Claims of Evidence of "False Testimony"

13        There was no false testimony presented because Detecitves Wiseman and Thrasher did not

14    testify falsely. Defense also makes the claim that "false testimony" does not need to be knowingly

15    false. The People disagree. Regardless, the testimony from the detectives, which the defense does

16    not actually specifically identify in their motion, is not false as the 880 was an altered VIN. Nor

17    does the defense explain how this testimony was "substantially probative of the issue of guilt or

18    punishment" as is required by 1473.6(a)(2).

19        Defense states that "There was no other evidence presented that the 880 VIN had been

20    altered." (*Def. Motion* 31.) Not true. There were photographs admitted into evidence of the altered

21    VIN. (Trial Exhibits 60-A and 60-B.) In addition, there was evidence presented that the 880 VIN

22    is a non-conforming VIN – in other words it could *only* exist illegitimately.

23        3.  Defense Claims of "Fabrication of Evidence"

24        This argument is essentially the same as the above argument – "[Wiseman's] subsequent

25    testimony was fabricated and false." (*Def. Motion*, 33.) False does not mean fabricated. Giving

26    false testimony, which did *not* occur here, is different than fabricating evidence. This subdivision

27    specifically requires the fabrication of evidence. "Newly discovered evidence of misconduct by a

28    government official committed in the underlying case *that resulted in* the fabrication of evidence..."

1   (Penal Code section 1473.6(a)(3) (italics added).) So, even though the People strongly dispute the

2   defense claim of false testimony, even if it were true it does not meet the requirements of this

3   subdivision. This subdivision specifically requires the fabrication of evidence which the defense

4   has not alleged or provided any evidence of.

5        The defense then goes on to make an argument regarding the prosecution's *Brady*

6   obligations. (*Def. Motion,* page 35.) This argument ignores the actual requirements of Penal Code

7   section 1473.6(a)(3) which the defense fails to make a showing for. Further, Penal Code section

8   1473.6(a) is, other than a pardon, the exclusive remedy for the allegations claimed by the defense.

9   (*People v. Germany* (2005) 133 Cal.App.4th 784, 791.) This same observation was made by the

10  court of appeal in *People v. Avetoom* (2013) G044659, pp. 33-34.

11       Defense then goes on to discuss a 1995 letter to Alphonse Gayton. (*Def. Motion* 38.

12  Defense Motion Exhibit 9.) This letter was previously litigated during the 2010 motion. (See

13  People's 1437.7 Opposition - Exhibit U, page 102.) Defense attempts to relitigate it now, even

14  though it is grossly untimely and has already been decided.

15

16  **D. Defense's "Other Evidence"**

17       The defense provides further out-dated and previously litigated allegations of "other

18  evidence." These are all a day late and a dollar short. One items is the motorcycle frame that

19  defense claims to have in their possession. This is not new evidence but has, allegedly, been in the

20  possession of defendant for over a decade. It was the subject of both the 2010 Penal Code section

21  1473.6 motion and a writ of coram nobis.[15] That motion and that writ were both denied, with Judge

22  Goethals finding:

23       There is no showing production in 1997 of the Cruz 380 bike would have
         undermined the prosecution's case, pointed unerringly to innocence, or would have
24       been 'substantially probative' of Defendant's innocence. Certainly there is no
         showing evidence of the Cruz 380 bike's existence could not have been discovered
25       prior to 1997 with reasonable diligence, since Counsels assert they can prove it exists
         not (13 years later.)

26

27  [15] A deputy district attorney and investigator inspected the frame as part of the
    2010 motion. In discussions concerning the instant motion, the People offered to
28  have an expert inspect the frame. The defense declined.

1  (See People's 1437.7 Opposition - Exhibit A, page 34.)

2      The defense also attaches an expert report involving examination of photographs, many from

3  the subpoenaed state farm records. There is no explanation as to why this expert analysis could not

4  have, with reasonable diligence, been done 25, 15, 10, 5, or 2 years ago. It is not new evidence but

5  new analysis that could have been performed at any time in the 25 year history of this case.

6      Lastly, the defense again brings up an issue regarding a search warrant authored by Detective

7  Wiseman in 1995. There was nothing exculpatory in this search warrant. This search warrant was

8  also litigated during the 2010 motion. (See People's 1437.7 Opposition - Exhibit A, page 31-32.)

9  The Court of Appeal also likewise found it was not exculpatory.

10     Defendant claims in his declaration that he only now received the entire warrant. Nowhere

11  in the 2010 motion did the defense claim they only received a portion of it, and in fact that belies

12  logic. In addition, all search warrants are public record after the return has been filed and the

13  defense could have retrieved a copy at any time over the last 25 years. (See Penal Code section

14  1534(a); *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1022-1023). There is also no evidence

15  of fraud, false testimony, or fabrication of evidence contained within the warrant. However, as the

16  warrant has already been litigated ad nauseam and could have been litigated anytime over the last

17  several decades had defendant been diligent, the People will not address the details as to why there

18  is no evidence of fraud, false testimony, or fabrication contained therein.

19

20  **E. Defense's Motion only Goes to Two of his Four Convictions**

21     Defendant's motion is only based on two of the four convictions he has suffered. The

22  defense motion seems to take it for granted that somehow establishing the existence of a second

23  motorcycle is exonerating. The defense motion fails to actually look at the crimes for which

24  defendant was convicted. Defendant was convicted of four separate and distinct felonies in this case:

25     1. Penal Code section 496(a) (receiving stolen property) - Date of Violation: 02/27/1995

26     2. Penal Code section 487(a) (grand theft) - Date of Violation: 02/27/1995

27     3. Vehicle Code section 10801 (operating a chop shop) - Date of Violation: 08/20/1993 -

28     5/23/1995

4.  Vehicle Code section 10803(a) (buy/sell chop shop) - Date of Violation: 08/20/1993 -
05/23/1995

Only count 1 identifies the vehicle at issues by the language of the information.  Count 2
is simply for a theft from Bert's, although the date of violation is alleged on the date defendant sold
the motorcycle to Bert's.  Counts 3 and 4 are not charges related to the 380 motorcycle but are for
crimes involving a continuous course of conduct.  Bear in mind the trial in this case was voluminous
and concerned testimony with a large number of motorcycles and motorcycle parts.

### 1.  Vehicle Code section 10801

For Vehicle Code section 10801, the court of appeal in *Avetoom I* correctly observed that this
section "criminalizes the operation of a chop shop, which is a ongoing enterprise, rather than a single
act."  (*Avetoom I*, page 5.)

### 2.  Vehicle Code section 10803(a)

This section also criminalizes an ongoing enterprise.  As the court in *Avetoom I* also
observed:

> The same reasoning applies. Multiple motorcycles were sold to the buyer for Bert's.
> Each one has an altered VIN or a stolen motorcycle with questionable
> documentation. Evidence existed they possessed or sole more than one motorcycle,
> knowing the VIN's has been falsified. Vehicle Code section 10803 criminalizes the
> ongoing enterprise of possessing or selling motorcycles with falsified VIN's.
> Acquittal of the remaining counts does not indicate juror confusion or disagreement
> over the Vehicle Code section 10803 offense.

(*Avetoom I*, page 7.)

In sum, even if defendant's motion had merit and were not procedurally barred, it would only
be relevant to two of his four convictions.

## VII.  DEFENSE REQUEST TO HEAR MOTIONS CONCURRENTLY

The defense also makes a request in their moving papers to hear the Penal Code section
1437.7(a)(2) motion and 1437.6(a) motion concurrently.  (*Def. Motion*, p. 43.)  The People object
as this request is not procedurally proper.

Penal Code section 1437.7 entitles the moving party to a hearing.  (Pen. Code section
1437.7((d).)  Motions under Penal Code section 1437.6(a), like with habeas corpus petitions, are
only entitled to a hearing if and when the petitioner makes a prima facie case.  (See Penal Code

1 section 1473.6(c); CRC 4.551(c)(1).) The People's position as to this motion is that no prima facie

2 case has been made and the motion should be summarily denied. Even assuming defendant here

3 made that prima facie case, the motions should still not be heard concurrently. This is because the

4 factual allegations of each motion are different. For example, the Conrad VIN verification is only

5 alleged and attached to the 1473.6(a) motion, and therefore can only be considered for that motion

6 and not the 1473.7(a)(2) motion. For those reasons, the motions should be heard and considered

7 separately.

8 ## VIII. CONCLUSION

9 For the foregoing reasons, the People respectfully request Defendant's Motion to Vacate

10 Convictions be denied in its entirety.

11

12 Dated this 1st day of December, 2021.

13

14 Respectfully submitted,

15 TODD SPITZER, DISTRICT ATTORNEY
COUNTY OF ORANGE, STATE OF CALIFORNIA

16

17 By: _____

18 MATT PLUNKETT
DEPUTY DISTRICT ATTORNEY

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT C



1  Karl Avetoom
2  1100 Rutland Road # 9
   Newport Beach, CA 92660
3  (949) 929-4787
   kia002@att.net
4

5  Plaintiff in Pro Per
6
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/05/2019** at 05:18:00 PM
Clerk of the Superior Court
By e Clerk,Deputy Clerk

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9       **FOR THE COUNTY OF ORANGE-NORTH JUSTICE CENTER**

10  KARL AVETOOM, an individual        )   Case No: 30-2015-00820760
                                       )   Assigned for Trial to:
11                                     )
                                       )   HON.  JUDGE CRAIG GRIFFIN
12          Plaintiff,                 )   Dept: N-05
                                       )
13      vs.                            )   **DECLARATION OF BARRY BROOKS IN**
                                       )   **SUPPORT OF PLAINTIFF'S OPPOSITION TO**
14                                     )   **DEFENDANTS ROBERT RISBROUGH AND**
    ROBERT RISBROUGH, an individual;   )   **DARLING & RISBROUGH LLP'S EX PARTE**
15  DARLING & RISBROUGH, LLP, a        )   **APPLICATION TO CONTINUE TRIAL AND**
    California Limited Liability Partnership; )   **REOPEN DISCOVERY.**
16  MOISEY FRIDMAN, an individual; ROSA )
17  FRIDMAN, an individual, and as Trustee for )
    the Moisey Fridman and Rosa Fridman Trust, )   **EX PARTE Info:**
18  and the Fridman Family Trust; and DOES 1- )   Date:     July 6, 2019
    20, inclusive                      )   Time:     8:30 a.m.
19                                     )   Location: Dept N-05
20          Defendants                 )
                                       ):
21

22              DECLARATION OF BARRY BROOKS

23  I, Barry Brooks, hereby declare as follows:

24  1.    I have agreed to testify at trial for Plaintiff Karl Avetoom in this matter.  I have personal

25  knowledge of the following facts and if called upon to testify under oath, I could and would do so

26  competently.

27
28

                                      1

                        DECLARATION OF BARRY BROOKS

2.     On or around May 31, 2019 I learned that a job position I had applied for had opened up and I am considering taking this employment opportunity. This job will require me to relocate out of the State of California in or around August 2019 or September 2019.

3.     Early in May 2019 I was contacted by a law firm regarding this case, and I recall they represented themselves as defense counsel. I informed the attorney that I had planned on testifying at trial regarding Moisey Fridman and Rosa Fridman and the discussion I had with them in or around January 2013. I also informed the attorney that I had planned to attend and testify at trial, however I was awaiting news on an employment opportunity which would require me to relocate out of the state.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct

Executed June 5, 2019 in Costa Mesa, California    By: _____

                                             Barry Brooks

2

DECLARATION OF BARRY BROOKS

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

I, Sal Hanna, am employed in the County of Orange, State of California. I am over eighteen years of age, and not a party to this action; my business address is 7451 Warner Ave #E191 Huntington Beach, CA 92647 714-794-2779. Orange County Registered Process Server ID # 3050

On June 5, 2019, I served the following document:

**DECLARATION OF BARRY BROOKS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS ROBERT RISBROUGH AND DARLING & RISBROUGH LLP'S EX PARTE APPLICATION TO CONTINUE TRIAL AND REOPEN DISCOVERY.**

on the following parties in the associated manner:

☒ **ELECTRONIC DELIVERY.**

I am a resident and employed in the county where the service occurred. I caused to be served by electronic transmission to the following email addresses below upon filing electronically with the court.

| EOIN KREDITOR<br>FITZGERALD YAP KREDITOR, LPP<br>2 Park Plaza, Suite 850<br>Irvine, CA 92614<br><br>*Attorney for Defendants Darling &*<br>*Risbrough, LLP, and Robert Risbrough.*<br>*ekreditor@fyklaw.com* | Brad Mokri, Esq.<br>MOKRI & ASSOCIATES<br>*(Attorneys for Defendants Rosa Fridman, and Rosa*<br>*Fridman as Trustee of The Fridman Family Trust)*<br><br>1851 East 1st Street<br>Suite 900, Santa Ana, CA 92705<br>*bmokri@mokrilaw.com* |

I declare under penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct.

Executed June 5, 2019 in Huntington Beach, CA.

By: _____
Sal Hanna

1

PROOF OF SERVICE

# EXHIBIT D

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address):*

Karl Avetoom 1100 Rutland Road #9 Newport Beach, CA 92660

Telephone No.:  (949) 929-4787          Fax No. (Optional):
E-Mail Address (Optional): kia002@att.net
ATTORNEY FOR *(Name):* Plaintiff, In Pro Per          Bar No:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
☑ Central Justice Center, 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center, 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512

**ELECTRONICALLY FILED**
**Superior Court of California,**
**County of Orange**

**07/05/2019** at 09:39:00 AM

**Clerk of the Superior Court**
**By e Clerk,Deputy Clerk**

PLAINTIFF/PETITIONER: Avetoom

DEFENDANT/RESPONDENT: Risbrough, et al

CASE NUMBER:

30-2015-00820760

**STATEMENT OF COMPLIANCE**
Unlimited Civil

Case assigned to:
Judge: Hon. Craig C. Griffin
Department: N-05
Date complaint filed: 11/17/20015
Hearing/trial date:  07/08/2019

This Statement of Compliance shall be executed by all counsel and filed with the court clerk in the department of the judge to whom the case has been assigned for trial.

1.  Counsel has inspected all exhibits and diagrams and the exhibits are ready for premarking by the clerk.  All stipulations as to admission into evidence or waiver of foundation are submitted with the exhibits(s).

2.  Pretrial motions have been exchanged by all parties.

3.  If trial is by jury, proposed jury instructions, proposed special findings and/or general verdict and/or special verdicts will be exchanged before the commencement of trial.

4.  Joint Statement of the case and joint witness list has been prepared for submission to the court as required.**

5.  Counsel has prepared a joint list of controverted issues.**

6.  All counsel have prepared a list of stipulated facts and made a good faith effort to stipulate to as many documents, waiver of foundational requirements, etc., as reasonably possible.**

7.  Each party agrees that once the trial commences, witnesses shall be available to utilize to the fullest extent possible every trial day.

8.  Parties have agreed on a division of jury fees (if applicable) and reporter fees, which are due each day before trial commences.

_____, Attorney for Plf/Def/X-Compl/X-Def  Karl Avetoom              **06/27/2019**
(SIGNATURE OF ATTORNEY) Party                          (NAME OF PARTY)                (DATE)

_____ Attorney for Plf/Def/X-Compl/X-Def  BAAD A MOKAI                6/27/19
(SIGNATURE OF ATTORNEY)                               (NAME OF PARTY)                (DATE)

_____ Attorney for Plf/Def/X-Compl/X-Def  Robert Risbrough           6/27/19
(SIGNATURE OF ATTORNEY)                               (NAME OF PARTY)                (DATE)

_____ Attorney for Plf/Def/X-Compl/X-Def  Declin / Risbrough         6/27/19
(SIGNATURE OF ATTORNEY)                               (NAME OF PARTY)                (DATE)

**Please attach to this Statement of Compliance:  Joint Statement of Case. Joint Witness List. Stipulated Facts, Requested Voir Dire Questions and List of Controverted Issues.

**STATEMENT OF COMPLIANCE**

Approved for Optional Use
L-0081 (Rev  July 1, 2009)

Superior Court of Orange County, rule 317
www.occourts.org

Karl Avetoom
1100 Rutland Road # 9
Newport Beach, CA 92660
(949) 929-4787
kia002@att.net

Plaintiff in Pro Per

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE-NORTH JUSTICE CENTER

KARL AVETOOM, an individual

              Plaintiff,

    vs.

ROBERT RISBROUGH, an individual;
DARLING & RISBROUGH, LLP, a
California Limited Liability Partnership;
MOISEY FRIDMAN, an individual; ROSA
FRIDMAN, an individual, and as Trustee for
the Moisey Fridman and Rosa Fridman Trust,
and the Fridman Family Trust; and DOES 1-
20, inclusive

              Defendants

Case No: 30-2015-00820760
Assigned for Trial to:

HON.  JUDGE CRAIG GRIFFIN
Dept: N-05

**JOINT STATEMENT OF THE CASE**

**Trial Info:**
Date:     July 8, 2019
Time:     9:00 a.m.
Location: Dept N-05

**TO THE HONORABLE COURT AND TO ALL INTEREST PARTIES:**

    Plaintiff and Defendants' pursuant to Local Rule 317 hereby submit their joint statement of the
case as follows:

    "Plaintiff Karl Avetoom alleges that he was owed a debt by Debtor and Defendant Rosa
Fridman.  Plaintiff further alleges that Debtors Moisey Fridman and Rosa Fridman
transferred property to Defendants Robert Risbrough and/or Darling & Risbrough, with
the intent to hinder, delay, or defraud the Fridmans' creditors, and conspired or aided
and abetted this transfer.  Defendants deny these allegations."

1

JOINT STATEMENT OF THE CASE

Dated:  June 27, 2019                         By:       /s/Karl Avetoom
                                                        Karl Avetoom
                                                        Plaintiff, In Pro Per

2

JOINT STATEMENT OF THE CASE

| | Joint List Of Anticipated Witness Trial Testimony | | | |
|---|---|---|---|---|
| | Witness | Direct Examination Time Estimate | Cross Examination Time Estimate | Total Time |
| 1. | Karl Avetoom | 3 hrs | | |
| 2. | Judy Altshuler | 1 hrs | | |
| 3. | Ami Stanton | .5 hr | | |
| 4. | Sal Hanna | 1 hr | | |
| 5. | Barry Brooks | 1 hr | | |
| 6. | Robert Risbrough | 3 hrs | | |
| 7. | Ron Darling | 1 hr | | |
| 8. | Margaret Elder | .5 hr | | |
| 9. | Mary Sun | 1 hr | | |
| 10. | Rosa Fridman | 2 hrs | | |
| 11. | Ron Martorella | 1 hr | | |
| 12. | Todd A. Frealy | 1 hr | | |
| 13. | K. Robert Gonter | 1 hr | | |
| 14. | Jeffrey Carson | 1 hr | | |
| 15. | Nathan Malone | 1 hr | | |
| 16. | Custodian of Records Hoag Hospital | 1 hr | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



1  Karl Avetoom
2  1100 Rutland Road # 9
   Newport Beach, CA 92660
3  (949) 929-4787
   kia002@att.net
4

5  Plaintiff in Pro Per
6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF ORANGE-NORTH JUSTICE CENTER

10  KARL AVETOOM, an individual          )   Case No: 30-2015-00820760
                                         )   Assigned for Trial to:
11                                       )
                                         )   HON.  JUDGE CRAIG GRIFFIN
12          Plaintiff,                   )   Dept: N-05
                                         )
13      vs.                              )   JOINT STIPULATED FACTS
                                         )
14                                       )
                                         )   **Trial Info:**
15  ROBERT RISBROUGH, an individual;     )   Date:      July 8, 2019
    DARLING & RISBROUGH, LLP, a          )   Time:      9:00 a.m.
16  California Limited Liability Partnership; )   Location: Dept N-05
    MOISEY FRIDMAN, an individual; ROSA  )
17  FRIDMAN, an individual, and as Trustee for )
    the Moisey Fridman and Rosa Fridman Trust, )
18  and the Fridman Family Trust; and DOES 1- )
    20, inclusive                        )
19                                       )
                                         )
20          Defendants                   )
                                         )
21

22  **TO THE HONORABLE COURT AND TO ALL INTEREST PARTIES:**

23  **TO THE HONORABLE COURT AND TO ALL INTEREST PARTIES:**

24          Plaintiff Karl Avetoom hereby submits, pursuant to Rule 317, Plaintiff and Defendants'

    Stipulated Facts agreed upon by the parties on June 27, 2019.
25
            NONE.
26
            Dated: June 27, 2019          By:    -/s/- Karl Avetoom
27                                                Karl Avetoom
                                                  Plaintiff, In Pro Per
28

                                         1
                              STIPULATED FACTS



Karl Avetoom
1100 Rutland Road # 9
Newport Beach, CA 92660
(949) 929-4787
kia002@att.net

Plaintiff in Pro Per

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE-NORTH JUSTICE CENTER

| | |
|---|---|
| KARL AVETOOM, an individual | Case No: 30-2015-00820760 |
| | Assigned for Trial to: |
| Plaintiff, | HON.  JUDGE CRAIG GRIFFIN |
| | Dept: N-05 |
| vs. | **JOINT LIST OF CONTROVERTED ISSUES** |
| ROBERT RISBROUGH, an individual; | **Trial Info:** |
| DARLING & RISBROUGH, LLP, a | Date:    July 8, 2019 |
| California Limited Liability Partnership; | Time:    9:00 a.m. |
| MOISEY FRIDMAN, an individual; ROSA | Location: Dept N-05 |
| FRIDMAN, an individual, and as Trustee for | |
| the Moisey Fridman and Rosa Fridman Trust, | |
| and the Fridman Family Trust; and DOES 1- | |
| 20, inclusive | |
| Defendants | |

**TO THE HONORABLE COURT AND TO ALL INTEREST PARTIES:**

Plaintiff Karl Avetoom hereby submits, pursuant to Rule 317, Plaintiff and Defendants joint list

of controverted issues as of June 27, 2019.

All issues are controverted.

Dated: June 27, 2019        By:      _/s/  Karl Avetoom_

Karl Avetoom

Plaintiff, In Pro Per

1

LIST OF CONTROVERTED ISSUES

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

I, Sal Hanna, am employed in the County of Orange, State of California. I am over eighteen years of age, and not a party to this action; my business address is 7451 Warner Ave #E191 Huntington Beach, CA 92647 714-794-2779. Orange County Registered Process Server ID # 3050

On July 5, 2019, I served the following document:

- **STATEMENT OF COMPLIANCE**
- **PROPOSED JOINT STATEMENT OF THE CASE**
- **JOINT LIST OF ANTICIPATED WITNESS TRIAL TESTIMONY**
- **JOINT LIST OF STIPULATED FACTS**
- **JOINT LIST OF CONTROVERTED ISSUES**

on the following parties in the associated manner:

☒ **ELECTRONIC SERVICE**: I caused the documents to be served by Electronic Service upon the following parties as follows:

| |
|---|
| Brad Mokri, Esq.<br>MOKRI & ASSOCIATES<br>*(Attorneys for Defendants Rosa Fridman, and Rosa Fridman as Trustee of The Fridman Family Trust)*<br><br>1851 East 1st Street<br>Suite 900, Santa Ana, CA 92705<br>*bmokri@mokrilaw.com* |

I declare under penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct.

Executed June 5, 2019 in Huntington Beach, CA.

By:   /s/ Sal Hanna
           Sal Hanna

1

PROOF OF SERVICE

# EXHIBIT E



**21ˢᵗ Century Investigations**
**Investigations and Risk Assessment**
PI License # 21688
(714) 244-6959
P.O. Box 3223, Costa Mesa Ca. 92628
21.detectiveagency@gmail.com

DECLARATION OF BARRY QUENTIN BROOKS

I, Barry Brooks, hereby declare as follows:

1.      I am a private investigator duly licensed in the State of California. I am a retired
law enforcement officer for Los Angeles Police Department and a former State Bar of California
investigator. I have personal knowledge of the following facts and if called upon to testify under
oath, I could and wound do so competently.

2.      On August 2, 2021, as the request of Plaintiff Karl Avetoom, I came to Mr.
Avetoom's residence to witness to a telephonic meet and confer regarding discovery in an
adversary proceeding in the bankruptcy case of one ROSA FRIDMAN.  The phone call was
between Mr. Avetoom and Defendant's counsel, Mr. Scott Talkov.

3.      During this telephonic meet and confer, Mr. Avetoom informed Mr. Talklov that
he did not agree to email service. Mr. Avetoom also informed Mr. Talkov that he had not
received notice by mail of a subpoena to appear at a deposition. Mr. Talkov stated that he had an
associate of his office that lived a few blocks away and would come and personally serve Mr.
Avetoom that day with a deposition subpoena. After the meet and confer phone call was over, at
approximately 1 pm. I was with Mr. Avetoom as his residence when a young Caucasian male
with dark hair came up the staircase by Mr. Avetoom's unit.  This person looked around and then
taped some papers to a wooden small dog gate, stepped back and appeared to take photographs.
The individual then looked around, removed the papers and left Mr. Avetoom's complex heading
east on Rutland Road towards Bedford Lane.  At no time did this person attempt to come to the
front door of Mr. Avetoom's unit and attempt service.  I have seen photographs attached to an
email set from Talkov law on August 3, 2021 which contain photographs of papers that were

taped to the dog gate outside Mr. Avetoom's residence the previous day. At no time did this
individual even come to the front door of Mr. Avetoom's residence. Mr. Avetoom's association
has security cameras installed and Mr. Avetoom's front door uses a Ring doorbell with video. I
have reviewed the video from this timeframe and it supports that this party did not come to the
front door to attempt to personally serve Mr. Avetoom.

    4.    During this meet and confer, aside from general discussions of Rule 26 witnesses
and documents, Mr. Avetoom attempted to obtain a response as to why Defendant's counsel
needed to conduct a deposition, when there was a motion for summary judgment pending. Mr.
Talkov did not offer any firm response outside of stating he did not need to discuss his discovery
with Mr. Avetoom. After some minutes, Mr. Talkov stated that he needed to conduct the
deposition because of a *hypothetical situation, that Rosa Fridman had paid Mr. Avetoom's 2011
judgment in full after the last "727" case.* Mr. Avetoom responded that if they are alleging that
Rosa Fridman has somehow paid the entire judgment, he would like to see how she paid this
million dollar judgment off. Later in the conversation Mr. Talkov stated that the judgment Mr.
Avetoom holds is in an amount in excess of anything Rosa Fridman could afford to pay,
contradicting the hypothetical Mr. Talkov expressed. During this telephonic meeting Mr. Talkov
avoided responding to Mr. Avetoom's request for explanations into how discovery related to
Defendant's affirmative defenses under section 547. While Mr. Avetoom took the position that
discovery is limited to claim and defenses proximate to these issues under Rule 26, Mr. Taklow
appeared to take the position that he did not have to disclose his discovery needs and did not
agree to limit discovery under Rule 26. Mr. Avetoom stated that he would move for a protective
order if Defendant's counsel did not agree to resolve the discovery differences. Mr. Avetoom
stated he would have to retain counsel to prevent harassment from Defendant's counsel.

    5.    Mr. Avetoom showed me an email from the United States Postal Service that
shows a handwritten envelope bearing the post mark of July 31, 2021 was sent to him. Mr.
Avetoom suspected foul play by Defendant's attorneys and asked me to accompany him to the

mail box to retrieve and open the letter. I agreed and the letter contained a postmark of July 31,

2021 (Saturday) and postmarked from Santa Ana, CA. There was no return address. It contained

one single stamp. I opened the envelope and there were two pieces of blank paper inside. There

was no other mail addressed to Mr. Avetoom. This post mark appears to be on or around the

same time Defendant's counsel claims to have mailed a deposition notice referenced in their

August 3, 2021 email.

I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.

Executed August 3, 2021 in Costa Mesa, CA.

By: _____
Barry Q. Brooks

# EXHIBIT F

This agreement ("Contract") is entered into on Oct 3, 2019 between Karl Avetoom ("Creditor") and Rosa Fridman (Debtor") in her personal capacity and, also in her capacity as Trustee to the Fridman family Estate Established April 14, 2000. Creditor hereby promises not to initiate any foreclosure proceedings on Debtor's property Known as 16542-Blackbeard Lane. #304, Huntington Beach CA 92647 (APN 931-71-080)("the Property") to satisfy the remaining balance owed to creditor in Orange county superior court case number 30-2010-00345490 (Avetoom v. Avce, Fridman) as long as the Debtor resides in the property, or until such time that Debtor vacates the property for any reason including assisted living, or in event Debtor files for bankruptcy protection. In consideration, Debtor agrees not to encumber the property. transfer, assign or otherwise dispose of her interest in the Property, pay all property taxes, pay all HOA dues and assessments on said property and consents to give creditor a lien against Debtors undivided interest of 68.3% in the Property as security to satisfy the outstanding balance owed on the judgment obtained by creditor against Debtor entered November 18, 2011 in 30-2010-00345490.

_____
Creditor

_____
Debtor

Anni Stanton
Oct 3, 2019
Witness

714-833-0761
witness
HERBERT CONRAD
10.3.2019

- END -

## ##

057

# EXHIBIT G

### DECLARATION OF HERBERT CONRAD

I, Herbert Conrad, hereby declare as follows:

1.       I am over the age of eighteen and have personal knowledge of the following facts. If called upon to testify under oath, I could and would do so competently.

2.       On August 24, 2021 I received a phone call from an attorney by the name of Scott Talkov. This attorney asked me if I had witnessed the signing of a document at the Orange County Superior Court on or around October 3, 2019. The attorney was trying to put words in my mouth, attempting to have be state that I did not know the people and did not witness the document being signed. The attorney was trying to feed answers to me to get me to take a position on a document from 2019. I eventually asked him to send me by email a copy of the document, which he did. But his email was already filled out falsely representing my statements.

3.       I reviewed the document and recalled that I had been asked by two people at the Orange County Superior Court to be a witness to the signing of a document, the same documents titled "Contract" that the attorney had sent to me via email. I recalled being asked to be a witness and agreed to be a witness to the signing of this document. I explained to attorney Scott Taklov that I had witnessed an older woman sign the document, then followed by two other parties. I signed the document last. The attorney did not seem too happy to hear this and shortly ended the phone call.

4.       I felt uncomfortable by the attorney trying to influence me into answering how he wanted, basically putting words in my mouth and falsely representing my prior statements. I emailed the attorney back and told him that his email representations were not accurate of what I had said.

I declare under penalty of perjury under the laws of the United States that the above it true and correct.

Executed September 30, 2021 in Fullerton, California

By: _____
Herbert Conrad

# EXHIBIT H



11/24/2021    Amazon.com: The Sin Blue Line: How God delivered me from the LAPD and other miracles: 9781635756746: Brooks J D, Barry Q: Books

All ▾ · barry q. brooks

0

All    Best Sellers    Early Black Friday Deals    Kindle Books    Buy Again    Outdoor Recreation    Sports & Fitness    Shop for Thanksgiving

Books    Advanced Search    New Releases    Best Sellers & More    Children's Books    Textbooks    Textbook Rentals    Best Books of the Month

audible    New from the author of Harry Potter    Listen free with trial ›

The Sin Blue Line and millions of other books are available for Amazon Kindle. Learn more

‹ Back to results

Look inside ↓

**The Sin Blue Line: How God delivered me from the LAPD and other miracles** Hardcover – April 25, 2017

by Barry Q Brooks J D (Author)

8 ratings

See all formats and editions

| Kindle | Hardcover | Pap |
|---|---|---|
| $9.99 | $26.95 | $1. |
| Read with Our Free App | 1 Used from $24.84 | 1 Use |
| | 7 New from $21.18 | 8 Nev |

At the age of twenty-three, Barry Brooks was saved after accepting Jesus Christ as his Lord and Savior. Shortly thereafter, the Lord called Barry from a quiet, small town in New England to South Central Los Angeles and the LAPD. As many deadly threats

Read more

| Print length | Language |
|---|---|
| 202 pages | English |

See all 2 Images

The Amazon Book Review
Book recommendations, author interviews, editors' picks, and more.
Read it now.

Books you may like

Page 1 of 16

**Buy new:**    $26.95

**Prime FREE Delivery**
& FREE Returns

**FREE Delivery Nov 28 - Dec 8
for Prime members**
Details

Deliver to Matthew - Paramount 90723

Available to ship in 1-2 days.

As an alternative, the Kindle eBook is available now and can be read on any device with the free Kindle app.

Qty: 1

Add to Cart

Buy Now

🔒 Secure transaction

Ships from   Amazon.com
Sold by       Amazon.com

Return policy: Returnable until Jan 31, 2022

☐ Add a gift receipt for easy returns

**Buy used:**    $24.84

Add to List

Share    ‹Embed›

Have one to sell?
Sell on Amazon

**Other Sellers on Amazon**

$22.42    Add to Cart
+ $3.99 shipping
Sold by: Ambis Enterprises

amazon book clubs
early access

https://www.amazon.com/Sin-Blue-Line-Delivered-Miracles/dp/163575674X/ref=sr_1_1?keywords=barry+q.+brooks&qid=1637785109&qsid=137-4385…    1/6

11/24/ 

6: Brooks J D, Barry Q: Books

d to book club

a **club?** Learn more

Sponsored

## Products related to this item
Sponsored



The Art of Listening
Prayer: Finding God's
Voice Amidst Life's Noise
**Seth Barnes**
        463
Paperback
$10.90



Life, Loss and Love
**Susan Nicholson**
                82
Paperback
$15.41



DEFYING THE STORMS
IN YOUR LIFE: How to
overcome the problems
in your life and even...
**Richardson George**
        4
Paperback
$7.60



Distracted and Defeated:
the rulers and the ruled
**Mike Bhangu**
*Amazon best-seller (2019-02-
07). From time to time, the
"haves" tamper with
information. This to control
thoughts and actions.
Discover the tactics.*
                143
Paperback
$14.87

## Special offers and product promotions
- Listen FREE for 90 days **Get 90 DAYS FREE of Amazon Music Unlimited with purchase of an eligible book.** Learn more
- Create your FREE Amazon Business account to save up to 10% with Business-only prices and free shipping.

## Product details
**Publisher : Christian Faith Publishing, Inc. (April 25, 2017)**
**Language : English**
**Hardcover : 202 pages**
**ISBN-10 : 163575674X**
**ISBN-13 : 978-1635756746**
**Item Weight : 1.03 pounds**
**Dimensions : 6 x 0.63 x 9 inches**
**Best Sellers Rank: #13,239,293 in Books** (See Top 100 in Books)
    **#67,186 in** Christian Inspirational
    **#229,654 in** Memoirs (Books)

062

11/24/2021        Amazon.com: The Sin Blue Line: How God delivered me from the LAPD and other miracles: 9781635756746: Brooks J D, Barry Q: Books

**Customer Reviews:**        8 ratings

Start reading *The Sin Blue Line* on your Kindle in under a minute.

Don't have a Kindle? Get your Kindle here, **or download a FREE** Kindle Reading App.

**Discover your next book for 2021** Just say, **"Alexa, buy** *Caste* **on Kindle."** Learn more about this book >

## Videos

Help others learn more about this product by uploading a video!

Upload video

## Prime free delivery
Sponsored ⓘ



The Art of Listening Prayer: Finding God's Voice Amidst Life's Noise
**Seth Barnes**
                463
Paperback
$10.90



Life, Loss and Love
**Susan Nicholson**
                82
Paperback
$15.41



DEFYING THE STORMS IN YOUR LIFE: How to overcome the problems in your life and even...
**Richardson George**
                4
Paperback
$7.60



Distr
the r
**Mike B**
*Amaz*
*o7). F*
*"haves*
*inform*
*thoug!*
*Discou*

Paperl
$14.

Sponsored

## How would you rate your experience shopping for books on Amazon today?



Very poor                    Neutral                    Great



11/24/2021      Amazon.com: The Sin Blue Line: How God delivered me from the LAPD and other miracles: 9781635756746: Brooks J D, Barry Q: Books

## Customer reviews

### 2.6 out of 5

8 global ratings

| | |
|---|---|
| 5 star | 33% |
| 4 star | 0% |
| 3 star | 0% |
| 2 star | 29% |
| 1 star | 38% |

How are ratings calculated?

### Review this product

Share your thoughts with other customers

Write a customer review

10,868      Add to Cart

Sponsored

Top reviews

### Top reviews from the United States

**JustASmallTownGirl**

**One man's faithful testimony but book needs editing**
Reviewed in the United States on August 29, 2017
Verified Purchase

This book is a personal testimony of one man's faith through his trials with the LAPD. A self-serving read; I would loved to have given it 3 stars but this book is filled with spelling, grammar, and editing errors. Throughout the book the author repeats stories but changes the details...it is very difficult to discern what is true and what isn't.. This reads like fiction not a true story. The grammatical errors are distracting; this book is in desperate need of a good proofreader.

Helpful      Report abuse

**Derreck Albers**

**Eye Opening**
Reviewed in the United States on April 1, 2018
Verified Purchase

Barry has been through a lot to get to where he is, this illustrates his career and spiritual relationship that he has based his life on.

Helpful      Report abuse

**Herbert Conrad**

**I was very happy to see that Barry finished writing a book of ...**
Reviewed in the United States on October 26, 2017

I've known Barry Brooks since the late 90's while working with him as his partner at LAPD. It was shortly thereafter I discovered that Barry was a brother in Chirst. Barry has been an example and encouragement on duty and off with his integrity. If not for Barry I would not have finished college, obtain my degree, and pursued graduate school. I was very happy to see that Barry finished writing a book of his incredible journey and real true life experiences with the LAPD. I've read his book "The Sin Blue Line" and I would recommend it to anyone in law enforcement and those who would like to see the true colors of the LAPD. It's a very inspirational book, take it from a eyewitness who has been there, done that, and bought the t-shirt.

Helpful      Report abuse

**Jorge Torres**

**Whith Christ all things are possible**
Reviewed in the United States on April 10, 2019

People forget that when Barry was in the LAPD, the Department endured many intense crises such as Rodney King, the OJ trial, and Rafael Perez. This had its toll on the rank and file as well as on Barry. He was a great partner, a wonderful Christian and loving husband. His story is just another proof that with Christ all is possible.

Helpful      Report abuse

**Michael Morlan**

**He has led many men and women to the Lord and I highly recommend this book**
Reviewed in the United States on November 2, 2017

I personally know Barry Brooks as I worked with him at the LAPD, Pacific Division and as professors for the University of Phoenix. He was a U.S. Marshal and was honorably retired from the LAPD after 25 years of service. He was honorably retired from the LAPD after 25 years of service. This is a very inspirational factual read. I know

https://www.amazon.com/Sin-Blue-Line-Delivered-Miracles/dp/163575674X/ref=sr_1_1?keywords=barry+q.+brooks&qid=1637785109&qsid=137-4385...    4/6

him to be a christian man. He has led many men and women to the Lord and I highly recommend this book. I read it from cover to cover and was astonished to see how God actually positioned me in the LAPD to later play a role in Barry's vindication from the LAPD and the abuses he was put through. God truly delivered him and continues to work his plans in Barry's life. This book is an inspiration to anyone who is seeking God's will for their life.



Helpful          Report abuse

**rob lloyd**

**Phenomenal read..... won't disappoint**

Reviewed in the United States on October 27, 2017

This review is being written by Jamie M Singleton who read every single page of this book. If I could give this very well written book by Mr. Barry Brooks 10 stars, I would!!! This book is definitely a page turner, cliff hanger, and great to the very end. I could not put this book down. Lunch breaks, bath room breaks, soccer practice, etc I had this book. I had briefly heard stories from Barry in a few of his lectures but he gives his stories no justice. Reading it, took me to a place where I was rooting for him in some chapters and in other chapters I was caught speaking out loud questioning some of his reasoning. Such as in a few of his chapters he discusses the Christian brother that was a total FRAUD. I said out loud in my home "BARRY REALLY, WAKE UP HE IS A FRAUD URRRRGGHHH." My daughter asked who I was talking to. I told her I was reading and she said "did Barry do something in the book again." Interesting how a 9 year old picks up on things. My ultimate favorite part of the book is where, the beloved MRS. BROOKS shut it ALL down for the scammer ring. I loved how he gave imagination of the setting, the chairs, the distance from where she sat in the

Read more



Helpful          Report abuse

Caitlin and Patrick

**Cant pass the bar? Fired from every job you have ever had? Write a book!!**

Reviewed in the United States on October 18, 2017

I've had the unfortunate opportunity to interact with the author. Yes, he worked for the LAPD, he was forced out of the department because he was a bag of trash. He was never a US Marshal as he eludes too, he has been fired or removed from almost every job he has ever had. The guy is one fake story after another. Read this story understanding it is a work of fiction. Or go buy a book from someone who is really a man of faith, or a real hero.

One person found this helpful



Helpful          Report abuse

See all reviews ›

amazon

| Get to Know Us | Make Money with Us | Amazon Payment Products | Let Us Help You |
| --- | --- | --- | --- |
| Careers | Sell products on Amazon | Amazon Rewards Visa Signature Cards | Amazon and COVID-19 |
| Blog | Sell apps on Amazon | Amazon.com Store Card | Your Account |
| About Amazon | Become an Affiliate | Amazon Secured Card | Your Orders |
| Sustainability | Become a Delivery Driver | Amazon Business Card | Shipping Rates & Policies |
| Press Center | Start a package delivery business | Amazon Business Line of Credit | Amazon Prime |
| Investor Relations | | Shop with Points | |
| Amazon Devices | | Credit Card Marketplace | |

11/24/2021        Amazon.com: The Sin Blue Line: How God delivered me from the LAPD and other miracles: 9781635756746: Brooks J D, Barry Q: Books

Advertise Your Products          Reload Your Balance          Returns &
                                                              Replacements
Self-Publish with Us             Amazon Currency Converter
                                                              Manage Your Content
Host an Amazon Hub                                            and Devices

› See More Ways to                                           Amazon Assistant
Make Money
                                                              Help

| English | | United States |

| Amazon Music Stream millions of songs | Amazon Advertising Find, attract, and engage customers | Amazon Drive Cloud storage from Amazon | 6pm Store deals on fashion brands | AbeBooks Books, art & collectibles | ACX Audiobook Publishing Made Easy | Alexa Actionable Analytics for the Web |
| Sell on Amazon Start a Selling Account | Amazon Business Everything For Your Business | Amazon Fresh Groceries & More Right To Your Door | AmazonGlobal Ship Orders Internationally | Home Services Experienced Pros Happiness Guarantee | Amazon Ignite Sell your original Digital Educational Resources | Amazon Web Services Scalable Cloud Computing Services |
| Audible Listen to Books & Original Audio Performances | Book Depository Books With Free Delivery Worldwide | Box Office Mojo Find Movie Box Office Data | ComiXology Thousands of Digital Comics | DPReview Digital Photography | East Dane Designer Men's Fashion | Fabric Sewing, Quilting & Knitting |
| Goodreads Book reviews & recommendations | IMDb Movies, TV & Celebrities | IMDbPro Get Info Entertainment Professionals Need | Kindle Direct Publishing Indie Digital & Print Publishing Made Easy | Amazon Photos Unlimited Photo Storage Free With Prime | Prime Video Direct Video Distribution Made Easy | Shopbop Designer Fashion Brands |
| Amazon Warehouse Great Deals on Quality Used Products | Whole Foods Market America's Healthiest Grocery Store | Woot! Deals and Shenanigans | Zappos Shoes & Clothing | Ring Smart Home Security Systems | eero WiFi Stream 4K Video in Every Room | Blink Smart Security for Every Home |
| | Neighbors App Real-Time Crime & Safety Alerts | Amazon Subscription Boxes Top subscription boxes – right to your door | PillPack Pharmacy Simplified | Amazon Renewed Like-new products you can trust | Amazon Second Chance Pass it on, trade it in, give it a second life | |

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2021, Amazon.com, Inc. or its affiliates

| | |
|---|---|
| 1 | **PROOF OF ELECTRONIC SERVICE** |
| 2 | STATE OF CALIFORNIA                    ) |
| 3 | COUNTY OF ORANGE                    ) |
| 4 | |

5  RE:   *The People v.Karl Ivan Avetoom*
          Case No. 96HF0016

6

7         I am a citizen of the United States; I am over the age of 18 years and not a party to the within
entitled action; my electronic service address is: appellate@da.ocgov.com; my business address is:
8  Office of the District Attorney, County of Orange, 300 North Flower Street, Santa Ana, CA 92703.

9         On December 2, 2021   I electronically served the PEOPLE'S OPPOSITION TO
DEFENDANT'S MOTION TO VACATE CONVICTIONS PURSUANT TO PC SECTION 1473.6
10  on the interested parties in said action by transmitting a true copy via electronic mail as follows:

11

12                Sandra Nassar
                   Attorney at Law
                   sandra@snassarlaw.com
13
                   Charles L. Murray, III
14                Attorney at Law
                   cmurray@cm3law.com
15

16         I declare under penalty of perjury that the foregoing is true and correct.

17

18         Executed on December 2, 2021 at Santa Ana, California.

19         /s/ *Myrna Lopez*

20         _____
            Myrna Lopez
21         ATTORNEY CLERK II

22

23

24

25

26

27

28

# **Exhibit 14**



## Exhibit 15

**Fill in this information to identify the case:**

Debtor 1   Rosa Fridman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **21–10513**

FILED

**U.S. Bankruptcy Court
Central District of California**

8/23/2021

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Karl Avetoom

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Karl Avetoom

Name

1100 Rutland Road
Newport Beach, CA 92660

Contact phone        949–929–4787

Contact email        kia002@att.net

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☐ No
☒ Yes. Claim number on court claims registry (if known)    1    Filed on   04/21/2021

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing?

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. **Do you have any number you use to identify the debtor?** | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|

| 7. **How much is the claim?** | $ 1199740.83 | **Does this amount include interest or other charges?** <br> ☐ No <br> ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br> Limit disclosing information that is entitled to privacy, such as healthcare information. <br><br> personal injury |
|---|---|

| 9. **Is all or part of the claim secured?** | ☑ No <br> ☐ Yes. The claim is secured by a lien on property. <br> **Nature of property:** <br> ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*. <br> ☐ Motor vehicle <br> ☐ Other. Describe: _____ <br><br> **Basis for perfection:** _____ <br><br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of property:** $ _____ <br> **Amount of the claim that is secured:** $ _____ <br> **Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:** $ _____ <br><br> **Annual Interest Rate** (when case was filed) ____ % <br><br> ☐ Fixed <br> ☐ Variable |
|---|---|

| 10. **Is this claim based on a lease?** | ☑ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|

| 11. **Is this claim subject to a right of setoff?** | ☑ No <br> ☐ Yes. Identify the property: _____ |
|---|---|

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    8/23/2021

     MM / DD / YYYY

/s/ Karl Avetoom

Signature

Print the name of the person who is completing and signing this claim:

Name      Karl Avetoom

     First name    Middle name    Last name

Title

Company

     Identify the corporate servicer as the company if the authorized agent is a servicer

Address      1100 Rutland Road #9

     Number   Street

     Newport Beach, CA 92660

     City   State   ZIP Code

Contact phone    949–929–4787      Email    kia002@att.net

Official Form 410          Proof of Claim          page 3

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:

Karl Avetoom
1100 Rutland Road # 9
Newport Beach, CA 92660

TEL NO.: 949-929-4787  FAX NO. (optional):
E-MAIL ADDRESS (Optional): kia002@att.net

| | ATTORNEY FOR | X | JUDGMENT CREDITOR | | ASSIGNEE OF RECORD |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana        92701
BRANCH NAME: Central Justice Center

*FOR RECORDER'S USE ONLY*

PLAINTIFF: Avetoom

DEFENDANT: Arce, et al

CASE NUMBER:
30-2010-00345490

### APPLICATION FOR AND RENEWAL OF JUDGMENT

*FOR COURT USE ONLY*

[X] Judgment creditor
[ ] Assignee of record
applies for renewal of the judgment as follows:

1. Applicant *(name and address):*
   Karl Avetoom
   1100 Rutland Road # 9
   Newport Beach, CA 92660

2. Judgment debtor *(name and last known address):*
   Rosa Fridman
   16542 Blackbeard Lane, # 304
   Huntington Beach, CA 92649

3. Original judgment
   a. Case number *(specify):* 30-2010-00345490
   b. Entered on *(date):* 11/18/2011
   c. Recorded:
      (1) Date: 03/11/2015
      (2) County: Orange
      (3) Instrument No.: 2015000126500

4. [ ] Judgment previously renewed*(specify each case number and date):*

5. [X] Renewal of money judgment
   a. Total judgment . . . . . . . . . . . . . . . . . . . . . . . $   654,964.41
   b. Costs after judgment . . . . . . . . . . . . . . . . . $        230.06
   c. Subtotal *(add a and b)* . . . . . . . . . . . . . . . . $   655,194.47
   d. Credits after judgment . . . . . . . . . . . . . . . . $          0.00
   e. Subtotal *(subtract d from c)* . . . . . . . . . . . $   655,194.47
   f. Interest after judgment . . . . . . . . . . . . . . . . $   544,501.36
   g. Fee for filing renewal application . . . . . . . . . $         45.00
   h. **Total renewed judgment** *(add e, f, and g)* $ 1,199,740.83
   i. [ ] The amounts called for in items a–h are different for each debtor.
         These amounts are stated for each debtor on Attachment 5.

**Page 1 of 2**

Form Approved for Optional Use
Judicial Council of California
EJ-190 [Rev. July 1, 2014]

**APPLICATION FOR AND RENEWAL OF JUDGMENT**

Code of Civil Procedure, § 683.140

CEB
www.ceb.com

| SHORT TITLE:  Avetoom v. Arce | CASE NUMBER:  30-2010-00345490 |

+

6. ☐ Renewal of judgment for    ☐ possession.
                                 ☐ sale.

   a. ☐ If judgment was not previously renewed, terms of judgment as entered:

+

   b. ☐ If judgment was previously renewed, terms of judgment as last renewed:

   c. ☐ Terms of judgment remaining unsatisfied:

+

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **February 10, 2021**

_____
        **Karl Avetoom**
        (TYPE OR PRINT NAME)

▶ _____
        (SIGNATURE OF DECLARANT)

+

Electronically Filed by Superior Court of California, County of Orange, 02/10/2021 11:53:00 PM
30-2010-00345490-CU-PO-CJC - ROA # 1300 - DAVID H. YAMASAKI, Clerk of the Court By Omar Saldivar, Deputy Clerk.
Main Document          Page 292 of 358

MC-012

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Karl Avetoom

FIRM NAME:

STREET ADDRESS: 1100 Rutland Road #9

CITY: Newport Beach        STATE: CA        ZIP CODE: 92660

TELEPHONE NO.: (949) 929-4787        FAX NO.:

E-MAIL ADDRESS: kia002@att.net

ATTORNEY FOR (name): Plaintiff, In Pro Per

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ORANGE

STREET ADDRESS: 700 Civic Center Drive West

MAILING ADDRESS: 700 Civic Center Drive West

CITY AND ZIP CODE: Santa Ana 92701

BRANCH NAME: Central Justice Center

PLAINTIFF: Avetoom

DEFENDANT: Arce, et al

| **MEMORANDUM OF COSTS AFTER JUDGMENT, ACKNOWLEDGMENT OF CREDIT, AND DECLARATION OF ACCRUED INTEREST** | CASE NUMBER: 30-2010-00345490 |
|---|---|

1. [ ✖ ]  **Postjudgment costs**

    a.  I claim the following costs after judgment incurred within the last two years *(indicate if there are multiple items in any category):*

    |  | | Dates Incurred | | Amount |
    |---|---|---|---|---|
    | (1) | Preparing and issuing abstract of judgment | | $ | 0.00 |
    | (2) | Recording and indexing abstract of judgment | | $ | 0.00 |
    | (3) | Filing notice of judgment lien on personal property | | $ | 0.00 |
    | (4) | Issuing writ of execution, to extent not satisfied by Code Civ. Proc., § 685.050 *(specify county)*: | | $ | 0.00 |
    | (5) | Levying officers fees, to extent not satisfied by Code Civ. Proc., § 685.050 or wage garnishment | | $ | 0.00 |
    | (6) | Approved fee on application for order for appearance of judgment debtor, or other approved costs under Code Civ. Proc., § 708.110 et seq. | 7/16/2019; 6/15/2020 | $ | 120.00 |
    | (7) | Attorney fees, if allowed by Code Civ. Proc., § 685.040 | | $ | 0.00 |
    | (8) | Other: eFiling fees          *(Statute authorizing cost)*: CCP § 1033.5(14) | | $ | 110.06 |
    | (9) | Total of all claimed costs for current memorandum of costs *(add items (1)–(8))* | | $ | 230.06 |

    b.  All previously allowed postjudgment costs          $ 0.00

    c.  **Total** of all postjudgment costs *(add items a and b)*          $ 230.06

2. [ ✖ ]  **Credits to interest and principal**

    a.  I acknowledge total payments to date in the amount of: $58,982.59          (including returns on levy process and direct payments). The payments received are applied first to the amount of accrued interest, and then to the judgment principal (including postjudgment costs allowed) as follows: credit to accrued interest: $58,982.59          ; credit to judgment principal $0.00          .

    b.  **Principal remaining due:** The amount of judgment principal remaining due is $654,964.41          . *(See Code Civ. Proc., § 680.300)*

3. [ ✖ ]  **Accrued interest remaining due:** I declare interest accruing (at the legal rate) from the date of entry or renewal and on balances from the date of any partial satisfactions (or other credits reducing the principal) remaining due in the amount of $544,501.36          .

4.  I am the:      [ ✖ ] judgment creditor          [ ] agent for the judgment creditor          [ ] attorney for the judgment creditor.

    I have knowledge of the facts concerning the costs claimed above. To the best of my knowledge and belief, the costs claimed are correct, reasonable, and necessary, and have not been satisfied.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Feb 10, 2021

Karl Avetoom
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

**NOTICE TO THE JUDGMENT DEBTOR**

If this memorandum of costs is filed at the same time as an application for a writ of execution, any statutory costs, not exceeding $100 in aggregate and not already allowed by the court, may be included in the writ of execution. The fees sought under this memorandum may be disallowed by the court upon a motion to tax costs filed by the debtor, notwithstanding the fees having been included in the writ of execution. (Code Civ. Proc., § 685.070(e).)  A motion to tax costs claimed in this memorandum must be filed within 10 days after service of the memorandum. (Code Civ. Proc., § 685.070(c).)

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California MC-012 [Rev. September 1, 2018] | **MEMORANDUM OF COSTS AFTER JUDGMENT, ACKNOWLEDGMENT OF CREDIT, AND DECLARATION OF ACCRUED INTEREST** | Code of Civil Procedure, §§ 685.040, 685.070, 695.220 www.courts.ca.gov |
|---|---|---|

MC-012

| Short Title:   Avetoom v. Arce, et al | CASE NUMBER:<br>30-2010-00345490 |
| --- | --- |

## PROOF OF SERVICE

☒ **Mail**    ☐ **Personal Service**

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My residence or business address is:
   7451 Warner Ave #E191 Huntington Beach, CA 92647 714-794-2779 OC process server 3050

3. ☒ I mailed or personally delivered a copy of the *Memorandum of Costs After Judgment, Acknowledgment of Credit, and Declaration of Accrued Interest* as follows *(complete either a or b)*:

   a. ☒ **Mail.** I am a resident of or employed in the county where the mail occurred.
      (1) I enclosed a copy in an envelope AND
         (a) ☒ **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) ☐ **placed** the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

      (2) The envelope was addressed and mailed as follows:

         (a) Name of person served: Rosa Fridman
         (b) Address on envelope:  16542 Blackbeard Lane, # 304 Huntington Beach, CA 92649
         (c) Date of mailing: February 10, 2021
         (d) Place of mailing *(city and state)*:  Costa Mesa, CA

   b. ☐ **Personal delivery.** I personally delivered a copy as follows.
      (1) Name of person served:
      (2) Address where delivered:
      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Date: Feb 10, 2021


_____
Sal W. Hanna
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

**MEMORANDUM OF COSTS AFTER JUDGMENT,
ACKNOWLEDGMENT OF CREDIT, AND DECLARATION
OF ACCRUED INTEREST**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

Electronically Filed by Superior Court of California, County of Orange, 02/10/2021 11:53:00 PM.
30-2010-00345490-CU-PO-CJC - ROA # 1572 - DAVID H. YAMASAKI, Clerk of the Court By Omar Saldivar, Deputy Clerk.
Case 8:20-bk-10028-ES   Doc 147   Filed 02/23/21   Entered 02/23/21 23:22:16   Desc
Main Document    Page 294 of 358

1  Karl Avetoom
   1100 Rutland Road # 9
2  Newport Beach, CA 92660
   (949) 929-4787
3  kia002@att.net

4

   Creditor/Plaintiff
5
   In Pro Per
6

7

8

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **FOR THE COUNTY OF ORANGE-CENTRAL JUSTICE CENTER**

11
                                          )  Case No: 30-2010-00345490
12  **Karl Avetoom**,                     )
                                          )  *Assigned for all purposes to:*
13          Plaintiff and Creditor,       )
                                          )  Hon:  Sherri Honer
14                                        )  Dept C-66
                                          )
15          vs.                           )
                                          )  **DECLARATION IN SUPPORT OF**
16                                        )  **APPLICATION FOR RENEWAL OF**
                                          )  **JUDGMENT RE: MEMORANDUM OF FEES**
17  **MOISEY FRIDMAN AND ROSA**           )  **AND COSTS**
                                          )
18  **FRIDMAN**, as individuals, and DOES 1-50, )
                                          )  Judgment Entered:
19          Defendants and Debtors        )  November 18, 2011
                                          )
20  ────────────────────────────────────

21  TO THE CLERK OF THE SUPERIOR COURT, AND TO ALL INTERESTED PARTIES AND

    THEIR ATTORNEYS OF RECORD:
22
            1.      I, Karl Avetoom, assignee of record, hereby submit this declaration in support of my
23
    Application for and Renewal of Judgment. I have personal knowledge of the following facts and if
24
    called upon to testify under oath, I could and would do so competently thereto.
25
            2.      On November 18, 2011 the trial court, Hon. Karen L. Robinson, entered judgment in
26
    favor of Plaintiff Karl Avetoom, and against Defendants Moisey Fridman and Rosa Fridman in the
27
    amount of $1,000,000.00, consisting of a total of $600,000.00 in compensatory damages plus
28
    $400,000 in punitive damages [See ROA 277 and 307].

                                          - 1 -

    ───────────────────────────────────────────────────────────────
                DECLARATION IN SUPPORT OF APPLICATION FOR RENEWAL OF JUDGMENT

3. On or around January 4, 2012 the trial court denied Defendants' post-trial motions, and upon Plaintiff's stipulation, reduced the punitive damages to $50,000.00 [ROA 297]. The total Judgment totaled $650,000.00 after denial of the post-trial motions.

4. On or around February 6, 2012 the trial court entered an order granting Plaintiff Karl Avetoom's request for costs in the amount of $4,964.41 [ROA 339].

5. In or around February 2012 Defendants Moisey Fridman and Rosa Fridman filed for bankruptcy protection.

6. On or around February 15, 2018 Defendants Moisey Fridman and Rosa Fridman were denied discharge of their debts in their bankruptcy after stipulating to a judgment denying discharge arising from the Defendants' admission to engaging in conduct to hinder, delay and defraud their creditors (In re Fridman 8:12-bk-11721-ES, Adv. Proc. 8:13-ap-01253-ES, United States Federal Bankruptcy Court for the Central District of California].

7. On or around August 20, 2018 the bankruptcy court entered an Order on Final Distribution of Defendants' bankruptcy assets including a distribution for $58,982.59 to Plaintiff Karl Avetoom as a creditor [Case 8:12-bk-11721-ES Doc 596].

8. Interest has been accruing on the judgment entered in this case at 10%. Interest has accrued at the rate of 10% divided by 365 days = 0.0002739.

    a. There are 2,468 days between entry of judgment on November 18, 2011 and August 20, 2018. Interest on $654,964.41 x 0.0002739 x 2,468 days = **$442,746.25**

        i. Payment to accrued interest applied first (CCP §695.220)

        $442,746.25-$58,982.59= **$383,763.66 Remaining Interest.**

    b. There are 896 days between August 21, 2018 and February 1, 2021. Interest on $654,964.41 x 0.0002739 x 896 days = **$160,737.70 Accrued Interest**

9. Total Outstanding Interest Accrued (**$383,763.66 +$160,737.70) = $544,501.36**

10. Outstanding amount of Judgment plus interest at time of application for renewal of judgment is **$1,199,465.77** (**$654,964.41+ $544,501.36)**

11. Alternatively, there are 3,364 days between November 18, 2011 and February 1, 2021. Multiplied by 0.0002739 x Judgment of $654,964.41= $603,483.95 Interest. Subtracting $58,982.59

- 2 -

equals $544,501.36 in outstanding interest.  Adding in unpaid principal of Judgment of  $654,964.41

equals **$1,199,465.77 (Outstanding accrued interest and Principal on unpaid Judgment).**

I have spent $120.00 for two Judgment debtor exams and $110.06 in electronic filing fees, the cost

for renewal of Judgment is $45.00.   **Total of $1,199,740.83**

      I declare under penalty of perjury under the laws of the State of California that the foregoing

is true and correct.

Executed February 10, 2021 in Newport Beach, CA          By: _____

                                                    Karl Avetoom
                                                    Plaintiff/Creditor, Pro Se

– 3 –

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

I, Sal W. Hanna, am employed in the County Orange, State of California. I am over eighteen years of age, and not a party to this action; my business address is Sal Hanna OPR 7451 Warner Ave #E191 Huntington Beach, CA 92647 Reg'd Process Server # 3050

On February 10, 2021, I served the following documents:

(1) **DECLARATION IN SUPPORT OF APPLICATION FOR RENEWAL OF JUDGMENT RE: MEMORANDUM OF FEES AND COSTS**
(2) **EJ190 Application for Renewal of Judgment**
(3) **MC-012**

on the following parties in the associated manner:

[X] **FIRST CLASS MAIL** by depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.to the following party:

Rosa Fridman
16542 Blackbeard Lane, # 304
Huntington Beach, CA 92649

I declare under penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct.

Executed February 10, 2021 in Huntington Beach, CA.

By: _____

Sal W. Hanna

– 4 –

DECLARATION IN SUPPORT OF APPLICATION FOR RENEWAL OF JUDGMENT

# Exhibit 16

B10 (Official Form 10) (04/10) - Page 1

| UNITED STATES BANKRUPTCY COURT  CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Moisey Fridman and Rosa Fridman | Case Number: 8:12-bk-11721-ES |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):  Beach Crest Villas Homeowners' Association | ☑ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:  Thomas J. Polis, Esq.  POLIS & ASSOCIATES, A Professional Law Corporation  19800 MacArthur Boulevard, Suite 1000  Irvine, California 92612  Telephone number: (949) 862-0040 | Court Claim Number: 4 _____  *(if known)*  Filed on: 05/10/12 _____ |
| Name and address where payment should be sent (if different from above):  Telephone number: | ☑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.  ☐ Check this box if you are the debtor or trustee in this case. |

| 1. **Amount of Claim as of Date Case Filed:** $ 194,369.69 | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Assignment of Judgment
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate** _____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____  **Basis for perfection:** _____

**Amount of Secured Claim:** $_____  **Amount Unsecured:** $ 194,369.69

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See Instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 07/19/12 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  /s/ Thomas J. Polis | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| In re: Moisey Fridman and Rosa Fridman, | Chapter 13 |
|---|---|
| Debtor(s). | Case Number **8:12-bk-11721–ES** |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**POLIS & ASSOCIATES**
**A Professional Law Corporation**
**19800 MacArthur Boulevard, Suite 1000**
**Irvine, California  92612-2433**

A true and correct copy of  the foregoing document described **AMENDED PROOF OF CLAIM**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2012,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Office of the United States Trustee - ustpregion16.sa.ecf@usdoj.gov
- Matthew E. Faler - mfaler@faler-law.com
- Amrane Cohen - efile@ch13ac.com

☐     Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On July 19, 2012, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

- United States Bankruptcy Court, Central District of California, Honorable Erithe Smith, 411 West Fourth Street, Suite 5041, Santa Ana, California 92701

☐     Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on                   , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 19, 2012 | Ashley N. Reichert | /s/ Ashley N. Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                                   **F 9013-3.1**

1

ORIGINAL

Recording Requested By And
When Recorded Please Return To:

Thomas J. Polis, Esq.
Polis & Associates
A Professional Law Corporation
19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612
Telephone: (949) 862-0040
Facsimile: (949) 862-0041

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

30.00
*$R0004963077$*
2012000392923 2:15 pm 07/11/12
232 417 R37  9
0.00 0.00 0.00 0.00 24.00 0.00 0.00 0.00

**Recording No.:**
**2012000068287**

TITLE OF DOCUMENT TO BE RECORDED:

## NOTICE OF RELEASE OF ABSTRACT OF JUDGMENT
### BANKRUPTCY CASE NO. 8:12-bk-11721-ES
*In re Moisey Fridman and Rosa Fridman*
### UNITED STATES BANKRUPTCY COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

### AFFECTING THE ABSTRACT OF JUDGMENT IN:
*KARL AVETOOM V. MOISEY FRIDMAN AND ROSA FRIDMAN*
ORANGE COUNTY SUPERIOR COURT CASE NO.:
30-2010-00345490

TOTAL PAGES 6 (INCLUDING THIS COVER SHEET)

1  Thomas J. Polis, Esq. - SBN 119326
   POLIS & ASSOCIATES
2  A PROFESSIONAL LAW CORPORATION
   19800 MacArthur Boulevard, Suite 1000
3  Irvine, California 92612-2433
   Telephone: (949) 862-0040
4  Facsimile: (949) 862-0041
   E-Mail: tom@polis-law.com
5
   Attorneys for Objecting Creditors,
6  Karl Avetoom and
   Beach Crest Villas Homeowners Association
7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

11  In re                              ) Case No. 8:12-bk-11721-ES
                                       )
12  Molsey Fridman and Rosa Fridman,   ) Chapter 7
                                       )
13                     Debtors.        ) CREDITOR KARL AVETOOM AND BEACH
                                       ) CREST VILLAS HOMEOWNER
14                                     ) ASSOCIATION'S NOTICE OF RELEASE OF
                                       ) ABSTRACT OF JUDGMENT
15                                     )
                                       )        [NO HEARING REQUIRED]
16  _____)

17       TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE;

18  THE DEBTORS AND THEIR COUNSEL OF RECORD; THE DEBTORS' INTERIM CHAPTER

19  7 TRUSTEE; THE OFFICE OF THE UNITED STATES TRUSTEE, SANTA ANA DIVISION;

20  AND OTHER PARTIES ENTITLED TO NOTICE:

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **PLEASE TAKE NOTICE** that Objecting Creditors Karl Avetoom and Beach Crest Villas

2    Homeowners Association (collectively "Creditors"), hereby withdraw their previous *Abstract of*

3    *Judgment* recorded in relation to the matter of *Karl Avetoom v. Moisey Fridman and Rosa*

4    *Fridman*, in the Orange County Superior Court, Case No.: 30-2010-00345490.   Objecting

5    Creditors Karl Avetoom and Beach Crest Villas Homeowners Association expressly preserve

6    their claims and any rights and remedies they hold under the Judgment in the above-captioned

7    State Court matter.  A true and correct copy of the *Abstract of Judgment* is attached hereto as

8    Exhibit "A", and incorporated herein by reference.

9

10   DATED: July 9, 2012                            POLIS & ASSOCIATES
                                                    A PROFESSIONAL LAW CORPORATION
11

12                                                  By:_____
                                                        Thomas J. Polis, Esq.
13                                                      Attorneys for Creditors
                                                        Karl Avetoom and
14                                                      Beach Crest Villas Homeowners Association

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E X H I B I T  A**

EJ-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and telephone number): | Recorded in Official Records, Orange County |
|---|---|
| Recording requested by: | Tom Daly, Clerk-Recorder |

CHARLES L. MURRAY III  SBN: 195053
PACIFIC MUTUAL BUILDING
523 WEST SIXTH STREET, SUITE 707
LOS ANGELES, CA 90014
T. 213.627.5983

*$R0004534904$*    29.00

2012000068287 11:42 am 02/06/12
227 415 A03    2
0.00 0.00 0.00 0.00 3.00 20.00 0.00 0.00

[ ✓ ] ATTORNEY  [ ✓ ] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS: 700 CIVIC CENTER DRIVE WEST
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

FOR RECORDING USE ONLY

PLAINTIFF: KARL AVETOOM

DEFENDANT: MOISEY FRIDMAN AND ROSA FRIDMAN

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS    [ ✓ ] Amended | CASE NUMBER: 30-2010-00345490 |
|---|---|
| | FOR COURT USE ONLY |

1. The [ ✓ ] judgment creditor [ ] assignee of record applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
   Name and last known address

   ┌─────────────────────────────┐
   │ MOISEY FRIDMAN              │
   │ 1100 RUTLAND ROAD #7        │
   │ NEWPORT BEACH, CA 92660     │
   └─────────────────────────────┘

   b. Driver's license no. [last 4 digits] and state: [ ✓ ] Unknown
   c. Social security no. [last 4 digits]: 5550 [ ✓ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address): MOISEY FRIDMAN
      1100 RUTLAND ROAD #7, NEWPORT BEACH, CA 92660

2. [ ✓ ] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor (name and address): KARL AVETOOM  1100 RUTLAND ROAD
   UNIT #9, NEWPORT BEACH, CA 92660

Date: January 19, 2012
CHARLES L. MURRAY III
        (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.

5. [ ✓ ] Original abstract recorded in this county:
   a. Date: 1/17/2012
   b. Instrument No.: 2012000023845

                    (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 650,000.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on (date): November 18, 2011
   b. Renewal entered on (date):

9. [ ] This judgment is an installment judgment.

[SEAL]

This abstract issued on (date):
FEB 02 2012

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. in favor of (name and address):

11. A stay of enforcement has
    a. [ ] not been ordered by the court.
    b. [ ✓ ] been ordered by the court effective until
        (date): Jan 19, 2012

12. a. [ ✓ ] I certify that this is a true and correct abstract of
        the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

ALAN CARLSON
Clerk, by  J. Tran  , Deputy

ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2006]

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

| PLAINTIFF: KARL AVETOOM | CASE NUMBER: |
|---|---|
| DEFENDANT: MOISEY FRIDMAN AND ROSA FRIDMAN | 30-2010-00345490 |

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor *(name and address)*:

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.   Name and last known address

ROSA FRIDMAN
1100 RUTLAND ROAD #7
NEWPORT BEACH, CA 92660

Driver's license no. (last 4 digits)
and state:   ☒ Unknown

Social security no. (last 4 digits): 2772   ☐ Unknown

Summons was personally served at or mailed to *(address)*:
ROSA FRIDMAN
1100 RUTLAND ROAD #7
NEWPORT BEACH, CA 92660

17.   Name and last known address

Driver's license no. (last 4 digits)
and state:   ☐ Unknown

Social security no. (last 4 digits):   ☐ Unknown

Summons was personally served at or mailed to *(address)*:

18.   Name and last known address

Driver's license no. (last 4 digits)
and state:   ☐ Unknown

Social security no. (last 4 digits):   ☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.   Name and last known address

Driver's license no. (last 4 digits)
and state:   ☐ Unknown

Social security no. (last 4 digits):   ☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

PROOF OF SERVICE

State of California, County of Los Angeles

I am over the age of 18 and not a party to this case. I am a
resident in the County where the mailing occurred. My business
address is the Pacific Mutual Building, 523 West Sixth Street,
Suite 707, Los Angeles, California 90014

On 6 February 2012 I served the foregoing documents:

NOTICE OF FILING AMENDED ABSTRACT

on the interest parties in said action, by placing a true copy
thereof enclosed in a sealed envelope addressed as follows:

D. Michael Bush, Esq.
9 Corporate Park
Suite 100
Irvine, California 92606

[X]  U.S. Mail.  I sealed and placed such envelope for collection
     and mailing to be deposited in the mail on the same day in
     the ordinary course and scope of business at Los Angeles.
     The envelope was mailed with postage thereon fully prepared.

[_]  Facsimile.  I personally caused the foregoing document to be
     successfully transmitted to the offices set forth above.

[_]  Overnight Mail.  I sealed and placed such envelope for
     collection with United Parcel Service (UPS) for overnight
     deliveries, located at 611 West Sixth Street, Los Angeles,
     California 90014.

Executed on 6 February 2012, in the City of Los Angeles, State of
California.  I declare under the penalty of perjury under the
laws of the State of California that the foregoing is true and
correct.

_____
Charles L. Murray III

| In re: | Case No.: 8:12-bk-11721-ES |
|---|---|
| Molsey Fridman and Rosa Fridman, | |
| Debtor(s). | Chapter 13 |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

**POLIS & ASSOCIATES**
A Professional Law Corporation
19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612-2433

A true and correct copy of the foregoing document described **CREDITOR KARL AVETOOM AND BEACH CREST VILLAS HOMEOWNER ASSOCIATION'S NOTICE OF RELEASE OF ABSTRACT OF JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 9, 2012**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Matthew E. Faler, Esq. - mfaler@faler-law.com
- Amrane Cohen - efile@ch13ac.com
- Office of the United States Trustee - ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On July 9, 2012, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SERVED VIA US MAIL
- United States Bankruptcy Court, Central District of California, Honorable Erithe A. Smith, 411 West Fourth Street, Suite 5041, Santa Ana, California 92701

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 9, 2012 | Ashley N. Reichert | /s/Ashley N. Reichert |
|---|---|---|
| Date | Type Name | Signature |

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Orange_

On _July 10, 2012_ before me, _HUGH A. SANDERS, NOTARY PUBLIC_
                                    Here Insert Name and Title of the Officer

personally appeared _Thomas J. Polis_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Hugh A. Sand_
                    Signature of Notary Public

HUGH A. SANDERS
Commission # 1961712
Notary Public - California
Orange County
My Comm. Expires Dec 21, 2015

Place Notary Seal Above

——————— OPTIONAL ———————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Notice of Release of Abstract of Judgment_

Document Date: _7/9/12_ _____ Number of Pages: _8_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

# Exhibit 17

B10 (Official Form 10) (04/10) - Page 1

| UNITED STATES BANKRUPTCY COURT    CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Moisey Fridman and Rosa Fridman | Case Number:  8:12-bk-11721-ES |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): <br> Karl Avetoom | ☑ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: <br> Thomas J. Polis, Esq. <br> POLIS & ASSOCIATES, A Professional Law Corporation <br> 19800 MacArthur Boulevard, Suite 1000 <br> Irvine, California 92612 <br> Telephone number: (949) 862-0040 | **Court Claim Number:** 2 <br> _____ <br> (If known) <br><br> Filed on: 03/27/2012; 05/08/12 |
| Name and address where payment should be sent (if different from above): <br><br><br><br> Telephone number: | ☑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br><br> ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**    $ 475,683.40 <br><br> If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. <br><br> If all or part of your claim is entitled to priority, complete item 5. <br><br> ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. <br><br> **2. Basis for Claim:** Judgment <br> (See instruction #2 on reverse side.) <br><br> **3. Last four digits of any number by which creditor identifies debtor:** _____ <br><br>     **3a. Debtor may have scheduled account as:** _____ <br>     (See instruction #3a on reverse side.) <br><br> **4. Secured Claim** (See instruction #4 on reverse side.) <br> Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. <br><br> Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other <br> **Describe:** <br><br> **Value of Property:$**_____    Annual Interest Rate _____% <br><br> Amount of arrearage and other charges as of time case filed included in secured claim, <br><br> if any: $_____    Basis for perfection: _____ <br><br> Amount of Secured Claim: $_____    Amount Unsecured: $ 475,683.40 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** <br><br> Specify the priority of the claim. <br><br> ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). <br><br> ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). <br><br> ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5) <br><br> ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). <br><br> ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). <br><br> ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). <br><br> **Amount entitled to priority:** <br><br> $_____ <br><br> *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See Instruction 7 and definition of "redacted" on reverse side.)* <br><br> DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. <br><br> If the documents are not available, please explain: | |

| Date: 07/19/12 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. <br><br> /s/ Thomas J. Polis <br> Attorney in fact for Creditor Karl Avetoom | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| In re: Moisey Fridman and Rosa Fridman, | Chapter 13 |
|---|---|
| Debtor(s). | Case Number **8:12-bk-11721–ES** |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**POLIS & ASSOCIATES**
**A Professional Law Corporation**
**19800 MacArthur Boulevard, Suite 1000**
**Irvine, California  92612-2433**

A true and correct copy of  the foregoing document described **AMENDED PROOF OF CLAIM**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2012,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Office of the United States Trustee - ustpregion16.sa.ecf@usdoj.gov
- Matthew E. Faler - mfaler@faler-law.com
- Amrane Cohen - efile@ch13ac.com

☐    Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **July 19, 2012,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

- United States Bankruptcy Court, Central District of California, Honorable Erithe Smith, 411 West Fourth Street, Suite 5041, Santa Ana, California 92701

☐    Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on                , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 19, 2012 | Ashley N. Reichert | /s/ Ashley N. Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

1

*232*

ORIGINAL

Recording Requested By And
When Recorded Please Return To:

Thomas J. Polis, Esq.
Polis & Associates
A Professional Law Corporation
19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612
Telephone: (949) 862-0040
Facsimile: (949) 862-0041

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
30.00
* $ R 0 0 0 4 9 6 3 0 7 7 $ *
2012000392923  2:15 pm 07/11/12
232 417 R37   9
0.00 0.00 0.00 0.00 24.00 0.00 0.00 0.00

Recording No.:
2012000068287

TITLE OF DOCUMENT TO BE RECORDED:

## NOTICE OF RELEASE OF ABSTRACT OF JUDGMENT
BANKRUPTCY CASE NO. 8:12-bk-11721-ES
*In re Moisey Fridman and Rosa Fridman*
UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

### AFFECTING THE ABSTRACT OF JUDGMENT IN:
*KARL AVETOOM V. MOISEY FRIDMAN AND ROSA FRIDMAN*
ORANGE COUNTY SUPERIOR COURT CASE NO.:
30-2010-00345490

TOTAL PAGES 6 (INCLUDING THIS COVER SHEET)

1 | Thomas J. Polis, Esq. - SBN 119326
**POLIS & ASSOCIATES**
2 | A PROFESSIONAL LAW CORPORATION
19800 MacArthur Boulevard, Suite 1000
3 | Irvine, California 92612-2433
Telephone: (949) 862-0040
4 | Facsimile: (949) 862-0041
E-Mail: tom@polis-law.com
5 |
Attorneys for Objecting Creditors,
6 | Karl Avetoom and
Beach Crest Villas Homeowners Association
7 |

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:12-bk-11721-ES |
| | Chapter 7 |
| Moisey Fridman and Rosa Fridman, | CREDITOR KARL AVETOOM AND BEACH CREST VILLAS HOMEOWNER ASSOCIATION'S NOTICE OF RELEASE OF ABSTRACT OF JUDGMENT |
| Debtors. | |
| | [NO HEARING REQUIRED] |

TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE;
THE DEBTORS AND THEIR COUNSEL OF RECORD; THE DEBTORS' INTERIM CHAPTER
7 TRUSTEE; THE OFFICE OF THE UNITED STATES TRUSTEE, SANTA ANA DIVISION;
AND OTHER PARTIES ENTITLED TO NOTICE:

///
///
///
///
///
///
///
///

1    **PLEASE TAKE NOTICE** that Objecting Creditors Karl Avetoom and Beach Crest Villas

2    Homeowners Association (collectively "Creditors"), hereby withdraw their previous *Abstract of*

3    *Judgment* recorded in relation to the matter of *Karl Avetoom v. Moisey Fridman and Rosa*

4    *Fridman*, in the Orange County Superior Court, Case No.: 30-2010-00345490.    Objecting

5    Creditors Karl Avetoom and Beach Crest Villas Homeowners Association expressly preserve

6    their claims and any rights and remedies they hold under the Judgment in the above-captioned

7    State Court matter.  A true and correct copy of the *Abstract of Judgment* is attached hereto as

8    Exhibit "A", and incorporated herein by reference.

9

10    DATED: July 9, 2012                          POLIS & ASSOCIATES
                                                    A PROFESSIONAL LAW CORPORATION
11

12                                                 By:_____
                                                        Thomas J. Polis, Esq.
13                                                      Attorneys for Creditors
                                                        Karl Avetoom and
14                                                      Beach Crest Villas Homeowners Association

15

16

17

18

19

20

21

22

23

24

25

26

27

28

T:\CASES\Fridman\PLDG\WDJudg 070912.wpd

**E X H I B I T  A**

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and
telephone number):

CHARLES L. MURRAY III  SBN: 195053
PACIFIC MUTUAL BUILDING
523 WEST SIXTH STREET, SUITE 707
LOS ANGELES, CA 90014
T. 213.627.5983

Recording requested by:

[X] ATTORNEY  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

*$R000453490$*    29.00

2012000068287 11:42 am 02/06/12
227 415 A03    2
0.00 0.00 0.00 0.00 3.00 20.00 0.00 0.00

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS: 700 CIVIC CENTER DRIVE WEST
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

PLAINTIFF: KARL AVETOOM

DEFENDANT: MOISEY FRIDMAN AND ROSA FRIDMAN

FOR RECORDING USE ONLY

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS    [X] Amended

CASE NUMBER: 30-2010-00345490

FOR COURT USE ONLY

1. The [X] judgment creditor [ ] assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's
Name and last known address

MOISEY FRIDMAN
1100 RUTLAND ROAD #7
NEWPORT BEACH, CA 92660

b. Driver's license no. [last 4 digits] and state: [X] Unknown
c. Social security no. [last 4 digits]: 5550  [X] Unknown
d. Summons or notice of entry of sister-state judgment was personally served or
mailed to (name and address): MOISEY FRIDMAN
1100 RUTLAND ROAD #7, NEWPORT BEACH, CA 92660

2. [X] Information on additional judgment
debtors is shown on page 2.

3. Judgment creditor (name and address): KARL AVETOOM  1100 RUTLAND ROAD
UNIT #9, NEWPORT BEACH, CA 92660

Date: January 19, 2012
CHARLES L. MURRAY III
(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment
creditors is shown on page 2.

5. [X] Original abstract recorded in this county:
a. Date: 1/17/2012
b. Instrument No.: 2012000023845

(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
$ 650,000.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on (date): November 18, 2011
b. Renewal entered on (date):

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
is endorsed on the judgment as follows:
a. Amount: $
b. In favor of (name and address):

11. A stay of enforcement has
a. [ ] not been ordered by the court.
b. [X] been ordered by the court effective until
(date): July 13, 2012 ( /23/12

12. a. [X] I certify that this is a true and correct abstract of
the judgment entered in this action.
b. [X] A certified copy of the judgment is attached.

This abstract issued on (date):
FEB 0 2 2012

ALAN CARLSON
Clerk, by  J. Tran    , Deputy

Form Approved for Optional Use
Judicial Council of California
EJ-001 [Rev. January 1, 2006]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

| PLAINTIFF: KARL AVETOOM | CASE NUMBER: |
|---|---|
| DEFENDANT: MOISEY FRIDMAN AND ROSA FRIDMAN | 30-2010-00345490 |

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor (name and address):                14. Judgment creditor (name and address):

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.         Name and last known address              17.         Name and last known address

ROSA FRIDMAN
1100 RUTLAND ROAD #7
NEWPORT BEACH, CA 92660

Driver's license no. (last 4 digits)
and state:                                  ☒ Unknown          Driver's license no. (last 4 digits)
                                                                and state:                          ☐ Unknown
Social security no. (last 4 digits): 2772   ☐ Unknown          Social security no. (last 4 digits):   ☐ Unknown

Summons was personally served at or mailed to (address):       Summons was personally served at or mailed to (address):
ROSA FRIDMAN
1100 RUTLAND ROAD #7
NEWPORT BEACH, CA 92660

18.         Name and last known address              19.         Name and last known address

Driver's license no. (last 4 digits)                            Driver's license no. (last 4 digits)
and state:                                  ☐ Unknown          and state:                          ☐ Unknown
Social security no. (last 4 digits):        ☐ Unknown          Social security no. (last 4 digits):   ☐ Unknown

Summons was personally served at or mailed to (address):       Summons was personally served at or mailed to (address):

20. ☐ Continued on Attachment 20.

EJ-001 (Rev. January 1, 2008)          ABSTRACT OF JUDGMENT—CIVIL          Page 2 of 2
                                        AND SMALL CLAIMS

<u>PROOF OF SERVICE</u>

State of California, County of Los Angeles

I am over the age of 18 and not a party to this case. I am a resident in the County where the mailing occurred. My business address is the Pacific Mutual Building, 523 West Sixth Street, Suite 707, Los Angeles, California 90014

On 6 February 2012 I served the foregoing documents:

NOTICE OF FILING AMENDED ABSTRACT

on the interest parties in said action, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

D. Michael Bush, Esq.
9 Corporate Park
Suite 100
Irvine, California 92606

[X]   U.S. Mail.  I sealed and placed such envelope for collection and mailing to be deposited in the mail on the same day in the ordinary course and scope of business at Los Angeles. The envelope was mailed with postage thereon fully prepared.

[_]   Facsimile.  I personally caused the foregoing document to be successfully transmitted to the offices set forth above.

[_]   Overnight Mail.  I sealed and placed such envelope for collection with United Parcel Service (UPS) for overnight deliveries, located at 611 West Sixth Street, Los Angeles, California 90014.

Executed on 6 February 2012, in the City of Los Angeles, State of California.  I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Charles L. Murray III

| In re: | | Case No.: 8:12-bk-11721-ES |
|---|---|---|
| | Molsey Fridman and Rosa Fridman, | |
| | Debtor(s), | Chapter 13 |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

**POLIS & ASSOCIATES**
A Professional Law Corporation
19800 MacArthur Boulevard, Suite 1000
Irvine, California 92612-2433

A true and correct copy of the foregoing document described **CREDITOR KARL AVETOOM AND BEACH CREST VILLAS HOMEOWNER ASSOCIATION'S NOTICE OF RELEASE OF ABSTRACT OF JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 9, 2012, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Matthew E. Faler, Esq. - mfaler@faler-law.com
- Amrane Cohen - efile@ch13ac.com
- Office of the United States Trustee - ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(Indicate method for each person or entity served):** On July 9, 2012, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SERVED VIA US MAIL
- United States Bankruptcy Court, Central District of California, Honorable Erithe A. Smith, 411 West Fourth Street, Suite 5041, Santa Ana, California 92701

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (Indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 9, 2012 | Ashley N. Reichert | /s/Ashley N. Reichert |
|---|---|---|
| Date | Type Name | Signature |

T:\CASES\Fridman\PLDG\WDJudg 070912.wpd

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of Orange

On July 10, 2012 before me, HUGH A. SANDERS, NOTARY PUBLIC
                                    Here Insert Name and Title of the Officer

personally appeared Thomas J. Polis
                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

HUGH A. SANDERS
Commission # 1961712
Notary Public - California
Orange County
My Comm. Expires Dec 21, 2015

Place Notary Seal Above

Signature: Hugh A Sand
                    Signature of Notary Public

—————— OPTIONAL ——————
Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**
Title or Type of Document: Notice of Release of Abstract of Judgment

Document Date: 7/9/12                                  Number of Pages: 8

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

# Exhibit 18

BRAD A. MOKRI, SBN: 208213
LAW OFFICES OF MOKRI & ASSOCIATES
1851 E. First Street, Suite 900
Santa Ana, California92705
Telephone No.: (714) 619-9395
Facsimile No.: (888) 342-1406

Attorney for Plaintiff:
Rosa Fridman, individually and as Trustee of Fridman Family Trust
and Fridman Family Trust

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/09/2019** at 08:10:00 AM

Clerk of the Superior Court
By e Clerk,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

KARL AVETOOM, an individual,

      Plaintiff,

vs.

ROBERT RISBROUGH, an individual;
DARLING & RISBROUGH, LLP, a
California Limited Liability Partnership;
MOISEY FRIDMAN, an individual; ROSA
FRIDMAN, an individual, and as Trustee for
the Moisey Fridman and Rosa Fridman Trust,
and the Fridman Family Trust; and DOES 1
through 20, inclusive,

      Defendants

Case No.: 30-2015-00820760-CU-FR-CJC
Unlimited Jurisdiction

**PLAINTIFF'S REQUEST TO VACATE
TRIAL BASED ON MOOTNESS OF
ISSUES AND CLAIMS BROUGHT BY
PLAINTIFF AGAINST DEFENDANTS**

**Trial Date: July 9, 2019**
**Trial Time: 9:00 a.m.**
**Trial Dept.: C 18**

**Trial Judge: The Hon. Theodore R. Howard
Judge of the Orange County Superior
Court**

    Plaintiff, KARL AVETOOM (hereinafter referred to as "AVETTOM" or "Plaintiff")

submits the following Memorandum of Points and Authorities in support of Plaintiff's request

that based on a settlement between Plaintiff and Defendant Robert Risbrough, that all issues

pertaining to Plaintiff's claims and causes against defendants have been resolved and as such the

trial of this cause is moot.

///

///

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOOTNESS OF TRIAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The genesis of this case started several years before Plaintiff filed this action.

As Plaintiff has alleged in substantial detail in his First Amended Complaint filed on or about January 1, 2016, Plaintiff obtained a verdict against the defendant Rosa Fridman and her husband Moisey Fridman (deceased husband) in the sum of $1 million in an earlier action Plaintiff had brought against the defendant Rosa Fridman and Moisey Fridman.

In an action brought by Rosa Fridman and Moisey Fridman against their Homeowners Association (HOA), they were awarded a judgment in the sum of $160,000 against the HOA in January of 2011.

Rosa and Moisey Fridman assigned and transferred their judgment to their attorneys Robert Risbrough of Darling & Risbrough, LLP for the attorney fees Fridmans owed to their attorney.

As a result of the aforementioned assignment and transfer of the Fridman HOA judgment, Plaintiff filed this action pursuant to California's Uniform Fraudulent Transfer Act against all named defendants.

Shortly prior to the commencement of the trial of this action over the 4th of July holiday, Plaintiff settled his claims against Risbrough by purchasing the Fridman HOA judgment. Attached is a true and correct copy of the settlement agreement.

Based on the foregoing settlement with Risbrough, Plaintiff asserts that the issue for which Plaintiff filed this action is no longer justiciable, and as such Plaintiff's claims against all defendants have been rendered moot. As such, the trial of this cause should be vacated, and the case be dismissed.

### II.      MOOTNESS APPLIES TO VACATE THE TRIAL

Mootness can arise at any point during litigation and California's Supreme Court has explained: "*It is settled that the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect and not give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot*

*affect the matter in issue in the case before it." Paul v. Milk Depots, Inc.*, 62 Cal.2d 129, 132 (1964).

Mootness, like other jurisdictional questions, is so important, courts can and should raise the question sua sponte. *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 479-80 (2008).

The only triable issue in this case raised by Plaintiff by way of the First Amended Complaint is whether defendants have engaged in conduct that violates California's Uniform Fraudulent Transfer Act regarding the transfer and assignment of the Fridman HOA judgment to defendant Risbrough. If the Court, or the jury, were to find for Plaintiff, then the transfer or assignment would be set aside, and Plaintiff would be awarded a damages judgment as well as the right to lien the HOA judgment.

However, when Plaintiff purchased the HOA judgment from defendant Risbrough, the transfer/assignment issue which is the centerpiece of the Fraudulent Transfer Act was rendered without legal effect. There can be no finding of fraudulent transfer where the subject matter of the transfer, in this case the HOA judgment, has been purchased by the Plaintiff because Plaintiff has obtained the very thing for which he filed this action.

To proceed to trial on the claims brought by the First Amended Complaint would be an absolute waste of judicial resources and would be an exercise in judicial futility as there is no justiciable controversy for the Court or the jury to determine.

Similarly, the general rule is that a voluntary payment and satisfaction of a judgment terminates the litigation for all purposes, renders the questions on appeal moot and warrants the dismissal of the appeal. *Estate of Shaver*, 131 Cal.219, 221 (1900).

In this case, Plaintiff voluntarily purchased the Fridmans' HOA judgment which was in defendant Risbrough possession, and this action has rendered the litigation moot in all respects.

As such, vacating the trial is warranted.

///

///

///

## III.   CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court vacate the trial of this cause and to enter dismissal of the case upon proof that the matter has been resolved between the party litigants.

Respectfully Submitted,
**Law Offices of Mokri & Associates**

Date: July 9, 2019                    By: _____

BRAD A. MOKRI,
Attorney for Plaintiff
Rosa Fridman, individually and as Trustee of
Fridman Family Trust and Fridman Family Trust

# SETTLEMENT AGREEMENT, ASSIGMENT OF JUDGMENT AND MUTUAL RELEASE

This Settlement Agreement and Release (this "Release") is entered on July 1, 2019 by and between Karl Avetoom ("Avetoom") on the one hand; and Robert C. Risbrough and Darling & Risbrough, LLP (jointly "D&R") on the other hand, and third parties Beach Crest Villas Homeowners Association, a California non-profit corporation ("Beach Crest"), and attorney Margaret Elder (aka, Elder & Spencer, LLP and The Law Offices of Margaret Elder )(collectively "Elder"). Avetoom, Beach Crest, Elder, and D&R may be referred to herein individually as a "Party" and jointly as "the Parties." This settlement is made with respect to the following:

## RECITALS

A.     In or around September 2007, Elder and D&R filed a civil action against third party Beach Crest entitled *Fridman v. Beach Crest Villas Homeowners Association* Orange County Superior Court Case No. 07CC09589. Judgment was entered in favor of the Fridman plaintiffs on or around August 21, 2009 in said action.

B.     On or around November 12, 2010, D&R filed a Writ of Mandate petition entitled *Fridman v. Beach Crest Villas Homeowners Association*, Orange County Superior Court Case No. 30-2010-00424435-CU-WM-CJC.

C.     On or around March 9, 2011, Avetoom named Moisey Fridman and Rosa Fridman as defendants in a civil action entitled *Avetoom v. Arce, Fridman, et al.* Orange County Superior Court case. No. 30-2010-00345490-CU-PO-CJC. Judgment was entered in favor of Avetoom on or around November 18, 2011 in said action.

D.     On or around April 11, 2011 Moisey Fridman and Rosa Fridman executed an assignment of the judgment entered in *Fridman v. Beach Crest Villas Homeowners Association* (OCSC 07CC09589) to Darling & Risborough, LLP. Said assignment was filed 11/18/2011 in *Fridman v. Beach Crest Villas Homeowners Association* (OCSC 07CC09589) (Doc. 224).

E.     On or around November 17, 2015, a civil complaint was filed by Avetoom against D&R and the Fridmans, Orange County Superior Court case No. 30-2015-00820760-CU-FR-NJC ("the Dispute") challenging the assignment of the judgment in *Fridman v. Beach Crest Villas Homeowners Association* (OCSC 07CC09589) to Darling & Risbrough LLP.

F.     After good faith, arm's length negotiations and settlement discussions, the Parties have reached a settlement and release documented by this Release.

G.     The Parties now desire to fully, finally, and forever settle and resolve all of the claims between and among them, and enter into this Release in full and complete satisfaction of all claims related to the lawsuits cited herein subject to the terms, conditions and limitations set forth below.

H.     The Parties intend by this Release to settle and dispose of, finally and completely, as among and between them, any and all claims, demands, actions, and causes of action, whether known or

unknown, asserted or not asserted, and whether individual in nature or common to any alleged class of individuals or entities, concerning the Dispute.

**THEREFORE**, In consideration of the mutual covenants and agreements contained herein, and for other valuable consideration, the Parties agree as follows:

## AGREEMENT

1. **Waiver of Outstanding Amounts Due.** So long as all parties execute this Release and the consideration set forth in Paragraph 2, below is fully satisfied, D&R hereby waives  and releases any rights and claims for any payment of money in connection with or related to any services provided by D&R, or any person working on its behalf including but not limited to Elder, that relates to *Fridman v. Beach Crest Villas Homeowners Association* Orange County Superior Court case No. 07CC09589 including but not limited to any past or future enforcement proceedings, including *Fridman v. Beach Crest Villas Homeowners Association*, Orange County Superior Court case No. 30-2010-00424435-CU-WM-CJC.

2. **Consideration.** The Parties acknowledge and agree that Avetoom will pay One Hundred Twenty Five Thousand Dollars and Zero Cents ($125,000.00) by cashier's check payable to Darling & Risbrough, LLP within (3) business days following execution of this Release by D&R and Beach Crest. In return and consideration of Avetoom's payment, D&R and Elder will release any and all claims, including any claims to right of payments, D&R (including its current and/or former employees, agents, officers, directors, or former or current outside counsel) and Elder (including its current and/or former employees, agents, officers, directors, or outside counsel) have, or may have, against Beach Crest (and/or any of its agents, officers, directors, and/or employees). If the consideration is not timely paid, the settlement is null and void.

3. **Assignment of Judgment From D&R to Avetoom.** Concurrently and upon full execution of this Release, D&R will execute, assign and deliver to Avetoom an assignment of judgment (pursuant to C.C.P. § 673)(the "Assignment") in notarized form to Avetoom of the judgment in *Fridman v. Beach Crest Villas Homeowners Association* (OCSC Case No. 07CC095890) previously assigned to D&R by Moisey Fridman and Rosa Fridman on or around April 11, 2011.

4. D&R hereby warrants that D&R retains free and clear ownership and title to the judgment in *Fridman v. Beach Crest Villas Homeowners Association* (OCSC Case No. 07CC095890) and that it has not assigned, transferred, hypothecated, disposed of, or otherwise encumbered the April 11, 2011 Assignment of Judgment in OCSC Case No. 07CC095890 between Moisey Fridman and Rosa Fridman to D&R. D&R warrants that said judgment is free and clear of any and all interests and claims by third parties, either legal, equitable, contingent or otherwise. D&R will provide any additional documentation or signatures necessary for Avetoom to file and record the Assignment between D&R and Avetoom.  Elder hereby warrants that she waives any and all claims she may have, known and unknown, under her retainer agreement with Moisey Fridman and Rosa Fridman relating to *Fridman v. Beach Crest Villas Homeowners Association* (OCSC Case No. 07CC095890). Upon completion of an Assignment of Judgment between D&R and the mutual execution of this Release (Avetoom, D&R and Beach Crest), and payment of the consideration in

Paragraph 2, above, to D&R, Avetoom will dismiss with prejudice his action against D&R, *Avetoom v. Robert Risbrough, et al* (OCSC case No. 30-2015-00820760-CU-FR-NJC).

5. **Good Faith Determination.** The Parties hereby stipulate that the Release is executed in good faith.

6. **Covenant Not to Sue.** The Parties each agree that they will not file any legal action, including but not limited to a lawsuit, arbitration, or any other proceeding, against the other Party, including third party Beach Crest, emanating and relating to the aforementioned cases including but not limited to *Fridman v. Beach Crest Villas Homeowners Association* (OCSC case No. 07CC09589), *Fridman v. Beach Crest Villas Homeowners Association*, (OCSC case No. 30-2010-00424435-CU-WM-CJC), and/or *Avetoom v. Robert Risbrough, et al* (OCSC case No. 30-2015-00820760-CU-FR-NJC). D&R warrants, upon completion of this Release and Assignment to Avetoom, it will not seek any collection attempts against Beach Crest. However, any Party may bring legal action to enforce the terms of this Release.

7. **Mutual Releases.** Except for the duties and obligations arising out of this Release, upon execution of this Release, the assignment and payment of the consideration in Paragraph 2, above, the Parties' respective predecessors, beneficiaries, officers, directors, members, affiliates (including subsidiaries, parents, spouses, siblings, and related companies of any other tier or relationship), shareholders, partners (including D&R law partners), agents, employees, representatives, heirs, grantees, insurers, attorneys, sub-consultants, successors and assigns (collectively "Releasing Parties") fully, finally and forever release, waive and discharge each other, and their respective predecessors, beneficiaries, officers, directors, members, shareholders, partners, agents, employees, representatives, heirs, grantees, insurers, attorneys, affiliates (including subsidiaries, parents, spouses, siblings, and related companies of any other tier or relationship), sub-consultants, successors and assigns, (collectively "Released Parties" and singularly "Released Party") of and from any and all claims, demands, actions, causes of action, obligations, damages, offsets, withholds, charges, and liabilities of every nature whatsoever, subrogated or non-subrogated, matured or contingent, by statute or common law, latent or patent, known or unknown, suspected or claimed, whether in law, tort, contract, equitable or otherwise, which the Releasing Parties had in the past, now have, claim to now have, or may in the future have against the Released Parties on account of, relating to, pertaining to, or arising in any way whatsoever from the lawsuits cited herein or for any other reason. The Parties understand that the foregoing constitutes a full and final mutual release of all claims among them related to the lawsuits cited herein.

8. **Exclusion As To Beach Crest:** Beach Crest is NOT released from any liability as the judgment debtor in *Fridman v. Beach Crest Villas Homeowners Association* Orange County Superior Court case No. 07CC09589. Beach Crest remains subject to any and all enforcement procedures and remedies Avetoom may pursue as an assignee of the judgment rendered in said proceeding (OCSC Case No. 07CC09589) and arising out of this Release.

9. **California Civil Code Section 1542 Waiver.** In connection with such releases, waivers, exclusion and discharges as set forth in Paragraphs 7 and 8 above, the Parties are and/or have had the opportunity to be represented by and seek the advice of counsel of their choice, are aware of,

fully understand and acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to any or all of the claims, causes of action, costs or demands herein released. The Parties agree that this release shall be and remain effective in all respects, notwithstanding the discovery of such different or additional facts. The Parties acknowledge that they are aware of the terms of California Civil Code Section 1542 and specifically waive the benefits of that section with respect to the claims released under this Release, which section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10. **Non-Disparagement**. Except as may be compelled by law, no disparaging verbal or written communication regarding either Party and/or their directors, officers, members, employees, or authorized agents, the Agreement, and/or this Release shall be made by any of the Parties and/or their directors, officers, members, employees, or authorized agents.

11. **Integration**. This Release constitutes the entire agreement between the Parties as to the subject matter of this Release, and, except as expressly provided herein, supersedes any and all representations, promises, negotiations and understandings of any kind relating to the subject matter of this Release, whether oral or written.

12. **No Third-Party Beneficiaries**. Nothing herein is intended to be for the benefit of any third party or to create any rights in favor of anyone not a signatory hereto, except as expressly provided herein. There are no third-party beneficiaries to this Release. For purposes herein, any past, current or future shareholders of the parties' entities that benefit from this settlement shall not constitute a third party under this Release.

13. **California Law Applies**. This Release shall be deemed to have been entered into in the State of California and all questions concerning the validity, interpretation or performance of any of its terms or provisions, or of any rights or obligations of the Parties hereto, shall be governed and resolved in accordance with the laws of the State of California. The Parties agree that the Superior Court of the State of California in the County of Orange shall have jurisdiction to enforce the terms and conditions of this Release

14. **Assignment**. The Parties each warrant that they have not made any assignment of any claims or causes of action that they have or may have in the future against the other Parties.

15. **Severability**. In the event that, at any time after the execution of this Release, any portion or provision of it is found to be illegal, invalid, unenforceable, non-binding, or otherwise without legal force or effect, the remaining portion(s) will remain in force and be fully binding.

16. **No Admission of Liability**. No part of this Release, or this Release itself, shall be alleged, taken, or construed as an admission of any liability, responsibility, fault or wrongdoing by either Party. The Parties agree that this is a compromise of disputed claims.

17. **Execution in Counterparts/Copies of Signatures**. This Release may be executed in one or more counterparts by the Parties, and, once the Parties have executed and delivered original or copies of counterpart signatures to each other (including, without limitation, photocopies, facsimile or digitally scanned copies of signature counterparts), such signatures shall be valid and binding on each Party as if fully executed in one original document.

18. **Interpretation**. This Release shall be deemed to be mutually drafted by all of the Parties, and any statute or rule of construction providing that ambiguities are to be resolved against the drafting party shall not apply to or be employed in the interpretation of this Release.

19. **Attorney's Fees.** Subject to the conditions and terms of this Release, the Parties release all claims against each other for attorney's fees, expert fees and any other costs incurred in connection with the Dispute and this Release prior to the date of this Release. Each Party hereby agrees to bear their own attorney fees, costs, and all expert costs incurred prior to the date of this release arising from the Dispute.

20. **Admissibility of Release in Subsequent Action.** In any action or proceeding related to this Release, the Parties stipulate that a copy of this Release may be admissible to the same extent as the original Release.

21. **Trial Court to Retain Jurisdiction for Enforcement:**   The Parties agree that the Trial Court shall retain jurisdiction to enforce the terms of this Release pursuant to C.C.P. § 664.6.

22. **Modification**. This Release may be modified only by a written contract executed by the Parties to this Release against whom enforcement of such modification is sought.

23. **Covenant Of Good Faith And Fair Dealing:**  This Agreement includes the covenant of good faith and fair dealing.


[Signatures to follow on next page]

NOW **THEREFORE**, the Parties execute this Release as of the date first set forth above.

**KARL AVETOOM**

_____
(Signature)

_____
(Date)

**ROBERT RISBROUGH as managing
partner for DARLING & RISBROUGH
LLP.**

_____
(Signature)

_____
(Date)

**JUDY ALTSHULER as Director for
BEACH CREST VILLAS
HOMEOWNERS ASSOCIATION.**

_____
(Signature)

_____
(Date)

**ROBERT RISBROUGH, as an individual**

_____
(Signature)               *Ronald Darling
For Robert Risbrough*

_____
(Date)

**MARGARET ELDER**

_____
(Signature)

_____
(Date)

*Each of the above parties hereby warrants that they are authorized to execute this Release.*

Page 6 of 6

**NOW THEREFORE**, the Parties execute this Release as of the date first set forth above.

| KARL AVETOOM | | ROBERT RISBROUGH as managing partner for DARLING & RISBROUGH LLP. |
|---|---|---|
| | | |
| (Signature) | | (Signature) |
| | | 7/3/2019 |
| (Date) | | (Date) |
| | | |
| JUDY ALTSHULER as Director for BEACH CREST VILLAS HOMEOWNERS ASSOCIATION. | | ROBERT RISBROUGH, as an individual |
| | | |
| (Signature) | | (Signature) |
| | | 7/3/2019 |
| (Date) | | (Date) |
| | | |
| MARGARET ELDER | | |
| | | |
| (Signature) | | |
| 7/3/2019 | | |
| (Date) | | |

*Each of the above parties hereby warrants that they are authorized to execute this Release.*

7

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 1851 E. First Street, Suite 900, Santa Ana, California 92705.

On July 9, 2019, I served the foregoing document(s) described as **PLAINTIFF'S** REQUEST TO VACATE **TRIAL BASED ON MOOTNESS OF ISSUES AND CLAIMS BROUGHT BY PLAINTIFF AGAINST DEFENDANTS** on the interested parties in this action by placing a true (x) copy ( ) **original** thereof enclosed in a sealed envelope addressed as follows:

Karl Avetoom
1100 Rutland Road, #9
Newport Beach, CA 92660

Eoin L. Kreditor, Esq.
FITZGERALD YAP KREDITOR, LLP
2 Park Plaza, Suite 850
Irvine, California 92614

____    **BY U.S. MAIL**

____    **BY OVERNITE EXPRESS**

____    I deposited such envelope(s), with postage thereon fully prepaid in the mail at Santa Ana, California.

____    I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it is deposited with the U.S. Postal Services on that same day with postage thereon fully prepaid at Santa Ana, CA, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal collection date or postage meter date is more than one day after date of deposit for mailing in affidavit.

√    **BY ELECTRONIC SERVICE TRANSMISSION:** Pursuant to the Court's Electronic filing system, and registration as a user constitutes consent to electronic service through the Court's transmission facilities. The court's system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's System.

____    **BY PERSONAL SERVICE** - I delivered such envelope(s), by hand to the offices of the addressee(s).

____    **BY FACSIMILE** - I caused such copy to be facsimiled to the person(s) set forth above. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by the machine. Pursuant to California Rules of Court, 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

√    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is **true** and correct.

____    **(Federal)** I declare that I am employed in the office of a member of the bar of this court at Whose Direction the services is made.

Executed on July 9, 2019, at Santa Ana, California.

_____
Gissou Mokri

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOOTNESS OF TRIAL

- 5

**Exhibit 19**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/05/2019** at 09:04:00 AM

Clerk of the Superior Court
By Amy Van Arkel, Deputy Clerk

1  RONALD E. DARLING, ESQ. (SBN 125838)
ROBERT C. RISBROUGH, ESQ.  (SBN 150596)
2  DARLING & RISBROUGH, LLP
19200 Von Karman Avenue, Suite 750
3  Irvine, CA 92612
Tel:  (714) 384-4250
4  Fax: (714) 384-4251

5  Attorneys for Plaintiffs/Cross-Defendants/Respondents MOISEY FRIDMAN and ROSA FRIDMAN

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                        **COUNTY OF ORANGE**

9

10  **MOISEY FRIDMAN** and **ROSA**          )    CASE NO:   07CC09589
**FRIDMAN,**                               )    Dept. C-24
11                                          )
           Plaintiffs,                      )
12                                          )    **ASSIGNMENT OF JUDGMENT**
v.                                          )    **BETWEEN DARLING & RISBROUGH**
13                                          )    **LLP AND KARL AVETOOM**
**THE BEACH CREST VILLAS**                  )
14  **HOMEOWNERS ASSOCIATION,** a           )
California corporation; and DOES 1 through  )    *Complaint Filed: September 5, 2007*
15  50,                                      )
                                            )
16          Defendant(s).                   )
                                            )
17                                          )
18  _____)

19

20      This Assignment and Acceptance Agreement (hereinafter "Assignment") is dated July 2, 2019,

21  by and between Darling & Risbrough, LLP 19200 Von Karman Ave. Suite 750, Irvine, CA 92612

22  ("Assignor"), and Karl Avetoom ("Assignee"), 1100 Rutland Road # 9 Newport Beach, CA 92660.

23  Assignor and Assignee are hereinafter cumulatively referred to in this Assignment as the "Parties."

24      **Judgment.** The subject matter of this Assignment is that certain Judgment in the case of

25  *Fridman v. Beach Crest Villas Homeowners Association,* Orange County Superior Court case No.

26  07CC09589 filed in Superior Court of California in and for the County of Orange, 700 Civic Center

27  Drive, Santa Ana, CA 92701 (the "Judgment")(ROA 146) entered on August 21, 2009, in favor of

28  Moisey Fridman and Rosa Fridman and assigned April 11, 2011, to Assignee Darling & Risbrough,

LLP., and filed on November 18, 2011 (ROA 224), a true and correct copy of which Assigned

-1-

**ASSIGNMENT AND ACCEPTANCE AGREEMENT**

Judgment is attached as **Exhibit "1."** The Judgment has not been renewed. The Judgment has not been satisfied in whole or in part.

The judgment in the-above case was entered on August 21, 2009 in the amount of $110,000.00 and costs of $18,821.98 for a total judgment of $129,094.01.

On October 27, 2010, additional attorneys' fees of $20,797.00 were added to the original judgment. Interest accrues on the original judgment at $35.29 per day from the original date of entry, August 21, 2009.

On June 19, 2012, additional attorney fees and costs in the amount of $44,190.00 were added to the original judgment.

Darling & Risbrough LLP, the Assignor and Judgment Holder address is as follows:

### ASSIGNOR & JUDGMENT HOLDER

DARLING & RISBROUGH, LLP

19200 Von Karman Ave #750

Irvine, CA 92612

The Judgment Debtor is Beach Crest Villas Homeowners Association, whose address is as follows:

### JUDGMENT DEBTOR

Beach Crest Villas Homeowners Association

1100 Rutland Road

Newport Beach, CA 92660

Darling & Risbrough LLP hereby transfer and assign all title rights and interest, both legal and equitable, in the entire judgment including additional attorney fees and interest, to the following assignee:

### ASSIGNEE & NEW JUDGMENT HOLDER

Karl Avetoom

1100 Rutland Road # 9

Newport Beach, CA 92660

(949) 929-4787

-2-

ASSIGNMENT AND ACCEPTANCE AGREEMENT

1

2    Executed by the Parties on the dates indicated below:

3

4                                          **ASSIGNOR AND JUDGMENT HOLDER**

5

6    Dated: July 2, 2019                   By:

7                                               Darling & Risbrough LLP
                                              Robert C. Risbrough
8

9                                          **JUDGMENT ASSIGNEE/NEW JUDGMENT**

10                                         **HOLDER**

11

12

13   Dated: July 2, 2019                   By:
                                              Karl Avetoom
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

ASSIGNMENT AND ACCEPTANCE AGREEMENT

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On __7-2-2019__ before me, _Elizabeth Flores, Notary Public._
(insert name and title of the officer)

personally appeared _Robert C. Risbrough_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ELIZABETH FLORES
Comm. #2140211
Notary Public - California
Orange County
Comm. expires Jan. 15, 2020

Signature _____ (Seal)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EXHIBIT "1"*

(Assigned Judgment Filed November 18, 2011)

ASSIGNMENT AND ACCEPTANCE AGREEMENT

RECEIVED
SUPERIOR COURT OF CALIFORNIA
CENTRAL JUSTICE CENTER
NOV 18 2011
BY: _____ E. SUTTER

1  ROBERT C. RISBROUGH, ESQ.  (SBN 150596)
2  GRAHAM M. CRIDLAND, ESQ. (SBN 243646
   **DARLING & RISBROUGH, LLP**
3  19200 Von Karman Ave., Suite 750
   Irvine, CA 92612
   Tel: (714) 384-4250
4  Fax: (714) 384-4251

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
NOV 18 2011
ALAN CARLSON, Clerk of the Court
BY: ___ A. NGUYEN-DO ___ DEPUTY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
NOV 02 2011
ALAN CARLSON, Clerk of the Court
BY: ___ L. DELA CRUZ ___ DEPUTY

5  MARGARET A. ELDER, ESQ.  (SBN 177424)
6  17011 Beach Blvd., Suite 900
   Huntington Beach, CA 91647
   Tel.  (714) 375-6696
7  Fax.  (714) 962-2807

8  Attorneys for Plaintiffs/Cross-Defendants/Respondents MOISEY FRIDMAN and ROSA
9  FRIDMAN

10
11                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                   **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**
12

13  **MOISEY FRIDMAN** and **ROSA**          )  CASE NO:  07CC09589
    **FRIDMAN,**                             )  *Assigned for all purposes to:*
14                                           )  *Honorable Derek W. Hunt*
                    Plaintiffs,              )  *Dept. C24*
15                                           )
    v.                                       )
16                                           )  **ASSIGNMENT OF JUDGMENT**
                                             )  **[C.C.P. SECTION 673]**
17  **THE BEACH CREST VILLAS**               )
    **HOMEOWNERS ASSOCIATION,** a            )
18  California corporation; and DOES 1 through  )  *Complaint Filed September 5, 2007*
    50,                                      )
19                                           )
                    Defendant(s).            )
20  _____ )

21        A judgment in the above case was entered on August 21, 2009 in the amount of

22  $110,000.00 and costs of $18,821.98 for a total judgment of $129,094.01.

23        On October 27, 2010, additional attorneys' fees of $20,797.00 was added to the original

24  judgment.  Interest accrues on the original judgment at $35.29 per day from the original date of

25  entry, August 21, 2009.  Additional interest and attorneys' fees have been incurred since that

26  time.

27        We, Moisey Fridman and Rosa Fridman, are the judgment creditors.  Our address is as

28  follows:

                                            1

Trial Ex. 562-65

1      1100 Rutland Road, #7

2      Newport Beach, CA 92660

3      The judgment debtor is the Beach Crest Villas Homeowners Association.  The address of

4  the judgment debtor is:

5      1100 Rutland Road

6      Newport Beach, CA 92660

7      We hereby transfer and assign all title rights and interest in the entire judgment, including

8  additional attorneys' fees and interest, to the following assignee:

9      Darling & Risbrough, LLP

10      19200 Von Karman Ave., Suite 750, Irvine, CA 92612

11      (714) 384-4250

12

13      **JUDGMENT HOLDERS**

14

15  Dated:  April 11, 2011          By: _____

16                                  MOISEY FRIDMAN
                                    1100 Rutland Road, #7
17                                  Newport Beach, CA 92660

18  Dated:  April 11, 2011          By: _____

19                                  ROSA FRIDMAN
                                    1100 Rutland Road, #7
20                                  Newport Beach, CA 92660

21

22      **JUDGMENT ASSIGNEE/NEW JUDGMENT
        HOLDERS**
23

24

25  Dated:  April 11, 2011          By: _____

26                                  DARLING & RISBROUGH, LLP
                                    Robert C. Risbrough
27

28

2

ASSIGNMENT OF JUDGMENT

Trial Ex. 562-66

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Orange

On November 18, 2011 before me, Tina Byers , Notary Public
_Date_ _Here Insert Name and Title of the Officer_

personally appeared Moisey Ovsey Fridman and
Rosa Fridman
_Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _TinaByers_
_Signature of Notary Public_

> **TINA BYERS**
> Commission # 1892745
> Notary Public - California
> Orange County
> My Comm. Expires Jul 13, 2014

_Place Notary Seal Above_

─────── **OPTIONAL** ───────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of thumb here

©2007 National Notary Association • 9050 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

Trial Ex. 562-67

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

I, Sal Hanna, am employed in the County of Orange, State of California. I am over eighteen years of age, and not a party to this action; my business address is 7451 Warner Ave #E191 Huntington Beach, CA 92647 714-794-2779. Orange County Registered Process Server ID # 3050

On July 5, 2019, I served the following document:

**ASSIGNMENT OF JUDGMENT BETWEEN DARLING & RISBROUGH LLP AND KARL AVETOOM**

on the following parties in the associated manner:

☒ **FIRST CLASS MAIL SERVICE**.

I am a resident and employed in the county where the service occurred. I caused to be served on the following parties by first class mail, postage prepaid, by depositing a copy of the above document in a sealed envelope in the United States Mail, to the respective addresses.

| K. Robert Gonter<br>Gates, O'Doherty, Gonter & Guy LLP<br>38 Discovery, Suite 200<br>Irvine, CA 92618<br><br>Attorneys for Defendant<br>Beach Crest Villas Homeowners Association | Beach Crest Villas Homeowners Association<br>1100 Rutland Road<br>Newport Beach, CA 92660<br>(Judgment Debtor) |
|---|---|

I declare under penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct.

Executed July 5, 2019 in Huntington Beach, CA.

By:    _/s/ Sal Hanna_____

Sal Hanna

1

Electronically Filed by Superior Court of California, County of Orange, 07/26/2019 at 04:25:00 PM
DAVID H. YAMASAKI, Clerk of the Court By Mary M Johnson, Deputy Clerk. 07CC09589 ROA # 328

**EJ-195**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*<br>Karl Avetoom<br><br>1100 Rutland Road # 9<br>Newport Beach      CA   92660<br>ATTORNEY FOR *(Name):* Assignee of Record, In Pro Per<br>TELEPHONE NO.: (949)929-4787 | FOR COURT USE ONLY |

NAME OF COURT: Orange County Superior Court
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana      CA   92701
BRANCH NAME: Central Justice Center

PLAINTIFF: MOISEY FRIDMAN AND ROSA FRIDMAN

DEFENDANT: THE BEACH CREST VILLAS HOMEOWNERS ASSOCIATION

| NOTICE OF RENEWAL OF JUDGMENT | CASE NUMBER:<br>07CC09589 |
|---|---|

TO JUDGMENT DEBTOR *(name):* THE BEACH CREST VILLAS HOMEOWNERS ASSOCIATION, a California corporation

1. **This renewal extends** the period of enforceability of the judgment until 10 years from the date the application for renewal was filed.

2. **If you object** to this renewal, you may make a motion to vacate or modify the renewal with this court.

3. You must make this motion within **30 days** after service of this notice on you.

4. A copy of the *Application for and Renewal of Judgment* is attached *(Cal. Rules of Court, rule 3.1900).*

August 1, 2019
Date: 07/26/2019      David H. Yamasaki, Clerk of the Court    Clerk, by _____ , Deputy

*Mary Johnson*

Mary M Johnson


[SEAL]

| See CCP 683.160 for information on method of service |
|---|

Form Adopted for Mandatory Use
Judicial Council of California
EJ-195 [Rev. January 1, 2007]

**NOTICE OF RENEWAL OF JUDGMENT**

CEB
www.ceb.com

Code of Civil Procedure, § 683.160
*www.courtinfo.ca.gov*

**Page 1 of 1**

EJ-190

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:

Karl Avetoom
1100 Rutland Road # 9
Newport Beach, CA 92660

TEL NO.: 949.929.4787   FAX NO. (optional):
E-MAIL ADDRESS (Optional): kia002@att.net

| | | | |
|---|---|---|---|
| ☐ ATTORNEY FOR | ☐ JUDGMENT CREDITOR | ☒ ASSIGNEE OF RECORD | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana      92701
BRANCH NAME: Central Justice Center

*FOR RECORDER'S USE ONLY*

PLAINTIFF: MOISEY FRIDMAN AND ROSA FRIDMAN

DEFENDANT: THE BEACH CREST VILLAS HOMEOWNERS ASSOCIATION

CASE NUMBER:
07CC09589

**APPLICATION FOR AND RENEWAL OF JUDGMENT**

*FOR COURT USE ONLY*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/25/2019** at 03:12:00 PM

Clerk of the Superior Court
By Sonya Wilson,Deputy Clerk

☐ Judgment creditor

☒ Assignee of record
   applies for renewal of the judgment as follows:

1. Applicant *(name and address):*
   Karl Avetoom
   1100 Rutland Road # 9
   Newport Beach, CA 92660

2. Judgment debtor *(name and last known address):*
   THE BEACH CREST VILLAS HOMEOWNERS ASSOCIATION, a California
   corporation
   1100 Rutland Road
   Newport Beach, CA 92660

3. Original judgment

   a. Case number *(specify):* 07CC09589

   b. Entered on *(date):* 08/21/2009

   c. Recorded:
      (1) Date:
      (2) County:
      (3) Instrument No.:

4. ☐ Judgment previously renewed *(specify each case number and date):*

5. ☒ Renewal of money judgment

   a. Total judgment . . . . . . . . . . . . . . . . . . . . . . . $    128,821.98
   b. Costs after judgment . . . . . . . . . . . . . . . . . $     20,729.00
   c. Subtotal *(add a and b)* . . . . . . . . . . . . . . . . . $    149,550.98
   d. Credits after judgment . . . . . . . . . . . . . . . . . $          0.00
   e. Subtotal *(subtract d from c)* . . . . . . . . . . . $    149,550.98
   f. Interest after judgment . . . . . . . . . . . . . . . . . $    148,526.66
   g. Fee for filing renewal application . . . . . . . . . $         30.00
   h. **Total renewed judgment** *(add e, f, and g)* $    298,107.64

   i. ☐ The amounts called for in items a–h are different for each debtor.
        These amounts are stated for each debtor on Attachment 5.

Form Approved for Optional Use
Judicial Council of California
EJ-190 [Rev. July 1, 2014]

**APPLICATION FOR AND RENEWAL OF JUDGMENT**

Code of Civil Procedure, § 683.140

CEB
www.ceb.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Fridman v. Beach Crest Villas | 07CC09589 |

6. ☐ Renewal of judgment for   ☐ possession.
                               ☐ sale.

a. ☐ If judgment was not previously renewed, terms of judgment as entered:

b. ☐ If judgment was previously renewed, terms of judgment as last renewed:

c. ☐ Terms of judgment remaining unsatisfied:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 07/25/2019

_____
Karl Avetoom
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

POS-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Karl Avetoom<br>1100 Rutland Road # 9<br><br>Newport Beach                    CA   92660<br><br>TELEPHONE NO.: (949) 929-4787<br>E-MAIL ADDRESS *(Optional):* kia002@att.net        FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):* Assignee of Record, In Pro Per | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana                    CA   92701
BRANCH NAME: Central Justice Center

PETITIONER/PLAINTIFF: Fridman

RESPONDENT/DEFENDANT: Beach Crest Villas, et al

| **PROOF OF PERSONAL SERVICE—CIVIL** | CASE NUMBER:<br>07CC09589 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action**.

2. I served the following **documents** *(specify):*

   NOTICE OF RENEWAL OF JUDGMENT with FILED APPLICATION FOR AND RENEWAL OF JUDGMENT

   ☐ The documents are listed in the *Attachment to Proof of Personal Service—Civil (Documents Served)* (form POS-020(D)).

3. I personally served the following **persons** at the address, date, and time stated:
   a. Name: Beach Crest Villas Homeowners Association (Debtor)
   b. Address: 1100 Rutland Road
   c. Date: August 1, 2019
   d. Time: 3:15 p.m.

   ☒ The persons are listed in the *Attachment to Proof of Personal Service—Civil (Persons Served)* (form POS-020(P)).

4. I am
   a. ☐ not a registered California process server.
   b. ☒ a registered California process server.
   c. ☐ an employee or independent contractor of a registered California process server.
   d. ☐ exempt from registration under Business & Professions Code section 22350(b).

5. My name, address, telephone number, and, if applicable, county of registration and number are *(specify):* Orange #3050
   Sal Hanna
   OPR 7451 Warner Ave #E191
   Huntington Beach, CA 92647
   Reg'd Process Server # 3050

6. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7. ☐ I am a California sheriff or marshal and certify that the foregoing is true and correct.

Date: September 4, 2019

Sal W. Hanna
_____
(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)

▶

_____
(SIGNATURE OF PERSON WHO SERVED THE PAPERS)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-020 [New January 1, 2005] | **PROOF OF PERSONAL SERVICE—CIVIL** | **CEB**<br>www.ceb.com | Code of Civil Procedure, § 1011<br>www.courtinfo.ca.gov |

POS-020(P)

| SHORT TITLE:  Fridman v. Beach Crest Villas | CASE NUMBER:  07CC09589 |
|---|---|

## ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL (PERSONS SERVED)
*(This Attachment is for use with form POS-020)*

| Name of Person Served | Address *(number, street, city, and zip code)* | Date and Time of Service |
|---|---|---|
| Gates, Gonter, Guy, Proudfoot & Muench LLP (Attorney for Beach Crest) | 38 Discovery, Suite 200 Irvine, CA 92618 | Date: 08/01/2019  Time: 4:30 p.m. |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |
| | | Date: _____  Time: _____ |

Form Approved for Optional Use
Judicial Council of California
POS-020(P) [New January 1, 2005]

**ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL**
**(Persons Served)**

CEB
www.ceb.com

Page 1 of 1

11023-ES filed by General Court of California, County of Orange on 12/07/2021
DAVID H. YAMASAKI Clerk of the Superior Court by & Deputy. Gutierrez, Mary M Orange Superior Court 07CC09589 ROA # 330

**EJ-100**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*

After recording, return to:

Karl Avetoom
1100 Rutland Road #9
Newport Beach, CA 92660

TEL NO.: (949) 929-4787  FAX NO. (optional):
E-MAIL ADDRESS (Optional): kia002@att.net

| ATTORNEY FOR | JUDGMENT CREDITOR | X | ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana        92701
BRANCH NAME: Central Justice Center

*FOR RECORDER'S OR SECRETARY OF STATE'S USE ONLY*

PLAINTIFF: Fridman

DEFENDANT: The Beach Crest Villas Homeowners Association

CASE NUMBER:
**07CC09589**

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**

| X | FULL | | PARTIAL | | MATURED INSTALLMENT |

*FOR COURT USE ONLY*

1. Satisfaction of the judgment is acknowledged as follows:
   a. [X] Full satisfaction
      (1) [ ] Judgment is satisfied in full.
      (2) [X] The judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment.
   b. [ ] Partial satisfaction
      The amount received in partial satisfaction of the judgment is $
   c. [ ] Matured installment
      All matured installments under the installment judgment have been satisfied as of *(date):*

2. Full name and address of judgment creditor:*
   Moisey Fridman and Rosa Fridman, 1100 Rutland Road #7
   Newport Beach, CA 92660

3. Full name and address of assignee of record, if any:
   Karl Avetoom
   1100 Rutland Road #9  Newport Beach, CA 92660

4. Full name and address of judgment debtor being fully or partially released:*
   THE BEACH CREST VILLAS HOMEOWNERS ASSOCIATION, a California corporation
   1100 Rutland Road   Newport Beach, CA 92660

5. a. Judgment entered on *(date):* 08/21/2009
   b. [X] Renewal entered on *(date):* 07/25/2019

6. [ ] An [ ] abstract of judgment [ ] certified copy of the judgment has been recorded as follows *(complete all information for each county where recorded):*

| COUNTY | DATE OF RECORDING | INSTRUMENT NUMBER |
|---|---|---|

7. [ ] A notice of judgment lien has been filed in the office of the Secretary of State as file number *(specify):*

**NOTICE TO JUDGMENT DEBTOR:** If this is an acknowledgment of full satisfaction of judgment, it will have to be recorded in each county shown in item 6 above, if any, in order to release the judgment lien, and will have to be filed in the office of the Secretary of State to terminate any judgment lien on personal property.

Date: September 6, 2019

▶

*(SIGNATURE OF JUDGMENT CREDITOR OR ASSIGNEE OF CREDITOR OR ATTORNEY**)*

*The names of the judgment creditor and judgment debtor must be stated as shown in any Abstract of Judgment which was recorded and is being released by this satisfaction. ** A separate notary acknowledgment must be attached for each signature.

Form Approved for Optional Use
Judicial Council of California
EJ-100 [Rev. July 1, 2014]

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**

Page 1 of 1
Code of Civil Procedure, §§ 724.060, 724.120, 724.250

CEB
www.ceb.com

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Orange_ }

On _September 6 2019_ before me, _Ingrid Jasmine Lopez, Notary_
_____Date_____ ____Here Insert Name and Title of the Officer____

personally appeared _Karl Ivan Avetoom_
_____Name(s) of Signer(s)_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

INGRID JASMINE LOPEZ
Notary Public - California
Orange County
Commission # 2230980
My Comm. Expires Feb 11, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
_____Signature of Notary Public

_Place Notary Seal and/or Stamp Above_

──────────────── OPTIONAL ────────────────

_Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
Title or Type of Document: _Acknowledgment of Satisfaction of Judgment_
Document Date: _09 06 2019_  Number of Pages: _1_
Signer(s) Other Than Named Above: _N/A_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Karl Ivan Avetoom_
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☒ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian of Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian of Conservator
☐ Other: _____
Signer is Representing: _____

©2017 National Notary Association

M1304-09 (09/17)

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Karl Avetoom<br>1100 Rutland Road # 9<br>Newport Beach, CA 92660<br><br>TELEPHONE NO. 949.929.4787   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional)* kia002@att.net<br>ATTORNEY FOR *(Name)* Assignee of Record, In Pro Per | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PETITIONER/PLAINTIFF:
      Fridman

RESPONDENT/DEFENDANT:
      The Beach Crest Villas Homeowners Association

| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>07CC09589 |
|---|---|

***(Do not use this Proof of Service to show service of a Summons and Complaint.)***

1.  I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2.  My residence or business address is:

    OPR 7451 Warner Ave #E191 Huntington Bch, CA 92647 (Orange County Reg'd Process Server # 3050)

3.  On *(date)* 09/07/2019    I mailed from *(city and state):* Santa Ana, CA
the following **documents** *(specify):*
ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT (FULL) with Notarization

☐  The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4.  I served the documents by enclosing them in an envelope and *(check one):*
    a. ☒ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
    b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5.  The envelope was addressed and mailed as follows:
    a. **Name** of person served: The Beach Crest Villas Homeowners Association
    b. **Address** of person served:

    1100 Rutland Road Newport Beach, CA 92660

☑  The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 09/07/2019

Sal. Hanna
_____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)      ▶    _____
                                     (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]
**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**
Code of Civil Procedure, §§ 1013, 1013a
*www.courtinfo.ca.gov*

POS-030(P)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Fridman v. The Beach Crest Villas Homeowners Association | 07CC09589 |

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Gates, Gonter, Guy, Proudfoot & Muench LLP (Attorney for Beach Crest) Attn Robert Gonter | 38 Discovery, Suite 200 Irvine, CA 92618 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL
(PERSONS SERVED)
(Proof of Service)**

Page 1 of 1

CEB
www.ceb.com

# **Exhibit 20**

17-653201



**Secretary of State**
**Statement of Information** **75** **SI-100**
(California Nonprofit, Credit Union and
General Cooperative Corporations)

**FILED**
**Secretary of State**
**State of California**

**SEP 25 2017**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00;**

**Copy Fees – First page $1.00; each attachment page $0.50;**
Certification Fee - $5.00 plus copy fees

**1. Corporation Name** (Enter the exact name of the corporation as it is recorded with the California Secretary of State)

BEACH CREST VILLAS OWNERS ASSOCIATION

This Space For Office Use Only

**2. 7-Digit Secretary of State File Number**

C0869513

**3. Business Addresses**

| a. Street Address of California Principal Office, if any - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1100 Rutland Road | Newport Beach | CA | 92660 |
| b. Mailing Address of Corporation, if different than Item 3a | City (no abbreviations) | State | Zip Code |
| | | | |

**4. Officers** The Corporation is required to enter the names and addresses of all three of the officers set forth below. An additional title for Chief Executive Officer or Chief Financial Officer may be added; however, the preprinted titles on this form must not be altered.

| a. Chief Executive Officer/ | First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|---|
| Karl | | Ivan | Avetoom | | |
| Address | | City (no abbreviations) | | State | Zip Code |
| 1100 Rutland Road #9 | | Newport Beach | | CA | 92660 |
| b. Secretary | First Name | Middle Name | Last Name | | Suffix |
| Mike | | | Stefan | | |
| Address | | City (no abbreviations) | | State | Zip Code |
| 1100 Rutland Road #2 | | Newport Beach | | CA | 92660 |
| c. Chief Financial Officer/ | First Name | Middle Name | Last Name | | Suffix |
| Judy | | | Altshuler | | |
| Address | | City (no abbreviations) | | State | Zip Code |
| 1100 Rutland Road #1 | | Newport Beach | | CA | 92660 |

**5. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 5a and 5b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| Karl | | Avetoom | | |
| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | | State | Zip Code |
| 1100 Rutland Road #9 | Newport Beach | | CA | 92660 |

**CORPORATION** – Complete Item 5c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 5a or 5b |
|---|
| |

**6. Common Interest Developments**

☑ Check here if the corporation is an association formed to manage a common interest development under the Davis-Sterling Common Interest Development Act (California Civil Code section 4000, et seq.) or under the Commercial and Industrial Common Interest Development Act (California Civil Code section 6500, et seq.). The corporation must file a Statement by Common Interest Development Association (Form SI-CID) as required by California Civil Code sections 5405(a) and 6760(a). See Instructions.

**7. The information contained herein, including in any attachments, is true and correct.**

| 9/21/2017 | Karl Avetoom | President | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

SI-100 (REV 01/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

# Exhibit 21

20-603792



**Secretary of State
Statement of Information**
(California Nonprofit, Credit Union and
General Cooperative Corporations)

137    **SI-100**



**FILED
Secretary of State
State of California**

FEB 1 2 2020

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00;**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Corporation Name** (Enter the exact name of the corporation as it is recorded with the California Secretary of State)

Beach Crest Villas Owners Association

26/20/CC
This Space For Office Use Only

**2. 7-Digit Secretary of State File Number**

## C0869513

**3. Business Addresses**

| a. Street Address of California Principal Office, if any - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1100 Rutland Road | Newport Beach | CA | 92660 |

| b. Mailing Address of Corporation, if different than Item 3a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**4. Officers**    The Corporation is required to enter the names and addresses of all three of the officers set forth below. An additional title for Chief Executive Officer or Chief Financial Officer may be added; however, the preprinted titles on this form must not be altered.

| a. Chief Executive Officer/ | First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|---|
| William | | Marshall | Gabriel | | |
| Address | | City (no abbreviations) | State | Zip Code | |
| 1100 Rutland Road #8 | | Newport Beach | CA | 92660 | |

| b. Secretary | First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|---|
| Jon | | | Paradise | | |
| Address | | City (no abbreviations) | State | Zip Code | |
| 1100 Rutland Road | | Newport Beach | CA | 92660 | |

| c. Chief Financial Officer/ | First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|---|
| William | | Marshall | Gabriel | | |
| Address | | City (no abbreviations) | State | Zip Code | |
| 1100 Rutland Road #8 | | Newport Beach | CA | 92660 | |

**5. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 5a and 5b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| William | Marshall | Gabriel | | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1100 Rutland Road #8 | Newport Beach | CA | 92660 |

**CORPORATION** – Complete Item 5c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete 5a or 5b |
|---|
| |

**6. Common Interest Developments**

[✓] Check here if the corporation is an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act (California Civil Code section 4000, et seq.) or under the Commercial and Industrial Common Interest Development Act (California Civil Code section 6500, et seq.). The corporation must file a Statement by Common Interest Development Association (Form SI-CID) as required by California Civil Code sections 5405(a) and 6760(a). See Instructions.

**7. The Information contained herein, including in any attachments, is true and correct.**

| February 8, 2020 | William Gabriel | President | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

SI-100 (REV 11/2019)

2019 California Secretary of State
bizfile.sos.ca.gov

# VIII.    PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2900 Adams Street, Suite C225, Riverside, CA 92504

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED DOCUMENTS; SUPPORTING DECLARATION OF SCOTT TALKOV** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 7, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

> Karl T. Anderson (TR)    2edansie@gmail.com, kanderson@ecf.axosfs.com
> Scott Talkov    scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
> United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
> ☐    Service information continued on attached page

2. SERVED BY UNITED STATES MAIL:
On (*date*) December 7, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> Hon. Erithe Smith, 411 West Fourth Street, Suite 5040, Santa Ana, CA 92701
> Karl Avetoom, 1100 Rutland Road #9, Newport Beach, CA 92660
> ☐    Service information continued on attached page

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 7, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
> Karl Avetoom, 1100 Rutland Road #9, Newport Beach, CA 92660 kia002@att.net
>        – Email
> ☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 7, 2021 | Scott Talkov | *Scott Talkov* |
|---|---|---|
| Date | Printed Name | Signature |

TALKOV LAW<br>
2900 ADAMS ST STE C225<br>
RIVERSIDE, CA 92504<br>
TELEPHONE (951) 888-3300

---

**REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DUE TO PLAINTIFF KARL AVETOOM'S SUBMISSION AND AUTHENTICATION OF FABRICATED DOCUMENTS**